UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 04-11131-PBS

PROFESSIONAL SERVICES GROUP, INC.,

     Plaintiff

v.

TOWN OF ROCKLAND, ROCKLAND
SEWER COMMISSION, GREGORY
THOMSON AND MICHAEL SAUSE,

     Defendants

DEFENDANTS TOWN OF
ROCKLAND'S AND ROCKLAND
SEWER COMMISSION'S ANSWER,
COUNTERCLAIM, AND
CROSSCLAIM AGAINST
MICHAEL SAUSE

## ANSWER

Plaintiff, Professional Services Group, Inc., ("PSG") includes an untitled, unnumbered introductory paragraph in its Complaint, in which it purports to summarize the facts upon which the Complaint is based. The Town of Rockland and the Rockland Sewer Commission (collectively, the "Town") deny the allegation, contained in that paragraph, that the Town improperly terminated a contract with PSG. The Town further denies that Defendants Michael Sause ("Sause"), former employee of PSG, and Gregory Thomson ("Thomson"), former superintendent of the Rockland Sewer Commission, conspired to defraud PSG. To the contrary, Thomson and PSG, by and through Sause, conspired to defraud, and did defraud, the Town. The remaining allegations in this paragraph require no answer of the Town, and should an answer be required, they are denied.

### Parties

1.    The Town is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

2.    Admitted.

3.    Admitted.

4.    The Town admits that Thomson is a natural person. The Town is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

5.    The Town admits that Sause is a natural person. The Town is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

## Jurisdiction and Venue

6.    The allegations contained in this paragraph constitute conclusions of law to which no answer is required by the Town.

7.    The allegations contained in this paragraph constitute conclusions of law to which no answer is required by the Town.

8.    The Town admits that the Rockland Sewer Commission operates a wastewater treatment facility. The Town admits further that Gregory Thomson served as the Superintendent of the Sewer Commission from on or about January 27, 1995 to on or about June 4, 2002.

9.    The Town is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

10.    Admitted.

11.    The Town admits that Sause was employed by PSG during the period of time that PSG, by and through Sause, defrauded the Town. The Town answers further that it is without sufficient information to know the exact dates of Sause's employment with PSG.

2

12.     The Town admits only that there exists a document dated July 25, 1994 and entitled "Agreement for Operation and Maintenance of the Rockland Water Pollution Control Facilities," signed by the Rockland Sewer Commissioners and Metcalf & Eddy Services, Inc., predecessor to PSG.  The Town answers further that said document speaks for itself.  The Town denies the remaining allegations contained in this paragraph.

13.     The Town admits only that there exists a document dated February 24, 1998 and entitled "Agreement for Operations, Maintenance and Management Services," signed by the Rockland Sewer Commissioners and PSG (the "Contract").  The Town answers further that the Contract speaks for itself.  The Town denies the remaining allegations contained in this paragraph.

14.     The Town admits only that Michael Sause ("Sause") and Gregory Thomson ("Thomson") established an unauthorized bank account at Wainwright Bank (the "Wainwright Account"), into which account Sause and Thomson deposited public funds.  The Town is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

15.     The Town admits only that Sause and Thomson established the Wainwright Account as part of a scheme to commit fraud, and that into such unauthorized account Sause and Thomson deposited public funds.  The Town answers further that such fraudulent scheme was directed against the Rockland Sewer Commission and the Town of Rockland (collectively, the "Town").  The Town is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

16.     The Town denies that PSG was unaware of the Wainwright Account or the scheme by Sause and Thomson to commit fraud.

3

17.     The Town admits that Thomson was investigated by the Rockland Police in or about 2002. The Town is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

18.     The Town is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

19.     The Town admits only that, on or about February 10, 2004, the Town's Chief Procurement Officer delivered to PSG an undated letter advising PSG that the Contract was invalid and was terminated by operation of law. The Town answers further that said letter speaks for itself. The Town denies the remaining allegations contained in this paragraph.

20.     The Town admits only that PSG did not agree with the position of the Town that the Contract was invalid. The Town denies the remaining allegations contained in this paragraph.

21.     The Town admits only that PSG ceased operations and vacated the Rockland Sewer Treatment Plant on or about April 12, 2004. The Town denies the remaining allegations contained in this paragraph.

22.     Denied.

23.     The Town admits that Sause and Thomson unlawfully combined and conspired to commit fraud, but denies that PSG was unaware of such conspiracy and concomitant fraudulent activity. The Town answers further that PSG knew or should have known of such conspiracy and concomitant fraudulent activity.

## COUNT I

24.     The Town restates and incorporates by reference the answers set forth in paragraphs 1-23 of its Answer.

25.     Denied.

26.     Denied.

27.     Denied.

28.     Denied.

## COUNT II

29.     The Town restates and incorporates by reference the answers set forth in paragraphs 1-28 of its Answer.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Denied.

