UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
PROFESSIONAL SERVICES               )
GROUP, INC.,                        )
                                    )
            Plaintiff,              )
                                    )
      v.                            )
                                    )
TOWN OF ROCKLAND, ROCKLAND          )
SEWER COMMISSION, GREGORY           )
THOMSON and MICHAEL SAUSE,          )
                                    )
            Defendants.             )
_____)
                                    )
TOWN OF ROCKLAND, ROCKLAND          )
SEWER COMMISSION,                   )
                                    )
            Plaintiffs-in-Counterclaim )   Civil No. 04-11131-PBS
            and Crossclaim          )
                                    )
      v.                            )
                                    )
PROFESSIONAL SERVICES               )
GROUP, INC.,                        )
                                    )
            Defendant-in-Counterclaim, )
                                    )
and                                 )
                                    )
MICHAEL SAUSE,                      )
                                    )
            Crossclaim Defendant    )
_____)

**PLAINTIFF PROFESSIONAL SERVICE GROUP, INC.'S OPPOSITION TO
<u>DEFENDANT TOWN OF ROCKLAND'S MOTION TO COMPEL DISCOVERY</u>**

Plaintiff Professional Services Group, Inc. ("PSG") opposes the motion by Defendant

Town of Rockland ("Rockland") to compel the production of documents from PSG. Rockland's

requests are overbroad and not reasonably tailored to lead to admissible evidence relating to any claim or counterclaim in this action, among other objections. This is a case about whether Rockland properly terminated a contract for PSG to operate its wastewater treatment plant and whether PSG is liable for the conduct of two former rogue employees of Rockland and PSG who allegedly violated state procurement and conflict of interest laws. Rockland's requests far exceed any reasonable scope of discovery. As one example, Rockland seeks all documents relating to "the work performed" by the PSG employee even though that employee was involved in 20 to 25 different projects which are in no way implicated in this litigation. Rockland's other requests are similarly objectionable or moot, and the Court should deny Rockland's motion to compel in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

PSG is the former operator of Rockland's wastewater treatment plant (the "Sewer Plant"). PSG's predecessor began operating the Sewer Plant in 1982 pursuant to a management contract that was rebid on several occasions. This case involves the rebidding process that took place in 1997. A number of wastewater treatment companies considered bidding on the contract that year but ultimately did not, either because they lacked the requisite experience, insisted on bidding on both water and wastewater treatment services (which was impossible because the Sewer Commission did not provide water services), or, as one potential bidder explained, because of a "heavier than normal bidding schedule in the New England area." PSG, the incumbent operator, was the only bidder, and in 1998 – after PSG's bid was negotiated down to a lower amount – the Sewer Commission and PSG entered into a new ten-year management contract (the "1998 Contract").

PSG was compensated under the 1998 Contract by an annual fee. PSG's profit was the annual fee less PSG's costs, although for certain categories of services amounts budgeted but unexpended were to be rebated to Rockland.

By all objective accounts, the Sewer Plant was well-managed by PSG, compiling an excellent safety and compliance record. However, in 2003 Rockland and PSG discovered that since late 1997 two of their employees – Gregory Thomson ("Thomson"), the Superintendent of the Rockland Sewer Commission, and Michael Sause ("Sause"), an area vice president of PSG – had been stealing money (totaling approximately $360,000) from the rebate accounts for their personal use. PSG fully cooperated with Rockland in investigating this scheme and in prosecuting Thomson and Sause for larceny. Thomson – Rockland's former employee – was sentenced to prison, while Sause – PSG's former employee – received probation.

In 2004 Rockland terminated the 1998 Contract with four years left on its term, despite PSG's full cooperation in prosecuting Thomson and Sause and the written acknowledgement of the Chairman of the Sewer Commission that "in no way did the actions of our two former employees impugn the integrity of your company's management of our wastewater treatment operations. Since 1982, your company has performed stellar operations …." PSG commenced this litigation, alleging breach of contract against Rockland and the Rockland Sewer Commission. Rockland counterclaimed, alleging violations of the state procurement law, conflict of interest laws and breach of contract, but only with regard to the 1998 Contract. Rockland does not challenge any of the previous management contracts in this litigation.

Rockland served its first and only set of document requests on PSG in October 2005. In December 2005, PSG responded to Rockland's document requests and produced documents. To date, PSG has produced over 1,800 pages of material to Rockland, which does not include the

documents PSG previously made available to Rockland's forensic auditor during its investigation of Thomson and Sause's fraud in 2003.

