**EXHIBIT 2**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROFESSIONAL SERVICES GROUP, INC., <br>     Plaintiff, <br><br> v. <br><br> TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, GREGORY THOMSON and MICHAEL SAUSE, <br>     Defendants <br><br> TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, <br>     Plaintiffs-in-Counterclaim and Crossclaim, <br><br> v. <br><br> PROFESSIONAL SERVICES GROUP, INC., <br>     Defendant-in-Counterclaim, <br><br> and <br><br> MICHAEL SAUSE, <br>     Crossclaim Defendant | Civil No. 04-11131-PBS |

TOWN OF ROCKLAND'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF PROFESSIONAL SERVICES GROUP, INC.

Pursuant to Federal Rule of Civil Procedure 34, the Town of Rockland requests that the plaintiffs Professional Services Group, Inc., produce and permit it to inspect and copy each of the following documents in its possession, custody or control at the offices of Jager Smith P.C., One Financial Center, Boston, MA, 02111, within 30 days of the service of this request.

## DEFINITIONS

1. The term "the Town of Rockland" refers to the defendant/plaintiff-in-counterclaim Town of Rockland, the Rockland Sewer Commission and any other governmental entities of the Town of Rockland, or agents, employees, or attorneys acting on their behalf.

2. Whenever the phrase "documentary materials" is used, it means any original written record or graphic matter, however produced or reproduced, and/or each copy of the original that contains attachments, notes and/or markings not contained in or on the original including, but not limited to, the following whether printed, recorded and/or produced by hand: electronic mail, organizational charts, agreements, communications, correspondence, telegrams, memoranda, summaries and/or records of personal conversations and/or interviews, diaries, graphs, reports, sketches, maps, summaries and/or records of meetings and/or conferences, summaries and/or reports of investigations and/or negotiations, progress reports, opinions, and/or reports of consultants, photographs, motion picture films, brochures, pamphlets, advertisements, video recordings, circulars, press releases, drafts, letters, any marginal comments appearing on any document, sound recordings and/or transcripts thereof, account ledgers, financial records, corporate records, newspapers, magazines and other publications and/or clippings therefrom, estimates, licenses, permits, requisitions, invoices, leases, assignments, microfilm, and computer information (including but not limited to disks or other digitally or electronically stored information, printouts and/or other data together) with any materials required for the reasonable interpretation thereof, in the possession, custody or control of the plaintiff, or its assigns, representatives, agents, servants, employees or attorneys.

3. The term "PSG" refers to the plaintiff Professional Services Group, Inc., its predecessors in interest, and any of its affiliates, parents, officers, directors, employees, agents or representatives, or any attorneys acting on its behalf.

4. The term "US Filter" refers to US Filter Corporation, its predecessors in interest, US Filter Operating Services, Inc., and any parents, subsidiaries, affiliates, officers, directors, employees, agents or representatives, or any attorneys acting on their behalf.

5. The term "Metcalf & Eddy" refers to Metcalf & Eddy Service, Inc., and any parents, subsidiaries, affiliates, officers, directors, employees, agents or representatives, or any attorneys acting on their behalf.

6. The term "Thomson" refers to the defendant Gregory Thomson.

7. The term "Sause" refers to the defendant Michael Sause.

8. The term "plant" refers to the water pollution control facilities of the Town of Rockland.

9. The term "1995 contract" refers to July 25, 1995 Agreement for Operation and Maintenance of the Rockland Water Pollution Control Facilities and any amendments or modifications thereto.

10. The term "1998 contract" refers to the February 24, 1998 Agreement for Operations, Maintenance and Management Services between the Town of Rockland through the Rockland Sewer Commission and Professional Services Group, Inc. and any amendments or modifications thereto, including, but not limited to, the amendment dated August 24, 1998.

## REQUESTS

1. All documentary materials referenced in plaintiff's automatic disclosures or automatic discovery.

2. All contracts, agreements, contract amendments, memoranda of understanding, letter agreements, memoranda of understanding between the Town of Rockland and any of the following dated or generated from July 25, 1994 to March 1, 2004 concerning the operation of the plant:

   a. PSG
   b. Metcalf & Eddy
   c. U.S. Filter.

3. All documentary materials (except those protected by the attorney-client privilege or work-product doctrine) that describe, analyze, comment upon, or assess any contracts, agreements, letter agreements or memoranda of understanding between the plaintiff (or U.S. Filter or Metcalf and Eddy) and the Town of Rockland (or any governmental body of the Town of Rockland) in effect at any time since January 1, 1994.

4. All requests for proposals, and corrections, amendments or modifications to requests for proposals, of the Town of Rockland for work or services relating to the operation of the plant dated from January 1, 1993 through January 1, 2004.

