UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PROFESSIONAL SERVICES GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, GREGORY THOMSON and MICHAEL SAUSÉ, <br><br><br> TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, <br><br> Plaintiffs-in-Counterclaim and Crossclaim <br><br> v. <br><br> PROFESSIONAL SERVICES GROUP, INC., <br><br> Defendant-in-Counterclaim, <br><br> and <br><br> MICHAEL SAUSÉ, <br><br> Crossclaim Defendant | Civil No. 04-11131-PBS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
<u>MOTION TO AMEND ANSWER BY ADDING AFFIRMATIVE DEFENSE</u>**

Plaintiff Professional Services Group, Inc. ("PSG") has moved for leave to amend its

answer to the counterclaims of Defendants Town of Rockland ("Rockland") and the Rockland

JS\127498.1

Sewer Commission (the "Sewer Commission") by adding statute of limitations to its affirmative defenses.

A party asserting an affirmative defense must have a belief that the defense is warranted after conducting an inquiry that is reasonable under the circumstances. See Fed. R. Civ. P. 11(b); see also Refuse Fuels, Inc. v. National Union Fire Ins. Co. of Pittsburgh, 139 F.R.D. 576, 578 (D. Mass. 1991) ("When an argument is made that a claim should have been brought at an earlier point in time, it must be borne in mind that any such claims cannot be brought unless the standards of Rule 11, Fed. R. Civ. P., are met. There is no question that any assertion of an affirmative defense ... would be subject to the provisions of that rule."). The only way PSG could determine whether a statute of limitations defense was warranted was by conducting discovery through which PSG could learn what Town officials knew and when they knew it. Recent depositions have provided evidence that officials of the Town and the Sewer Commission had notice of at least some of their counterclaims as early as 1997, giving rise to a statute of limitations defense by PSG.

At its core, this case is about the procurement and termination of a contract to operate the Rockland Wastewater Treatment Facility (the "1998 Contract"). PSG alleges that the Defendants breached the 1998 Contract by terminating it six years into its ten-year term. The Defendants allege in their counterclaim that the procurement of the 1998 Contract violated Chapter 30B (the Uniform Procurement Act) because Michael Sause ("Mr. Sause"), a former PSG manager, wrote the Request for Proposals ("RFP") by which the 1998 Contract was procured and because the 1998 Contract was procured without the participation of the Town's Chief Procurement Officer, Kevin Donovan ("Mr. Donovan"). See Defendants Town of Rockland's and Rockland Sewer Commission's Answer, Counterclaim, and Crossclaim Against

Michael Sause, ¶¶ 20, 21. As a result, the Defendants argue, the 1998 Contract was invalid by operation of law. See Mass. Gen. L. ch. 30B, § 17.

At least three depositions conducted in the last three weeks have supplied the first real evidence available to PSG that officials of the Town and the Sewer Commission were aware of their alleged grounds to declare the 1998 Contract invalid at or around the time it was executed. First, on June 2, 2006, Mr. Donovan testified at his deposition that as Chief Procurement Officer he understood his duty under Chapter 30B was to make any contract award resulting from the RFP process. He also testified that he was aware in 1997 that the Sewer Commission had issued an RFP without his involvement and that he became aware that PSG and the Sewer Commission did in fact enter into the 1998 Contract as a result of the RFP process. Specifically Mr. Donovan recalled that he was aware of the 1998 Contact because Town Meeting approved its ten-year term.

Mr. Donovan also served as the Town Administrator, reporting to the Board of Selectmen. If the Defendants are correct that Mr. Donovan's lack of participation in the procurement of the 1998 Contract rendered that agreement invalid, the Town had notice (through its agent, Mr. Donovan) of that fact – and therefore its Chapter 30B claim – at least six years before July 2004, when the Defendants actually brought their counterclaims in this case.[1] The Town could have declared the 1998 Contract invalid as soon as Mr. Donovan became aware that it had been procured without his involvement, but it failed to do so. Evidence that the Town was

---

[1] For purposes of this motion only, PSG assumes that the applicable statute of limitations period is six years, the same as a breach of contract action. PSG reserves the right to argue at trial that a shorter statute of limitations period applies to the Defendants' 30B claim. See Flynn v. Associated Press, 401 Mass. 776, 782 (1988) (where statutes do not expressly state a limitations period, courts should look to the "'gist of the action' or the essential nature of the plaintiff's claim, because limitations statutes should apply equally to similar facts regardless of the form of [the] proceeding").

aware that Mr. Donovan was not involved in the procurement of the 1998 Contract would support a claim by PSG at trial that the Defendants' 30B claim is time-barred.

