# TAB A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROFESSIONAL SERVICES GROUP, INC., <br> Plaintiff, <br><br> v. <br><br> TOWN OF ROCKLAND, et al., <br> Defendants | Civil No. 04-11131-PBS |

### AFFIDAVIT OF MICHAEL SAUSÉ

I, Michael Sausé, do depose and say:

1. I was named as a defendant in this action.

2. After I was sued in this matter, I hired attorney Stephen CampoBasso of Leominster to defend me.

3. In 2004, I became aware that a new attorney, specifically Joanne D'Alcomo of Jager Smith PC, had taken over representation of the Town of Rockland and the Rockland Sewer Commission in this lawsuit.

4. As a result of speaking with my attorney, Stephen CampoBasso, I authorized my attorney, Stephen CampoBasso in the fall of 2004 to enter into an oral agreement on my behalf with Attorney D'Alcomo, as the attorney for the Town of Rockland and the Rockland Sewer Commission, to share information relating to the claims in this lawsuit throughout the course of the lawsuit. As part of that agreement, Attorney D'Alcomo was authorized to communicate with me directly, and I with her, and to share information relating to the claims.

5. An important part of that agreement, as far as I was concerned, was that I would not lose any protections of the attorney-client privilege for communications with my lawyer, Stephen CampoBasso, and his law firm CampoBasso and CampoBasso, and that my attorney's notes and those communications would not lose protection if they were shared with her. Another part of that agreement was that she would return any materials that I or my attorney considered confidential if I or my attorney asked.

6. Part of the agreement with Attorney D'Alcomo was reinforced by a document signed by Stephen CampoBasso, when I first had him share documents. A copy of the document signed by attorney on behalf is attached as Exhibit 1.

7. As a result of that agreement that we reached in the fall of 2004, I authorized my attorney Stephen CampoBasso to have conversations and communications with Attorney D'Alcomo and to work jointly with her. I was aware at the time that he was having communications with her until his death.

8. Also as a result of that agreement that we reached in the fall of 2004, I had conversations and communications with Attorney D'Alcomo directly beginning in the fall of 2004. Since that time, and continuing throughout 2005 and into 2006, I have continued to have communications and share information with Attorney D'Alcomo.

9. My attorney, Stephen CampoBasso, died unexpectedly in February 2005. His death did not affect my agreement with the attorney for the Town of Rockland and the Rockland Sewer Commission. Because of financial difficulties, I did not retain a new attorney to represent me in defense of this lawsuit, and I represented myself.

10. I entered into the agreement with the attorney for the Town of Rockland and the Rockland Sewer Commission in this lawsuit to share information and work jointly in this case because we had a common interest in disproving PSG's contentions that the 1997 procurement was not tainted, and in proving the activities that had occurred that caused the Town and the Rockland Sewer Commission harm, such as the procurement process and the handling of Town funds.

11. I had no intention of waiving, nor did I ever waive, any attorney-client privilege with respect to communications with my attorney, or for my attorney's confidential documents and work product done on my behalf. In my direct communications with Attorney D'Alcomo, she assured me that she would honor those protections, and I had no reason to believe otherwise.

12. I would not have allowed materials to be shared with Attorney D'Alcomo if I did not believe that my confidential communications with my attorney and that my attorneys' confidential files of my attorney, including his work product, would not be disseminated by Attorney D'Alcomo to PSG or to anyone else.

13. I was interested in jointly working with the Town and the Rockland Sewer Commission in this litigation because I was sorry for what I had done and participated in, and how it had hurt the Town and the Sewer Commission, and I knew that the information I had sharply conflicted with PSG's contentions in the lawsuit and instead were much more in common with the Town of Rockland's and the Rockland Sewer Commission's view of what had happened. I was familiar with how PSG operated and its operations in Rockland, and I felt it was unfair and improper, based on what I knew, for PSG to claim that the Town and the Rockland Sewer Commission should have to pay it, rather than PSG pay the Town and the Sewer Commission.

14. Several months ago, Stephen CampoBasso's law firm contacted me about where Stephen CampoBasso's files on my case, and the related criminal case, should be sent since they were no longer going to be representing me. I didn't decide immediately, but a few months ago I had them sent to Attorney D'Alcomo's office, under the same joint agreement under which we had been operating since the Fall of 2004. I decided a few months ago to store my attorney's files at Attorney D'Alcomo's office because I did not have an attorney in the case, and because we were sharing information and I wanted to be able to share that information with Attorney D'Alcomo under our joint agreement.

15. On Tuesday, June 13, 2006, I was deposed in this lawsuit. At the deposition, PSG's lawyers questioned me aggressively about my files that she received this year from Stephen CampoBasso's law office and told Attorney D'Alcomo in the deposition room that he wanted them. She refused.

16. By Thursday, June 15, 2006, I was getting concerned about PSG seeking access to my attorney's files. I called Attorney D'Alcomo, and asked her to send the documents back to me. I told her she should send all the documents back except that she could keep a copy of the grand jury transcript. She asked me to put that request in writing, which I did. A copy of the request is attached as Exhibit 2.

17. On Friday, June 16, I agreed that the documents could remain at her office in Boston while the Court decided the issue of PSG's access to my attorney's files because I understood that PSG was claiming that if the documents were returned to me, I might destroy them. I had no intention of destroying them and still have no intention of destroying them. But, to avoid a controversy over the issue, I allowed them to be left in Boston while the Court decided the issue.

Signed under the pains and penalties of perjury this 22nd day of June 2006.

*Michael Sausé*
Michael Sausé

## LITIGATION AGREEMENT

This agreement is entered into by counsel for the Town of Rockland and the Rockland Sewer Commission, and counsel for Michael Sause, in reference to Professional Services Group, Inc. v. Town of Rockland, Rockland Sewer Commission, Gregory Thomson and Michael Sause, Civil Action No. 0411131, with related counterclaims and cross-claims, now pending in the United States District Court, District of Massachusetts. It is agreed that counsel for Michael Sause will lend to counsel for Town of Rockland, a copy of notes that he prepared. Counsel for the Town of Rockland agrees to use the notes for her own purposes in this litigation, and agrees not to disseminate the notes to anyone in the absence of a court order.

Joanne D'Alcomo
Jager Smith P.C.
Counsel for Town of Rockland
And Rockland Sewer Commission
Dated:

Stephen Campobasso
Counsel for Michael Sause
Dated:

**EXHIBIT 1**

From: msause@comcast.net [mailto:msause@comcast.net]
Sent: Thursday, June 15, 2006 6:29 PM
To: Joanne D'Alcomo
Subject: Files

Joanne,

Per our telephone call that I placed to you today, please return to me immediately my files that you received from the CampoBasso Law Office. You may keep a copy of the Grand Jury transcript but that is it.

Thanks,

Michael Sause

--

Michael R. Sause
103 Par Haven Drive, Apt. K-11
Dover, Delaware 19904
Phone / Fax (302) 677-1988
Cell  (302) 359-1975
msause@comcast.net

**EXHIBIT 2**