# TAB B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROFESSIONAL SERVICES GROUP, INC., <br> Plaintiff, <br><br> v. <br><br> TOWN OF ROCKLAND, et al., <br> Defendants | Civil No. 04-11131-PBS |

AFFIDAVIT OF JOANNE D'ALCOMO

I, Joanne D'Alcomo, do depose and say:

1. I represent the defendants Town of Rockland and Rockland Sewer Commission in this matter ("Town").

2. I was not the original counsel for the Town of Rockland and Rockland Sewer Commission in this matter.

3. In the fall of 2004, shortly after I began representing the Town and after I had discussions with Michael Sausé's attorney, Stephen CampoBasso, I entered into a joint litigation agreement with Michael Sausé on behalf of the Town.

4. I entered into the agreement because I determined from my conversations with Michael Sause's attorney that the Town and Michael Sausé had common interests in the litigation. I determined that his view of what transpired was similar to the Town's beliefs about what had occurred, and was at odds with PSG's view of the case and its position. Among the conclusions I reached were that Michael Sausé and the Town shared the view that the 1997 procurement was tainted, that PSG had improperly been awarded the contract, and that Town funds were mishandled. I came to the conclusion that, as a result, the Town and Michael Sausé had a common interest in disproving PSG's assertion that the 1997 procurement process was not tainted, and in proving that PSG had mishandled funds.

JS\127572.1

1

5. The agreement that Stephen CampoBasso and I made was an oral agreement. Stephen CampoBasso and I agreed to share information and work jointly relating to the claims in this lawsuit. We agreed that I was to be able to speak with Michael Sausé individually as well as his him individually, as well as together.

6. Stephen CampoBasso emphasized to me at the time of the making of the agreement that attorney-client privileged materials and his work product on Michael Sause's behalf were to remain confidential and not be disclosed. I agreed. Stephen CampoBasso and I also agreed that I would return materials he considered confidential or his work product whenever he requested.

7. To underscore the seriousness of his concerns, and to show my good faith about honoring my commitment not to disclose the information, he and I signed a document before he let me see the first documents he was willing to show me under our joint litigation agreement, which were notes he had taken. A copy of the document, which shows a fax line of October 1, 2004, is attached as Exhibit 1.

8. From that point in early October, 2004, to the present, the Town and Michael Sausé have had a joint litigation agreement.

9. As part of that joint litigation agreement, in the fall of 2004, Michael Sausé signed a personnel records authorization that authorized me to obtain from Professional Services Group, Inc., a copy of his personnel records under Massachusetts law. Consequently, on October 13, 2004, I wrote to one of PSG's attorneys in this case, Maria Durant, enclosing the personnel records authorization I had obtained from Michael Sausé, and requested a copy of Michael Sause's personnel records. See Exhibit 2.

10. As part of that joint litigation agreement, before Stephen CampoBasso's sudden death in February, 2005, Attorney CampoBasso and I had several communications. Also before his death, he and I communicated with Michael Sausé together, and I communicated with Michael Sausé separately.

11. In fact, Stephen CampoBasso and I had planned to communicate and discuss the case the week that he unexpectedly died. He had sent me a fax that we planned to discuss. He died before we could have our discussion.

12. After Attorney CampoBasso's death, Michael Sausé represented himself. The joint litigation agreement remained in place. Michael Sausé and I continued to share information relating to the case throughout the rest of 2005 and into 2006. Michael Sausé periodically repeated his concern to me about his attorney's materials remaining protected. I assured him that I would honor our agreement.

13. A few months ago, Michael Sausé informed me that Stephen CampoBasso's old law office wanted to know where to send his files. We agreed that since he was unrepresented, he could store the files in my office, and that as part of our agreement in this case, I could look at the files. As a result, in the Spring of 2006, Michael Sause's files from his now deceased lawyer Stephen CampoBasso arrived in my office.

14. On Thursday, June 15, two days after a PSG's attorney had questioned Michael Sausé at his deposition about his attorney's files, and had demanded the files from me, Michael Sausé telephoned me and expressed concern about his files and asked me to ship them back to him immediately. On Friday, June 16, I notified PSG's counsel that Michael Sausé had asked me to return his attorney's files, and that I was sending them back that day because I believed I had no choice but to return the files immediately as he had requested.

