UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PROFESSIONAL SERVICES ) | |
| GROUP, INC., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 04-11131-PBS |
| ) | |
| TOWN OF ROCKLAND, et al., ) | |
|     Defendants ) | |

**TOWN OF ROCKLAND'S AND ROCKLAND SEWER COMMISSION'S OPPOSITION TO PLAINTIFF PROFESSIONAL SERVICE GROUP, INC.'S MOTION TO AMEND ANSWER BY ADDING AFFIRMATIVE DEFENSE (Docket No. 43)**

Plaintiff Professional Services Group, Inc. ("PSG") has moved, simultaneously with the filing of the joint pretrial memorandum and with trial now only weeks away, to amend its answer to the Counterclaim to assert a new affirmative defense based on statute of limitations. This late attempt to amend its pleading is inexcusable and would prejudice the defendants, who are already in the midst of trial preparation, particularly because PSG's allegations concerning the issue of the statute of limitations are confusing, unclear, and ill-defined. The Defendants do not even know the date by which PSG contends the Town learned of the conduct at issue, the nature of the conduct of which PSG contends the Town learned. PSG justifies this amendment, approximately two years after it filed its original pleading, by claiming that it might have been a violation of Rule 11 to plead the affirmative defense any earlier. This post-hoc rationalization is meritless, and is inconsistent with both the law and PSG's pleadings on other issues. PSG has simply waited too long without justification, and should not be permitted to add a new

1

affirmative defense on the eve of trial. Defendants Town of Rockland and Rockland Sewer Commission (collectively "the Town") urge denial of the motion.

### I. Motions for leave to amend pleadings should be denied where the movant has delayed and there is no satisfactory explanation for the delay

Although motions to amend are granted freely early in the course of litigation, courts do not rubber stamp all motions to amend. Parties seeking leave to amend "have an obligation to exercise due diligence; unseemly delay, in combination with other factors, may warrant denial of a suggested amendment." Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc., 884 F.2d 1510, 1517 (1st Cir. 1989) (internal citation omitted) (affirming denial of motion to amend because there were only two months remaining in discovery period and there had been no reference to the new claim, and the movant never gave a satisfactory explanation of the delay); see also Walton v. Nalco Chem. Co., 272 F.3d 13, 19-20 (1st Cir. 2001) (affirming denial of motion to amend because motion was filed "six months after discovery closed, and one week prior to the trial date initially established by the district court . . . Yet Walton offered neither an explanation nor a justification for the inordinate delays, relying instead on the naked assertion that Nalco could not have been prejudiced."); Jordan v. Hawker Dayton Corp., 62 F.3d 29, 33 (1st Cir.1995) (no abuse of discretion to deny amendment where motion was filed four months after scheduling order deadline and a few days prior to close of discovery); Tiernan v. Blyth, Eastman, Dillon & Co., 719 F.2d 1, 4 (1st Cir. 1983) (affirming denial of motion to amend pleading because motion to amend was filed two years after complaint was filed and only two months before trial).

If a party moves to amend pleadings when discovery is already complete and the case is well into trial preparation, the argument that the non-moving party would not be prejudiced "rings hollow." Grant v. News Group Boston, Inc., 55 F.3d 1, 6 (1st Cir. 1995) (denying motion

to amend); Stepanischen v. Merchants Despatch Corp., 722 F.2d 922, 933 (1st Cir. 1983) (denying motion to amend for failure to show a valid reason for delay); Hutchins v. Zoll Med. Corp, 2006 WL 1302196 (D. Mass. May 11, 2006)(denying leave to amend because "discovery would have to be reopened in order for [the defendant] to defend itself adequately [and] . . . in light of Plaintiff's failure to offer an explanation for the late hour of his motion, it would be improper to permit such 'undue delay.'")

PSG justifies its delay by claiming that it could potentially have been a violation of Rule 11 to assert a statute of limitations defense before knowing of the facts that purportedly supported their contention. This is an inaccurate statement of the law with respect to pleadings and Rule 11. As the First Circuit has held, Rule 11 "does not extend to isolated factual errors, committed in good faith, so long as the pleading as a whole remains 'well grounded in fact.' " Navarro-Ayala v. Hernandez-Colon, 3 F.3d 464 (1st Cir. 1993) (quoting Forrest Creek Assoc., Ltd. v. McLean Sav. and Loan Ass'n, 831 F.2d 1238, 1244-45 (4th Cir.1987). Rule 11 is focused on is "the court paper as a whole, not individual phrases or sentences construed separately or taken out of context···· [A]t some level of analysis, every unsuccessful litigation paper contains an unsupported allegation or flawed argument."). Id. (quoting Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 9(D) at 133-34 (1989). Rule 11 merely requires a good-faith belief that the pleading is warranted, there is certainly no requirement that the belief be corroborated by deposition testimony before it can be pleaded. PSG could easily have pled the statute of limitations defense in its initial pleading or in an earlier amendment without fear of running afoul of Rule 11.

