# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| PROFESSIONAL SERVICES ) | |
| GROUP, INC., ) | |
|    ) | |
|    Plaintiff, ) | |
|    ) | |
| v. ) | |
|    ) | |
| TOWN OF ROCKLAND, ROCKLAND ) | |
| SEWER COMMISSION, GREGORY ) | |
| THOMSON and MICHAEL SAUSÉ, ) | |
|    ) | |
|    . ) | |
| _____) | |
|    ) | |
| TOWN OF ROCKLAND, ROCKLAND ) | |
| SEWER COMMISSION, ) | |
|    ) | |
|    Plaintiffs in Counterclaim ) Civil No. 04-11131-PBS | |
|    and Crossclaim ) | |
|    ) | |
| v. ) | |
|    ) | |
| PROFESSIONAL SERVICES ) | |
| GROUP, INC., ) | |
|    ) | |
|    Defendant in Counterclaim, ) | |
|    ) | |
| and ) | |
|    ) | |
| MICHAEL SAUSÉ, ) | |
|    ) | |
|    Crossclaim Defendant ) | |
| _____) | |

**MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE**
**PROPOSED EXPERT TESTIMONY OF JOHN J. SULLIVAN**

This case is scheduled for trial on July 31, 2006.  On June 14, 2006, Defendant/Plaintiff-

in-Counterclaim Town of Rockland and Rockland Sewer Commission (collectively, "Rockland")

disclosed to Plaintiff/Defendant-in-Counterclaim Professional Services Group, Inc. ("PSG") that it intended to call John J. Sullivan to testify as an expert witness. The disclosure consisted of a half-page letter from Mr. Sullivan to Rockland's counsel. In lieu of an expert report describing the proposed testimony, the disclosure merely referenced an unattached, unsigned audit report that had been prepared for Rockland by Mr. Sullivan's firm in 2004 as part of a series of status updates on an ongoing audit it had been retained to perform. The disclosure neglected to disclose the data and information considered by the firm in 2004 or anytime thereafter in forming any of its purported expert opinions. Rockland's failure to provide the expert disclosure required by the Rules was not substantially justified or harmless. For the following reasons, PSG respectfully requests that this Court exclude Mr. Sullivan from providing expert testimony in this case.

## RELEVANT FACTS

**A.     Background of the Case**

This case involves, in relevant part, counterclaims that Rockland has brought against PSG arising from a 1998 contract under which PSG operated Rockland's wastewater treatment plant. Rockland alleges, among other claims, that the contract was procured in violation the Massachusetts Uniform Procurement Act (Chapter 30B) and the Massachusetts Conflict of Interest law (Chapter 268A) because the Superintendent of the Rockland Sewer Commission conspired with a PSG employee in a manner that allegedly gave an advantage to PSG in the procurement process.

Discovery has shown that the conspiracy first came to light in 2002, at which time Rockland hired accountant John J. Sullivan and his firm, Melanson Heath and Company, to perform an audit. See Tab A ("Sewer Dept. Embezzlement Probe Widens," Boston Globe,

August 28, 2003).  As a part of that audit, Melanson Heath issued at least two reports – one in May 2003, see id., and one in February 2004 – finding purported violations of the Uniform Procurement Act, theft of public funds by Rockland's Sewer Superintendent and the PSG employee, and various inappropriate expenditures by the Rockland Sewer Commission. Rockland now seeks to introduce Mr. Sullivan as an expert witness at trial.

B.  **Background Relevant to Expert Disclosures**

On July 27, 2004, Rockland filed its Counterclaims in this case, which included allegations that the audit performed by Melanson Heath had "indicated significant fraudulent activity by PSG . . . ."  See Rockland's Answer, Counterclaim, and Cross-Claim Against Michael Sause, pp. 12 at ¶¶ 31-32; see also id., pp. 12 at ¶¶ 34, 38; pp 26, ¶¶ 19-23.  On December 17, 2004, PSG served Rockland with its First Request for Production of Documents ("Document Request").  See Tab B (Document Request).  In relevant part, PSG requested the following:

> Request No. 25: All documents provided by Rockland to any auditing firm, or any employee, servant, agent, consultant, or representative thereof, in connection with the audit referenced in Paragraph 31 of the Counterclaim
>
> Request No. 26: All communications between Rockland and any auditing firm, or any employee, servant, agent, consultant, or representative thereof, relating to the audit referenced in Paragraph 31 of the Counterclaim.
>
> Request No. 41: All documents relating to any statement, whether oral, written or recorded, by any witness or potential witness regarding any facts alleged in the Counterclaim.
>
> Request No. 42: All documents relating to any statement, whether oral, written, or recorded, by any witness or potential witness regarding any facts alleged in the Counterclaim.
>
> Request No. 47: For all persons identified by Rockland as an expert witness in this action, all documents reviewed, consulted or relied upon by such persons in such capacity.

