UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROFESSIONAL SERVICES GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, GREGORY THOMSON and MICHAEL SAUSE, <br><br> Defendants. <br><br> TOWN OF ROCKLAND, ROCKLAND SEWER COMMISION, <br><br> Plaintiffs-in-Counterclaim and Crossclaim <br><br> v. <br><br> PROFESSIONAL SERVICES GROUP, INC., <br><br> Defendant-in-Counterclaim, <br><br> and <br><br> MICHAEL SAUSE, <br><br> Crossclaim Defendant | Civil No. 04-11131-PBS |

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
<u>DOCUMENTS TO DEFENDANT TOWN OF ROCKLAND</u>**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Professional Services Group, Inc. hereby requests that Defendant Town of Rockland produce for inspection and copying the documents described below at the offices of Dwyer & Collora, LLP, 600 Atlantic Avenue, Boston, MA 02210 within thirty (30) days.

## DEFINITIONS

A.  "PSG" refers to Plaintiff Professional Services Group, Inc. and each of its parents, subsidiaries, affiliates, predecessors, successors, agents, servants, employees, officers, directors, shareholders, representatives, investigators, consultants, insurers, accountants and attorneys, as well as all persons formerly holding such a position, and including but not limited to Veolia Water North America Operating Services, LLC, f/k/a USFilter Operating Services, Inc.

B.  "Rockland," "you" and "your" refer to Defendants Town of Rockland and Rockland Sewer Commission and each of their departments, agencies, commissions, agents, servants, employees, representatives, investigators, consultants, insurers, accountants and attorneys, as well as all persons formerly holding such a position.

C.  "Sause" refers to Defendant Michael Sause.

D.  "Thomson" refers to Defendant Gregory Thomson.

E.  "Woodard & Curran" refers to Woodard & Curran and each of its parents, subsidiaries, affiliates, predecessors, successors, agents, servants, employees, officers, directors, shareholders, representatives, investigators, consultants, insurers, accountants and attorneys, as well as all persons formerly holding such a position.

F.  "Camp Dresser McKee" refers to Camp Dresser McKee and each of its parents, subsidiaries, affiliates, predecessors, successors, agents, servants, employees,

officers, directors, shareholders, representatives, investigators, consultants, insurers, accountants and attorneys, as well as all persons formerly holding such a position.

G.  "Office of the Inspector General" refers to the Office of the Inspector General for the Commonwealth of Massachusetts and each of its directors, officers, employees, agents, servants, consultants, representatives and investigators, as well as all persons formerly holding such a position.

H.  "Plymouth County District Attorney" refers to the District Attorney's Office for Plymouth County, Massachusetts and each of its attorneys, employees, agents, servants, consultants, representatives and investigators, as well as all persons formerly holding such a position.

I.  "Complaint" refers to the Complaint and Jury Demand in this action.

J.  "Counterclaim" refers to the Counterclaim by Defendants Town of Rockland and Rockland Sewer Commission in this action.

K.  "1994 Contract" refers to the contract, and any amendments thereto, referenced in Paragraph 12 of the Complaint.

L.  "1998 Contract" refers to the contract, and any amendments thereto, referenced in Paragraph 13 of the Complaint.

M.  "RFP" refers to the Request for Proposals, and any amendments thereto, referenced in Paragraph 19 of the Counterclaim.

N.  "Sewer Plant" refers to the facility referenced in Paragraph 5 of the Counterclaim.

O. "Rockland's Initial Disclosures" refers to Defendants'/Counterclaimants' Automatic Discovery Pursuant to Local Rule 26.2 and Federal Rule of Civil Procedure 26(a) in this action.

P. "Document" refers to any original written record or graphic matter (or when the original is not in Rockland's possession, custody or control, a carbon or other identical copy), however produced or reproduced, discoverable, and each copy of the original that contains any attachments, notes or markings not contained in or on the original, including without limitation the following whether printed, recorded or produced by hand: agreements, communications, correspondence, electronic mail, telegrams, memoranda, summaries or records of personal conversations or interviews, diaries, graphs, reports, notebooks, charts, plans and specifications, drawings, notes, reports, sketches, maps, summaries or records of meetings or conferences, summaries or reports of meetings or negotiations, progress reports, opinions or reports of consultants, photographs, motion picture films, brochures, pamphlets, advertisements, circulars, press releases, drafts, letters, any marginal comments appearing on any document, sound recordings or transcripts thereof, accounts ledgers, financial records, corporate records, newspapers, magazines and other publications and clippings therefrom, estimates, engineer's reports, licenses, permits, requisitions, invoices, leases, assignments, microfilm, and computer printouts or other data together with any materials required for the reasonable interpretation thereof, in Rockland's possession or control. A document also includes, without limitation, any computer disc or the contents of any device for the light sensitive, electronic or magnetic storage or reproduction of written or oral words or images. A document in the possession, custody or

control of another person is considered to be in Rockland's possession, custody or control if Rockland has a right or privilege to examine it upon request or demand.

