UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
_____
                                      )
PROFESSIONAL SERVICES                 )
GROUP, INC.,                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )
                                      )
TOWN OF ROCKLAND, ROCKLAND            )
SEWER COMMISSION, GREGORY             )
THOMSON and MICHAEL SAUSÉ,            )
                                      )
_____ )
                                      )
TOWN OF ROCKLAND, ROCKLAND            )
SEWER COMMISSION,                     )
                                      )
            Plaintiffs-in-Counterclaim )    Civil No. 04-11131-PBS
            and Crossclaim            )
                                      )
      v.                              )
                                      )
PROFESSIONAL SERVICES                 )
GROUP, INC.,                          )
                                      )
            Defendant-in-Counterclaim, )
                                      )
and                                   )
                                      )
MICHAEL SAUSÉ,                        )
                                      )
            Crossclaim Defendant      )
_____ )
```

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
RULE 12(b)(6) MOTION TO DISMISS
<u>DEFENDANTS' COUNTERCLAIM UNDER THE UNIFORM PROCUREMENT ACT</u>**

Plaintiff Professional Services Group, Inc. ("PSG") has moved pursuant to Fed. R. Civ.

P. 12(b)(6) ("Rule 12(b)(6)") to dismiss Defendants' counterclaim under the Massachusetts

Uniform Procurement Act, Mass. Gen. L. c. 30B, § 17(c) ("the Procurement Act" or "the Act"). As discussed below, Defendants have distorted the Procurement Act in bringing their counterclaim in this case and, in doing so, have brought a claim where they have no right of action. Because the Procurement Act provides no right of action to Defendants, the Court should dismiss Defendants' Procurement Act counterclaim (Count VII).

## BACKGROUND

Defendants and Plaintiffs-in-Counterclaim Town of Rockland ("Town") and the Rockland Sewer Commission ("Sewer Commission") have brought fourteen counts in their counterclaim against Plaintiff and Defendant-in-Counterclaim PSG, including an unprecedented claim for penalties and multiple damages under § 17(c) of the Procurement Act. Defendants allege that "PSG violated the Uniform Procurement Act by conspiring to cause a contract to be solicited and awarded in violation thereof." See Counterclaim ¶ 79. Defendants support this theory by alleging that Michael Sause, an employee of PSG, and Gregory Thomson, an employee of the Rockland Sewer Commission, worked together to write the request for proposal ("RFP") for a contract to operate the Rockland Wastewater Treatment Facility (the "1998 Contract"), such that the RFP "amounted to a proprietary specification" in violation of the Procurement Act. See Counterclaim ¶¶ 19-23; Joint Pretrial Memorandum at 9-10 (Defendants' Summary); see also Mass. Gen. L. c. 30B, § 14. After PSG operated under the 1998 Contract for six years, Defendants declared it invalid. See Complaint ¶ 19; Counterclaim ¶ 48. Now, Defendants seek to recover multiple damages and penalties from PSG, pursuant to § 17(c) of the Procurement Act, based on the conduct of their own employee, Thomson, and on PSG's vicarious liability for the conduct of Sause.

The Procurement Act has never before been used to support a claim such as Defendants'. Section 17(b) of the Procurement Act provides that "a contract made in violation" of the Act "shall not be valid." Section 17(c) provides:

> A person who causes or conspires with another to cause a contract to be solicited or awarded in violation of a provision of [the Procurement Act] shall forfeit and pay to the appropriate governmental body a sum of not more than two thousand dollars for each violation. In addition, the person shall pay double the amount of damages sustained by the governmental body by reason of the violation, together with the costs of any action. If more than one person participates in the violation, the damages and costs may be apportioned among them.

c. 30B, § 17(c). More importantly for the present motion, § 17(d) expressly grants enforcement authority for § 17(c), stating: "The inspector general shall have authority to institute a civil action to enforce paragraph (c) if authorized by the attorney general." See § 17(d).

