UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                               )
PROFESSIONAL SERVICES                          )
GROUP, INC.,                                   )
                                               )
            Plaintiff,                         )
                                               )
      v.                                       )
                                               )
TOWN OF ROCKLAND, ROCKLAND                     )
SEWER COMMISSION, GREGORY                       )
THOMSON and MICHAEL SAUSÉ,                      )
                                               )
            .                                  )
_____)
                                               )
TOWN OF ROCKLAND, ROCKLAND                     )
SEWER COMMISSION,                              )
                                               )
            Plaintiffs-in-Counterclaim         )      Civil No. 04-11131-PBS
            and Crossclaim                     )
                                               )
      v.                                       )
                                               )
PROFESSIONAL SERVICES                          )
GROUP, INC.,                                   )
                                               )
            Defendant-in-Counterclaim,         )
                                               )
and                                            )
                                               )
MICHAEL SAUSÉ,                                 )
                                               )
            Crossclaim Defendant               )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
RULE 12(b)(6) MOTION TO DISMISS
DEFENDANTS' CLAIMS BASED UPON PLAINTIFF'S VICARIOUS LIABILITY**

      Plaintiff Professional Services Group, Inc. ("PSG") has moved pursuant to Fed. R. Civ.

P. Rule 12(b)(6) ("Rule 12(b)(6)") to dismiss certain counts in Defendants' counterclaim against

PSG because Defendants have executed a general waiver of their claims against Michael Sause ("Sause") in this case.  In Massachusetts, a general waiver of an agent's liability precludes a claim against his principal that is based solely on the theory of respondeat superior unless the waiver contains a very specific express reservation of claims against the principal.  Because the general waiver of claims against Sause that Defendants have executed contains no such reservation, the Court should dismiss all of the counts in Defendants' counterclaim that are based on a theory of respondeat superior, including Count I (fraud), Counts IV, V, and VI (c. 268A), Count VII (c. 30B), Count IX (conversion), Count X (civil conspiracy), Count XII (PSG's respondeat superior liability for Sause), and Count XIV (negligent misrepresentation).

## BACKGROUND

In their response to PSG's complaint in this case, Defendants Town of Rockland ("Town") and Rockland Sewer Commission ("Commission") brought a counterclaim against PSG and a cross-claim against Sause, a former employee of PSG.  Both the counterclaim against PSG and the cross-claim against Sause concern liability for Sause's alleged wrongful conduct in working with Gregory Thomson, an employee of the Commission, to write the request for proposal ("RFP") for a contract to operate the Rockland Wastewater Treatment Facility (the "1998 Contract"), such that the RFP "amounted to a proprietary specification" in violation of the Uniform Procurement Act, Mass. Gen. L. c. 30B.  See Counterclaim ¶¶ 19-23; Cross-Claim ¶¶ 7-12.  Both the counterclaim and the cross-claim also allege that Sause established unauthorized bank accounts and converted public funds, and that Sause committed various acts in violation of the Conflict of Interest Statute, Mass. Gen. L. c. 268A.  See Counterclaim ¶¶ 33-38; Cross-Claim ¶¶ 22-27, 34, 39, 44.

On January 20, 2006, while this case was pending before this Court, Sause filed a

voluntary bankruptcy petition in the U.S. Bankruptcy Court for the District of Delaware. See In

re: Michael R. Sause, No. 06-10059-MFW (Bankr. Del.). On April 25, 2006, the Town granted a

general waiver to Sause for its claims against him in this case. The general waiver was part of a

stipulation that the Town entered into with Sause (the "Debtor") for a limited modification of the

automatic stay. See Stipulation By and Between Debtor and Town of Rockland, Massachusetts

for Limited Modification of Automatic Stay, Nunc Pro Tunc ("Stipulation"), In re: Michael R.

Sause, No. 06-10059-MFW (Bankr. Del. Apr. 25, 2006) (attached hereto as Attachment A). The

Stipulation noted:

> **WHEREAS,** the Debtor and Rockland, among others, are parties
> to a certain civil action pending in the United States District Court
> for the District of Massachusetts and styled as Professional
> Services Group, Inc. et al. v. Town of Rockland, et al., Civil
> Action No. 04-11131-PBS initiated by summons and complaint on
> or about May 28, 2004 (the "Civil Action"); and
>
> **WHEREAS,** Rockland holds one or more civil claims against the
> Debtor that it asserted in the Civil Action (the "Rockland Claims")
> ….

