## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROFESSIONAL SERVICES GROUP, INC., | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, GREGORY THOMSON and MICHAEL SAUSÉ, | ) ) ) ) ) |
| . | ) ) |
| TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, | ) ) ) ) |
| Plaintiffs in Counterclaim and Crossclaim | ) ) ) ) |
| v. | ) ) |
| PROFESSIONAL SERVICES GROUP, INC., | ) ) ) ) |
| Defendant in Counterclaim, | ) ) |
| and | ) ) |
| MICHAEL SAUSÉ, | ) ) |
| Crossclaim Defendant | ) ) |

Civil No. 04-11131-PBS

### MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE
### EXPERT TESTIMONY OF RONALD A. MICHALSKI

Plaintiff/Counterclaim Defendant Professional Services Group, Inc. ("PSG") has moved

to exclude proposed expert testimony by Ronald A. Michalski, an engineer ("Mr. Michalski").

Defendants/Counterclaim Plaintiffs the Town of Rockland and the Rockland Sewer Commission ("Rockland") intend Mr. Michalski to give expert testimony about the "appropriateness" of Rockland's 1997 request for proposals ("RFP"), and certain of its provisions. Rockland also intends Mr. Michalski to opine that certain of the RFP's provisions "hindered competition." The proposed testimony is not admissible under Federal Rule of Evidence 702 because it is not based on a reliable methodology and will not assist the jury in understanding the evidence or deciding a fact in issue. Moreover, the proposed testimony usurps both the Court's role in deciding the law and the jury's role in applying that law to the facts, and goes beyond Mr. Michalski's area of expertise. For all of the following reasons, PSG respectfully requests that Mr. Michalski's expert testimony be excluded at this time.

## RELEVANT FACTS

**A.     Background of the Case**

This case involves, in relevant part, counterclaims that Rockland has brought against PSG arising from a 1998 contract ("1998 Contract") under which PSG provided wastewater treatment services to Rockland. Rockland alleges, in part, that the 1998 Contract was procured in violation of the Massachusetts Uniform Procurement Act, M.G.L. ch. 30B, § 1 *et. seq.* ("Chapter 30B") because the Superintendent of the Rockland Sewer Commission conspired with a PSG employee in a manner that allegedly gave an advantage to PSG in the procurement process.

Since 1982, PSG (or its corporate predecessor) provided wastewater treatment services to Rockland. The evidence will show that in 1994, the engineering firm of Tighe & Bond worked with Rockland and Rockland's counsel to draft a request for proposals ("RFP") for the operation and maintenance of its wastewater treatment facilities for the period of 1994 through 1997 ("the 1994 RFP"). The 1994 RFP included a requirement that necessary sludge dewatering be

accomplished with a piece of equipment known as a belt filter press. PSG submitted a proposal that included the cost of placing a belt filter press at the facility and was awarded the 1994 contract to run the wastewater treatment facility.

In 1997, Rockland issued an RFP to operate and maintain the wastewater treatment facility for the period of 1998 through 2008. It is this RFP process that Rockland now contends was tainted by the alleged conspiracy between the parties' employees. Specifically, Rockland asserts that certain requirements of the 1997 RFP were drafted to benefit PSG, including a requirement that all proposals reflect labor/maintenance costs of at least $400,000, and a requirement that all proposals include the cost of providing a belt press filter equal to or better than the one then installed at the wastewater treatment facility by PSG.

B.     **Background Relevant to Expert Disclosure**

On June 15, 2006, Rockland provided its expert disclosure for Ronald A. Michalski ("Mr. Michalski"), a municipal engineer with Tighe & Bond who prepared Rockland's 1994 Request for Proposals. ("Michalski Disclosure"). See Tab A (Letter from Joanne D'Alcomo to David Osborne, dated June 15, 2006). The Michalski Disclosure consists of Mr. Michalski's curriculum vitae and a three-page letter from Mr. Michalski to Rockland's counsel, purportedly giving his opinion concerning "various matters relating to the 1997 procurement conducted by the Town of Rockland."

