# JAGER SMITH P.C.

## COUNSELORS AT LAW

ONE FINANCIAL CENTER
BOSTON, MASSACHUSETTS 02111
telephone 617 951 0500
facsimile 617 951 2414
www.jagersmith.com

**JOANNE D'ALCOMO**
jdalcomo@jagersmith.com

June 15, 2006

*Via fax and first-class mail*

David M. Osborne, Esq.
Dwyer & Collora, LLP
Federal Reserve Plaza
600 Atlantic Avenue
12th Floor
Boston, MA 02210

Re:   *Professional Services Group, Inc. v. Town of Rockland*,
Civil No. 04-11131-PBS

Dear David:

Enclosed please find the expert disclosure of Ronald A. Michalski.

Thank you.

Sincerely,

Joanne D'Alcomo

JDA/paj
Enclosure

JS#127154v1


**Tighe&Bond**
*Consulting Engineers*
*Environmental Specialists*

O-2
June 15, 2006

Attorney Joanne D'Alcomo
Jager Smith P.C.
One Financial Center
Boston, MA 02111

Re:     Litigation involving Professional Services
        Group, Inc. and Town of Rockland

Dear Attorney D'Alcomo:

You have asked for my opinion concerning various matters relating to the 1997 procurement conducted by the Town of Rockland for a contractor to operate the town's wastewater treatment plant. Here are my opinions and the basis for my opinions.

It is typical for municipalities and other public entities in Massachusetts, and in New England in general, who are interested in having private contractors operate their wastewater treatment facilities to hire an experienced environmental engineering firm to prepare the Request for Proposals for use in a competitive proposal process. The engineering firm uses its expertise to provide, in writing suitable for prospective bidders to comprehend, what the municipality or other public entity requires to operate its facility. At the same time, the engineering firm also uses its expertise to assist the municipality or other public entity to decide what its technical, logistical, financial and administrative needs are in order to have the operation of the plant proceed in accordance with local, State and Federal permit requirements. Although the municipality or public entity has the final say on the wording of the RFP and provisions in it, an experienced environmental engineering firm typically oversees the process and prepares wastewater treatment technical and operating stipulations in the RFP along with comparative evaluation criteria that would be used by the proposal review committee.

Professionally and ethically, I believe it is inappropriate for a firm to prepare an RFP for a particular procurement process and include stipulations or information that benefits the firm responding to the same proposal process. In addition, it is inappropriate for a firm to prepare an RFP that stipulates proposal submission schedule requirements that may provide the same firm with logistical or a technical advantage responding to a proposal. As an example, the July 21, 1997 RFP provided to me included a stipulation that a copy of the RFP could only be obtained between July 21, 1997 and August 1, 1997, an extremely short period of time, especially when national competition should have been anticipated. Another unique stipulation was the fact that the RFP required interim sludge dewatering while a belt filter press was

## Tighe&Bond
*Consulting Engineers*
*Environmental Specialists*

installed, if necessary. The cost for interim sludge disposal obviously benefited the incumbent contract operator who could use the existing belt filter press that they owned or leased.

Responding to a wastewater contract operations RFP is typically a time-consuming and detailed process because of the limited RFP timeframe and the need for prospective proposers to:

- Gather sufficient information about the project

- Understand and develop operating processes that can be cost effectively implemented

- Inventory plant equipment

- Obtain costs for materials and supplies

- Locate and organize staff that could readily take over plant operations

- Prepare a comprehensive proposal package

The 1997 Rockland RFP effort was imposing given the 10 year proposed contract length with a probable proposal value exceeding $10,000,000. A firm that prepares the RFP has critical information in advance of competitors. If PSG was the incumbent contractor and had the lead role in preparing the RFP in 1997 – facts which you have asked me to assume – then the 1997 Request for Proposals should not have included details that hinders competition.

I have reviewed the July 21, 1997 Request for Proposals to operate the Rockland wastewater treatment plant. The minimum $400,000 labor cost in the RFI is highly unusual. In my 34 years of experience in the engineering field, including 20 years preparing Requests for Proposals, I do not recall seeing or learning about similar provisions in an RFP. In my opinion, such a provision hinders competition because labor costs are typically a major variable in the competition for a wastewater treatment plant operations contract.

Further, the requirement that a bidder provide a belt filter press equal to or better than the one on site that was provided by the incumbent contractor, in my opinion, gave a decided advantage to the incumbent contractor. The RFP noted that competing firms would have to design, procure and install a similar belt press while PSG could continue to operate a press that was already installed and apparently owned by them. Based on my experience, the design and installation of a belt filter press may exceed $200,000 depending on press accessory equipment. Finally, RFP stipulated interim sludge disposal requirements noted earlier in this letter that had minimal impact on the incumbent contract operator probably hindered competition from competing contract operations firms. In my opinion, the belt filter press provisions in the 1997 RFP gave the incumbent contractor a distinct advantage in the proposal process.

*Original printed on recycled paper.*

**Tighe&Bond**
Consulting Engineers
Environmental Specialists

Further, the inclusion of the belt filter press provision in the previous RFP for the Town of Rockland in 1994 was not prudent because a press is an expensive capital improvement to a treatment plant. The 1994 procurement process required the contractor to provide a belt filter press for only a three year period, an expensive financial obligation. Realistically, the installation of a belt filter press at the Rockland wastewater treatment plant should have been a capital improvement project pursued through a competitive construction bid process sponsored by the Town. Although I prepared the RFP for the Town of Rockland in 1994, I did not endorse the belt filter press provision. My recollection is that the Town requested such a provision in the RFP. For information purposes, since the 1994 belt filter press requirement applied to all potential proposers, the requirement did not hinder competition but did complicate the proposal process for all potential contract operators in 1994.