## COUNT III

34.     The Town restates and incorporates by reference the answers set forth in paragraphs 1-33 of its Answer.

35.     Admitted.

36.     Admitted.

37.     The allegations contained in this paragraph constitute conclusions of law to which no answer is required by the Town.

38.     Denied.

39.     Denied.

## COUNT IV

40.     The Town restates and incorporates by reference the answers set forth in paragraphs 1-39 of its Answer.

41.    The allegations in this paragraph are directed at a party other than the Town, and therefore, no answer is required.

42.    The allegations in this paragraph are directed at a party other than the Town, and therefore, no answer is required.

43.    The allegations in this paragraph are directed at a party other than the Town, and therefore, no answer is required.

## COUNT V

44.    The Town restates and incorporates by reference the answers set forth in paragraphs 1-43 of its Answer.

45.    The allegations in this paragraph are directed at a party other than the Town, and therefore, no answer is required.

46.    The allegations in this paragraph are directed at a party other than the Town, and therefore, no answer is required.

47.    The allegations in this paragraph are directed at a party other than the Town, and therefore, no answer is required.

48.    The allegations in this paragraph are directed at a party other than the Town, and therefore, no answer is required.

49.    The allegations in this paragraph are directed at a party other than the Town, and therefore, no answer is required.

## FIRST DEFENSE

The Complaint fails to state a cause of action upon which relief can be granted.

## SECOND DEFENSE

PSG has failed to satisfy a condition precedent to recovery in that PSG has failed to establish compliance with all material terms and obligations of its contract with the Town.

## THIRD DEFENSE

PSG has failed to mitigate its damages, if any.

## FOURTH DEFENSE

At all times relevant, the Town acted reasonably and in accordance with law.

## FIFTH DEFENSE

If PSG sustained any damages as alleged in the Complaint, such damages were caused by the acts of PSG or other parties for whom PSG is responsible.

## SIXTH DEFENSE

Any contract between PSG and the Town was invalid by operation of law pursuant to G.L. c.30B, § 17.

## SEVENTH DEFENSE

PSG breached its contract with the Town by conspiring to commit and committing fraud against the Town.

## EIGHTH DEFENSE

The alleged acts of the Town were justified under the facts and circumstances of this case.

## NINTH DEFENSE

The Complaint should be dismissed for failure to present the claim and to give notice in accordance with G.L. c. 258.

## TENTH DEFENSE

At the time alleged in the Complaint, the Town was engaged as a public instrumentality and, therefore, the Plaintiff's recovery is barred or limited in accordance with G.L. c. 258 and the doctrine of sovereign immunity.

## ELEVENTH DEFENSE

The Town says that this action consists of a claim based upon the performance or failure to perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his or her office or employment, and therefore, the Plaintiff cannot recover in this action.

## TWELFTH DEFENSE

The defendant states that this action consists of claims for which the Town is protected from liability under the "public duty doctrine" and G.L. c. 258, §10.

WHEREFORE, the Town prays that this Court dismiss the Complaint and award the Town its costs of defense, including reasonable attorneys' fees.

## COUNTERCLAIM

1.      The Defendant/Plaintiff-in-Counterclaim Town of Rockland is a duly organized municipal corporation located in Rockland, MA.

2.      The Defendant/Plaintiff-in-Counterclaim Rockland Sewer Commission (the "Sewer Commission") is a municipal agency of the Town of Rockland located in Rockland, MA.

3.      Upon information and belief, the Plaintiff/Defendant-in-Counterclaim Professional Services Group, Inc., ("PSG") is a corporation organized under the laws of the State of Minnesota with principal place of business located at 14950 Heathrow Forest Parkway, Houston, TX.

4.      On or about July 25, 1994, the Sewer Commission and Metcalf & Eddy Services, Inc., ("Metcalf") signed a document entitled "Agreement for Operation and Maintenance of the Rockland Water Pollution Control Facilities" ("Contract No 1").

5.      Pursuant to Contract No. 1, Metcalf was required to manage, operate and maintain the Town of Rockland's wastewater treatment plant, wastewater collection system, pumping stations and related treatment facilities (collectively, the "Sewer Plant").

6.      Contract No. 1 was set to expire three years after its execution.

7.      Prior to the natural expiration of Contract No. 1, Metcalf was purchased by, merged with, or was otherwise subsumed by PSG.

8.      On or about February 24, 1998, the Sewer Commission and PSG signed a document entitled "Agreement for Operations, Maintenance and Management Services" ("Contract No. 2").