## ARGUMENT

Rockland has moved to compel PSG to produce certain groups of documents requested in Town of Rockland's First Request for Production of Documents to Plaintiff Professional Services Group, Inc. Prior to the parties' Local Rule 7.1(A)(2) and 37.1(B) conference, Rockland did not identify in writing any disputed responses to Rockland's document requests, but counsel for PSG and Rockland telephonically discussed Request Nos. 9, 15, 17, 18, 19, 25, 26, 27, 29, 30, 31, 34, 39, 59, 60 and 61. Of these requests, Rockland has moved to compel only with regard to Request Nos. 17, 19, 25, 26, 27, 29, 31, 34, 39, 59 and 60. The remaining eight requests in Rockland's motion – Nos. 12, 20, 24, 28, 33, 40, 41 and 42 – were not discussed by counsel, and thus for these requests Rockland has not made a sufficient effort to secure disclosure without court action as required by the Federal Rules of Civil Procedure and the Local Rules.

Moreover, all of the document requests identified in Rockland's motion to compel are objectionable or rendered moot for the reasons discussed below.

**Group A – Documents Relating to Thomson (Request Nos. 12, 19-20)**

Request Nos. 12 and 19-20 seek all documents and communications referring "directly or indirectly" to Thomson in "any way," without any limitation on the subject matter or time frame of those documents and communications. Rockland has made no effort to tailor these requests to subjects and time frames that relate to the claims and counterclaims in this case. Thomson was involved with the Sewer Commission for ten years, first as a Commission member and then as its Superintendent. For this reason, a significant amount of material responsive to the requests in

4

Group A has no conceivable relationship to any of the issues in this litigation. See also Multi-Core, Inc. v. Southern Water Treatment Co., 139 F.R.D. 262, 264 n.2 (D. Mass. 1991) (relevant information is that which "is or may become an issue in the litigation"). Moreover, PSG has no way to know what documents might refer "indirectly" to Thomson.

PSG always has been willing to produce documents that are properly designated and that bear a reasonable relationship to the issues being litigated by the parties in this case. For instance, PSG produced documents responsive to Request No. 11 (documents referring to the candidacy and hiring of Thomson for the Rockland Sewer Commission superintendent) and Request Nos. 13 and 14 (documents referring to check requests by Thomson). Rockland could have served other document requests on PSG that were similarly tailored to obtain information related to the claims and counterclaims in this case. Instead, Rockland seeks to sweep up *all* documents relating to Thomson regardless of their relevance or potential relevance – a classic fishing expedition not permitted by the Federal Rules of Civil Procedure. "Discovery is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." Lituma v. United States, 2005 WL 1705088, at *2 (S.D.N.Y. July 18, 2005). This Court should not excuse Rockland from its responsibility to conduct reasonably tailored discovery by compelling PSG to produce every single scrap of paper that mentions or alludes to Thomson in some way, no matter how unconnected to this case.

For all of these reasons, among other objections stated in Plaintiff's Response to Defendant Town of Rockland's First Request for Production of Documents (the "PSG Response"), the requests in Group A are overbroad and seek material that is neither relevant nor

5

reasonably calculated to lead to the discovery of admissible evidence, and thus PSG should not be ordered to produce responsive documents.

**Group B – Documents Relating to Sause (Request Nos. 24-25, 28)**

Request Nos. 24-25 and 28 seek all documents referring to Sause or reflecting the "work performed" by him. As with the requests in Group A, Rockland has made no effort to tailor these requests to the claims and counterclaims in this litigation. Indeed, it would be impossible to determine what documents might reflect the "work performed" by Sause.

PSG always has been willing to produce documents regarding Sause in response to properly drafted requests, and Rockland was perfectly capable of drafting such requests. For instance, PSG produced documents in response to Rockland's requests for documents involving check requests by Sause (Request Nos. 13 and 14). As with the requests in Group A, however, Rockland should not be permitted to conduct broad sweeps for every document related to Sause, no matter how remote their connection to the issues in this case, as a substitute for proper discovery.

The requests in Group B are particularly objectionable because Sause's duties were never limited solely to the Sewer Plant. As a PSG area manager, Sause was responsible for approximately nine different projects around New England, of which the Sewer Plant was only one. When he became an area vice president for PSG's Northeast Region, his oversight duties expanded to approximately 20 to 25 projects. Thus, in order to comply with the requests in Groups B, PSG would have to produce a massive amount of material that had no conceivable connection to the Sewer Plant or the issues in this case.