5. All proposals, or submissions, by PSG, U.S. filter or Metcalf & Eddy to perform services to the Town of Rockland at any time from January 1, 1994 to the present relating to the operation of the plant.

6. All documentary materials, including but not limited to drafts, handwritten or typed notes, etc., containing any drafts, draft inserts, comments on drafts, or inserts, for any submission in response to a Request for Proposal (including the pricing proposal as well as any technical proposal) submitted to the Town of Rockland, or any governmental entity of the Town of Rockland, since January 1, 1996 in connection with the operation of the plant.

7. All documentary materials generated from January 1, 1995 to July 26, 1997 referring to, describing, commenting upon, analyzing, or concerning a potential or actual Request for Proposal by the Town of Rockland for services relating to the operation of the plant.

8. All documentary materials, including but not limited to, correspondence, drafts of contracts and proposals, emails, etc., constituting, reflecting, describing, embodying, or referring to any negotiations between PSG or U.S. Filter and the Town of Rockland concerning any contracts or agreements between PSG or US Filter and the Town of Rockland (or any proposed contracts or agreements) at any time from January 1, 1993 to June 1, 2004.

9. All documentary materials generated from January 1, 1995 to the present (except those protected by the attorney-client privilege or work-product doctrine) commenting upon, analyzing, assessing, reporting on, summarizing, or referring to prospective or possible competing bidders in connection with any bidding process to operate the plant.

10. All documentary materials generated from January 1, 1995 to the present (except those protected by the attorney-client privilege or work-product doctrine) commenting upon, analyzing, assessing, reporting on, summarizing, or referring to (a) any procurement process of the Town of Rockland relating to the plant or (2) any Request for Proposal or public bidding or procurement process of the Town of Rockland relating to the plant.

11. All documentary materials, including but not limited to, emails, correspondence, reports, hand-written or typed notes, generated from January 1, 1995 to the July 1, 1999 commenting upon, analyzing, assessing, reporting on, summarizing, discussing, or referring to the selection process or hiring process for Rockland Sewer Superintendent, or the candidacy of, or hiring of, Thomson for the position of Rockland Sewer Superintendent.

12. All documentary materials referring to, describing, commenting upon, reporting on, or discussing Thomson in any way.

13. All documentary materials constituting, reflecting, embodying, analyzing, discussing, commenting upon, or referring to any check request submitted by Thomson, Sause, Aram Varjabedian or anyone else for funds or for a check to be sent to either of the following from January 1, 1997 to June 1, 2004: (a) Thomson; (b) Town of Rockland (or Rockland Sewer Commission).

14. All documentary materials constituting, reflecting, embodying, analyzing, discussing, commenting upon, or referring to any check request submitted by Thomson, Sause, Aram Varjabedian or anyone else for funds or a check to be sent in the name of Thomson, the Town of Rockland, or the Rockland Sewer Commission from January 1, 1996 to June 1, 2004.

15. All documentary materials reflecting, containing, describing, or referring to the process or procedures at PSG or US Filter for handling or approving check requests submitted to US Filter in connection with contracts to operate municipal water pollution control facilities or municipal sewage treatment plants during from 1993 through 2003.

16. All documentary materials reflecting, containing, describing, or referring to the process or procedures at PSG or US Filter for handling or approving check requests submitted to US Filter and/or PSG in connection with contracts to operate the plant.

17. All documentary materials, including, but not limited to, memoranda, email, handwritten or typed notes generated by Steven Kruger since January 1, 1995 concerning any of the following:

    a. Thomson
    b. Sause
    c. PSG's, Metcalf & Eddy's and/or U. S. Filter's contract or business relationship with the Town of Rockland.

18. All professional development plans generated by Steven Kruger or Michael Sause at any time from January 1, 1993 through July 1, 2004.

19. All documentary materials (except for materials protected by the attorney-client privilege or work-product doctrine) including, but not limited to, emails, hand written or typed notes, memoranda, correspondence, reports, etc., referring directly or indirectly to Gregory Thomson.

20. All communications between Thomson and any of the following at any time:

    a. PSG
    b. Metcalf & Eddy
    c. U.S. Filter
    d. Sause

21. Any lease concerning a belt filter press owned by PSG at any time and used at the plant.

22. All communications concerning a belt filter press used or owned by PSG at any time at the plant from January 1, 1994 to 2004.

23. All documentary materials, including all emails, reports, memoranda, correspondence, referring to, relating to or concerning a belt filter press used in the operation of the plant at any time from January 1, 1994 to 2004.