Second, Mr. Sause testified on June 13, 2006 that the members of the Sewer Commission were aware that he purportedly was writing the RFP. Evidence that the Sewer Commission's members knew in 1997 that a conflict of interest allegedly existed in the procurement of the 1998 Contract also would support a claim by PSG at trial that the Defendants' 30B claim is time-barred.

Third, Sewer Commission Member William Stewart ("Mr. Stewart") testified at his deposition on June 16, 2006 that he was not aware of any involvement by Mr. Donovan in the procurement of the 1998 Contract and that it was his understanding that the proposal submitted by PSG in response to the RFP was opened in Town Hall by Gregory Thomson ("Mr. Thomson"), the Sewer Commission Superintendent, and not by Mr. Donovan, the Town's Chief Procurement Officer. This evidence, too, would support a claim by PSG at trial that the Defendants' 30B claim is time-barred.

Leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend is appropriate when information obtained during discovery indicates the existence of an affirmative defense. See, e.g., Warner-Lambert Co. v. Teva Pharmaceuticals USA, Inc., 418 F.3d 1326 (2d Cir. 2005) (noting that district court allowed additional affirmative defenses after discovery); Nova Biomedical Corp. v. Mallinckrodt Sensor Systems, Inc., 1997 F. Supp. 187, 189 (D. Mass. 1998) (noting that, after close of fact discovery, court allowed defendant's motion to amend answer by adding affirmative defense).

The Defendants will not be prejudiced if the Court grants leave to add a statute of limitations defense to PSG's answer. The relevant issue in raising a statute of limitations defense

is when the party asserting a claim first received notice of that claim. Here, the witnesses who would tend to support or refute such a defense are current or former Town officials who are actively assisting or at least cooperating in the Town's defense. Mr. Donovan, the Chief Procurement Officer, stated at his deposition that he had voluntarily spoken with the Defendants' counsel prior to the deposition and told her "basically" what he testified to at the deposition. Other officials include current and former members of the Sewer Commission and current and former members of the Board of Selectmen. Even Mr. Thomson, the former Sewer Commission Superintendent, is cooperating with the Defendants in this litigation – despite the fact that he admittedly stole public funds along with Mr. Sause[2] – and has gone so far as to provide an affidavit to help the Defendants convince PSG not to depose him. All the information the Defendants need to refute a statute of limitations defense therefore is available to them. Indeed, it was the Defendants' own counsel who elicited from Mr. Sause at his deposition his claim that the members of the Sewer Commission knew of a conflict of interest in the procurement of the 1998 Contract.

Finally, it bears noting that the issue of when the Town's public officials first knew the 1998 Contract allegedly had been procured in violation of Chapter 30B is relevant to this case regardless of whether PSG raises a statute of limitations defense at trial. PSG alleged as an affirmative defense that the Defendants failed to mitigate their damages. See Professional Services Group, Inc.'s Answer to Counterclaim, Affirmative Defenses and Jury Demand, Fifth Affirmative Defense. If the Defendants had information that the 1998 Contract violated Chapter 30B and still choose to proceed with an allegedly invalid agreement, PSG will be able to prove at trial that the Defendants failed to mitigate their damages and are not entitled to any recovery.

---

[2] Mr. Sause, too, is actively assisting the Defendants by submitting to interviews and producing documents while denying PSG access to that same information, despite the fact that he was named as a cross-claim defendant by the Defendants.

JS\127498.1                                5

Since the evidence that is relevant to PSG's mitigation defense also is relevant to a statute of limitations defense, the Defendants cannot claim to be prejudiced by the proposed amendment.

## CONCLUSION

For all the foregoing reasons, PSG requests that the Court grant leave to PSG to amend its answer to the Defendants' counterclaim by adding a statute of limitations affirmative defense.

Respectfully submitted,

PROFESSIONAL SERVICES GROUP, INC.,
By its attorneys,

/s/David M. Osborne
Maria R. Durant (BBO # 558906)
David M. Osborne  (BBO # 564840)
DWYER & COLLORA, LLP
Federal Reserve Plaza
600 Atlantic Avenue, 12th Floor
Boston, MA  02210
(617) 371-1000

Dated:  June 22, 2006

## CERTIFICATE OF SERVICE

    I, David M. Osborne, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on June 22, 2006.

                                      /s/David M. Osborne
                                      David M. Osborne