15. PSG's attorney asserted that Michael Sausé would probably destroy the files, and demanded that they remain in my office. I conveyed PSG's attorney's assertion to Michael Sausé, and he said that although he had no intention of destroying the files, he did not want to leave open any argument that he had done so. Consequently, he decided to leave the files stored in my office while PSG's motion was pending.

16. Since the outset of the litigation agreement between the Town and Michael Sausé, I have known that keeping his attorney's privileged and work product materials confidential was to be an important part of the agreement. It was emphasized to me by both Stephen CampoBasso, while he was alive, and Michael Sausé. As a result, I have not done anything that I believed would compromise the confidentiality of such materials.

Signed under the pains and penalties of perjury this 22nd day of June 2006.

_____
Joanne D'Alcomo

JS\127572.1    3

## LITIGATION AGREEMENT

This agreement is entered into by counsel for the Town of Rockland and the Rockland Sewer Commission, and counsel for Michael Sause, in reference to Professional Services Group, Inc. v. Town of Rockland, Rockland Sewer Commission, Gregory Thomson and Michael Sause, Civil Action No. 0411131, with related counterclaims and cross-claims, now pending in the United States District Court, District of Massachusetts. It is agreed that counsel for Michael Sause will lend to counsel for Town of Rockland, a copy of notes that he prepared. Counsel for the Town of Rockland agrees to use the notes for her own purposes in this litigation, and agrees not to disseminate the notes to anyone in the absence of a court order.

Joanne D'Alcomo  
Jager Smith P.C.  
Counsel for Town of Rockland  
And Rockland Sewer Commission  
Dated:

Stephen Campobasso  
Counsel for Michael Sause  
Dated:

**EXHIBIT 1**

# JAGER SMITH P.C.
COUNSELORS AT LAW

ONE FINANCIAL CENTER
BOSTON, MASSACHUSETTS 02111
telephone 617 951 0500
facsimile 617 951 2414
www.jagersmith.com

JOANNE D'ALCOMO
jdalcomo@jagersmith.com

October 13, 2004

Maria R. Durant, Esq.
Dwyer & Collora, LLP
Federal Reserve Plaza
600 Atlantic Avenue, 12th Floor
Boston, MA 02210

Re: Michael Sause Personnel Records Request

Dear Maria:

It was a pleasure to meet you the other day. I am directing this request to you even though it is not directly part of litigation, since you are the attorney whom I know to represent Professional Services Group, Inc. I am requesting personnel records of Michael Sause, whether generated by Metcalf & Eddy, Professional Services Group, or US Filter Corp., that are currently in the possession, custody or control of Professional Services Group or US Filter Corp. An authorization is enclosed. If I should direct this request to someone else, please let me know.

As you are no doubt aware, under Massachusetts Law, personnel records are defined not simply as those records contained in an employee's personnel file, but also the following:

> a record kept by an employer that identifies an employee, to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment, promotion, transfer, additional compensation or disciplinary action.

Other personnel record information required to be disclosed under law includes:

> Job title and description; rate of pay and any other compensation paid to the employee; starting date of employment; the job application of the employee; resumes or other forms of employment inquiry submitted to the employer in response to his advertisement by the employee; all employee performance evaluations, including but not limited to, employee evaluation documents; written warnings of substandard performance; lists

JS PCDocs #48641\1

**EXHIBIT 2**

of probationary periods; waivers signed by the employee; copies of dated termination notices; any other documents relating to disciplinary action regarding the employee.

Mass. Gen. Laws ch. 149, §52C.

Thank you.

Sincerely,

Joanne D'Alcomo

JDA/ck
Enclosure

## PERSONNEL RECORDS AUTHORIZATION

TO:   U.S. Filter;

Professional Services Group, Inc.; and

Metcalf & Eddy

I, Michael Sause, Social Security Number 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, authorize attorney Joanne D'Alcomo and the law firm Jager Smith PC to obtain access to my personnel file and personnel records, and copies of all personnel records as that term is defined under Massachusetts law.

*[signature]*
Michael Sause

JS PCDocs #48543\1

**EXHIBIT 2**