As best as the Town can understand it, PSG's affirmative defense is based on the argument that the Town and/or Sewer Commission knew about PSG's violations of the Uniform

JS#128063v1

Procurement Act as early as 1997. PSG has had access, even prior to the commencement of litigation, to documents from that procurement, and to witnesses that are knowledgeable about that procurement. They were free, even under the Massachusetts Public Records Law, to obtain documents from the Town.

PSG's argument that the affirmative defense could not have been pleaded earlier is particularly transparent due to the fact that PSG asserted numerous other claims and affirmative defenses in its pleadings without waiting for factual evidence from the Town. The affirmative defenses that PSG actually did assert in its answer make clear that PSG made no effort to wait to see what the Town's witnesses testified to in depositions before pleading defenses that relied upon facts within the Town's control. See Professional Service Group, Inc.'s Answer To Counterclaim, and Affirmative Defenses (asserting, among other defenses, that "the Town and the Commission improperly and without cause breached Contract No. 2," and that "the Counterclaim is barred by the doctrine of unclean hands.") PSG's current assertion that the statute of limitations defense could not have been asserted earlier is merely a post-hoc justification for its own negligence in failing to make a timely pleading.

**II.    Even if PSG were precluded from amending its pleading until after learning information in discovery, it is PSG's own fault that it did not obtain this information until recently**

PSG claims that it could not have asserted this affirmative defense earlier in the litigation because it had insufficient knowledge to do so. Even if it were true that they could not assert the defense without their recently-acquired information, it is entirely their own fault that this information was acquired so late in the litigation. PSG maintains that it could only assert this affirmative defense after hearing the deposition testimony of Kevin Donovan, Michael Sausé and William Stewart. Each of these individuals was known to PSG well before this litigation ever commenced, yet PSG *never* attempted to obtain deposition testimony from Sausé, and

JS#128063v1

waited until June 10 when the Town took his deposition to ask him questions. PSG did not depose Sewer Commission William Stewart until June 16, and former Town Administrator Kevin Donovan two weeks earlier. It is unfair for PSG to wait until the last minute to conduct depositions, and then to turn around and claim that it is justified in making 11th hour amendments to its pleadings because it could not have known about these affirmative defenses any earlier.

Furthermore, PSG behaves as if its only means of obtaining information is through deposition testimony. The Town has provided numerous documents to PSG that shed light on the bidding process that resulted in the 1998 contract, and PSG has even more documents in its possession about the same subject. Mr. Donovan, the witness on whose deposition testimony PSG appears to rely on most in its motion, has not been an employee of the Town for several years and is in no way controlled by the Town for purposes of this litigation. PSG's attorneys could have simply picked up the telephone and called Mr. Donovan if they wished to know what he knew and when he knew it. To the best of the Town's knowledge, PSG never made any such attempt. PSG did not even attempt to question Michael Sause until shortly before his deposition in June, 2006, when it had a private investigator call him. It was obvious from the outset of he case that Sausé, a former Vice President of PSG, who is alleged to have participated in the rigging of the bid with former Rockland Sewer Superintendent Gregory Thomson, was a key witness in the case.

### III. Allowing PSG to amend its pleadings at this point in the litigation would seriously prejudice the Town

PSG argues that leave to amend should be granted because the Town would not be prejudiced by the amendment. This is incorrect. Trial has been scheduled in this case for July 31, 2006. Intense trial preparation is already underway. There is no way for the Town to prepare adequately against the affirmative defense at this point because trial is so close. This is

particularly true because PSG's allegations concerning the issue of the statute of limitations are confusing, unclear and ill-defined. PSG has not even cited the particular deposition testimony or pages of deposition transcripts that purportedly support their position, and the Town has no idea what supposed new evidence PSG could be alluding to as support for the affirmative defense of statute of limitations. In fact, it is confusing that Stewart and Donovan, who both testified that they were unaware at the time that the procurement was illegal, are being used to support the new defense that the Town knew about the illegality of the procurement when it took place shortly thereafter.