See id. at 9, 11-12.  On March 3, 2005, Rockland agreed to produce all non-privileged responsive documents regarding Requests No. 25-26 and 41-42.  See Tab C at 7, 11 (Rockland's Response).  In response to Request No. 47, Rockland stated, "The Federal Rules of Civil Procedure provide a mechanism for expert discovery, and Rockland will comply with discovery issued pursuant to that procedure and/or court order."  See id. at 12.

On June 14, 2006, Rockland's counsel faxed to PSG's counsel the expert disclosure for John J. Sullivan ("Mr. Sullivan"), an accountant associated with the firm hired by Rockland to perform the audit referenced in the Counterclaims.  The disclosure consisted of a half-page letter from Mr. Sullivan to Rockland's counsel describing his qualifications, publications, compensation, and prior testimony, and a one-page "curriculum vitae" generally describing Mr. Sullivan's past experience ("the Sullivan Disclosure").  See Tab D (Letter from Seth Nesin to David Osborne, dated June 14, 2006).  Rather than attach an expert report describing Mr. Sullivan's proposed expert testimony, the Sullivan Disclosure stated that it was intended "to supplement my report, which is entitled 'Forensic Investigation' and is dated February 25, 2004," a copy of which was not attached to the Sullivan Disclosure.  Id.

The report referenced by Mr. Sullivan was the one that had been prepared for Rockland in February 2004 by Melanson Heath, five months before Rockland filed its Counterclaims against PSG ("Audit").  See Tab E (Audit).  Rockland has never produced a complete copy of the Audit; the copies that PSG has are not signed by Mr. Sullivan (or anyone else), and do not include any attachments.  Cf. id. at 5-10 (referencing Attachments A through I).  In addition, the Audit references numerous pieces of information that Rockland has never identified or produced. The preparers of the Audit relied upon, among other things: (1) unspecified "records and documentation retained by the Town"; (2) unspecified "documentation provided by the Sewer

4

Commission"; (3) unspecified "information acquired from banks"; (4) interviews with "various individuals at Town Hall;" (5) interviews with the unnamed "Administrative Assistant at the Sewer Commission"; (6) interviews with the "three current Sewer Commissioners"; and (7) interviews with an unidentified "representative from one of the competing management companies who participated in the bid for the February 1998 contract". See Tab E at 1. While PSG does have three groups of documents labeled "Book One, "Book Two," and "Book Three," which apparently represent Mr. Sullivan's "investigation books," those groups of documents do not reflect all of the information that was considered in preparing the Audit; for example, they do not contain any notes of witness interviews (cf. Tab E at 1).[1] And although Melanson Heath (or, possibly, Mr. Sullivan himself) gave an earlier written report to Rockland in or around May 2003 as a part of the same investigation, see Tab A at 2, Rockland has never produced this 2003 report to PSG, nor did it even mention the earlier report in the Sullivan Disclosure.

The cover letter to the Audit also states that Melanson Heath "will continue to work with the Town" and that the Report's unidentified author "look[s] forward to meeting with the Board to discuss this report and the course of actions in progress by the Town of Rockland," which include "recovery of funds . . . [from] U.S. Filter [PSG's parent company], [and] potential restitution from criminal cases pending and through potential litigation with financial institutions." See Tab E at 1-2. PSG does not have any documents or information concerning any continuing work performed by Mr. Sullivan (or any other Melanson Heath employee) nor does it have any documents or information concerning any meetings or oral discussions between Mr. Sullivan (or Melanson Heath) and Rockland before, during, or after the preparation of the Audit. Finally, although the Sullivan Disclosure states that Mr. Sullivan expects to be

---

[1] PSG's review of discovery for purposes of this Motion was impeded somewhat by Rockland's practice of not Bates numbering or organizing any of the thousands of documents it has produced in this case.