Q. "Communication" refers to any oral or written transmittal of information, or request for information made from one person or entity to another person or entity, whether made orally in person or by telephone, or by written, electronic or any other means, or a document made for the purpose of recording communications, ideas, statements, opinions or beliefs.

R. "Relating to" includes, but is not limited to, referring to, concerning, embodying, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, constituting, illustrating, depicting, summarizing, mentioning, reporting, evidencing, supporting, contradicting or rebutting, directly or indirectly.

S. "And" includes both "and" and "or."

## SPECIAL INSTRUCTIONS

1. Each request shall be continuing, and you shall be obliged to provide supplemental answers with respect to the matters set forth.

2. Regarding documents called for by these requests as to which you claim a privilege or which you contend are not subject to production, please provide at the time of production set forth above, a listing which describes each document and states with respect to each document:

      a. the type of document (e.g., letter, memorandum, report, etc.);

      b. the date;

      c. the title;

      d. the number of pages;

  e. the author or addresser;

  f. the names and addresses of any persons who have received and/or who have obtained a copy of the document;

  g. the subject matter of the document; and

  h. the factual and legal basis of the claim of privilege or ground of non-production asserted with respect to the document.

3. If you contend that you are unable to fully and completely produce the documents requested herein, or any portion thereof, after exercising due diligence to locate those documents, please so state, specifying the basis for such limited production, stating the reasons for the inability to produce the documents requested, stating whether said documents have been destroyed and why, and describing whatever information or knowledge you have concerning the location of such documents.

4. You must respond to each request separately and if you do not have any documents of the type described in a particular request, so state.

5. Unless the context clearly requires otherwise, this request for documents includes all documents within your custody or control, those within the custody or control of each of your attorneys, servants, and/or employees, and those to which any of the above-named persons has access.

6. Where appropriate, the use of the singular includes the plural and the use of the plural includes the singular.

7. Unless otherwise indicated, these requests relate to documents from 1994 to the present.

## DOCUMENTS REQUESTED

1. All of Thomson's personnel records as defined by Mass. Gen. L. ch. 149, § 52C.

2. All documents relating to the negotiation and execution of the 1994 Contract, including but not limited to all drafts of the 1994 Contract and all communications relating to such drafts.

3. All documents reflecting minutes or notes of any meetings at which the negotiation, execution, performance or breach of the 1994 Contract was discussed.

4. All communications between PSG and Rockland relating to the 1994 Contract.

5. All requests for proposals relating to the 1994 Contract.

6. All documents relating to the negotiation and execution of the 1998 Contract, including but not limited to all drafts of the 1998 Contract and all communications relating to such drafts.

7. All documents reflecting minutes or notes of any meetings at which the negotiation, execution, performance or breach of the 1998 Contract was discussed.

8. All communications between PSG and Rockland relating to the 1998 Contract.

9. All documents relating to Rockland's engagement of Camp Dresser McKee to operate, maintain, manage, and/or audit, or otherwise provide services to, the Sewer Plant.

10. All communications between Rockland and Camp Dresser McKee during the period 2002 to the present relating to the operation, maintenance, management, and/or audit of, or other provision of services to, the Sewer Plant.

11. All documents relating to the drafting, preparation and issuance of the RFP.

12. All communications relating to the RFP.

13. All communications between Rockland and Woodard & Curran relating to the operation, maintenance and/or management of the Sewer Plant.

14. All documents relating to the allegation in Paragraph 19 of the Counterclaim that the RFP was prepared by Thomson "at the direction of Sause."

15. All documents relating to the allegation in Paragraph 21 of the Counterclaim that the RFP "was intentionally written by Thomson and Sause to include requirements that favored PSG."

16. All documents relating to the allegation in Paragraph 25 of the Counterclaim that Woodard & Curran "was ready and willing to perform the work required by the RFP for a fee significantly less than the fee paid to PSG."

17. All documents relating to the allegation in Paragraph 26 of the Counterclaim that Woodard & Curran "declined to submit a proposal to the Town because of the proprietary nature of the RFP."

18. All documents relating to the allegation in Paragraph 27 of the Counterclaim that the 1998 Contract "was not awarded based upon the most advantageous proposal from a responsible and responsive offeror."

19. All documents relating to the review, approval or acceptance by any entity of the RFP.

20. All documents relating to the review, approval or acceptance by any entity of PSG's proposal in response to the RFP.

21. All documents provided by Rockland to the Office of the Inspector General in connection with the investigation referenced in Paragraph 29 of the Counterclaim.

22. All communications between Rockland and the Office of the Inspector General relating to the investigation referenced in Paragraph 29 of the Counterclaim.