Few cases have previously interpreted the provisions of §§ 17(c) and 17(d), and none of those cases involves allegations, like those of Defendants, by a government body seeking to recover from a contractor on a theory of vicarious liability, where the government body's own employee was an equal participant in any conduct that allegedly violated the Act. Defendants' tortured interpretation of the Procurement Act, and application of the Act to their allegations in this case, seeks to expand the Act and include a right of action for Defendants under § 17(c) where they have none.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must "accept as true all well-pleaded allegations and give plaintiffs the benefit of all reasonable inferences." Cooperman v. Individual, Inc., 171 F.3d 43, 47 (1st Cir. 1999). The Court may consider "not only the complaint but also matters fairly incorporated within it

and matters susceptible to judicial notice…. [including] matters of public record in deciding a Rule 12(b)(6) motion." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15-16 (1st Cir. 2003). The court is "not bound, however, to credit bald assertions [and] unsupportable conclusions … woven into the fabric of the complaint." Id. at 15.

A Rule 12(b)(6) motion "is covered by Rule 12(h)(2), which states that '[a] defense of failure to state a claim upon which relief can be granted … may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.'" Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 387-88 (1st Cir. 2001). Therefore, a Rule 12(b)(6) motion to dismiss "constitutes an exception to the consolidation requirement of Rule 12(g)" and "may be raised at any time in the proceedings before disposition on the merits." Id.

## ARGUMENT

**I.   Section 17(c) Provides No Right of Action to Defendants for Their Procurement Act Counterclaim**

A right of action under a statute may be express or implied. However, "a clear legislative intent is necessary to infer" a cause of action from a statute. Loffredo v. Ctr. for Addictive Behaviors, 426 Mass. 541, 543 (1998); see also Lindsey v. Massios, 372 Mass. 79, 84-85 (1977) (requiring "clear legislative intent to create a cause of action"). Thus, courts should be "reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference." Loffredo, 426 Mass. at 544. A "violation of a statute that leads to a plaintiff's injury may figure as an element in an otherwise available cause of action, rather than … provid[ing] a plaintiff with a new cause of action." Id. (citing Berdos v. Tremont & Suffolk Mills, 209 Mass. 489, 496 (1911)).

4

In determining whether an implied right of action exists under a statute, a court should first consider "whether the statute creates a right in favor of the plaintiff distinct from the public at large." See All Brands Container Recovery, Inc. v. Merrimack Valley Distrib. Co., Inc., 54 Mass. App. Ct. 297, 300 (2002). The creation of a distinct right, however, is not alone sufficient to establish an implied cause of action in a statute. See id. A court must "next consider whether there is any indication of legislative intent to create or deny" an implied right of action to enforce the distinct rights that the statute creates. See id. at 301.

The Procurement Act provides "no hint" of a right of action for Defendants in this case under § 17(c). See id. The Procurement Act certainly contains no express right of action for their claim. See §§ 17(c), 17(d). Instead, the Act specifically assigns enforcement authority for § 17(c) to the inspector general. See § 17(d). When a right of enforcement "is expressly conferred upon specified public officers," it may be assumed that the Legislature did not intend to create a cause of action for other parties, as well. See Local 1445, UFCW v. Police Chief of Natick, 29 Mass. App. Ct. 554, 558 (1990); see also All Brands, 54 Mass. App. Ct. at 302 (citing Local 1445, UFCW). This is because, "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." Loffredo, 426 Mass. at 547 (quoting Transamerica Mtge. Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979)); accord Local 1445, UFCW, 29 Mass. App. Ct. at 558 ("When a statute confers standing in relation to particular subject matter, that statute, rather than more general ideas about standing, governs who may initiate legal action in relation to the subject matter.").