The Stipulation also stated that the Town wanted to obtain discovery from Sause and that, in

order to do so, the automatic stay in bankruptcy required modification. Therefore, the

Stipulation states:

> 2. Waiver of Rockland Claims:  In exchange for the modifications
> of the Automatic Stay provided for herein, Rockland agrees to, and
> hereby does waive the Rockland Claims, both as to the Debtor and
> as to the Debtor's estate.

The Stipulation makes no explicit reference to any claims against PSG, to allegations of PSG's

liability, or to PSG generally. In fact, apart from its reference to the name of this case, the

Stipulation does not explicitly mention PSG at all.

**STANDARD OF REVIEW**

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must "accept as true all well-pleaded allegations and give plaintiffs the benefit of all reasonable inferences." Cooperman v. Individual, Inc., 171 F.3d 43, 47 (1st Cir. 1999). The Court may consider "not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice…. [including] matters of public record in deciding a Rule 12(b)(6) motion." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15-16 (1st Cir. 2003). The Court is "not bound, however, to credit bald assertions [and] unsupportable conclusions … woven into the fabric of the complaint." Id. at 15.

A Rule 12(b)(6) motion "is covered by Rule 12(h)(2), which states that '[a] defense of failure to state a claim upon which relief can be granted … may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.'" Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 387-88 (1st Cir. 2001). Therefore, a Rule 12(b)(6) motion to dismiss "constitutes an exception to the consolidation requirement of Rule 12(g)" and "may be raised at any time in the proceedings before disposition on the merits." Id.

**ARGUMENT**

**I.      Defendants Are Precluded From Pursuing The Counts in Their Counterclaim That Are Based on PSG's Respondeat Superior Liability Because Defendants Released Sause Without a Very Specific Express Reservation of Claims Against PSG**

**A.      Defendants' General Release of Sause Waives Defendants' Claims Based Upon PSG's Vicarious Liability**

In Massachusetts, "the release of an agent precludes a claim against his principal who is liable solely on the theory of respondeat superior." Elias v. Unisys Corp., 410 Mass. 479, 484 (1991); see also Richmond v. Schuster Express, Inc., 16 Mass. App. Ct. 989, 990 (1983). In

Elias, the Supreme Judicial Court distinguished respondeat superior liability from joint tortfeasor

liability under the Uniform Contribution Among Tortfeasors Act.[1]  Under a theory of joint

tortfeasor liability, the Court stated, a plaintiff "may settle with one joint tortfeasor and still have

recourse against remaining joint tortfeasors."  Elias, 410 Mass. at 481-82 (citing Mass. Gen. L. c.

231B).  In contrast, the Court explained, "established case law holds that a general release given

to an agent will preclude a subsequent action against his principal."  Id. at 482.  The SJC stated

that this distinction is appropriate because, in contrast to joint tortfeasor liability,

> the principles of vicarious liability apply where only the agent has
> committed a wrongful act.  The principal is *without fault*.  The
> liability of the principal arises simply by the operation of law and
> is only derivative of the wrongful act of the agent.

Id. at 481 (emphasis in original).

"[A] covenant not to sue or [a] release will not discharge a vicariously liable party *if the*

*covenant contains an express reservation of rights against that party*."  Atlas Tack Corp. v.

DiMasi, 37 Mass. App. Ct. 66, 71-72 (1994) (emphasis added).  Such an express reservation,

however, must be "*very specific*."  See id. (emphasis added); see also Medeiros v. Middlesex Ins.

Co., 48 Mass. App. Ct. 51, 55 n.3 (1999) (citing Atlas and noting that "the supposed reservation

of rights" at issue did not save vicarious liability claim because it was not "very specific").

Moreover, the waiver rule has only been expressly applied in "the derivative tort liability context

in which it was grounded."  See Medeiros, 48 Mass. App. Ct. at 56 (applying rule in tort context

but not extending to "actions based upon contract").

In Atlas, for example, the court held that an action against an employer was not precluded

by a general release of the agent "because of the *very specific language in the release which*

---

[1]  In some states, unlike Massachusetts, adoption of the Uniform Contribution Among
Tortfeasors Act has led to the abandonment of this common law rule.  See, e.g., Yates v. New
South Pizza, Ltd., 330 N.C. 790, 795, 412 S.E.2d 666, 669-70 (N.C. 1992).