In relevant part, the Michalski Disclosure sets forth two related areas on which Mr. Michalski intends to give his expert opinion. The first category purports to apply unspecified professional and ethical standards governing private companies that prepare RFPs to PSG's alleged conduct during the 1997 procurement process. See, e.g., Tab A at 1 ("Professionally and ethically, I believe that it is inappropriate for a firm to prepare an RFP for a particular

3

procurement process and include stipulations or information that benefits the firm responding to the same proposal process.  In addition, it is inappropriate for a firm to prepare an RFP that stipulates proposal submission requirements that may provide the same firm with logistical or a technical advantage responding to a proposal."); 2 ("If PSG was the incumbent contractor and had the lead role in preparing the RFP in 1997 – facts which you have asked me to assume – then the 1997 Request for Proposals should not have included details that hinders [sic] competition.").

The second (and closely related) area covered in the Michalski Disclosure is whether various provisions of the 1994 and 1997 RFPs had or would have had a negative competitive impact on PSG's competitors in the marketplace and/or gave PSG a competitive advantage.  See, e.g., id. at 1-2 ("The cost for interim sludge disposal obviously benefited the incumbent contract operator who could use the existing belt filter press that they owned or leased."); 2 ("The minimum $400,000 labor cost in the RFP . . . [i]n my opinion, hinders competition because labor costs are typically a major variable in the competition for wastewater treatment plant operations contracts. . . . [T]he requirement that a bidder provide a belt filter press equal to or better than the one on site that was provided by the incumbent contractor, in my opinion, gave a decided advantage to the incumbent contractor.").

The Michalski Disclosure does not identify any standard or methodology applied by Mr. Michalski to arrive at his opinions.  Instead, according to the Michalski Disclosure, Mr. Michalski bases his opinions "on my familiarity with the 1994 RFP that Tighe & Bond prepared (I was the focal point for the effort) with input from the Town and the Town Counsel," in addition to his review of the 1997 RFP and his training, education and experience in the fields of municipal and wastewater engineering.  Rockland has not produced anything related to Mr.

Michalski's prior work for Rockland, or discussions Mr. Michalski had with Rockland and its counsel, other than a copy of the 1994 RFP itself.

## ARGUMENT

PSG does not object to Rockland calling Mr. Michalski to testify as a fact witness about the 1994 RFP process. To the extent that Rockland intends to go beyond factual testimony, however, and seeks to introduce Mr. Michalski's expert opinion regarding the "appropriateness" of the 1997 procurement process, or to speculate on whether certain provisions in the RFP gave PSG a competitive advantage, that testimony must be excluded as improper under Rule 702 of the Federal Rules of Evidence.

### A.  Legal Framework

The admission of expert testimony is governed by Federal Rule of Evidence 702, which permits a witness "qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion so long as "(1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case." See Fed. R. Evid. 702. In addition, the witness's specialized knowledge must "assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Id.

To determine whether proposed expert testimony meets the requirements outlined in Rule 702, "[t]he trial court must determine whether the expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand' and whether the expert is qualified." United States v. Monteiro, 407 F.Supp.2d 351, 356 (D. Mass. 2006) (*quoting* Daubert v.Merrill Dow, 509 U.S. 579, 597 (1993)). Rule 702 imposes a "special relevancy requirement" that "requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility." Ruiz-Troche v. Pepsi

Cola of P.R. Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998) (*citing* Daubert, 509 U.S. at 592)). Expert testimony that is not reliable cannot, by definition, be helpful to the fact-finder. See Brown v. Wal-Mart Stores, Inc., 402 F.Supp.2d 303, 310 n.6 (D. Me. 2005) (proponent's failure to demonstrate that expert's opinions are scientifically reliable "also makes those opinions irrelevant, because they would not assist a trier of fact to understand or determine a fact in issue") (citations and internal punctuation omitted); Figueroa v. Simplicity Plan de Puerto Rico, 267 F.Supp.2d 161, 167 (D. P.R. 2003) (excluding proposed expert testimony because expert's failure to reveal methodology in written report meant that testimony would not assist the trier of fact).