My opinions are based on my familiarity with the 1994 RFP that Tighe & Bond prepared ( I was the focal point for the effort) with input from the Town and the Town Counsel, my training, education and experience as described in my attached curriculum vitae, my experience in the field of wastewater engineering and my reading of the July 21, 1997 RFP.

For information purposes, I have testified as an expert in a trial twice in the last four years. The first case was Raymond A. Clark, et al. v. Mead Realty Group, Inc., et al. Hampden Superior Court, C. A. No. 00-403. The second case (included deposition) was Mani George, M. D. and Susan Mani v. Town of South Hadley and Tighe & Bond, Hampshire County Superior Court, A. C. No 2006-P-0595. Also, I have not published in the last ten years.

Finally, the compensation that Tighe & Bond would charge for my services would be $174 per hour. Please call the undersigned at 413-572-3203 if you any questions on information presented herein.

Very truly yours,

TIGHE & BOND, INC.

Ronald A. Michalski, P.E.
Senior Vice President

J:\000\02\RAM\Ms. D'Alcomo.doc

Original printed on recycled paper.

**Tighe&Bond**            **RESUME**

# RONALD A. MICHALSKI, P.E.

*Senior Vice President*

Ronald Michalski has more than 34 years of experience in the municipal engineering field. Areas of expertise include civil/site work, solid waste, water pollution control, and water treatment/distribution. His civil/site work experience includes drainage work as well as road reconstruction projects. In addition to engineering services, he has assisted numerous clients with project planning and financing advice, including applications of numerous financial aid packages to state and federal agencies.

## Professional Experience

### Civil/Site

- Led a design team that provided all civil engineering support associated with the Village Commons project in South Hadley, MA – a commercial complex occupying almost 20 acres of land with site constraints that made development of parking and traffic flow challenging.

- Supervised all permitting and design work required for the reconstruction of Crystal Street in Lenox, MA. The project length was 10,000 feet and included the replacement of underground utilities plus the addition of a bicycle/pedestrian sidewalk.

- Directed all design and permitting work associated with the reconstruction of 10,000 feet of South Street in Dalton, MA and 7,000 feet of Congamond Road in Southwick, MA. Both projects involved design oversight by MHD with unique permitting and right-of-way issues.

- Planned and designed drainage improvements in South Hadley and West Springfield, MA, including control measures to mitigate severe erosion problems in a brook valley and the installation of a storm drain relief line to prevent flooding in a busy commercial area.

- Managed engineering support for the development of a municipal golf course in South Hadley, MA. Design activity focused on road and parking lots, all site utilities including irrigation water, as well as permitting and golf course grading work.

### Solid Waste

- Directed a design team for a unique landfill expansion program in South Hadley, MA for a private party as part of a municipally-sponsored solid waste development program. The program included groundwater remediation, partial closure of an old landfill site, and development of a 10-acre lined landfill cell.

- As project manager for assessment and closure activities on the 14-acre Mattapoisett, MA landfill, worked closely with the Board of Health and landfill operators to aid the town in generating $1,500,000 in landfill fees to provide resources to close and cap the landfill area.

- Supervised all landfill assessment and closure work in Newtown, CT where a 10-acre landfill site was capped utilizing sludge ash as the capping layer. Landfill assessment work clarified environmental concerns associated with the landfill site and neighboring industrial complexes.

- Worked with a private firm to expand a lined landfill area in Moretown, VT. Services have included operational assistance, permitting, closure design, and comprehensive planning of future expansion areas.

## Tighe&Bond

RESUME

### Wastewater

- Worked with community officials to study, design, and upgrade wastewater treatment facilities in Adams and Hull, MA. In both cases, the design provided improved process control and operational flexibility to comply with future NPDES permit requirements. Low interest loans were secured for both projects.

- Guided Hull, MA officials in the planning, design, permitting, and construction of low pressure sewer systems in coastal areas with rocky terrain. Projects involved more than 20,000 feet of pipeline and the installation of 175 grinder pumps on private property. In addition, assisted the community in the pursuit of a contract operations proposal for the municipal sewerage system.

- Managed the preparation of a Comprehensive Wastewater Management Plan (CWMP) in South Hadley, MA that focused on sewage needs and treatment plant operational readiness. In addition, completed an I/I Study of a troublesome sewer interceptor noted in the CWMP. The I/I study resulted in flow diversion work to address the last CSO's in the community.

- Since 1975, worked with the Mattapoisett Board of Water & Sewer Commissioners to plan, design, and construct a municipal sewerage system and follow-up expansions of the system. Assisted in securing financing of more than $15,000,000 for projects from MADEP/EPA Grants, and State Revolving Loans.

### Water Resources

- Planned, designed, and managed the installation of 20,000 feet of replacement 16-inch water main in Southwick, MA, saving the community nearly $1,000,000 by reducing the project scope while achieving the same hydraulic upgrade to the distribution system.

- Supervised design and construction engineering services for the Chester, MA slow sand filtration treatment plant. The project was selected as "1998 Project of the Year" by the American Public Works Association in the "$2,000,000 and less" environmental category.

- Directed all groundwater studies and engineering services associated with the conversion of the Cheshire, MA water supply program from an open reservoir system to a groundwater well system to comply with federal surface water treatment standards.

## Education and Certifications

Bachelor of Science, Civil Engineering, University of Massachusetts at Amherst, 1968
Graduate Studies, Environmental Engineering, Cornell University 1968-69

## Professional Affiliations

American Civil Engineering Association
American Public Work Association
Massachusetts Highway Association
Water Environment Federation
Lt. Col. (Retired), USAF Engineering