9.      Pursuant to Contract No. 2, PSG was required to manage, operate and maintain the Sewer Plant.

10.    USFilter Operating Services, Inc., ("USF") operated and maintained the Sewer Plant on behalf of PSG pursuant to an agreement between PSG and USF.

11.    At all times relevant hereto, USF was an affiliate of PSG.

12.    At all times relevant hereto, USF acted as the agent of PSG in relation to Contract No. 2 and the management, operation and maintenance of the Sewer Plant.

13.    At all times relevant hereto, PSG had control over USF's activities in relation to the management, operation and maintenance of the Sewer Plant and Contract No. 2.

14.    PSG is legally responsible for the acts and omissions of its agent USF in relation to the management, operation and maintenance of the Sewer Plant and Contract No. 2.

15.    At all times relevant hereto, Michael Sause ("Sause") was employed by PSG in a managerial capacity.

16.    At all times relevant hereto, Sause's employment title at PSG was "regional district manager."

17.    At all times relevant hereto, Sause was responsible for the management, operation and maintenance of the Sewer Plant on behalf of PSG.

18.    At all times relevant hereto, PSG had control over the activities of Sause relating to the management, operation and maintenance of the Sewer Plant.

19.    The Request for Proposals ("RFP") that was issued by the Sewer Commission for Contract No. 2 was prepared by Gregory Thomson ("Thomson"), the former Superintendent of the Sewer Commission, at the direction of Sause.

20.    The Town of Rockland's Chief Procurement Officer did not solicit proposals for Contract No. 2.

21.    The RFP was intentionally written by Thomson and Sause to include requirements that favored PSG.

22.    The RFP failed to include any comparative evaluation criteria.

23.    As written, the RFP amounted to a proprietary specification, precluding competition for the services to be procured.

24.    As a result of the proprietary nature of the RFP, the Sewer Commission and the Town of Rockland (collectively, the "Town") did not receive the lowest price for the services procured.

25.    Another contractor, Woodard & Curran, was ready and willing to perform the work required by the RFP for a fee significantly less than the fee paid to PSG.

26.    Woodard & Curran declined to submit a proposal to the Town because of the proprietary nature of the RFP.

27.    Contract No. 2 was not awarded based upon the most advantageous proposal from a responsible and responsive offeror.

28.    As a result of the proprietary nature of the RFP, the Town sustained an estimated loss of at least $1,500,000.00 over the six years that PSG operated the Sewer Plant (March 1, 1998 – April 12, 2004).

29.    In or about August 2003, the Massachusetts Office of the Inspector General began an investigation of Contract No. 2 and the manner of its procurement.

30.    In or about August 2003, Sause was indicated by the Plymouth County District Attorney for certain crimes arising out of Contract No. 2 and/or the services performed pursuant thereto.

31.     In or about October 2003, the Town of Rockland began an audit of the operation of the Sewer Plant (the "Audit").

32.     The results of the Audit indicated significant fraudulent activity by PSG, by and through Sause, in relation to the operation of the Sewer Plant and the administration of Contract No. 2.

33.     The Audit revealed that PSG, by and through Sause, converted public funds.

34.     The Audit further revealed that PSG, by and through Sause, established one or more unauthorized bank accounts into which PSG deposited public funds.

35.     One such unauthorized bank account was opened at Wainwright Bank (the "Wainwright Account").

36.     The joint signers of the Wainwright Account were Sause and Thomson.

37.     The amount deposited into unauthorized accounts and/or converted to personal use by PSG totals no less than $350,204.80.

38.     The Audit further revealed that PSG used public funds to make unauthorized expenses in an amount totaling no less than $76,593.51.

39.     PSG was to be compensated for the services performed under Contract No. 2 with an adjustable annual fee of about $1.2 million (the "Fee").

40.     The Fee included certain amounts allocated for maintenance and repair, equipment/capital replacement and repair, new pump station electricity, and wages and salaries (collectively, the "Allowance Accounts").

41.     PSG was required by Contract No. 2 to rebate to the Town any monies, allocated to the Allowance Accounts, that were not expended by PSG in any given year.

42.    During the first four years of Contract No. 2, PSG failed to rebate to the Town no less than $119,599.55.

43.    On or about April 12, 2004, PSG ceased operations and vacated the Sewer Plant.

44.    When PSG vacated the Sewer Plant, PSG absconded with the following Town property:

> OPS Win-32 Software
> Data Stream MP2 Maintenance Software
> Microsoft Office Software
> (1) Tripod & Winch
> (2) F-350 Ford Pickups 1 Ton 4x4
> (1) Kady Mill setup
> (1) DBI Tripod & Winch
> (1) Air Blower
> (1) Sharp Photo Copier
> All Vendor Files

45.    At all times relevant hereto, PSG knew or should have known of, condoned and/or ratified the fraudulent activity of Sause.