Furthermore, it is undisputed that on or about September 4, 1999, Sause left his position as area vice president for the Northeast Region (the region that included the Sewer Plant) and

6

became area vice president for the Mid-Coast Region. His involvement with the Sewer Plant ended after that date. Thus, all documents responsive to the requests in Group B that were generated after August 1999 have no relevance to any of the issues in this case.

For all of these reasons, among other objections stated in the PSG Response, the requests in Group B are overbroad and seek material that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and thus PSG should not be ordered to produce responsive documents.

**Group C – Communications Involving Sause (Request Nos. 29, 31)**

Request Nos. 29 and 31 seek all communications involving Sause "relating to" the Sewer Plant or "describing" communications with Sause that "refer in any way" to the Sewer Plant. As with the requests in Group A and B, Rockland has made no effort to tailor these requests to subjects that relate to the claims and counterclaims in this case. Indeed, these requests are overbroad on their face. "Perhaps no phrase causes such havoc in legislative drafting as the use of the two words 'relating to.' The reason is simple-as all life, like law is a seamless web, employment of the phrase 'relating to' is essentially meaningless." Andrews-Clarke v. Travelers Ins. Co., 984 F. Supp. 49, 56 n.30 (D. Mass. 1997) (quoting Doricent v. American Airlines, Inc., 1993 WL 437670, at *7 (D. Mass. Oct. 19, 1993)). "For this reason, courts have long recognized that inclusion of this term in a request for production of documents pursuant to Fed. R. Civ. P. 34 at once renders the request void as overbroad." Id. (citing Commonwealth of Massachusetts Dep't of Public Welfare v. United States Dep't of Health & Human Servs., 727 F. Supp. 35, 26 n.2 (D. Mass. 1989)).

For all of these reasons, among other objections stated in the PSG Response, the requests in Group C are overbroad and seek material that is neither relevant nor reasonably calculated to

7

lead to the discovery of admissible evidence, and thus PSG should not be ordered to produce responsive documents.

**Group D – Documents Relating to Sause's Credit Card Charges (Request Nos. 26-27, 33)**

Request Nos. 26-27 seek account statements for Sause's American Express or other charge or credit cards and communications "concerning" such cards, while Request No. 33 seeks policies involving the use of corporate charge or credit cards.

The materials sought in Request Nos. 26-27 bear no connection whatsoever to the claims and counterclaims in this case. There is no allegation in Rockland's counterclaim that Sause improperly "wined and dined" Thomson or other Rockland officials, but only that Sause and Thomson had a scheme to siphon off money from Rockland's rebate accounts. There has been no suggestion in this litigation that Sause was using a charge or credit card to violate the state conflict of interest laws other than Rockland's speculation in its motion to compel discovery. "Discovery is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." Lituma, 2005 WL 1705088, at *2.

Even if Rockland had made such an allegation, however, a charge or credit card account statement would show only the date, amount and vendor of the charge and not its purpose, and thus have no value in supporting Rockland's speculation. Moreover, as previously noted, during most of the 1990's Sause was responsible for many projects in addition to the Sewer Plant, and after August 1999 he had no responsibilities at all for the Sewer Plant. Thus, the vast majority of any credit or charge card purchases by Sause would not have had any connection to Rockland or the Sewer Plant. For all of these reasons, among other objections stated in the PSG Response, these requests are overbroad and seek material that is neither relevant nor reasonably calculated

8

to lead to the discovery of admissible evidence, and thus PSG should not be ordered to produce responsive documents.

Although Requests Nos. 26-27 are objectionable, PSG notes that it has been unable to locate any responsive account statements generated prior to November 2002, nor has it located any responsive communications about charge or credit cards other than what exists in the personnel file for Sause that was produced to Rockland at the beginning of this litigation. Thus, notwithstanding PSG's objections to these requests, PSG has no responsive documents for the time period when Sause was responsible for the Sewer Plant.

With regard to Request No. 33, PSG has no responsive documents.

**Group E – Documents Relating to Profits (Request Nos. 39-41)**

Request Nos. 39-41 seeks documents relating to PSG's profits resulting from its operation of the Sewer Plant. Rockland alleges that it needs this information because it is claiming "economic advantage" damages – i.e., disgorgement of PSG's profit – under Chapter 268A. Rockland concedes that its economic advantage damages are limited to PSG's profits under the 1998 Contract (i.e., the period from March 1998 to April 2004). See Town of Rockland's Memorandum in Support of Motion to Compel Production of Documents From Professional Services Group, Inc. ("Rockland Memorandum") at 11.