24. All documentary materials (except for materials protected by the attorney-client privilege and work-product doctrine) reflecting, describing, analyzing, commenting upon any work performed by Michael Sause at any time for Metcalf & Eddy Services, Inc., Professional Services Group, Inc. or U.S. Filter.

25. All documentary materials (except for materials protected by the attorney-client privilege and work-product doctrine) reflecting, describing, analyzing, commenting upon any work performed by Michael Sause at any time.

JS PCDocs #53170\1                              5

26. The account statements of any and all charge cards or credit cards used by Sause, or submitted by Sause, including but not limited the account statements of any American Express card used by Sause.

27. All communications between Sause and PSG, US Filter or Metcalf & Eddy concerning any charge cards or credit cards used by him, including any American Express card since January 1, 1994.

28. All documentary materials referring to Michael Sause generated or dated since January 1, 1997.

29. All written communications between Michael Sause (or anyone acting on Michael Sause's behalf) and any of the following since January 1, 1994 concerning, referring to or relating to the plant:

    a. Metcalf & Eddy Services, Inc;
    b. PSG
    c. U.S. Filter.

30. All photographs of Sause or Thomson or Steven Kruger at any time.

31. All documentary materials, including but not limited to emails, notes, memoranda, reports, telephone messages, etc., (except for materials protected by the attorney-client privilege or work-product doctrine) describing, evidencing, referring to communications with or from Sause (or anyone acting on Sause's behalf) from January 1, 1993 until July 1, 2004 that refer in any way to the Town of Rockland or to the plant.

32. All documentary materials, including but not limited to, manuals, personnel handbooks, reports, codes, etc., describing or containing any policies of Metcalf & Eddy, PSG or US Filter concerning ethics codes, expenditure of corporate funds on prospective or actual customers, interactions with prospective or actual customers, expenditure of funds for client or customer relations and sales purposes authored, in effect or implemented at any time from January 1, 1993 to July 1, 2004.

33. All documentary materials, including but not limited to, manuals, personnel handbooks, reports, codes, etc., describing or containing any policies of Metcalf & Eddy, PSG or US Filter concerning the use of corporate credit or charge cards that were authored, in effect or implemented at any time from January 1, 1993 to July 1, 2004.

34. Organizational charts of the following at all times from January 1, 1994 through June 1, 2004:

    a. Metcalf & Eddy Services, Inc;
    b. PSG
    c. U.S. Filter

35. All check requests, requests for payment, or documents seeking payment signed by Gregory Thomson (or appeared to be signed by a person named Gregory Thomson), at any time.

36. All documentary materials depicting, describing, embodying or constituting any action taken by US Filter or PSG in response to check requests, requests for payment, or documents seeking payment that were signed, or appeared to be signed, by Gregory Thomson.

37. All documentary materials (except for documents protected by the attorney-client privilege or work-product doctrine) describing, or recording any payments made to or received by Metcalf & Eddy, PSG, or U.S. Filter pursuant to the 1998 Contract, and the dates of such payments..

38. All documentary materials (except for documents protected by the attorney-client privilege or work-product doctrine) reflecting, describing, or recording the total or aggregate payments made to or received by Metcalf & Eddy, PSG, and/or U.S. Filter pursuant to the 1998 Contract.

39. All documentary materials reports, pro formas, spread sheets, budgets, etc., describing, calculating, analyzing, assessing, commenting upon, or referring to any revenues, earnings and or profit earned, or projected to be earned, by Metcalf & Eddy, PSG, and/or U.S. Filter as a result of the 1994 or 1998 Contract.

40. All documentary materials containing or referring to any projections or forecasts of revenue, earnings, and/or profits from the operation of the plant at any time.

41. All documentary materials including but not limited to, emails, reports, memoranda, emails, spread sheets, etc., analyzing, commenting upon, projecting, or concerning the profitability of any actual or proposed contract to operate the plant.

42. All documentary materials used, consulted upon, or relied upon to prepare any draft or actual price or cost proposal submitted by or on behalf of PSG to the town of Rockland in at any time from 1994 to 1997, including the 1997 price or cost proposal, and including all documentary materials used to calculate, formulate, prepare, analyze or draft any portion of such price proposal (s).

43. All documentary materials generated by PSG, U.S. Filter or Metcalf & Eddy since January 1, 1996 describing, commenting upon, analyzing, projecting or discussing the profit margin or profitability of operating a municipal water pollution control facility or municipal wastewater treatment plant or sewage treatment plant.

44. All documentary materials used, consulted upon, or relied upon to prepare any agreement with the Town of Rockland affecting or concerning compensation to PSG, U.S. Filter or Metcalf & Eddy to operate the plant at any time from 1994 to 2004.