      PSG suggests that it would be a simple task for the Town and Sewer Commission to respond to PSG's new affirmative defense because some of the witnesses with relevant information have been cooperating with the Town. However, simply talking to a few witnesses would not be sufficient trial preparation to address these issues. There are thousands of pages of documents in this case, many of which are potentially applicable to the newly asserted affirmative defense. None of those documents has been reviewed with respect to their applicability to this particular issue. It would be an immense burden to be forced to dig through all of those previously-reviewed documents to distill the ones that might be applicable to PSG's new defense. There are also numerous witnesses, in addition to those identified by PSG, who might potentially have useful testimony on the issue of what the Town knew and when. The Town and Sewer commission should not be forced to make a slapdash and inadequate response due to the fact that PSG waited until the last minute to spring its new affirmative defense. It would be prejudicial to force the Town to respond without time to explore adequately PSG's threatened claim of an affirmative defense of statute of limitations.

JS#128063v1

The deadline for designation of witnesses has been set, and the Town is simply not in a position to try to figure out at this late date what witnesses could help it defend against PSG's confusing and imprecise affirmative defense of statute of limitations. As discussed above, the Town does not even know what PSG's contention is as to the date -- not even the year – that PSG contends the Town knew of the conduct at issue, and even the nature of the conduct of which PSG contends the Town knew.

Moreover, in addition to the previously-unexamined factual issues raised by PSG's new affirmative defense, there are similarly thorny legal issues that would need to be researched and briefed for the court. It is far from clear whether the knowledge of an individual town officer can be imputed to the entire Town of Rockland for purposes of a statute of limitations defense. PSG has not cited any authority that supports the argument that, for example, the taxpayers of Rockland's claim against PSG should be extinguished if a single elected official, or a single appointed official, had knowledge of the claim in 1997 but did not share that information with the Town.

The Town would also be seriously prejudiced by the late addition of this affirmative defense because it is already grappling with the burdens of PSG's late production – in June -- of thousands of documents taken from the Rockland Wastewater Treatment Plant, as well as new documents about to be produced as a result of Magistrate Judge Collings' order granting most of the Town's motion to compel production of documents. At the hearing on the motion to compel, Magistrate Judge Collings declared that he found PSG's responses to the Town's document requests to be improper, and he promptly ruled, shortly after the hearing, in the Town's favor. PSG's improper responses and wrongful withholding of documents already has prejudiced the

JS#128063v1

Town and created serious burdens at this time, and the Town should not be additionally burdened with trying to prepare to respond to, for purposes of trial, a new affirmative defense.

### IV. PSG's proposed amendment is far broader than its purported justification for amending

PSG has asserted that its motion for leave is predicated on newly acquired information that certain individuals knew in 1997 that Kevin Donovan, the former town administrator of Rockland, did not play an active role in the bidding process that ultimately led to PSG's securing the 1998 contract. On the basis of this small bit of purportedly newly acquired evidence, PSG seeks to assert a new affirmative defense that "the Counterclaim is barred, *all or in part*, by all applicable statutes of limitations." (emphasis added). This appears to be a calculated attempt to sneak a large defense through a tiny opening.

The Town has asserted a number counterclaims in this litigation, with both statutory and common-law bases. The "newly acquired" information appears to relate only to one such claim – the claim that the Uniform Procurement Act was violated. Furthermore, the Town has identified a wide range of behaviors that PSG engaged in that violated the Uniform Procurement Act, only one of which involved the participation (or lack thereof) of Mr. Donovan in the procurement.

It would be patently unfair for PSG to be able to assert a general statute of limitations defense to all of the Town's counterclaims, based upon allegedly new information related to a single fact that is relevant to only one of the counterclaims. The Town and Sewer Commission have not conducted any discovery in this area and have never viewed it as part of the litigation. There is no way that the Town could adequately respond if, for example, PSG suddenly asserted a never-before affirmative defense with respect its violation of the Conflict of Interest Statute, Chapter 268A. To the extent that the Court is at all persuaded that PSG should be permitted to

JS#128063v1

amend its affirmative defenses, the amendment should be limited in scope to only those subjects to which PSG has identified a factual basis for its defense, namely, the question of whether the Town was aware of Mr. Donovan's limited involvement in the bidding process.

## V.    Conclusion

For the reasons stated above, PSG's motion for leave to amend the answer to the Counterclaim should be denied.

Respectfully submitted,

TOWN OF ROCKLAND and
THE ROCKLAND SEWER COMMISSION,
By their attorneys,

/s/Joanne D'Alcomo
Joanne D'Alcomo (BBO # 544177)
Seth Nesin (BBO # #650739)
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500

JS#128063v1