5

compensated for his testimony at his hourly rate of $190, it says nothing about the compensation Mr. Sullivan has received from Rockland for the work performed by him and/or his firm since the audit began back in 2002.

## ARGUMENT

This Court should exclude Mr. Sullivan as an expert witness at this time for two reasons. First, Rockland failed to comply with its expert disclosure obligations under Fed. R. Civ. P. 26(a)(2)(B) and 26(e)(1), including its obligation to provide a written report reflecting the anticipated testimony and to disclose the data or information considered by the expert. Instead, Rockland's disclosure consisted of a half-page letter and a reference to a report that was written in 2004 for an entirely different purpose and was never produced in full to PSG. Given the length of time that Mr. Sullivan has been working with Rockland, Rockland's failure to comply with its disclosure obligations cannot be substantially justified. Under the circumstances of this case, including Rockland's long-time relationship with Mr. Sullivan and the impending trial date, Rockland's deficient disclosure is not harmless. To the contrary, PSG's ability to prepare for and counter Mr. Sullivan's proposed expert testimony has been prejudiced and exclusion of his testimony is the only proper remedy.

Second, Rockland has also failed to comply with its obligation to seasonably amend its responses to PSG's discovery requests as required by Fed. R. Civ. P. 26(e)(2)(A), and Mr. Sullivan's testimony is excludable on that ground as well.

**A.     Mr. Sullivan's Proposed Expert Testimony Should Be Excluded Because Rockland Did Not Provide the Expert Disclosures Required by Rule 26(a)(2)(B).**

Federal Rule of Civil Procedure 26(a)(2)(B) requires that all expert disclosures be "accompanied by a written report prepared and signed by the witness." See Fed. R. Civ. P. 26(a)(2)(B). One of the purposes "of a detailed and complete expert report as contemplated by

6

Rule 26(a) is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial." Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiena de Puerto Rico, 248 F.3d 29, 35 (1st Cir. 2001) (citations and internal punctuation omitted). Detailed expert disclosure requirements are "consonant with the federal courts' desire to make trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992) (analyzing need for timely and complete expert disclosures under prior discovery rules). Rule 26(a) was intended to require expert disclosures "sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." See Fed. R. Civ. P. 26, advisory committee note.

In addition to the obligation to identify the proposed testimony, an expert report under Rule 26(a)(2)(B) must contain the following information: (1) a complete statement of all opinions to be expressed and the basis and reasons for the opinions; (2) the data or other information considered by the witness in forming the opinions; (3) any exhibits to be used as a summary of or in support for the opinions; (4) the qualifications of the witness, including a list of all publications authored in the preceding ten years; (5) the compensation to be paid for the study and the testimony; and (6) a listing of any other cases in the preceding four years in which the witness has testified as an expert both at trial and in a deposition. See Fed. R. Civ. P. 26(a)(2)(B).

     1.     The Sullivan Disclosure Does Not Satisfy the Requirement for a Written Report.

The Sullivan Disclosure falls far short of satisfying Rockland's disclosure obligations under Rule 26(a)(2)(B). The expert report required by Rule 26(a)(2)(B) "should be written in a

manner that reflects the testimony to be given by the witness and it must be signed by the witness." Fed. R. Civ. P. 26, Advisory Committee's Note (1993). The Sullivan Disclosure does not comply with this obligation. At the most basic level, the incomplete, unsigned version of the Audit that PSG possesses does not reflect Mr. Sullivan's anticipated testimony. See Tab E. Rather, the report was written two-and-a-half years ago as one in a series of interim status reports to Rockland, a client for whom the firm clearly intended to continue working. See Tab E at 1 (noting that the authors "will continue to work with the Town to achieve" recovery of funds and a new sewer contract).