23. All communications between Rockland and the Plymouth County District Attorney relating to any investigation of Sause and/or Thomson in connection with the Sewer Plant, the 1998 Contract and/or the indictment referenced in Paragraph 30 of the Counterclaim.

24. All documents provided by Rockland to the Plymouth County District Attorney in connection with any investigation of Sause and/or Thomson relating to the Sewer Plant, the 1998 Contract and/or the indictment referenced in Paragraph 30 of the Counterclaim.

25. All documents provided by Rockland to any auditing firm, or any employee, servant, agent, consultant or representative thereof, in connection with the audit referenced in Paragraph 31 of the Counterclaim.

26. All communications between Rockland and any auditing firm, or any employee, servant, agent, consultant or representative thereof, relating to the audit referenced in Paragraph 31 of the Counterclaim.

27. All documents relating to the "significant fraudulent activity by PSG" referred to in Paragraph 32 of the Counterclaim.

28. All documents relating to the allegation in Paragraph 33 that PSG "converted public funds."

29. All documents relating to any and all "unauthorized bank accounts into which PSG deposited public funds" as alleged in Paragraph 34 of the Counterclaim, including but not limited to statements of account and records of deposits and withdrawals.

30. All documents relating to the allegation in Paragraph 38 that "PSG used public funds to make unauthorized expenses in an amount totaling no less than $76,593.51."

31. All documents relating to the rebating of monies allocated in the Allowance Accounts described in Paragraph 40 of the Counterclaim, including but not limited to all documents relating to the allegation in Paragraph 42 of the Counterclaim that PSG "failed to rebate" Rockland "no less than $119,599.55" during the first four years of the 1998 Contract.

32. All documents demonstrating, establishing or reflecting Rockland's ownership of or title to the property identified in Paragraph 44 of the Counterclaim.

33. All documents relating to the allegation in Paragraph 44 of the Counterclaim that PSG "absconded with" the property of Rockland.

34. All documents relating to the allegations in Paragraphs 64, 69 and 74 of the Counterclaim that PSG gave "money" and paid "compensation" to Thomson.

35. All documents constituting requests for proposals issued by Rockland during the period 1995 to the present.

36. All documents constituting requests for proposals issued by the Rockland Sewer Commission during the period 1995 to the present.

37. All contracts from 2002 to the present relating to the operation, maintenance, and/or management of the Sewer Plant, including but not limited to all such contracts with Camp Dresser McKee and/or Aquarion.

38. All documents reflecting payments by Rockland from 1995 to the present pursuant to all contracts for the operation, maintenance and/or management of the Sewer Plant, including but not limited to the 1994 Contract, the 1998 Contract, and any contracts with Camp Dresser McKee and/or Aquarion.

39. All documents reflecting the costs incurred for the operation, maintenance and/or management of the Sewer Plant from 1995 to the present by any entity which contracted with Rockland for the operation, maintenance and/or management of the Sewer Plant, including but not limited to PSG, Camp Dresser McKee and/or Aquarion.

40. All documents relating to any statement, whether oral, written or recorded, by any witness or potential witness regarding any facts alleged in the Complaint.

41. All documents relating to any statement, whether oral, written or recorded, by any witness or potential witness regarding any facts alleged in the Counterclaim.

42. All documents relating to any statement, whether oral, written or recorded, by any witness or potential witness regarding any facts alleged in the Crossclaim.

43. All documents relating to any affirmative defenses that Rockland has raised or anticipates raising in this litigation.

44. All documents relating to any damages alleged in the Counterclaim.

45. All documents identified in Section B of Rockland's Initial Disclosures.

46. All documents relied on in producing the preliminary computation of damages set forth in Section C of Rockland's Initial Disclosures.

47. For all persons identified by Rockland as an expert witness in this action, all documents reviewed, consulted or relied on by such persons in such capacity.

48. All policies of insurance which might provide coverage of any claim alleged in the Complaint.

49. All documents which Rockland intends to mark as an exhibit, to use as a chalk or to introduce into evidence at the trial on this matter.

PROFESSIONAL SERVICES GROUP, INC.,
By its attorneys,

/s/ Maria R. Durant
Maria R. Durant (BBO # 558906)
David M. Osborne (BBO # 564840)
Sara E. Noonan (BBO # 645293)
DWYER & COLLORA, LLP
Federal Reserve Plaza
600 Atlantic Avenue, 12th Floor
Boston, MA 02210
(617) 371-1000

DATED: December ___, 2004

## CERTIFICATE OF SERVICE

I, David M. Osborne, hereby certify that, on this 17th day of December, 2004, I caused the foregoing document to be served by hand on Joanne D'Alcomo, Esq., counsel for the Town of Rockland, at Jager Smith P.C., One Financial Center, Boston, MA 02111.

_____
David M. Osborne