The Procurement Act does not grant enforcement authority for § 17(c) to the inspector general and any town or governmental body that alleges harm under § 17(c). Section 17(d) does not mention any action by the "appropriate governmental body," or by any other entity, under §

5

17(c).  In contrast, the Conflict of Interest Statute, for example, under which Defendants have also brought claims in this case, provides that "the district attorney *or* the city or town *or* state may bring a civil action" to enforce certain provisions of the statute.  Mass. Gen. L. c. 268A, § 21(b) (emphasis added).  Presumably, the Legislature intentionally did <u>not</u> include "the city or town" in § 17(d) as it had in § 21(b), which was enacted prior to § 17(d).[1]  See Commonwealth v. Katsirubis, 45 Mass. App. Ct. 132, 136 (1998) ("The Legislature is presumed to act with full knowledge of existing laws, including statutes." (quotation and citation omitted)); see also In re Liquidation of Am. Mut. Liability Ins. Co., 440 Mass. 796, 803 (2004) ("The Legislature is presumed to understand all of the consequences of its actions, and is presumed to have acted rationally and reasonably." (quotation and citation omitted)).[2]

Moreover, the language of § 17(d) is mandatory, not permissive—it does not suggest that the Inspector General <u>may</u> bring an action to enforce § 17(c) <u>in addition to</u> any town or governmental body that alleges harm under § 17(c).  Cf. c. 268A, § 21(b); Mass. Gen. L. c. 44B, § 15  (damages for harm to municipal real property "*may* be recovered in a civil action brought by the city or town *or*, upon request of the city or town, by the attorney general" (emphasis added)).  It states simply and exclusively that "The inspector general *shall* have authority to institute a civil action to enforce paragraph (c) if authorized by the attorney general."  See § 17(d) (emphasis added).  The inspector general's office, itself, has interpreted § 17(d) as "a specific statutory mandate" for the office to enforce § 17(c).  See Office of the Inspector General,

---

[1]  Section 17 of c. 30B was enacted in 1989.  Section 21 of c. 268A was enacted in 1962.

[2]  The fact that Defendants have brought several counts against PSG under the express cause of action provision of c. 268A emphasizes that c. 268A, <u>not</u> c. 30B, addresses conduct of the kind that Defendants allege with a cause of action for Defendants.  See c. 268A, § 21(b).  Unlike with c. 30B, Defendants may bring causes of action under c. 268A to address their allegations, and have done so.

6

Municipal, County, District, and Local Authority Procurement of Supplies, Services, and Real Property, at 7 (4th ed. 2000) (hereinafter "Procurement Manual") available at www.mass.gov/ig/publ/30bmanl.pdf.

The Legislature's grant of authority for enforcement of § 17(c) to the inspector general, and only to the inspector general, is entirely consistent with the Legislature's conception of the inspector general's office and its authority. As the Legislature has explained in the statute that establishes the purpose of the inspector general's office,

> The office of inspector general *shall act* to prevent and detect fraud, waste and abuse in the expenditure of public funds, whether state, federal, or local, or relating to programs and *operations involving the procurement of* any supplies, services, or construction, by agencies, bureaus, divisions, sections, departments, offices, commissions, institutions and activities of the commonwealth, including those districts, authorities, instrumentalities or political subdivisions created by the general court and *including the cities and towns*.

Mass. Gen. L. c. 12A, § 7 (emphasis added); see also c. 12A, § 11 (general grant of authority to inspector general's office "to institute a civil recovery action if authorized by the attorney general"). The Legislature's grant of enforcement authority exclusively to the inspector general also comports with the Act's purpose of providing "uniform" procurement procedures to Massachusetts municipalities by ensuring uniform enforcement of the municipal rights created under § 17(c). See Procurement Manual, supra, at 1 (discussing Act's purpose).

In investing enforcement authority expressly in the inspector general, the Legislature could have provided some indication of legislative intent by which a court could infer a cause of action for Defendants. For example, if the Legislature in § 17(d) had limited the inspector general's enforcement to only certain of the "distinct" rights established in § 17(c), or had not included § 17(d) in the Act at all, then Defendants might be better able to assert a right of action

7

under § 17(c). Cf. Gabriel v. Borowy, 324 Mass. 231, 234 (1949) ("Where a statutory right is conferred upon a class of individuals as distinguished from the public at large *but no remedy is provided by the statute for the enforcement of the right*, the right may be asserted by any appropriate common law remedy that is available." (emphasis added)). In contrast, the Legislature's express assignment of enforcement authority for § 17(c) exclusively to the inspector general confirms that the Legislature intended to invest such authority in the inspector general alone. See Katsirubis, 45 Mass. App. Ct. at 136; In re Liquidation, 440 Mass. at 803.

Notably, defendants do not seek to establish truly an implied private right of action in § 17(c), as is often the case with plaintiffs seeking an implied right of action under a statute, see, e.g., All Brands, 54 Mass. App. Ct. at 302, and as has often been the case with other provisions of c. 30B, see infra. Defendants, a town and a municipal commission, are trying to infer a right of public enforcement in addition to the express right the Legislature created and assigned in § 17(d) to the inspector general. Accord Town of Middleborough v. Housing Appeals Comm., 66 Mass. App. Ct. 39, 42 (2006) (court "presume[d] that the Legislature took care in delineating precisely the subjects upon which each level of government was entitled to act" in enacting housing statute).