*reserve[d] claims*" against the principal.  See 37 Mass. App. Ct. at 71 (emphasis added).  In

Atlas, plaintiff had brought malpractice claims against an attorney and the putative legal

partnership for which he allegedly worked.  Plaintiff executed a release of the individual

attorney, which stated:

> Atlas Tack Corporation … does hereby release and discharge …
> Ralph A. Donabed … from … any claim whatsoever on account of
> or in any way growing out of … a certain action entitled [Atlas
> Tack Corp. v. DiMasi] … *and specifically does not release and*
> *discharge any and all claims that Atlas Tack Corporation has*
> *against the Law Offices of DiMasi, Donabed, and Karll, Salvatore*
> *F. DiMasi and Stephen P. Karll*, stated in [that action] ….

Id. at 67 n.3 (emphasis added).  Even with such an explicit and specific reservation, the Court of

Appeals was hesitant to allow plaintiff to proceed against the firm.  The Court of Appeals in

Atlas acknowledged "the unfairness of imposing liability on a blameless party when the party at

fault has been released."  Id. at 71.  However, the court was "constrained" to allow the action

against the principals to proceed, if only because of the very specific express reservation of

action against those parties.  Id. at 71-72; cf. Medeiros, 48 Mass. App. Ct. at 54-55 & n.3

(language in plaintiff's motion for voluntary dismissal that she was "pursuing her claims" against

vicariously liable party was insufficiently specific to reserve those claims).

    As noted above, in this case, Defendants executed a general waiver of claims against

Sause in the Stipulation.  However, the Stipulation contains no express reservation of the right to

pursue claims against PSG—let alone a very specific express reservation.  At best, the

Stipulation contains a vague and general implied reservation of the Town's right to proceed

against PSG.  Such a reservation, if there is one, must be inferred from the Stipulation as a whole

and from the context in which Sause and the Town effected the Stipulation.  As such, the

Stipulation falls well below the Atlas standard.  Defendants have waived every count against

PSG in their counterclaim that is based upon PSG's respondeat superior liability for Sause's

conduct. See Elias, 410 Mass. at 484; Atlas, 37 Mass. App. Ct. at 71; Medeiros, 48 Mass. App.

Ct. at 55 n.3.

This result is particularly appropriate in this case, where the "unfairness of imposing

liability" on PSG is especially pronounced. See Atlas, 37 Mass. App. Ct. at 71. Defendants

waived their claims against Sause in exchange for Sause providing discovery that Defendants

may use in pursuing their claims against PSG. In other words, Defendants provided a release to

PSG's agent who, as discussed below, committed most of the "wrongful acts" alleged in the

counterclaim and cross-claim, to obtain discovery that Defendants may use against a principal

that is "without fault" directly for those wrongful acts. See Elias, 410 Mass. at 481-82. The

"unfairness" of this circumstance requires preclusion of those claims against PSG that are based

on Sause's conduct.

B.    **Most of Defendants' Claims Against PSG Are Based Solely Upon PSG's
      Alleged Vicarious Liability for Sause's Conduct**

In their counterclaim, Defendants bring fourteen counts against PSG. Some of these

counts are explicitly based upon PSG's vicarious liability for Sause's conduct. Defendants'

conversion count (Count IX) states that "PSG, by and through Sause, converted public funds and

Town property." See Counterclaim ¶¶ 91-94. Similarly, Defendants' civil conspiracy count

(Count X) states that "PSG, by and through Sause, conspired … to defraud the Town." See

Counterclaim ¶¶ 95-99; see also Counterclaim ¶¶ 106-111 (Count XII) (explicitly pleading

PSG's respondeat superior liability for Sause's conduct).

However, as is clear from the allegations in Defendants' counterclaim and cross-claim,

most of Defendants' remaining counts are also based upon PSG's vicarious liability for Sause's

conduct. The factual allegations in the counterclaim establish that the focus of most of its counts

is Sause's conduct, not any conduct of PSG directly.  Defendants allege that Sause and Thomson

worked together to draft the RFP for the 1998 Contract, such that it amounted to a proprietary

specification in violation of c. 30B, § 14.  See Counterclaim ¶¶ 19, 21-23.  Similarly, Defendants

allege that PSG, "by and through Sause," converted public funds and established unauthorized

bank accounts with Thomson for the use of those funds.  See Counterclaim ¶¶ 33-38.

Defendants allege that "PSG knew or should have know of, condoned and/or ratified the

fraudulent activity of Sause," that "Sause's fraudulent activity was committed within the scope

of his employment with PSG," and that "PSG is vicariously liable for the fraudulent conduct of

Sause and the damages resulting therefrom."  See Counterclaim ¶¶ 45-46, 111.

More importantly, many of the central allegations in the counterclaim that explicitly

allege conduct by PSG are, when read together with the cross-claim, actually allegations of

Sause's conduct.  For example, the counterclaim alleges that "[t]he amount deposited into

unauthorized accounts and/or converted to personal use *by PSG* totals no less than $350,204.80."