In assessing the admissibility of expert testimony, the Court "must scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case." See Fed. R. Evid. 702, advisory committee note. This is true even when the purported area of expertise is based on experience rather than science:

> While the relevant factors for determining reliability will vary from expertise to expertise, the amendments reject the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science. An opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist.

Id.; see also Monteiro, 407 F.Supp.2d at 357-58 (court's role under Rule 702 requires an assessment of reliability of the methodology underlying the testimony; and a determination of whether that methodology properly can be applied to the facts of the case, including whether the expert is a qualified proponent of the methodology). "Because 'the admissibility of all expert testimony is governed by the principles of Rule 104(a),' the proponents of the expert testimony must establish these matters by a preponderance of the evidence." Id. (*citing* Fed. R. Evid. 702, advisory committee note) (additional citations omitted). "Failure to provide testimony or a

report detailing the basis for the expert's opinion in a comprehensive . . . manner can cause the expert witness and his report to be eliminated from trial." See Figueroa, 267 F.Supp.2d at 164.

**B.   Mr. Michalski's Proposed Opinions Relating to the "Appropriateness" of PSG's Conduct Are Inadmissible Because They Lack a Reliable Basis and Because They Are Irrelevant, Confusing and Unfairly Prejudicial.**

To the extent that Mr. Michalski intends to give his expert opinion on the "appropriateness" of PSG's alleged conduct during the 1997 procurement process, that testimony must be excluded for three reasons. First, the testimony is not based on any discernible methodology or standard or even a fulsome understanding of the relevant facts and, as such, is unreliable within the meaning of Rule 702. Second, whether or not Mr. Michalski believes PSG's alleged conduct was "appropriate" or "inappropriate" – or in violation of some unidentified code of ethics for RFP preparers – is irrelevant to any issue that the jury must decide. Third, by framing the applicable standard as one of "appropriateness," and then applying that standard to PSG's conduct, the proposed testimony simultaneously usurps both the Court's role in deciding the law and the jury's role in deciding the facts.

   1.   The Testimony Is Not Reliable

Mr. Michalski's asserted basis for his opinions on the "appropriateness" of PSG's alleged conduct during the 1997 RFP process is experience rather than hard science. That does not mean, however, that he can offer opinions based on that experience without articulating his reasoning. "[T]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" See Fed. R. Evid. 702, advisory committee note (*quoting* Daubert, 43 F.3d at 1319. If the witness is relying solely or primarily on experience, then the witness must explain: (1) "how that experience leads to the conclusion reached," (2) "why that experience is a

7

sufficient basis for the opinion", and (3) "how that expertise is reliably applied to the facts." Monteiro, 407 F.Supp.2d at 366 (*citing* Fed. R. Evid. 702, advisory committee note).

In the Disclosure, Mr. Michalski repeatedly fails to provide any of the three explanations required by Monteiro to support his conclusions about PSG's conduct.  First, the Michalski Disclosure does not explain how Mr. Michalski's experience leads to the conclusions he has reached.  Rather than identify a testable (or tested) theory or standard, the Disclosure simply offers a series of subjective, conclusory assertions.  For example, in the third full paragraph of his letter, Mr. Michalski states the following:

> Professionally and ethically, I believe it is inappropriate for a firm to prepare an RFP for a particular procurement process and include stipulations or information that benefits the firm responding to the proposal process.  In addition, it is inappropriate for a firm to prepare an RFP that stipulates proposal submission schedule requirements that may provide the same firm with logistical or technical advantage responding to a proposal.

See Tab A at 2.  Mr. Michalski does not reference any specific industry standards or reasons why such conduct would be considered inappropriate in the industry in support of his opinion.  What he does instead is to refer to certain parts of the 1997 RFP that is at the heart of the parties' dispute to illustrate what, in his opinion, constitutes "inappropriate" conduct.  Such circular reasoning – that it is professionally and ethically inappropriate to draft RFP provisions that the expert believes are inappropriate – is a far cry from the objective methodology envisioned by Rule 702.  See Fed. R. Evid. 702, advisory committee note (in deciding whether to admit expert testimony, courts can properly consider whether the expert has taken a "subjective, conclusory approach that can not be reasonably assessed").