46.    Sause's fraudulent activity was committed within the scope of his employment with PSG.

47.    By letter dated January 30, 2004, addressed to the Town, the Massachusetts Office of the Inspector General advised as follows: "It is the expectation and recommendation of this Office that . . . you will now act to establish a new contract for sewer operation services that is properly procured, consistent with the best interests of your citizens, and untainted by its associations with allegations of criminal wrong-doing that have engulfed the relationship between Rockland and USFilter."

48.    By an undated letter delivered to, and received by, PSG on or about February 10, 2004, the Town's Chief Procurement Officer advised PSG that Contract No. 2 was invalid and was terminated by operation of law pursuant to G.L. c. 30B, § 17(b).

49.     By letter dated May 14, 2004, the Town, by and through its counsel, demanded relief from PSG pursuant to G.L. c.93A, §9(3).

## COUNT I
### (Fraud)

50.     The Town restates and incorporates by reference the allegations set forth in paragraphs 1-49 of its Counterclaim.

51.     PSG knowingly made false representations of material facts to the Town for the purpose of inducing the Town to act thereon.

52.     The Town relied upon the truth of the representations of PSG and acted thereon to its detriment.

53.     In furtherance of its efforts to defraud the Town, PSG established unauthorized bank accounts and deposited public funds therein; knowingly failed and refused to rebate to the Town monies due and owing the Town under Contract No. 2; absconded with Town property upon vacating the Sewer Plant; made unauthorized expenses with public funds; and converted public funds to personal use (collectively, the "Fraudulent Activity").

54.     The Town has suffered and continues to suffer great damage as a direct and proximate result of its justifiable reliance on the false representations of PSG and the Fraudulent Activity.

WHEREFORE, the Town requests that this Court enter judgment against PSG in favor of the Town in an amount equal to all of the Town's damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

<u>COUNT II</u>
<u>(Breach of Contract)</u>

55.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-54 of its Counterclaim.

56.    By engaging in the Fraudulent Activity, PSG materially breached Contract No. 2.

57.    The Town has suffered and continues to suffer great damage as a direct and proximate result of PSG's breach of contract.

WHEREFORE, the Town requests that this Court enter judgment against PSG in favor of the Town in an amount equal to all of the Town's damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

<u>COUNT III</u>
<u>(Breach of Implied Covenant of Good Faith)</u>

58.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-57 of its Counterclaim.

59.    By engaging in the Fraudulent Activity, PSG breached the implied covenant of good faith and fair dealing.

60.    The Fraudulent Activity was carried out with a dishonest purpose, consciousness of wrong, and ill will in the nature of fraud.

61.    The Town has suffered and continues to suffer great damage as a direct and proximate result of PSG's breach of the implied covenant of good faith and fair dealing.

WHEREFORE, the Town requests that this Court enter judgment against PSG in favor of the Town in an amount equal to all of the Town's damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

COUNT IV
(Violation of G.L. c.268A, §2(a))

62.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-61 of its Counterclaim.

63.    The Conflict of Interest Law, G.L. c.268A, imposes liability on any person who directly or indirectly, corruptly gives, offers or promises anything of value to any municipal employee or who offers or promises any such employee to give anything of value to any other person or entity; with intent (1) to influence any official act or any act within the official responsibility of such employee; or (2) to influence such an employee to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud on a municipal agency; or (3) to induce such an employee to do or omit to do any act in violation of his lawful duty.  See G.L. c.268A, §2(a).

64.    PSG violated G.L. c.268A, § 2(a), by giving money and paying compensation to Thomson (1) knowingly and in relation to the operation of the Sewer Plant; (2) with the intent to influence Thomson's official acts; (3) with the intent to influence Thomson to commit, aid in committing, collude in and allow fraud; and (4) with the intent to induce Thomson to do and omit to do acts contrary to his lawful duties.

65.    The Town has suffered and continues to suffer great damage as a direct and proximate result of PSG's violation of G.L. c.268A, §2(a).

66.    For violations of the Conflict of Interest Law, the Town may recover up to twice the amount of the Town's damages.  See G.L. c.268A, §21.

WHEREFORE, the Town requests that this Court enter judgment against PSG in favor of the Town in an amount equal to double the Town's actual damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

## COUNT V
### (Violation of G.L. c.268A, §3(a))

67.     The Town restates and incorporates by reference the allegations set forth in paragraphs 1-66 of its Counterclaim.