There is no mystery to PSG's profit under the 1998 Contract. PSG received an annual fee to operate the Sewer Plant, and its profit represented whatever part of that fee remained after PSG's costs and rebates to Rockland. In Request No. 58 – a request that is not at issue in Rockland's motion to compel – Rockland requested all documents concerning the accounts holding Rockland's funds. Pursuant to this request, PSG has produced reconciliation documents that itemize each actual expenditure in connection with the 1998 Contract. These documents

provide Rockland with all the information it needs to verify PSG's actual profit under the 1998 Contract.

The requests in Group E seek much more information than PSG's actual profit under the 1998 Contract. Rockland demands all documents mentioning profit, revenue and earnings in any way – including forecasted or projected numbers as well as actual numbers – and at any time – including profit, revenue and earnings under irrelevant management contracts that were in effect prior to the 1998 Contract. PSG's profit, revenue and earnings prior to March 1998 have no relevance to Rockland's economic advantage damages claim, as Rockland itself admits. Moreover, profit, revenue and earnings "forecasts" or "projections" have no relevance to the actual profit earned by PSG under the 1998 Contract, which Rockland acknowledges is the only measure of economic advantage damages.

For all of these reasons, among other objections stated in the PSG Response, the requests in Group E are overbroad and seek material that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and thus PSG should not be ordered to produce responsive documents.

**Group F – Documents Used to Prepare Cost Proposal (Request No. 42)**

Request No. 42 seeks documents used, consulted or relied upon to prepare all of PSG's cost proposals that were submitted to Rockland from 1994 to 1997. In this litigation, the only cost proposal at issue is the one that PSG submitted in October 1997. Any materials used to prepared cost proposals prior to that date have no relevance to any of the parties' claims and counterclaims, and thus the request is overbroad and seeks material that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

With regard to PSG's 1997 cost proposal, other than a cover letter and bid bond that document consists of nothing more than a single sheet of paper identifying estimated costs the following contract items: (1) direct labor; (2) other labor costs; (3) utilities; (4) chemicals; (5) preventive maintenance; (6) sludge dewatering; (7) new pump station electricity allowance, (8) equipment replacement allowance; (9) industrial pretreatment program; (10) miscellaneous; (11) performance bond; (12) overhead; and (13) profit. PSG was the operator of the Sewer Plant at the time it prepared this cost proposal for Rockland, and thus it had actual budget numbers to use in preparing these estimates. PSG is not aware of any documents that were used to prepare the 1997 cost proposal other than documents that have already been produced to Rockland, either in this litigation or in connection with Rockland's forensic audit in 2003.

**Group G – Steven Kruger Documents (Request No. 17)**

Request No. 17 seeks documents generated by Steven Kruger – Sause's supervisor – "concerning" Thomson, Sause, or the "contract or business relationship" between Rockland and PSG, Metcalf & Eddy, or U.S. Filter from 1995 to the present.

As with the requests in Groups A, B and C, Rockland makes no attempt to tailor this request to any of the issues raised in this litigation. The request's use of the term "concerning" also renders it overbroad on its face. See Andrews-Clarke, 984 F. Supp. at 56 n.30. Moreover, as previously noted, until August 1999 Sause was responsible for many projects in addition to the Sewer Plant, and after August 1999 he had no responsibilities for the Sewer Plant. If PSG were to comply with this request, it would have to produce a significant volume of material that had no conceivable relevance to the Sewer Plant, much less to any of the issues raised in this litigation. For all of these reasons, among other objections stated in the PSG Response, this request is overbroad and seeks material that is neither relevant nor reasonably calculated to lead

11

to the discovery of admissible evidence, and thus PSG should not be ordered to produce responsive documents.

**Group H – Organizational Charts (Request No. 34)**

Request No. 34 seeks all organizational charts from 1994 to 2004 for PSG, Metcalf & Eddy and U.S. Filter. Rockland now asserts that it requires this information in order to establish the corporate relationships between these three entities, although this was not the reason Rockland provided during the parties' Local Rule 7.1(A)(2) and 37.1(B) conference.[1] PSG continues to object to this request on the grounds that it is overbroad and seeks material that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, but notwithstanding these objections, PSG will produce documents demonstrating the relationships between PSG, Metcalf & Eddy and U.S. Filter to the extent they exist and are in the possession of PSG.