45. All documentary materials referring to, constituting, embodying or describing negotiations between the Town of Rockland and any of the following concerning compensation to PSG or U.S. Filter under the 1994 or 1998 contract and any modifications to such contract:

   a. Metcalf & Eddy Services, Inc;
   b. PSG
   c. U.S. Filter

46. All documentary materials (except for materials protected by the attorney work-product doctrine or attorney-client privilege) referring to, describing, containing or embodying any contract negotiations (or amendments, modifications, to contracts) or any other negotiations with the Town of Rockland (or any governmental entity of the Town of Rockland) generated from January 1, 1997 through June 1, 1994,

47. All documentary materials, including, but not limited to, emails, reports, memoranda, drawings, photographs, correspondence, spreadsheets, videos or other digital or electronic recordings, referring to, evidencing, describing, containing or relating to, any work or services performed by PSG or U.S. Filter for the Town of Rockland.

48. All documentary materials, including, but not limited to, hand written or typed notes, memoranda, emails, correspondence, referring to, evidencing, describing or concerning, negotiations at any time between PSG, Metcalf & Eddy or U.S. Filter and the Town of Rockland (or any entity of the Town of Rockland) concerning the operation of the plant..

49. All communications, and all documentary materials containing, referring to, or describing or embodying communications between PSG or US Filter and Thomson from January 1, 1997 to January 1, 2005.

50. All communications between the Town of Rockland and any of the following concerning the Request for Proposal that resulted in the 1994 Contract:

   a. PSG
   b. Metcalf & Eddy
   c. US Filter.

51. All documentary materials referring to, describing, commenting upon, analyzing, or discussion or relating to the Town of Rockland's requests for proposals that resulted in the 1994 contract and/or the 1998 contract.

52. All inventories or other documentary materials describing any equipment, software, vehicles or other items other than person items known by PSG or US Filter to have been removed from the plant or the plant's premises (and not returned) in 2004 up to the late date that PSG operated the plant.

 53. All documentary materials referring to, describing, discussing, analyzing or concerning PSG's or US Filter's plans, directions or instructions to cease operation of the plant in 2004, to leave the plant in 2004 and/or to close its operations at the plant in 2004.

54. All documentary materials, including but not limited to emails, memoranda, reports, etc., describing, any actions taken by PSG or US Filter in ceasing operations at the plant, leaving the plant and/or closing its operations at the plant in 2004.

55. All documents identifying, describing, documents identifying the computerized programs for maintenance, process control, cost accounting and laboratory Quality assurance/Quality control developed/and or supplied by you under Section 2.4 of the 1998 contract or otherwise.

56. All inventories provided or generated under Section 2.5 of the 1998 Contract, or otherwise provided to the Town of Rockland by PSG or US Filter.

57. All documentary materials, including but not limited to, reports, memoranda, correspondence, emails, etc., describing, commenting upon, analyzing, assessing, criticizing or discussing the staffing of the plant at any time from January 1, 1996 to June 1, 1998, including any minimum staffing or any proposal for minimum staffing requirements.

58. All documentary materials generated by PSG or U.S. Filter (or on their behalf) since January 1, 1994, discussing, referring to, analyzing, recording, reporting on, commenting on, assessing, or referring to the disposition of, maintenance of, or handling of any of the following:

   a. accounts holding funds of the Town of Rockland relating to the 1994 or 1998 contracts;
   b. rebates to the Town of Rockland under the 1994 or 1998 contracts;
   c. funds held or controlled by PSG or U.S. Filter that are funds of the Town of Rockland.

59. Copies of all Proposals submitted by PSG or U.S. Filter to operate municipal or government water pollution control facilities, wastewater treatment plants and sewage treatment plants since January 1, 1994.

60. All documentary materials submitted by PSG or U.S. Filter since January 1, 1994 concerning any investigations concerning contracts, procurements or bidding to the Federal Bureau of Investigation, the United States District Attorney for any district, the office of any county District Attorney, or any state or local governmental investigating agency.

61. All documentary materials submitted by PSG or U.S. Filter to the Massachusetts Office of the Inspector General since January 1, 2003.

TOWN OF ROCKLAND,
By its attorneys,

_____
Joanne D'Alcomo
BBO #544177
Howard P. Blatchford, Jr.
BBO #045580
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500

## CERTIFICATE OF SERVICE

I hereby certify that I forwarded a copy of the foregoing document to all interested parties, by hand directed to: David M. Osborne, Esq., Dwyer & Collora LLP, 600 Atlantic Avenue, 12th Floor, Boston, MA 02210 and Michael Sause, msause@comcast.net.

Date of Service: October 18, 2005

_____
Joanne D'Alcomo