The incomplete and outdated nature of the information presented in the Audit does not identify the testimony Rockland expects Mr. Sullivan to give. Cf. Fed. R. Civ. P. 26, advisory committee's note (expert report must state "the testimony the witness is expected to present during direct examination"). For example, the Audit begins with a section entitled "Background Information," which briefly describes the creation of the Sewer Superintendent position, the scope of the Sewer Department's budget, and the criminal investigation of the Sewer Superintendent and the PSG employee. See Tab E at 3-4. In that section, the authors also discuss "notable" differences between the parties' 1994 contract and their 1998 contract, and describe four types of payments under the 1994 contract that the authors appear to be questioning. See id. at 3-6. Thus, it may be that Rockland wishes Mr. Sullivan to opine about the background of the case; the performance of the 1994 contract; the alleged "notable" differences between the 1994 and the 1998 contract; whether or not performance of the 1994 contract complied with the contract terms (see, e.g., id. at 6 ("We found numerous payments to PSG outside of the contract")) or relevant law (see, e.g., id. at 5 ("In our opinion the payment was an attempt to . . .circumvent the 30B bid process")); some other topic addressed in the first portion of the Audit;

or none of the above.  Rockland has not identified on which, if any, of these topics they expect Mr. Sullivan to opine.

The Audit also contains a section on the procurement process for the 1998 contract, in which the authors opine that certain aspects of the process were "proper under" or "met the process set forth in" M.G.L. ch. 30B.  See id. at 7-10.  In addition, the authors purport to evaluate the "propriety of the [1998] contract" and "contract compliance issues" with respect to "other municipal laws and requirements," by analyzing a series of transactions or expenditures on which the authors opine that they would or would not "qualify" as particular expenditures under the contract.  See id. at 11-23.  Again, PSG cannot tell whether Rockland intends Mr. Sullivan's testimony to describe what he (or his firm) did and/or found; to opine that certain transactions were "questionable" (and, if so, which transactions); and/or to compare any "questionable" transactions against the 1994 contract, the 1997 RFP, the 1998 contract, M.G.L. ch. 30B, or some other municipal law or requirement.  To further complicate matters, the Audit closes with a section entitled "Summary Conclusion and Recommendations," which includes opinions that run the gamut from the undisputed ("[d]ocumentation supports that the Rockland Superintendent and the PSG Regional Sales Manager conspired to convert funds to their own personal use") to the irrelevant ("[t]he Town should look at the Sewer Facility in conjunction with management of the Highway and Water facilities") to the inadmissible ("the original RFP does not meet 30B standards").  Id. 24-27.

At base, the Audit was not written to reflect anticipated testimony, as Rule 26(a)(2)(B) requires, but rather as one of a series of reports to Rockland at the time that Rockland was preparing for litigation.  It contains within it a number of conclusory statements on a variety of issues that may or may not be relevant and admissible in this trial.  That is not the kind of

disclosure required by Rule 26(a)(2)(B). The Sullivan Disclosure itself does nothing to alleviate the lack of clarity arising out of the Audit; to the contrary, Mr. Sullivan's letter states only that the information is being provided "[w]ith respect to expert testimony that I may provide at the trial in this case . . . ." See Tab D. As such, the Sullivan Disclosure, even when combined with the Audit, fails to accomplish what Rule 26(a)(2)(B) intended it to do: permit PSG a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.

      2.      <u>The Sullivan Disclosure Does Not Satisfy the Requirement to Identify the Data and Information Considered by the Witness.</u>

The Sullivan Disclosure also fails to identify and disclose the data and information that Mr. Sullivan considered when forming his opinions. Rule 26(a)(2)(B)'s requirement that the disclosure include all information "considered by the witness" has been broadly interpreted in this District. It includes *all* information "considered" by the witness, even if that information was ultimately rejected and even if it "also contain[s] 'mental impressions, conclusions, opinions or legal theories of an attorney.'" Suskind v. Home Depot Corp., 2001 WL 92183 at *1 (D. Mass. (Jan. 2, 2001)) (Collings, M.J.); <u>see</u> also Synthes Spine Co. v. Walden, 232 F.R.D. 460, 464 (E.D. Penn. 2005) (Rule 26(a)(2)(B) requires "disclosure of all information, whether privileged or not, that a testifying expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if the testifying expert ultimately rejects the information"). Such information should be disclosed irrespective of whether it was provided orally rather than in writing. See Synthes Spine Co., 232 F.R.D. at 465.