In All Brands, the Court of Appeals held that Mass. Gen. L. c. 94, § 327 (the "bottle bill"), does not contain a right of action other than the right of action that the bottle bill specifically assigns. The Court of Appeals held that the bottle bill creates "distinct statutory rights" in "redemption centers" like the plaintiff in the case. See 54 Mass. App. Ct. at 300-01. The Court of Appeals also noted, however, that the statute explicitly states that "the attorney general and district attorneys *shall* enforce" its provisions. See id. at 301-02 (quoting § 327 (emphasis added)). The Court of Appeals concluded "that no private right of action should be

read into the bottle bill, given the inclusion and articulation of the *express public enforcement provision* and the absence of any indication, explicit or implicit, of a legislative intent to create a private right of action." Id. at 303 (emphasis added); see also Estate of Talarico v. City of Cambridge, No. 9702240, 1999 WL 1337516, at *2 (Mass. Super. 1999) (holding that no private right of action exists under a personnel records statute, Mass. Gen. L. c. 149, § 52C, which states that the statute "*shall* be enforced by the attorney general" (emphasis added)).

Unfortunately, in Town of Lunenburg v. Carlson, No. 03-573A, 2005 WL 937730 (Mass. Super. 2005), the only case to address specifically the existence of an implied right of action under §§ 17(c) and 17(d), the Superior Court misapplied the Court of Appeals decision in All Brands. In Lunenburg, the Town of Lunenburg sought to recover from its own Superintendent of Schools who had procured school supplies from a "company" that was allegedly, in reality, his own alter ego. 2005 WL 937730, at *1.

Although the Lunenburg court cited only All Brands in its discussion of §§ 17(c) and 17(d), the court went well beyond the Court of Appeals holding in All Brands in its decision.[3] The Lunenburg court analyzed the Procurement Act on the basis that §§ 17(c) and 17(d) contain no "express reservation for public actions," despite the lack of any exclusivity requirement in the All Brands decision or "express reservation" in the bottle bill. See id. The court also analyzed § 17(c), without citation to any precedent or other authority, on the basis that the Procurement Act contains no "express prohibition" on who may bring an action to enforce that right, even though the bottle bill does not contain such a prohibition either. See Lunenburg, 2005 WL 937730, at

---

[3] The Lunenburg court stated that in their briefs to the court, the defendants in that case "cite[d] no authority, cases or otherwise, supporting their interpretation" that §§ 17(c) and 17(d) contain no implied right of action, and cited All Brands only at oral argument on their motion. See 2005 WL 937730, at *2. Therefore, the Lunenburg court, which cited no authority other than All Brands in its decision, did not have the benefit of comprehensive briefing on All Brands and its implications. See id. at *2-3.

*2-3; see also Estate of Talarico, 1999 WL 1337516, at *2 (holding that no private right of action exists under personnel records statute, which states that the "attorney general shall enforce" the statute but contains no "express reservation" or "express prohibition").

The Superior Court in Lunenburg also attempted to distinguish the Court of Appeals' result in All Brands by differentiating between the express grants of enforcement authority in the two statutes. The Lunenburg court stated that " public law officers were *required* to initiate litigation to enforce the bottle bill," whereas the inspector general is not so required under the Procurement Act, and stated that the grant of enforcement authority in § 17(d) was "not as limiting" as the comparable language in the bottle bill. See Lunenburg, 2005 WL 937730, at *3 (emphasis added).[4]

The Lunenburg court's conclusion regarding the express grants of enforcement authority in the two statutes amounts to a distinction without a difference. There is no substantive difference between the Legislature's statement that the attorney general and district attorneys "*shall* enforce" a statute, c. 94, § 327 (emphasis added), and the Legislature's statement that the inspector general "*shall* have authority to institute a civil action to enforce" a statute, c. 30B, § 17(d) (emphasis added). Accord c. 12A, § 7 ("The office of inspector general *shall act* to prevent and detect fraud … relating to … the procurement of any supplies, services, or construction, by … cities and towns." (emphasis added)). The attorney general is no more *required* to bring an action under the bottle bill than the inspector general is under § 17(d). When the Legislature commends enforcement of a statute to the attorney general, for example, the attorney general maintains discretion to bring an action to enforce that statute, and "may

---

[4] The Superior Court decision in Lunenburg was never appealed and the case settled. See Massachusetts Trial Court Information Center, Docket No. WOCV2003-00573, at http://ma-trialcourts.org.