See Counterclaim ¶ 37 (emphasis added).  The cross-claim alleges specifically that Sause

deposited "and/or converted" these funds.  See Cross-Claim ¶ 26 ("The amount deposited into

unauthorized accounts and/or converted to personal use *by Sause* totals no less than

$350,204.80." (emphasis added)).  Similarly, the counterclaim alleges that "*PSG* used public

funds to make unauthorized expenses in an amount totaling $76,593.51," see Counterclaim ¶ 38

(emphasis added), whereas the cross-claim pins this conduct to Sause specifically, see Cross-

claim ¶ 27 ("*Sause* used public funds to make unauthorized expenses in an amount totaling no

less than $76,593.51." (emphasis added)).  In fact, most of the factual allegations in the cross-

claim are identical to allegations in the counterclaim but for references to "Sause" as opposed to

"PSG" or "PSG, by and through Sause." Compare Counterclaim ¶¶ 19-38 with Cross-Claim ¶¶ 7-27.

Furthermore, most of the counts in the counterclaim have corresponding counts in the cross-claim that also link general allegations of PSG's conduct specifically to Sause. Compare Counterclaim Count I (fraud), Counts IV, V, VI (c. 268A), Count VII (c. 30B), Count IX (Conversion), Count X (civil conspiracy), and Count XIV (negligent misrepresentation) with Cross-Claim Count I (fraud), Counts II, III, IV (c. 268A), Count V (c. 30B), Count VI (civil conspiracy), Count VII (negligent misrepresentation), and Count VIII (Conversion). This is particularly evident in the counts in both the counterclaim and cross-claim that allege violations of c. 268A and c. 30B. For example, the counterclaim alleges that "*PSG* violated G.L. c. 268A, § 2(a), by giving money and paying compensation to Thomson …." See Counterclaim ¶ 64 (emphasis added). The counter-claim, however, connects this same conduct to Sause specifically. See Cross-Claim ¶ 34 ("*Sause* violated G.L. c. 268A, § 2(a), by giving money and paying compensation to Thomson …." (emphasis added)). This connection to Sause extends through Defendants' allegations regarding other violations of c. 268A, as well as Defendants' allegations regarding violations of c. 30B. Compare Counterclaim ¶ 69 with Cross-Claim ¶ 39 (c. 268A, § 3(a)); Counterclaim ¶ 74 with Cross-Claim ¶ 44 (c. 268A, § 17(b)); Counterclaim ¶ 79 ("*PSG* violated the Uniform Procurement Act by conspiring to cause a contract to be solicited and awarded in violation thereof." (emphasis added)) with Cross-Claim ¶ 49 ("Sause violated the Uniform Procurement Act by conspiring to cause a contract to be solicited and awarded in violation thereof." (emphasis added)).

Defendants provide no factual allegations in their counterclaim to support direct liability for PSG under c. 30B or c. 268A. See Medeiros, 48 Mass. App. Ct. at 54 (noting vicarious

liability was only basis for liability because "no separate wrongdoing" was ever alleged).  The

only factual allegations in the counterclaim concerning c. 30B (Count VII) are those that concern

Sause's alleged work on the RFP for the 1998 Contract and the effects of that work.  See

Counterclaim ¶¶ 19-28; see also Cross-Claim ¶¶ 7-16.  Similarly, Defendants make no factual

allegations that would support PSG's direct liability for their claims under c. 268A (Counts IV,

V, and VI).  Cf. Cross-Claim ¶¶ 34, 39, 44 (alleging specifically that Sause committed the

activities alleged to violate c. 268A).

The only factual allegations in the counterclaim that would support PSG's direct liability

are those concerning the contract counts, the c. 93A count that is based in part in Defendants'

contract claims, and the negligent supervision count.  See, e.g., Counterclaim ¶¶ 8-9, 14, 39, 41,

42 (contract allegations).  None of these has a corresponding count in the cross-claim.

Consequently, "accept[ing] as true all well-pleaded allegations" and giving Defendants "the

benefit of all reasonable inferences," Cooperman, 171 F.3d at 47, at most, Defendants'

allegations support PSG's direct liability only for counts of breach of contract and the implied

covenant of good faith and fair dealing (Counts II and III), PSG's respondeat superior liability

for its affiliate (not for Sause) (Count XI), negligent supervision (Count XIII), and a violation of

c. 93a (Count VIII).