For the same reason, the Michalski Disclosure does not explain why Mr. Michalski's experience provides a sufficient basis for his opinions.  Cf. Monteiro, 407 F.Supp.2d at 366.  Although Mr. Michalski refers repeatedly to his experience in the engineering field, he does not

8

describe any of the standards employed by that field in drafting what would be considered "appropriate" RFPs. For example, in the second full paragraph of his letter, Mr. Michalski describes the process for crafting RFPs as follows:

> The engineering firm uses its expertise to provide, in writing suitable for prospective bidders to comprehend, what the municipality or other public entity requires to operate its facility. At the same time, the engineering firm also uses its expertise to assist the municipality or other public entity to decide what its technical, logistical, financial and administrative needs are in order to have the operation of the plant proceed in accordance with local, State and Federal permit requirements.

See Tab A at 2. Significantly, Mr. Michalski does not identify or explain any standard methodology or accepted industry techniques, or otherwise explain how engineering firms, municipalities, or any other entities determine the "technical, logistical, financial and administrative needs" used to craft RFPs to operate wastewater treatment facilities. "In order to perform a Daubert/Kunho analysis properly, the Court must define the challenged methodology," see Monteiro, 407 F.Supp.2d at 359, yet the Michalski Disclosure offers no insight into what that methodology might be.

Nor does the Michalski Disclosure show that Mr. Michalski has reliably applied his experience to the facts. He does not set forth any understanding as to Rockland's technical, logistical, financial or administrative needs at the relevant time. Additionally, it does not appear that his opinions are the result of any independent research, or even the result of an independent review of the facts. "The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable." See Fed. R. Evid. 702, advisory committee note (*quoting* O'Connor v. Commonwealth Edison Co., 13 F.3d 1090 (7th Cir. 1994)). Here, Mr. Michalski appears to have been solicited by Rockland's counsel, and given a very limited description of the facts, in order to obtain an opinion from him that will aid Rockland's position in this litigation. See Tab A at 3 (writing to Rockland's counsel that "If PSG was the incumbent

9

contractor and had the lead role in preparing the RFP in 1997 – *facts which you have asked me to assume* – then the 1997 Request for Proposals should not have included details that hinders competition.") (emphasis added); cf. Dana Corp. v. American Standard, Inc., 866 F.Supp. 1481, 1501 (N.D. Ind. 1994) ("an expert may not assume a fact and then apply his expertise to the assumed fact to produce an opinion").  Again, this demonstrates neither intellectual rigor nor the objectivity necessary to establish the threshold reliability of Mr. Michalski's opinions.

    2.    The Testimony Is Not Helpful.

In addition to the problems with reliability, Mr. Michalski's opinion about whether or not PSG's alleged conduct was "inappropriate" will not assist the trier of fact to understand the evidence or to determine a fact in issue.  See Fed. R. Evid. 702.  Even assuming that Rockland can prove what it has asked Mr. Michalski to assume – that PSG took the lead in drafting the 1997 RFP – the issue for the jury in this case is whether that alleged conduct violated Chapter 30B.  Yet nothing in that chapter requires municipalities, private entities, or any other party to draft RFP provisions in accordance with some undefined industry understanding of "appropriateness".  Cf. M.G.L. ch. 30B § 6(b) (setting forth specific content required by law to be included in RFPs).  Indeed, neither Chapter 30B nor any other law in the Commonwealth purports to evaluate or govern the substantive content of specific RFP requirements at all.  This makes sense considering that RFPs are issued by public officials who will have to answer to the municipality and, ultimately, the voters if the RFPs they issue contain "inappropriate" provisions.