68.     The Conflict of Interest Law imposes liability on any person who "directly or indirectly, gives, offers or promises anything of substantial value to any present or former . . . municipal employee . . . for or because of any official act performed or to be performed by such an employee. . . ." See G.L. c.268A, § 3(a)

69.     PSG violated G.L. c.268A, § 3(a), by giving money and paying compensation to Thomson (1) knowingly and in relation to the operation of the Sewer Plant; (2) with the intent to influence Thomson's official acts; (3) with the intent to influence Thomson to commit, aid in committing, collude in and allow fraud; and (4) with the intent to induce Thomson to do and omit to do acts contrary to his lawful duties.

70.     The Town has suffered and continues to suffer great damage as a direct and proximate result of PSG's violation of G.L. c.268A, §3(a).

71.     For violations of the Conflict of Interest Law, the Town may recover up to twice the amount of the Town's damages. See G.L. c.268A, §21.

WHEREFORE, the Town requests that this Court enter judgment against PSG in favor of the Town in an amount equal to double the Town's actual damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

## COUNT VI
### (Violation of G.L. c.268A, §17(b))

72.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-71 of its Counterclaim.

73.    The Conflict of Interest Law, provides that "[n]o person shall knowingly . . . directly or indirectly give, promise or offer [compensation to a municipal employee in relation to any particular matter in which the town has a direct and substantial interest.]" See G.L. c.268A, § 17(b).

74.    PSG violated G.L. c.268A, § 17(b), by giving money and paying compensation to Thomson (1) knowingly and in relation to the operation of the Sewer Plant; (2) with the intent to influence Thomson's official acts; (3) with the intent to influence Thomson to commit, aid in committing, collude in and allow fraud; and (4) with the intent to induce Thomson to do and omit to do acts contrary to his lawful duties.

75.    The Town has suffered and continues to suffer great damage as a direct and proximate result of PSG's violation of G.L. c.268A, §17(b).

76.    For violations of the Conflict of Interest Law, the Town may recover up to twice the amount of the Town's damages. See G.L. c.268A, §21.

WHEREFORE, the Town requests that this Court enter judgment against PSG in favor of the Town in an amount equal to double the Town's actual damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

## COUNT VII
### (Violation of G.L. c.30B)

77.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-76 of its Counterclaim.

78.     The Uniform Procurement Act, G.L. c.30B, prohibits any person from conspiring to cause a contract to be solicited and awarded in violation thereof.  See G.L. c.30B, § 17(b).

79.     PSG violated the Uniform Procurement Act by conspiring to cause a contract to be solicited and awarded in violation thereof.

80.     The Town has suffered and continues to suffer great damage as a direct and proximate result of PSG's violation of G.L. c.30B.

81.     "A person who causes or conspires with another to cause a contract to be solicited or awarded in violation of [the Uniform Procurement Act] shall forfeit and pay to the appropriate governmental body a sum of not more than two thousand dollars for each violation.  In addition, the person shall pay double the amount of damages sustained by the governmental body by reason of the violation, together with the costs of any action."  See G.L. c.30B, §17(c).

WHEREFORE, the Town requests that this Court enter judgment against PSG in favor of the Town in an amount equal to two thousand dollars for each violation of G.L. c.30B and double the Town's actual damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

## COUNT VIII
### (Violation of G.L. c.93A)

82.     The Town restates and incorporates by reference the allegations set forth in paragraphs 1-81 of its Counterclaim.

83.     PSG's Fraudulent Activity constitutes unfair and deceptive acts or practices in violation of G.L. c.93A.

84.     PSG further violated G.L. c.93A by willfully breaching Contract No. 2 and the implied covenant of good faith and fair dealing, and by violating the Conflict of Interest Law and the Uniform Procurement Act.

85.    PSG's violations of G.L. c.93A were willful and knowing.

86.    PSG refused to grant relief to the Town upon demand made pursuant to G.L. c.93A, §9.

87.    PSG's refusal to grant relief to the Town was made in bad faith and with knowledge that the conduct complained of violated G.L. c.93A.

88.    Pursuant to G.L. c.93A, §9(3), the Town may recover up to three but not less than two times such amount of the Town's actual damages.

89.    Pursuant to G.L. c.93A, §9(4), the Town may recover attorneys' fees and costs incurred in connection with this litigation.

90.    The Town has suffered and continues to suffer great damage as a direct and proximate result of PSG's violation of G.L. c.93A.

WHEREFORE, the Town requests that this Court enter judgment against PSG in favor of the Town in an amount equal to triple the Town's actual damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

## COUNT IX
### (Conversion)

91.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-90 of its Counterclaim.

92.    PSG, by and through Sause, converted public funds and Town property.

93.    To date, PSG has failed and refused to return to the Town the converted public funds and Town property.

94.    The Town has suffered and continues to suffer great damage as a direct and proximate result of PSG's conversion.

WHEREFORE, the Town requests that this Court enter judgment against PSG in favor of the Town in an amount equal to all of the Town's damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

## COUNT X
### (Civil Conspiracy)

95.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-94 of its Counterclaim.