**Group I – Unrelated Proposals (Request No. 59)**

Request No. 59 seeks all proposals submitted by PSG or U.S. Filter to operate wastewater treatment plants nationwide since 1994. PSG and U.S. Filter have submitted hundreds of such proposals during the twelve years covered by this request, and those proposals are located in files scattered around the country. Currently PSG has around 300 contracts, almost all of which were obtained or renewed since 1994. This figure does not include proposals that were unsuccessful. Given the massive effort it would take PSG to track down and assemble hundreds of proposals, Rockland's request is unduly burdensome.

Moreover, the requested information has no conceivable relevance to this litigation. Rockland's request appears to incorrectly assume that PSG's proposals follow a standard format

---

[1] During that conference, Rockland's counsel stated that the information was needed to identify potential witnesses.

12

from which the 1997 proposal at issue in this litigation somehow deviated. That is not the case. Each proposal was uniquely tailored to the needs of the wastewater treatment plant owner to which it was submitted. Typically the proposals were submitted in response to a request for proposals ("RFP") issued by the plant owner, and therefore had to be tailored to the specific terms of the RFP to which it responded. Comparing any two PSG proposals would be like comparing apples and oranges. Moreover, proposals frequently contain no terms or provisions that can be compared to other proposals. For instance, as previously noted, PSG's 1997 proposal for the Sewer Plant essentially is a single sheet of paper identifying estimated costs for thirteen separate contract items, including profit. Nothing could be learned by comparing the numbers in this proposal to those in another PSG proposal that responded to an entirely different RFP for an entirely different wastewater treatment plant.[2]

Even if Rockland had a legitimate need to review hundreds of uniquely drafted PSG proposals – and PSG emphatically does not concede such a point – the proposals would be useless unless Rockland also could compare each proposal to the RFP to which it responded to determine what exactly was required under the RFP. Rockland cannot possibly subpoena hundreds of RFPs from wastewater treatment plant owners around the country at this point in the litigation.

For all of these reasons, among other objections stated in the PSG Response, this request is overbroad and seeks material that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and thus PSG should not be ordered to produce responsive documents.

---

[2] PSG notes that a more relevant comparison is between the 1997 RFP and the RFP issued by the Rockland Sewer Commission in 2004 *after* PSG was removed as the Sewer Plant's operator. Significantly, the 2004 RFP contained some of the same provisions that Rockland now claims were used in the 1997 RFP to favor of PSG, undermining Rockland's claim of bid-rigging.

**Group J – Unrelated Investigations (Request No. 60)**

Request No. 60 seeks documents "concerning any investigations concerning contracts, procurements or bidding" by various state and federal agencies, regardless of whether Sause was involved in those investigations and regardless of whether the investigations led to any finding of wrongdoing.  In support of this request, Rockland argues that PSG's claim that Sause was a rogue employee is "implausible if PSG was engaged in other similar illegal or unethical bidding practices" and that it would be "nearly impossible" for PSG not to have known of Sause's conduct.  Rockland Memorandum at 16-17.

It strains credulity for Rockland to argue that PSG should have known of Sause's alleged conduct in this case based on the alleged conduct of other PSG employees in completely unrelated circumstances, regardless of whether the allegations involving those other employees ultimately were found to be baseless.  An investigation is not a finding of wrongdoing.  Rockland's request appears to be nothing more than an attempt to obtain inadmissible bad act evidence that it hopes to use to unfairly tarnish PSG in this litigation.  See Collens v. City of New York, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("courts should not grant discovery requests based on pure speculations that amount to nothing more than a fishing expedition into actions or past wrongdoing not related to the alleged claims or defenses").

Rockland's request might have some merit if it were limited to instances in which Sause was found to have violated procurement or bidding laws or was personally involved in such violations.  PSG is not aware of any such instances, and thus it has no documents that would be responsive even to such a limited request.

For all of these reasons, among other objections stated in the PSG Response, this request is overbroad and seeks material that is neither relevant nor reasonably calculated to lead to the

discovery of admissible evidence, and thus PSG should not be ordered to produce responsive documents.

## CONCLUSION

For all of the foregoing reasons, Rockland's motion to compel the production of documents should be denied in its entirety.

        Respectfully submitted,

        PROFESSIONAL SERVICES GROUP, INC.,
        By its attorneys,

        /s/David M. Osborne_____
        Maria R. Durant (BBO # 558906)
        David M. Osborne  (BBO # 564840)
        DWYER & COLLORA, LLP
        Federal Reserve Plaza
        600 Atlantic Avenue, 12th Floor
        Boston, MA  02210
        (617) 371-1000

DATED:  May 2, 2006

**CERTIFICATE OF SERVICE**

      I, David M. Osborne, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on May 2, 2006.

                                              /s/David M. Osborne_____
                                              David M. Osborne