Rockland has failed to comply with its obligation to disclose all of the information that Mr. Sullivan considered in arriving at his opinions. Rockland has not even produced all of the materials that the authors of the Report claim to have *relied* upon, including numerous witness

10

statements from various sources. See Tab D at 1 (listing sources of information). It has also failed to give PSG a copy of the Report with the attachments in place. See Tab D at 5-10 (referencing Attachments A though I). Nor has Rockland disclosed or provided the prior report that Mr. Sullivan's firm prepared in May 2003, or identified any of the information upon which that earlier report was based. And despite the fact that Mr. Sullivan's letter to Rockland's counsel was apparently intended to "supplement" the Audit, it does not in fact do so, because it does not address what information was provided to Mr. Sullivan by Rockland or Rockland's counsel (or anyone else) since February 2004. Cf. Suskind, 2001 WL 92183 at *4 ("'the data or other information considered by the witness' includes any material which was furnished to the witness by the attorney who retained him even though that material in other contexts must be considered core attorney work product"). Such disclosure fails completely in satisfying Rockland's obligation to disclose all data or other information considered by Mr. Sullivan in forming his (as yet undisclosed) opinions. See Fed. R. Civ. P. 26(a)(2)(B); Synthes Spine, 232 F.R.D. at 464.

    3.    Rockland's Failure to Comply with Its Obligations Under the Rules Is Neither Substantially Justified Nor Harmless.

Under Rule 37(c), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use such evidence at trial . . . ." See Fed. R. Civ. P. 37(c). "Exclusion of evidence is a standard sanction for a violation of the duty of disclosure under Rule 26(a)." LaPlace-Bayard v. Batlle, 295 F.3d 157, 162 (1st Cir. 2002) (citing Samos Imex Corp. v. Nextel Communications, Inc., 194 F.3d 301,305 (1st Cir. 1999)). This is because "[f]ailure to include information concerning the retained expert that is specifically required by Rule 26(a)(2)(B) . . . frustrates the purpose of candid and cost-efficient expert discovery." Ortiz-Lopez v. Sociedad Espanola de Auxilio

Mutuo y Beneficiena de Puerto Rico, 248 F.3d 29, 35 (1st Cir. 2001) (citations and internal punctuation omitted).  Indeed, courts in this Circuit have routinely excluded experts where the proponent failed to comply with only one of Rule 26(a)(2)'s specific requirements even if the disclosure was otherwise appropriate.  See, e.g., Norris v. Murphy, 2003 WL 21488640 at *2 (D. Mass. (June 26, 2003)) (excluding expert testimony for failure to provide complete listing of cases in which expert testified); Rivera Pomales v. Bridgestone Firestone, Inc., 217 F.R.D. 290, 291-93 (D. P.R. 2003) (excluding expert testimony for failure to provide copy of expert's curriculum vitae).

     Here, the incomplete nature of the disclosure, coupled with the short time left until trial, has prejudiced PSG's ability to challenge the evidence.  Without knowing what Mr. Sullivan's proposed testimony will be, PSG cannot even begin to assess any claims it may have that the proposed testimony is inadmissible under Federal Rule of Evidence 702.  For example, the Audit repeatedly points out that some of its conclusions are based on incomplete evidence, thus drawing into question the reliability of the Report's conclusions.  See, e.g., Tab E at 1 ("Our scope was limited in two aspects, which may impact our ability to reach conclusions in certain areas"); 5 ("We were unable to perform comprehensive procedures for all costs prior to the 1998 contract as records going back were not available"); 7 ("the involvement of the Sewer Commissioners [in procuring the 1998 contract is] unknown"); 19 ("We were unable to determine based on the information provided whether all purchases made by the Superintendent benefited the WPCF"); 23 ("We did not obtain year 4 records to identify supporting documentation from U.S. Filter"); cf. United States v. Monteiro, 407 F.Supp.2d 351, 356 (D. Mass. 2006) (expert testimony must be assessed to determine whether it "'rests on a reliable foundation and is relevant to the task at hand' and whether the expert is qualified" before it can

12

be deemed admissible) (*quoting* Daubert v. Merrill Dow, 509 U.S. 579, 597 (1993)).  At other times, the Report makes statements about whether or not certain conduct was in compliance with particular laws.  See, e.g., Tab E at  7-10; cf. Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 100 (1st Cir. 1997)("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact")(citation omitted).  PSG simply cannot assess whether Mr. Sullivan is qualified to give his opinion without knowing which opinion he intends to give.  See also Highland Capital Management v. Schneider, 379 F.Supp.2d 461, 468-69 (S.D. N.Y. 2005) (expert cannot be called simply to rehash otherwise admissible evidence about which he has no personal knowledge).