decline to pursue litigation which in his opinion will not further the interests of the Commonwealth and the public." See Clerk of Superior Court for Middlesex County v. Treasurer & Receiver Gen., 386 Mass. 517, 526 (1982). Sections 17(c) and 17(d), like the bottle bill, explicitly create a mandatory right of action in a public official with no corresponding right of action in anyone else to enforce the statute, and therefore, like the bottle bill, contain no additional implied right of action. See Loffredo, 426 Mass. at 547; Local 1445, UFCW, 29 Mass. App. Ct. at 558.[5]

Other cases have allowed private rights of action to enforce other provisions of the Procurement Act, such as the invalidation of a contract under § 17(b). These cases typically involve aggrieved bidders who have lost out in the procurement process bringing an action against a governmental body to declare a contract invalid. See generally, e.g., Vining Disposal Service, Inc v. Board of Selectmen of Westford, 416 Mass. 35 (1993) (disappointed bidder seeking declaratory judgment that bidding process did not meet Act requirements and therefore is invalid); N. Suburban Transp., Inc. v. City of Woburn School Comm., No. 973711, 1998 WL 1284165 (Mass. Super. 1998) (same). More importantly, there is no provision comparable to § 17(d) that explicitly assigns enforcement authority for provisions of the Act other than § 17(c). In other words, enforcement of other provisions of the Act, unlike § 17(c), is not specifically assigned to the inspector general or any other public official. Cf. Gabriel, 324 Mass. at 234 (discussing implied right of action where statute creates a right without a remedy). The availability of an implied private right of action to enforce these other provisions of the Act does

---

[5] The Lunenburg court's final basis for its conclusion—that towns have a general right to sue— is inapposite because it would give municipalities a right of action in every statute that creates a municipal right. See 2005 WL 937730, at *3. Such a principle ignores the standards for inferring a right of action from a statute. See supra (citing Loffredo, 426 Mass. at 547; Local 1445, UFCW, 29 Mass. App. Ct. at 558; All Brands, 54 Mass. App. Ct. at 301-02).

11

not extend to § 17(c) where enforcement authority under § 17(c) is expressly granted in § 17(d). See <u>Estate of Talarico</u>, 1999 WL 1337516, at *2 (the "availability of judicial process" under one statutory provision does not convey a right of action under another).

Of course, Defendants' counterclaim allegations in this case are irrelevant to whether they have a right of action under §§ 17(c) and 17(d) to bring them. As the Supreme Judicial Court has explained on a closely related issue,

> not every party who can claim injury as a result of violations of a statute or regulation has standing to bring an action thereunder. This is true even where a literal reading of the statute … would appear to provide a broader grant of standing.

<u>Beard Motors, Inc. v. Toyota Motor Distrib., Inc.</u>, 395 Mass. 428, 431 (1985). Therefore, any damages that Defendants allege they suffered as a result of a Procurement Act violation cannot provide them with a right of action where the statute itself does not. Because the Act provides no right of action, express or implied, to Defendants in this case, they have no basis for their counterclaim under § 17(c) of the Act.

**CONCLUSION**

For all the foregoing reasons, PSG requests that the Court grant PSG's Rule 12(b)(6) motion to dismiss Defendants' counterclaim under the Massachusetts Uniform Procurement Act (Count VII).

                                    Respectfully submitted,

                                    /s/ Sara Noonan
                                  Maria R. Durant (BBO # 558906)
                                  David M. Osborne (BBO # 564840)
                                  Sara E. Noonan (BBO # 645293)
                                  DWYER & COLLORA, LLP
                                  Federal Reserve Plaza
                                  600 Atlantic Avenue, 12th Floor
                                  Boston, MA  02210
                                  (617) 371-1000

Dated: July 10, 2006

**CERTIFICATE OF SERVICE**

I, Sara E. Noonan, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on July 10, 2006.

                                  /s/ Sara Noonan
                                  Sara E. Noonan