However, Defendants' assertion of these claims against PSG only emphasizes their

failure to reserve expressly and very specifically their vicarious liability claims.  See Medeiros,

48 Mass. App. Ct. at 55 n.3 (plaintiff's general assertion that she was "pursuing her claims"

against vicariously liable party was insufficiently specific reservation of her vicarious liability

claims, where she had nonderivative as well as vicarious claims against that party).  Defendants

are precluded from pursuing each of the remaining counts against PSG because they are based on

PSG's respondeat superior liability for Sause, and Defendants have generally waived Sause's

liability in this case. Defendants claims in each of these remaining counts is based in the

"derivative tort liability context." See id. at 56. Fraud, conversion, civil conspiracy, and

negligent misrepresentation are all common law torts. Although neither the c. 30B nor c. 268A

claims fits the mold of common law causes of action,[2] the SJC has held, for certain purposes, that

an action under c. 268A is more like a tort action than a contract action. See Zora v. State Ethics

Comm'n, 415 Mass. 640, 647 (1993) (citing Nantucket v. Beinecke, 379 Mass. 345, 398 (1979))

(analogizing c. 268A action to tort for purpose of applying tort statute of limitations). Similarly,

although c. 30B certainly concerns contracts effected under its provisions, proof of liability

under § 17(c) requires proof of wrongful conduct sounding in the tort of conspiracy, and does not

require proof of the elements of a common law breach of contract claim. See c. 30B, § 17(c)

(establishing liability for "[a] person who *causes or conspires with another to cause* a violation

of a provision of this chapter" (emphasis added)); see also Counterclaim ¶ 79 ("PSG violated the

Uniform Procurement Act *by conspiring to cause* a contract to be solicited and awarded in

violation thereof." (emphasis added)).

　　　Preclusion of Defendants' claims in this circumstance is entirely appropriate. Defendants

easily could have included a very specific express reservation of their claims against PSG in the

Stipulation. See Medeiros, 48 Mass. App. Ct. at 55 (holding that a voluntary dismissal, a general

release, and a covenant not to sue are comparable bases for waiver because "the terms and

conditions [of each] are within the discretion of the parties" (quoting Tuite & Sons, Inc. v.

Shawmut Bank, N.A., 43 Mass. App. Ct. 751, 755 (1997)). They did not do so, and therefore

---

[2]  See Memorandum of Law in Support of Plaintiff's Motion to Strike Defendants' Jury Trial
Demand as to Conflict of Interest and Procurement Act Counts, at 4-5, 8-10 (Docket No. 61)
(7/4/06) (distinguishing c. 268A and c. 30B claims from common law causes of action).

have waived their respondeat superior claims against PSG.  To the extent that such a result may

seem harsh or hyper-technical, it is the result plainly required under Massachusetts law.  <u>See</u>

<u>Elias</u>, 410 Mass. at 484; <u>Atlas</u>, 37 Mass. App. Ct. at 71-72; <u>see also</u> <u>Medeiros</u>, 48 Mass. App. Ct.

at 54 (holding claim precluded despite allegedly "draconian impact").

## CONCLUSION

For all the foregoing reasons, PSG requests that the Court grant PSG's Rule 12(b)(6)

motion to dismiss the counts in Defendants' counterclaim alleging violations of c. 268A (Counts

IV, V, and VI) and c. 30B (Count VII), as well as the common law fraud, conversion, civil

conspiracy, and negligent misrepresentation counts (Counts I, IX, X, and XIV), and the count

that specifically alleges PSG's respondeat superior liability for Sause (Count XII).

Respectfully submitted,

PROFESSIONAL SERVICES GROUP, INC.,
By its attorneys,

/s/Maria R. Durant_____
Maria R. Durant (BBO # 558906)
David M. Osborne  (BBO # 564840)
Sara E. Noonan (BBO # 645293)
DWYER & COLLORA, LLP
Federal Reserve Plaza
600 Atlantic Avenue, 12th Floor
Boston, MA  02210
(617) 371-1000

Dated:  July 11, 2006

### CERTIFICATION OF COMPLIANCE WITH LOCAL RULES 7.1(A)(2)

I, David M. Osborne, hereby certify that on July 11, 2006 I made an unsuccessful good faith
attempt to eliminate and narrow the issues raised in this motion by conferring with opposing counsel.

/s/David M. Osborne_____
David M. Osborne

### CERTIFICATE OF SERVICE

I, Maria R. Durant, hereby certify that a true and correct copy of this document filed through the
ECF system will be sent electronically to the registered participants as identified on the Notice of
Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on
July 11, 2006.

/s/Maria R. Durant_____
Maria R. Durant