Rockland cannot use Mr. Michalski to testify about an undefined industry standard of "appropriateness" in order to suggest to the jury that technical compliance with the statute is not enough.  For one thing, that suggestion is patently wrong as a matter of law.  See, e.g., TF v. BL,

10

442 Mass. 522, 534 (2004) (court cannot use its equity powers to impose liability beyond words of statute). For another, expert testimony on legal standards of conduct – even if the testimony identifies the correct legal standard – is never proper. See, e.g., Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 100 (1st Cir. 1997) ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact . . . because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial.") (citations and internal punctuation omitted). Nor is it proper to allow an expert to "substitute his judgment for the jury's by telling the jury what decision to make." DiBella v. Hopkins, 2002 WL 31427362, *3 (S.D.N.Y. (Oct. 30, 2002)) (*citing* United States v. Bilzerian, 926 F.2d 1285, 1294 (2nd Cir. 2002)). By telling the jury that PSG's alleged conduct during the 1997 procurement process was "inappropriate," Mr. Michalski is essentially telling the jury to apply an incorrect legal standard to find for Rockland on its Chapter 30B claim. Because Rockland is not entitled to present "evidence" on how the jury should decide this case, the proposed testimony should be excluded.

    3.    The Testimony Is Unfairly Prejudicial.

Similarly, Mr. Michalski's proposed opinion on the "appropriateness" of PSG's conduct as weighed against irrelevant industry standards is inadmissible under Rule 403. See Fed. R. Evid. 403 ("evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury"); Daubert, 509 U.S. at 595 (acknowledging the heightened importance of analyzing proposed expert testimony under Rule 403).

In United States v. Buchanan, for example, the court applied Rule 403 to exclude proposed expert testimony that sought to describe both the expert's experience in the relevant industry (banking) and the generally prevailing processes by which certain expenditures are

11

approved in that industry, and to "apply this experience to the question of whether the acts that the Defendant allegedly took were 'consistent with the generally accepted standards for conduct in the banking industry.'" United States v. Buchanan, 964 F.Supp. 533, 536 (D. Mass. 1997). The Court held:

> What is appropriate application of bank funds and what is misapplication depends upon the standards to be applied to the Defendant's conduct. Plainly those standards derive from the statutes, from the regulations, and from common sense. [The proposed expert's] testimony – that Mr. Buchanan's conduct was not consistent with generally accepted standards of conduct in the industry – essentially announces that there has been a misapplication. . . . To the extent that [the expert's] testimony recounts issues of law – the standards of conduct that plainly derive directly from the statutes and regulations – it invades the judge's function. . . . To the extent that it recounts issues of fact – whether Mr. Buchanan in fact misapplied Bank funds – it invades the jury's function . . . .

Id. at 537-38 (citations and internal punctuation omitted).

Like the government in Buchanan, Rockland wishes Mr. Michalski to explain industry standards to the jury and then opine that PSG's alleged conduct in drafting the 1997 RFP – which Mr. Michalski improperly assumes – was not consistent with those standards. See, e.g., Tab A at 1 ("Professionally and ethically, I believe it is inappropriate for a firm to prepare an RFP for a particular procurement process and include stipulations or information that benefits the firm responding to the same proposal process"); 2 ("If PSG was the incumbent contractor and had the lead role in preparing the RFP in 1997 – facts which you have asked me to assume – then the 1997 Request for Proposals should not have included details that hinders [sic] competition"). Such testimony is not necessary to Rockland's case. The jury will be presented with the 1994 RFP (as the person who drafted it, Mr. Michalski can certainly testify about that as a fact witness). It will also have the 1997 RFP and, presumably, the testimony of the people involved in drafting it. It will thus be in as good a position as Mr. Michalski to look at the two RFPs, weigh the testimony describing the relevant procurement processes, and assess whether or not

12

the 1997 RFP was legal (and, hence, "appropriate") based upon the Court's instruction on the governing law.  Accord Buchanan, 964 F.Supp. at 537 (deciding expert evidence was unnecessary because "it is abundantly clear that the Government has other ways to prove the point").  For all of the foregoing reasons, whether analyzed as "unhelpful" under Rule 702 or "unfairly prejudicial" under Rule 403, Mr. Michalski's proposed expert testimony regarding the "appropriateness" of PSG's alleged conduct during the 1997 procurement process is inadmissible.