96.    PSG, by and through Sause, conspired with, acted in concert with, and gave assistance and encouragement to Thomson to defraud the Town.

97.    At all relevant times hereto, PSG knew or should have known of the fraudulent conduct of Sause.

98.    At all relevant times hereto, PSG knew or should have known that the fraudulent conduct of Sause constituted a breach of a duty owed by PSG to the Town.

99.    The Town has suffered and continues to suffer great damage as a direct and proximate result of PSG's civil conspiracy.

WHEREFORE, the Town requests that this Court enter judgment against PSG in favor of the Town in an amount equal to all of the Town's damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

## COUNT XI
### (Respondeat Superior)

100.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-99 of its Counterclaim.

101.    At all times relevant hereto, PSG controlled the activities of USF.

102.    At all times relevant hereto, USF was an affiliate of PSG.

103.    At all times relevant hereto, USF held itself out to the Town as an agent of PSG.

104.    At all times relevant hereto, PSG held USF out to the Town as an agent of PSG.

105.    PSG is liable for the fraudulent conduct of USF and the damages resulting therefrom.

WHEREFORE, the Town requests that this Court enter judgment against PSG in favor of the Town in an amount equal to all of the Town's damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

COUNT XII
(Respondeat Superior)

106.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-105 of its Counterclaim.

107.    At all times relevant hereto, Sause was an employee of PSG.

108.    At all times relevant hereto, Sause was employed in a managerial capacity with PSG.

109.    At all times relevant hereto, PSG controlled the activities of Sause.

110.    Sause's fraudulent conduct was committed within the scope of Sause's employment with PSG.

111.    PSG is vicariously liable for the fraudulent conduct of Sause and the damages resulting therefrom.

WHEREFORE, the Town requests that this Court enter judgment against PSG in favor of the Town in an amount equal to all of the Town's damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

## COUNT XIII
### (Negligence)

112.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-111 of its Counterclaim.

113.    PSG owed a duty to the Town to supervise Sause in the performance of Sause's responsibilities relating to the management, operation and maintenance of the Sewer Plant.

114.    PSG owed a further duty to the Town to ensure that its employees acted lawfully in connection with the management, operation and maintenance of the Sewer Plant.

115.    Sause acted unlawfully and committed fraud against the Town in connection with Contract No. 2 and the management, operation and maintenance of the Sewer Plant.

116.    PSG breached its duty to the Town by failing to prevent Sause's fraud.

117.    The Town sustained great damage as a direct and proximate result of PSG's breach of duty.

WHEREFORE, the Town requests that this Court enter judgment against PSG in favor of the Town in an amount equal to all of the Town's damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

## COUNT XIV
### (Negligent Misrepresentation)

118.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-117 of its Counterclaim.

119.    In the course of its business, PSG supplied false information to the Town in relation to Contract No. 2 and the management, operation and maintenance of the Sewer Plant.

120.    The Town justifiably relied upon this false information supplied by PSG.

121.    PSG failed to exercise reasonable care or competence in obtaining or communicating said information to the Town.

122.    As a result of the Town's justifiable reliance on the false information supplied by PSG, the Town sustained significant pecuniary loss.

WHEREFORE, the Town requests that this Court enter judgment against PSG in favor of the Town in an amount equal to all of the Town's damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

## CROSS-CLAIM AGAINST MICHAEL SAUSE

1.    The Defendant/Plaintiff-in-Crossclaim, Town of Rockland ("Town"), is a duly-organized municipal corporation located in Rockland, MA.

2.    Upon information and belief, the Defendant-in-Crossclaim Michael Sause ("Sause") is a natural person who resides at 155 Commercial St., Provincetown, Massachusetts.

3.    On or about February 24, 1998, the Sewer Commission and PSG signed a document entitled "Agreement for Operations, Maintenance and Management Services" (the "Contract").

4.    At all times relevant hereto, Sause was employed by PSG in a managerial capacity.

5.    At all times relevant hereto, Sause's employment title or position at PSG was "regional district manager."

6.    At all times relevant hereto, Sause was responsible for the operation, maintenance and management of the Sewer Plant on behalf of PSG.

7.    The Request for Proposals ("RFP") that was issued by the Sewer Commission for the Contract was prepared by Gregory Thomson ("Thomson"), the former Superintendent of the Sewer Commission, at the direction of Sause.

8.    The Town's Chief Procurement Officer did not solicit proposals for the Contract.

9.    The RFP was intentionally written by Thomson and Sause to include requirements that favored PSG.

10.    The RFP failed to include any comparative evaluation criteria.

11.    As written, the RFP amounted to a proprietary specification, precluding competition for the services to be procured.