That Rockland had informed PSG that Mr. Sullivan was a potential fact witness does not operate to relieve Rockland of its duty to notify PSG of its intent to use Mr. Sullivan as an expert.  Identifying witnesses as percipient witnesses is not the same as identifying them as experts and providing the required disclosures.  See Morris Graphics, Inc. v. Casey Printing, Inc., 1999 WL 726958 at * 6 (D. R.I. (Feb. 12, 1999)) (excluding expert testimony and finding proponent of testimony acted in bad faith when it did not notify opponent that potential fact witness would be used as an expert prior to witness's deposition and proponent had been in control of witness throughout the litigation).

Both the rules of procedure and the rules of evidence recognize that experts stand on different footing than other witnesses.  See Fed. R. Evid. 701, 702; Fed. R. Civ. P. 26(a)(2).  Unlike lay witnesses, experts are permitted to express their opinions on matters about which they have no firsthand knowledge.  See Monteiro, 407 F.Supp.2d at 358; see also Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 203-04 (4th Cir. 2000) (finding trial court erred in admitting certain testimony about accident at issue as lay opinion testimony where investigator's "sole basis of knowledge concerning the accident derived from his investigation

13

and his analysis of the data he collected"). In addition, "an expert's testimony may be given greater weight by the jury due to the expert's background and approach." Monteiro, 407 F.Supp.2d at 358 (citation omitted). As a result, courts must vigilantly exercise their gatekeeper role in ensuring the admissibility of such testimony. See id. Proper expert disclosures are a required and essential first step in that process. Indeed, litigants are not even permitted to depose expert witnesses until they have received the expert disclosures required under Rule 26(a)(2)(B). See Fed. R. Civ. P. 26(b)(4)(B) ("If a report from the expert is required under subdivision (a)(2)(B), the deposition shall not be conducted until after the report is provided."); See also Rivera Pomales, 217 F.R.D. at 293 ("The fact that Plaintiffs have not chosen to depose Defendant's expert witness does not eliminate the fact that Plaintiffs were deprived of this information in preparation for trial").

  Up until three weeks ago, PSG had no notice whatsoever that Rockland intended Mr. Sullivan to give his expert opinion on matters pertaining to this case. Given the length of time that Mr. Sullivan has been working for Rockland and the amount of materials that Rockland still has not identified or provided to PSG, PSG should not fairly be expected to make up for Rockland's lack of diligence by conducting expert discovery at the same time that it is preparing for trial. Having to spend long hours in a short amount of time to cure the difficulties caused by late or incomplete expert disclosures is not considered a "harmless" impact under Rule 37(c). See Thibeault, 960 F.2d at 247 ("Although appellant suggests that Square D could spend day and night attempting to cure the havoc which supplementation, if allowed, would have wrought, we do not think it is either reasonable or fair to expect a litigant to bear so onerous a burden."). It is also contrary to the expressed interest in timely and complete disclosures reflected in Rule 26(a). See, e.g., LaPlace-Bayard, 295 F.3d at 162 (in delaying retaining expert until settlement talks fell

14

through, party "assumed the risk that their delayed trial preparation would compromise their ability to put on their best case. To excuse their belated disclosures now would relieve them of the consequences of the risk they assumed."); Indigo America, Inc. v. Londonderry Tech., LLC, 2003 WL 22251157 at * 1, n.2 (D. N.H. (Oct. 1, 2003)) (rejecting argument that ongoing discovery will prevent harm from late expert disclosures: "the court is not persuaded either that prejudice would not occur or that a casual approach to enforcing the rules is appropriate") (*citing* Young v. Gordon, 330 F.3d 76, 83 (1st Cir. 2003) ("[N]o harm, no foul argument . . . overlooks that the court has an institutional interest in ensuring compliance with its orders.")).