C.  **Mr. Michalski's Proposed Opinions Relating to the Competitive Impact of Various RFP Provisions Are Inadmissible Under Rule 702 Because They Are Not Reliable or Helpful and Because Mr. Michalski Is Not Qualified to Give Them.**

Also inadmissible are Mr. Michalski's opinions that various provisions of the 1994 and 1997 RFPs had or would have had a negative competitive impact on PSG's competitors in the marketplace and/or gave PSG a competitive advantage.  As with his opinions regarding "appropriateness," there has been no showing that Mr. Michalski's opinions are reliable or will be helpful to the jury in understanding the evidence.  Moreover, there is nothing to suggest that Mr. Michalski is even qualified to opine about the impact of particular provisions on the relevant marketplace.  For the following reasons, the proposed testimony should be excluded.

Like the opinions regarding "appropriateness," the Michalski Disclosure does not explain how Mr. Michalski's experience leads to his conclusions that certain provisions of the 1997 RFP either conferred a competitive benefit on PSG or hindered PSG's competition.  Nor does the Disclosure discuss why Mr. Michalski's experience gives a sufficient basis for his opinion.  Cf. Monteiro, 407 F.Supp.2d at 366 ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the

13

facts."). Indeed, Mr. Michalski's opinions regarding the anti-competitive impact of certain of the RFP's provisions do not appear to be based on any specialized knowledge or experience at all. Instead, he appears to simply look at the 1997 RFP's requirements, speculate that certain requirements would cost PSG (as the incumbent) less money than other proposers, and conclude that this gave PSG a competitive advantage in responding to the RFP. See Tab A at 2 ("The RFP noted that competing firms would have to design, procure and install a similar belt press while PSG could continue to operate a press that was already installed and apparently owned by them.").

"Expert testimony on a subject that is well within the bounds of a jury's ordinary experience generally has little probative value." United States v. Montas, 41 F.3d 775, 784 (1st Cir. 1994). The jury is as well suited as Mr. Michalski to engage in the reasoning process described above. Indeed, in at least one place, even Mr. Michalski describes his "expert" conclusion as obvious. See Tab A at 2 ("[t]he cost for interim sludge disposal obviously benefited the incumbent"). "Obvious" conclusions do not require expert testimony, and Mr. Michalski's proposed opinions are thus not likely to assist the jury within Rule 702's meaning. See Montas, 41 F.3d at 784 (describing expert's use of the phrase "that's obvious" as "a telling slip of the tongue"); Torres v. K-Mart Corp., 145 F.Supp.2d 161, 163-64 (D. P.R. 2001) (issues such as whether store was inadequately staffed, was unreasonable in failing to fix roof or adequately warn of the dangers of wet floor, or failed to follow its own safety requirements "are all factors which a jury may weigh without the need of an expert to assist them . . . There is no fact issue begging for an expert's explanation").

Similarly, Mr. Michalski does not appear to have reliably applied his experience to the facts. His opinions that various portions of the 1997 RFP "hindered competition" are not based

14

upon his understanding of the relevant marketplace, his knowledge of PSG's competitors, or even an analysis of whether Rockland's technical, logistical, financial or administrative needs in 1997 justified the provisions at issue. Rather, he bases his opinion on his unsupported description of the "typical" situation or possible cost. See, e.g., Tab A at 3 ("In my opinion, [the minimum labor cost requirement] hinders competition because labor costs are *typically* a major variable in the competition for a wastewater treatment plant operations contract.") (emphasis added); id. (RFP's requirement that a party submitting a proposal provide a belt filter press equal to or better than the one on site "gave a decided advantage to the incumbent contractor . . . [because] the design and installation of a belt filter press *may* exceed $200,000 *depending on press accessory equipment*.") (emphases added).

Significantly, Chapter 30B does not establish a lowest-cost-wins paradigm for proposals submitted in response to RFPs. See M.G.L. ch. 30B, § 6(h) (establishing record-keeping requirements for situations where chief procurement officer "awards the contract to an offeror who did not submit the lowest price"). Thus the mere fact that PSG may have been able to submit a proposal that did not have to include the cost of acquiring a belt filter press does not necessarily mean that its competition was "hindered" or that it gained a "decided advantage." Yet Mr. Michalski has not even identified who PSG's competitors are, much less explained how or why they might be "hindered" from competing with PSG simply because certain provisions may have increased their cost proposals. By basing his opinion on the "typical" situation and not the facts of this case, Mr. Michalski's conclusion that these provisions gave PSG an unfair advantage or otherwise operated to hinder competition is an unjustifiable extrapolation that is neither reliable nor helpful to the jury.