12.    As a result of the proprietary nature of the RFP, the Town did not receive the lowest price for the services required in the RFP.

13.    Another contractor, Woodard & Curran, was ready and willing to perform the work required by the RFP for a fee significantly less than the fee paid to PSG.

14.    Woodard & Curran declined to submit a proposal to the Town because of the proprietary nature of the RFP.

15.    The Contract was not awarded based upon the most advantageous proposal from a responsible and responsive offeror.

16.    As a result of the proprietary nature of the RFP, the Town sustained an estimated loss of at least $1,500,000.00 over the six years that PSG operated the Sewer Plant (March 1, 1998 – April 12, 2004).

17.    In or about August 2003, the Massachusetts Office of the Inspector General began an investigation of the Contract and the manner of its procurement.

18.    In or about August 2003, Sause was indicated by the Plymouth County District Attorney for certain crimes arising out of the Contract and/or the services performed pursuant thereto.

19.    In or about October 2003, the Town of Rockland began an audit of the operation of the Sewer Plant (the "Audit").

20.    The results of the Audit indicated significant fraudulent activity by Sause in relation to the operation of the Sewer Plant and the administration of the Contract.

21.    The Audit revealed that Sause combined and conspired with Thomson to defraud the Town.

22.    The Audit also revealed that Sause converted public funds to personal use.

23.    The Audit further revealed Sause established one or more unauthorized bank accounts into which Sause deposited public funds.

24.    One such unauthorized bank account was opened at Wainwright Bank (the "Wainwright Account").

25.    The joint signers of the Wainwright Account were Sause and Thomson.

26.    The amount deposited into unauthorized accounts and/or converted to personal use by Sause totals no less than $350,204.80.

27.    Sause used public funds to make unauthorized expenses in an amount totaling no less than $76,593.51.

## COUNT I
### (Fraud)

28.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-27 of its Crossclaim.

29.     Sause knowingly made false representations of material facts to the Town for the purpose of inducing the Town to act thereon.

30.     The Town relied upon the truth of the representations of Sause and acted thereon to its detriment.

31.     The Town has suffered and continues to suffer great damage as a direct and proximate result of the fraud of Sause.

WHEREFORE, the Town requests that this Court enter judgment against Sause in favor of the Town in an amount equal to all of the Town's damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

## COUNT II
### (Violation of G.L. c.268A, §2(a))

32.     The Town restates and incorporates by reference the allegations set forth in paragraphs 1-31 of its Crossclaim.

33.     The Conflict of Interest Law, G.L. c.268A, imposes liability on any person who directly or indirectly, corruptly gives, offers or promises anything of value to any municipal employee or who offers or promises any such employee to give anything of value to any other person or entity, with intent (1) to influence any official act or any act within the official responsibility of such employee, or (2) to influence such an employee to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud on a municipal agency, or (3) to induce such an employee to do or omit to do any act in violation of his lawful duty.  See G.L. c.268A, §2(a).

34.     Sause violated G.L. c.268A, §2(a), by giving money and paying compensation to Thomson (1) knowingly and in relation to the operation of the Sewer Plant; (2) with the intent to influence Thomson's official acts; (3) with the intent to influence Thomson to commit, aid in

committing, collude in and allow fraud; and (4) with the intent to induce Thomson to do and omit to do acts contrary to his lawful duties.

35.    The Town has suffered and continues to suffer great damage as a direct and proximate result of Sause's violation of G.L. c.268A, §2(a).

36.    For violations of the Conflict of Interest Law, the Town may recover up to twice the amount of the Town's damages. See G.L. c.268A, §21.

WHEREFORE, the Town requests that this Court enter judgment against Sause in favor of the Town in an amount equal to double the Town's actual damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

### COUNT III
### (Violation of G.L. c.268A, §3(a))

37.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-36 of its Crossclaim.

38.    The Conflict of Interest Law, G.L. c.268A, imposes liability on any person who "directly or indirectly, gives, offers or promises anything of substantial value to any present or former . . . municipal employee . . . for or because of any official act performed or to be performed by such an employee. . . ." See G.L. c.268A, § 3(a)

39.    Sause violated G.L. c.268A, § 3(a), by giving money and paying compensation to Thomson (1) knowingly and in relation to the operation of the Sewer Plant; (2) with the intent to influence Thomson's official acts; (3) with the intent to influence Thomson to commit, aid in committing, collude in and allow fraud; and (4) with the intent to induce Thomson to do and omit to do acts contrary to his lawful duties.

40.    The Town has suffered and continues to suffer great damage as a direct and proximate result of Sause's violation of G.L. c.268A, §3(a).