    PSG has been demonstrably harmed by Rockland's incomplete disclosure. It does not have the information that it should have received and, without that information, it is not in a position to raise focused challenges to the admissibility of Mr. Sullivan's proposed expert testimony under Federal Rule of Evidence 702. Nor can PSG make a determination of whether or not it needs to retain a rebuttal expert or otherwise efficiently prepare for Mr. Sullivan's cross-examination. Given that trial in this matter begins in a little over three weeks, "remedying" Rockland's incomplete disclosure by forcing PSG to play catch up now would unfairly distract PSG from the business of preparing for trial, risk forcing it to cross-examine an expert without adequate time to prepare, and impede its ability to identify and offer a proper rebuttal expert witness. For all of the foregoing reasons, PSG respectfully requests that Mr. Sullivan be precluded from offering any expert testimony in this case.

**B.**     **Rockland Did Not Comply with Its Obligation to Seasonably Amend its Answers to Discovery Requests as Required by Rule 26(e)(2)(A) and Mr. Sullivan's Testimony Is Properly Excludable for That Failure As Well.**

    In addition to the obligation under Rule 26(a)(2)(B) to provide the information discussed in Part A, *supra*., Rockland had a separate obligation to seasonably amend its responses to PSG's

document requests under Fed. R. Civ. P. 26(e). See Fed. R. Civ. P. 26(e)(2) ("A party is under a duty to seasonably amend a prior response to . . . a production request . . . if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"); see also Fed. R. Civ. P. 37(c) ("A party that without substantial justification fails to . . . amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial . . . any witness or information not so disclosed").

"In reviewing a contention that answers were not properly supplemented within the strictures of Rule 26(e), a court should look to the conduct of the trial, the importance of the evidence to its proponent, and the ability of the [opposing party] to formulate a response." Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992). "To this, we might add that the reason for the proponent's failure to update his discovery seasonably, as Rule 26(e)(1) requires, should also be carefully examined." Id. Here, Rockland hired Mr. Sullivan in 2002, received the Audit from his firm in February 2004, and filed its Counterclaims in July 2004. In December 2004, PSG specifically requested all documents provided to Rockland by any auditing firm, all statements made by witnesses or potential witnesses, and all documents reviewed, consulted or relied upon by an expert witness. See Tab A at 9, 11-12. Rockland responded that it would provide that information in conformance with the Rules, see Tab B at 7, 11-12, but even today – just weeks before the start of trial – it has never provided the information sought by PSG's 2004 document requests.

Rockland cannot claim that it was unaware of its obligation to provide the requested information in a meaningful time. Rule 26(e)'s requirement of "seasonable" supplementation

requires litigants to supplement their answers "as soon as practicable after retaining a new expert." Thibeault, 960 F.2d at 247. Certainly after designating Mr. Sullivan as an expert on June 14th, Rockland was obligated to supplement its discovery responses with the requested information, yet it did nothing. For this reason as well, Mr. Sullivan should not be permitted to provide expert testimony in this case.

## CONCLUSION

Excluding Mr. Sullivan's expert testimony will not affect Rockland's ability to present to the jury the underlying information that Mr. Sullivan and his firm considered during their investigation, assuming that it has been previously disclosed to PSG, is otherwise admissible, and is offered through an appropriate witness. In addition, to the extent that Rockland can identify the relevance of Mr. Sullivan's investigation, it would be free to present appropriate evidence of that as well. What it ought not to be able to do, however, is to prejudice PSG's ability to effectively prepare for and cross-examine Mr. Sullivan, or to even assess the propriety of the proposed testimony against Fed. R. Evid. 702's requirements, by failing to completely disclose all of the information to which PSG is entitled. For all of the foregoing reasons, PSG respectfully requests that Mr. Sullivan be precluded from offering expert testimony in this case.

>Respectfully submitted,
>**PROFESSIONAL SERVICES GROUP, INC.**,
>By its attorneys,
>
>
>___/s/ Sara Noonan_____
>Maria R. Durant (BBO # 558906)
>David M. Osborne  (BBO # 564840)
>Sara E. Noonan (BBO # 645293)
>DWYER & COLLORA, LLP
>Federal Reserve Plaza
>600 Atlantic Avenue, 12th Floor
>Boston, MA  02210
>(617) 371-1000

Dated: July 6, 2006

**CERTIFICATE OF SERVICE**

    I, Sara E. Noonan, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on this 6th day of July, 2006.

>_____/s/Sara Noonan_____
>Sara E. Noonan