15

The absence of any attempt to relate specific RFP provisions to relevant market factors in the Michalski Disclosure may be explained by the fact that Mr. Michalski is not an economist. "To be sufficiently qualified to testify as an expert, a witness needs to have knowledge, skill, experience, training, or education in the specific subject for which his testimony is offered." Sutera v. The Perrier Group of America, Inc., 986 F.Supp 655, 661 (D.Mass. 1997) (internal citations and punctuation omitted). While Mr. Michalski has clearly worked on numerous municipal civil engineering projects and is an experienced civil engineer, he does not appear to have any experience in conducting market analyses (and did not perform one in this case). Thus, there is a serious question as to whether he is even qualified to give the opinion Rockland wishes him to give. Certainly, to the extent that Mr. Michalski bases his opinion on a belief that lower cost to the incumbent necessarily equates with a competitive benefit, that is an analytical framework the jury is equally qualified to apply (assuming that it is an appropriate one). In any case, his proposed opinions relating to the alleged anti-competitive effects of certain provisions of the 1997 RFP has not been shown to satisfy the requirements of Rule 702 and should be excluded.

**D.    Even if the Proposed Testimony Were Otherwise Admissible, Rockland Has Yet to Comply with its Expert Disclosure Obligations.**

The legal issues related to Rockland's expert disclosure and seasonable supplementation obligations under Federal Rules of Civil Procedure 26(a)(2)(B) and 26(e)(2) were fully briefed in PSG's Memorandum in Support of Motion to Exclude Proposed Expert Testimony of John J. Sullivan, which was filed with this Court on July 7, 2006. For efficiency's sake, those arguments and citations to authority pertaining to Rockland's obligations under the Rules are incorporated by reference into this Memorandum.

With the Michalski Disclosure, Rockland has again failed to comply with its disclosure obligations. Mr. Michalski states that he based his opinions, in part, "on my familiarity with the 1994 RFP that Tighe & Bond prepared (I was the focal point for the effort) with input from the Town and the Town Counsel." See Tab A at 3. Rockland has never identified or disclosed *any* information relating to the preparation of the 1994 RFP (except for providing a copy of the 1994 RFP itself). It has certainly never provided any information regarding the "input" that it or its counsel apparently gave to Mr. Michalski about the purpose of various provisions in the 1994 RFP, some of which are remarkably similar to the provisions that Rockland contends PSG wrongfully drafted for its own benefit in 1997. Compare Tab A at 2 ("the requirement that a bidder provide a belt filter press equal to or better than the one on site that was provided by [PSG], in my opinion, gave a decided advantage to the incumbent operator") with id. at 3 ("[t]he 1994 procurement process required the contractor to provide a belt filter press for only a three year period, an expensive financial obligation. . . . My recollection is that the Town requested such a provision in the RFP."). Mr. Michalski's expert testimony should be excluded for this reason as well.

## CONCLUSION

Mr. Michalski is free to testify as a fact witness about his experience in drafting the 1994 RFP. But without an identifiable methodology, helpful opinions, the necessary qualifications, or the required disclosures, his proposed expert testimony should be excluded as failing to meet the evidentiary threshold established by Fed. R. Evid. 702 and the fairness threshold established by Fed. R. Evid. 403.

Respectfully submitted,
**PROFESSIONAL SERVICES GROUP, INC.**,
By its attorneys,


/s/Sara E. Noonan_____
Maria R. Durant (BBO # 558906)
David M. Osborne  (BBO # 564840)
Sara E. Noonan (BBO # 645293)
DWYER & COLLORA, LLP
Federal Reserve Plaza
600 Atlantic Avenue, 12th Floor
Boston, MA  02210
(617) 371-1000

Dated:  July 12, 2006


**CERTIFICATE OF SERVICE**

I, Sara E. Noonan, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on July 12, 2006.

/s/Sara E. Noonan_____
Sara E. Noonan