41.    For violations of the Conflict of Interest Law, the Town may recover up to twice the amount of the Town's damages.  See G.L. c.268A, §21.

WHEREFORE, the Town requests that this Court enter judgment against Sause in favor of the Town in an amount equal to double the Town's actual damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

## COUNT IV
## (Violation of G.L. c.268A, §17(b))

42.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-41 of its Crossclaim.

43.    The Conflict of Interest Law, G.L. c.268A, provides that "[n]o person shall knowingly . . . directly or indirectly give, promise or offer [compensation to a municipal employee in relation to any particular matter in which the town has a direct and substantial interest.]"  See G.L. c.268A, § 17(b).

44.    Sause violated G.L. c.268A, § 17(b), by giving money and paying compensation to Thomson (1) knowingly and in relation to the operation of the Sewer Plant; (2) with the intent to influence Thomson's official acts; (3) with the intent to influence Thomson to commit, aid in committing, collude in and allow fraud; and (4) with the intent to induce Thomson to do and omit to do acts contrary to his lawful duties.

45.    The Town has suffered and continues to suffer great damage as a direct and proximate result of Sause's violation of G.L. c.268A, §17(b).

46.    For violations of the Conflict of Interest Law, the Town may recover up to twice the amount of the Town's damages.  See G.L. c.268A, §21.

WHEREFORE, the Town requests that this Court enter judgment against Sause in favor of the Town in an amount equal to double the Town's actual damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

COUNT V
(Violation of G.L. c.30B)

47. The Town restates and incorporates by reference the allegations set forth in paragraphs 1-46 of its Crossclaim.

48. The Uniform Procurement Act, G.L. c.30B, prohibits any person from conspiring to cause a contract to be solicited and awarded in violation thereof. See G.L. c.30B, § 17(b).

49. Sause violated the Uniform Procurement Act by conspiring to cause a contract to be solicited and awarded in violation thereof.

50. The Town has suffered and continues to suffer great damage as a direct and proximate result of PSG's violation of G.L. c.30B.

51. "A person who causes or conspires with another to cause a contract to be solicited or awarded in violation of [the Uniform Procurement Act] shall forfeit and pay to the appropriate governmental body a sum of not more than two thousand dollars for each violation. In addition, the person shall pay double the amount of damages sustained by the governmental body by reason of the violation, together with the costs of any action." See G.L. c.30B, §17(c).

52. As a result of Sause's violation of the Uniform Procurement Act, the Town did not receive the lowest price for the work.

WHEREFORE, the Town requests that this Court enter judgment against Sause in favor of the Town in an amount equal to two thousand dollars for each violation of G.L. c.30B and double the Town's actual damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

## COUNT VI
### (Civil Conspiracy)

53.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-52 of its Crossclaim.

54.    Sause conspired with, acted in concert with, and gave assistance and encouragement to Thomson to defraud the Town.

55.    At all relevant times hereto, Sause knew that his fraudulent conduct constituted a breach of a duty owed by Sause and PSG to the Town.

56.    The Town has suffered and continues to suffer great damage as a direct and proximate result of Sause's civil conspiracy.

WHEREFORE, the Town requests that this Court enter judgment against Sause in favor of the Town in an amount equal to all of the Town's damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

## COUNT VII
### (Negligent Misrepresentation)

57.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-56 of its Crossclaim.

58.    In the course of performing his services for PSG, Sause supplied false information to the Town in relation to the Contract and the management, operation and maintenance of the Sewer Plant.

59.    The Town justifiably relied upon this false information supplied by Sause.

60.    Sause failed to exercise reasonable care or competence in obtaining or communicating said information to the Town.

61.    As a result of the Town's justifiable reliance on the false information supplied by Sause, the Town sustained significant pecuniary loss.

WHEREFORE, the Town requests that this Court enter judgment against Sause in favor of the Town in an amount equal to all of the Town's damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

COUNT VIII<br>(Conversion)

62.    The Town restates and incorporates by reference the allegations set forth in paragraphs 1-61 of its Counterclaim.

63.    Sause converted public funds.

64.    To date, Sause has failed and refused to return to the Town the converted public funds.

65.    The Town has suffered and continues to suffer great damage as a direct and proximate result of Sause's conversion.

WHEREFORE, the Town requests that this Court enter judgment against Sause in favor of the Town in an amount equal to all of the Town's damages, together with attorneys' fees, costs and such other relief as the Court deems just and proper.

TOWN OF ROCKLAND

By its attorney,

Richard Bowen (BBO# 552814)
Richard T. Holland (BBO# 632661)
Kopelman and Paige, P.C.
 Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

225404v3/ROCKSEW/0001

32