UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
PROFESSIONAL SERVICES                   )
GROUP, INC.,                            )
                                        )
              Plaintiff,                )
                                        )
       v.                               )
                                        )
TOWN OF ROCKLAND, ROCKLAND              )
SEWER COMMISSION, GREGORY               )
THOMSON and MICHAEL SAUSÉ,              )
                                        )
_____)
                                        )
TOWN OF ROCKLAND, ROCKLAND              )
SEWER COMMISSION,                       )
                                        )
              Plaintiffs-in-Counterclaim )    Civil No. 04-11131-PBS
              and Crossclaim            )
                                        )
v.                                      )
                                        )
PROFESSIONAL SERVICES                   )
GROUP, INC.,                            )
                                        )
              Defendant-in-Counterclaim, )
                                        )
and                                     )
                                        )
MICHAEL SAUSÉ,                          )
                                        )
              Crossclaim Defendant      )
_____)

## PLAINTIFF'S PRELIMINARY REQUEST FOR JURY INSTRUCTIONS

Plaintiff Professional Services Group, Inc. ("PSG") hereby requests that the Court give

the following instructions to the jury in this case.  PSG reserves the right to request that the Court

modify, amend, or supplement these requested instructions.

Respectfully submitted,

PROFESSIONAL SERVICES GROUP, INC.,
By its attorneys,

_____/s/ David M. Osborne_____
Maria R. Durant (BBO # 558906)
David M. Osborne  (BBO # 564840)
Sara E. Noonan (BBO # 645293)
DWYER & COLLORA, LLP
Federal Reserve Plaza
600 Atlantic Avenue, 12th Floor
Boston, MA  02210
(617) 371-1000

Dated:  July 14, 2006

## CERTIFICATE OF SERVICE

I, David M. Osborne, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on July 14, 2006.

_____/s/ David M. Osborne_____
David M. Osborne

**Breach of Contract - General**

In this case, PSG has brought a claim for breach of contract against Defendants Town of Rockland and the Rockland Sewer Commission. The Defendants have also brought a claim for breach of contract against PSG.

In order to prevail on a breach of contract claim, a party must prove each of the following four elements by a preponderance of the evidence:

1.    That there is a valid contract;

2.    That the party bringing the claim performed its obligations under the contract (or is excused from performance);

3.    that the other party breached the contract; and

4.    That the nonbreaching party suffered damages as a result of the breach of contract.[1]

---

[1] See Mass. Superior Court Civil Practice Jury Instructions § 14.1.19  (2003 Supp.)

**Breach of Contract – Canceling Valid Contract**

A party to a valid contract may not unilaterally cease to perform its obligations under that contract, except as provided for by the law.  A party that cancels or ceases to perform its obligations under a valid contract has breached that contract.[2]

---

[2]  Dipietro v. Sipex Corp, 2005 WL 1812505, at *2 (Mass. Super. 2005) ("repudiation or renunciation of a contract, such as refusal to render performance when due, is a material breach")

**Breach of Contract – Performance**

To recover for a breach of contract, a party must establish that it fully and completely performed all of its obligations under the contract.  However, a material breach of the contract by one party excuses further performance by the nonbreaching party.  A material breach occurs when there is a breach of an essential feature of the contract, or when there is a breach that goes to the heart of the agreement.[3]

---

[3]  <u>See</u> Mass. Superior Court Civil Practice Jury Instructions § 14.1.21, 14.2  (2003 Supp.)

**Breach of Contract – Waiver**

A party cannot sue for breach of contract where that party has waived the breach.  Waiver means the intentional relinquishment of a known right.  If the plaintiff intentionally gave up its right to performance, then that party waived the breach and cannot maintain an action for breach of contract.[4]

---

[4] See Mass. Superior Court Civil Practice Jury Instructions § 14.1. 1  (2003 Supp.)

**Breach of Implied Covenant of Good Faith & Fair Dealing – General**

The Town of Rockland and the Rockland Sewer Commission have also brought a claim against PSG for breach of the implied covenant of good faith and fair dealing.

The implied covenant of good faith and fair dealing provides that neither party to a contract shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.[5]

This implied covenant does not create rights and duties not otherwise provided for in the contract, but rather concerns the manner of performance of the contract. The scope of the implied covenant is only as broad as the contract itself.[6]

A breach of the implied covenant of good faith and fair dealing constitutes a breach of contract.[7]

---

[5] Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471 (1991).
[6] Ayash v. Dana-Farber Cancer Institute, 443 Mass. 367, 385 (2005) ("This implied covenant may not be invoked to create rights and duties not otherwise provided for in the existing contractual relationship but rather concerns the manner of performance…. The scope of the covenant is only as broad as the contract that governs the particular relationship.").
[7] See Mass. Superior Court Civil Practice Jury Instructions § 14.1.12 (2003 Supp.)

**Conversion – General**

The Town of Rockland and the Rockland Sewer Commission have also brought a claim against PSG for conversion.  To prove PSG liable for the claim of conversion alleged, Defendants must prove each of the following elements by a preponderance of the evidence:

1.     That Michael Sause exercised acts of ownership, control or dominion over property of the Defendants to which he had no right of possession at the time;

2.     That he did so intentionally or wrongfully; and

3.     That PSG is vicariously liable for Mr. Sause's conduct.[8]

---

[8] See Grand Pacific Finance Corp. v. Brauer, 57 Mass. App. Ct. 407, 412 (2003) ("The elements of conversion require that a defendant be proved to have intentionally or wrongfully exercised acts of ownership, control or dominion over personal property to which he has no right of possession at the time….").

**Civil Conspiracy – General**

The Town of Rockland and the Rockland Sewer Commission have also brought a claim against PSG for civil conspiracy.  To prove PSG liable for the civil conspiracy alleged, Defendants must prove each of the following elements by a preponderance of the evidence:

1.      That Michael Sause and Gregory Thomson had a common plan;

2.      That the plan was to commit a fraud against the Town and/or Sewer Commission;

3.      That Mr. Sause and Mr. Thomson each knew of the plan and its purpose;

4.      That they took affirmative steps to achieve the result of the plan; and

5.      That PSG is vicariously liable for Mr. Sause's conduct.[9]

---

[9] See Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1563-64 (1st Cir. 1994)

**Fraud – General**

The Town of Rockland and Rockland Sewer Commission have also brought a claim against PSG for fraud.  To prove PSG liable for fraud, the Defendants must prove each of the following elements by a preponderance of the evidence:

1.      That a PSG employee made a false statement to the Defendants;

2.      That the false statement concerned some fact that a reasonable person would consider important to a decision that the Defendants were about to make;

3.      That when the PSG employee made the statement, that employee either knew that the statement was false, or recklessly made the statement by willfully disregarding its truth or falsity;

4.      That the PSG employee made the false statement with the intention that the Defendants would rely on that statement in making their decision;

5.      That in making the decision, the Defendants did in fact rely on the employee's statement as true,

6.      That the Defendants' reliance was reasonable under the circumstances;

7.      That the Defendants suffered some financial loss as a result of relying on the employee's false statement; and

8.      That PSG is vicariously liable for its employee making the false statement.[10]

---

[10] See Mass. Superior Court Civil Practice Jury Instructions § 20.1  (2003 Supp.)

**Negligent Misrepresentation -- General**

The Town of Rockland and Rockland Sewer Commission have also brought a claim against PSG for negligent misrepresentation.  To prove PSG liable for negligent misrepresentation, the Defendants must prove each of the following elements by a preponderance of the evidence:

1.   That an employee of PSG made a false statement to the Defendants;

2.   That this statement concerned some fact that a reasonable person would consider important to a decision that the Defendants were about to make;

3.   That when the employee made the false statement, that employee negligently failed to determine whether it was true or false;

4.   That the employee or agent made the false statement with the intention that the Defendants would rely on that statement in making their decision;

5.   That in making their decision, the Defendants did in fact rely on the false statement as true;

6.   That the Defendant's reliance on the false statement was reasonable under the circumstances;

7.   That the Defendants suffered some financial loss as a result of relying on the defendant's false statement; and

8.   That PSG is vicariously liable for its employee making the false statement.[11]

A person acted negligently in making a statement if he or she made a statement about an important fact without using the amount of care a reasonable person would use in those circumstances to see that what he or she said was true.

---

[11] See Mass. Superior Court Civil Practice Jury Instructions § 20.2  (2003 Supp.)

**Fraud / Negligent Misrepresentation – Reasonable Reliance**

To prove either fraud or negligent misrepresentation, the Defendants must prove that they relied on the false statement.  Furthermore, the Defendants must prove that their reliance was reasonable and justifiable under the circumstances.

A person is not entitled to rely on a representation that he knows to be false, or if the falsity of the representation is obvious to him.

A person also cannot reasonably rely on statements that are preposterous or palpably false.  Parties claiming justifiable reliance are required to use their senses, and cannot recover if they blindly relied upon a misrepresentation the falsity of which would be obvious if they utilized the opportunity to make a cursory examination or investigation. [12]

---

[12] See Mass. Superior Court Civil Practice Jury Instructions § 20.1.6 (2003 Supp.)

**Negligent Supervision – General**

The Town of Rockland and Rockland Sewer Commission have also brought a claim against PSG for negligence in its supervision of Michael Sause.  To prove PSG liable on this claim, Defendants must prove each of the following elements by a preponderance of the evidence:

1.      That PSG owed a duty to the Town of Rockland of reasonable care in its supervision of Michael Sause in the performance or his duties for PSG;

2.      That Mr. Sause committed fraud against the Town, as I have explained that claim to you;

3.      That PSG breached its duty of reasonable care by failing to prevent Mr. Sause from committing fraud on the Town;

4.      That the Town suffered damage as a result of PSG's breach of its duty; and

5.      That PSG's breach of its duty was the direct and proximate cause of the Town's damages. [13]

A proximate cause is that which, in continuous sequence, unbroken by a new cause, produces an event, and without which the event would not have occurred.  It may be assisted or accelerated by other incidental and ancillary matters.  But if it is the continuous and operative and potent factor, then the chain of causation is not broken.[14]

Conduct that results in harm to a third person is not negligent unless there is a foreseeable likelihood that harm will result from the conduct.[15]  To prove that PSG breached a duty owed to the Defendants, the Defendants must prove that the person or persons at PSG responsible for supervising Mr. Sause knew or should have known that Mr. Sause would commit or was committing fraud on the Defendants.[16]

However, it is not enough for the Defendants to show that PSG did not adequately supervise Mr. Sause. Defendants must prove that Mr. Sause committed fraud, as I have explained that claim to you.  In addition, a causal relationship between any breach of duty and the harm suffered by the Defendants is an essential element of their claim.[17]

---

[13]  See Foster v. Loft, Inc., 26 Mass. App. Ct. 289, 290-91 (1988); Coughlin v. Titus & Bean Graphics, Inc., 54 Mass.App.Ct. 633 (2002).

[14]  See Roberts v. Southwick, 415 Mass. 465, 472 (1993)

[15]  See Restatement (Third) Agency § 7.04

[16]  See Foster v. Loft, Inc., 26 Mass. App. Ct. 289, 291 (1988) ("Negligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of …").

[17]  See Nelson v. Salem State College, 446 Mass. 525, 538 (2006) ("It is not enough for the plaintiff to show deficiencies in the training program. A causal relationship between any breach of duty and the harm suffered by the plaintiff is an essential element of her claim.").

**c. 268A, § 2(a)**

The Town of Rockland and Rockland Sewer Commission have also brought a claim against PSG for a violation of Massachusetts General Laws chapter 268A, section 2(a).

To prove PSG liable for a violation of chapter 268A, section 2(a), Defendants must prove each of the following elements by a preponderance of the evidence:

1. That Michael Sause, directly or indirectly, corruptly gave, offered or promised anything of value to Gregory Thomson, or offered or promised Gregory Thomson that Mr. Sause would give anything of value to any other person or entity;[18]

2. That Mr. Sause did so with the corrupt intent to influence any official act or any act within the official responsibility of Mr. Thomson, or to influence Mr. Thomson to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud on the Town of Rockland or the Rockland Sewer Commission, or to induce Mr. Thomson to do or omit to do any act in violation of his lawful duty;[19]

3. That the gift, offer, or promise to Mr. Thomson motivated him to perform an official act; and

4. That PSG is vicariously liable for Mr. Sause's conduct.

A violation of c. 268(a), section 2(a) involves a quid-pro-quo, or a two-way nexus, in which the giver corruptly intends to influence a specific official act through a gift, and that gift motivates an official to perform that official act.[20]

A "corrupt intent" is the intent to give something of value in exchange for specific influence.[21]

In this case, to find that Mr. Sause violated section 2(a), you must find that Defendants have proven that Mr. Sause corruptly intended to influence a specific official act of Mr. Thomson by giving him a gift, and that the gift motivated Mr. Thomson to perform that official act.

---

[18] See § 2(a).

[19] See § 2(a).

[20] See Scaccia v. State Ethics Comm'n, 431 Mass. 351, 356 (2000) ("a qui-pro-quo, or a two-way nexus, in which the giver corruptly intends to influence an official act through a gift, and that gift motivates an official to perform an official act")

[21] See U.S. v. Ferber, 966 F. Supp. 90, 103 (D. Mass 1997) ("bribery requires a corrupt intent to give something of value in exchange for specific influence"); Com. v. Dutney, 4 Mass .App .Ct. 363, 375 (1976) ("under s 2(b) the Commonwealth must show a corrupt intent on the part of the defendant to be influenced in his future performance of an official act").

14

**c. 268A, § 3(a)**

The Town of Rockland and Rockland Sewer Commission have also brought a claim against PSG for a violation of Massachusetts General Laws chapter 268A, section 3(a).

To prove PSG liable for a violation of chapter 268A, section 3(a), Defendants must prove each of the following elements by a preponderance of the evidence:

1. That Michael Sause, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly, gave, offered or promised anything of substantial value to Gregory Thomson for or because of any official act performed or to be performed by Mr. Thomson; and[22]

2. That PSG is vicariously liable for Mr. Sause's conduct.

A violation of chapter 268A, section 3(a), requires that the item is given "for or because of any official act." This means that Defendants must prove a link or some connection to a specific official act in order to prove a violation of section 3(a).[23]

To prove a violation of section 3(a), it is not enough that Mr. Sause was motivated by Mr. Thomson' position with the Sewer Commission, his authority as a result of that position, or his performance of his duties for the Sewer Commission in general. Defendants must prove a link between something of substantial value given, offered, or promised to Mr. Thomson and a specific official act for or because of which it was given.[24]

Whether something was "of substantial value" must be determined by you in relation to the facts of the particular case.[25]

---

[22] See § 3(a).

[23] See Scaccia v. State Ethics Comm'n, 431 Mass. 351, 355-56 (2000) ("it is necessary [under § 3(a)] to establish a link between a gratuity and an official act"); United States v. Sun-Diamond Growers, 526 U.S. 398,414 (1999)

[24] United States v. Sun-Diamond Growers, 526 U.S. 398, 414 (1999) ("the Government must prove a link between a thing of value conferred upon a public official and a specific 'official act' for or because of which it was given"); Scaccia v. State Ethics Comm'n, 431 Mass. 351, 355-56 (2000) ("there must be proof of linkage to a particular official act, not merely the fact that the official was in a position to take some unidentified or generalized action"); United States v. Sawyer, 85 F.3d 713, 735-36 (1st Cir. 1996) ("it does not appear that the unlawfulness of the gratuity could be established by proof that it was motivated solely by the official's position .... [or] but for the official's authority").

[25] Com. v. Famigletti, 4 Mass.App.Ct. 584, 587 (1976) ("The Commission concluded that this was a standard to be dealt with by judicial interpretation in relation to the facts of the particular case")

**c. 268A, § 17(b)**

The Town of Rockland and Rockland Sewer Commission have also brought a claim against PSG for Massachusetts General Laws chapter 268A, section 17(b).

To prove PSG liable for a violation of chapter 268A, section 17(b), Defendants must prove each of the following elements by a preponderance of the evidence:

1. That Michael Sause, otherwise than as provided by law for the proper discharge of official duties, knowingly gave, promised or offered compensation to Gregory Thomson in relation to any particular matter in which the Town of Rockland was a party or had a direct and substantial interest; and[26]

2. That PSG is vicariously liable for Mr. Sause's conduct.

"Compensation" means any money, thing of value or economic benefit conferred on or received by any person in return for services rendered or to be rendered by himself or another.[27]

A gift, or the giving of something of value to another person, is not, by itself, compensation. Compensation is only something given in return for services rendered or to be rendered. In other words, to prove a violation of section 17(b), there must be some connection between the benefit conferred on a person and the services rendered or to be rendered by that person.

---

[26] See §§ 17(a), 17(b).
[27] See § 1(a).

**c. 268A – Generally**

The unauthorized use of public funds, or of PSG's funds, alone is insufficient to prove any of the violations of chapter 268A alleged in this case.

Also, Mr. Sause's providing a gift, or anything of value, to Mr. Thomson is also not enough to prove a violation of chapter 268A.

To prove a violation of a section of chapter 268A, the Defendants must prove each of the elements of that section as I have explained them to you.

### c. 268A – Avoidance / Rescission

Under chapter 268A, a contract which was <u>substantially influenced by</u> a violation of section 2(a), 3(a), or 17(b) may be avoided, rescinded, or canceled on such terms as the interest of the municipality and innocent third parties require.[28]

A contract that is avoided, rescinded, or canceled is unenforceable and has no legal effect.

A violation of section 2(a), 3(a), or 17(b), alone, is not enough to avoid, rescind, or cancel a contract. The town's entry into the contract must have been <u>substantially influenced by</u> such a violation.

---

[28] <u>See</u> § 21(a)

**Uniform Procurement Act - Definitions**

The Town of Rockland and Rockland Sewer Commission have also brought a claim that PSG is liable under section 17(c) of the Massachusetts Uniform Procurement Act.

To help you understand the requirements of the Procurement Act, I am going to define some of the terms used in that statute.

According to the Procurement Act, "procurement" means buying, purchasing, renting, leasing, or otherwise acquiring a supply or service, and all the functions that pertain to the obtaining of a supply or service, including the description of requirements, selection and solicitation of sources, preparation and award of contract, and all phases of contract administration.

A "chief procurement officer" is an individual duly appointed by the town to procure all supplies and services for that town.

A "request for proposals" is a document utilized for soliciting proposals for a project, including documents attached or incorporated by reference.

A "proposal" is a written offer to provide a service at a stated price submitted in response to a request for proposals.

A "responsible bidder or offeror" is a person or company who has the capability to perform fully the contract requirements, and the integrity and reliability which assures good faith performance.

A "responsive bidder or offeror" is a person or company who has submitted a bid or proposal which conforms in all respects to the invitation for bids or request for proposals.[29]

---

[29] See § 2 (definitions).

**Uniform Procurement Act – Proprietary / Sole Source Specifications**

The Procurement Act requires that all specifications in a request for proposals shall be written in a manner which describes the requirements to be met without having the effect of exclusively requiring a proprietary supply or service, or procurement from a sole source.[30]

The fact that a specification or request for proposals results in only one proposal being submitted is not enough to prove a violation of this provision of the Procurement Act.

In other words, the fact that PSG submitted the only proposal in response to the request for proposals at issue in this case is not enough to prove a violation of this provision.  The specifications must have been written so that only PSG could satisfy them.

---

[30]  See § 14 ("all specifications shall be written in a manner which describes the requirements to be met without having the effect of exclusively requiring a proprietary supply or service, or procurement from a sole source.").

**Uniform Procurement Act – Price / Evaluation Criteria**

For a contract of the type at issue in this case, the chief procurement officer is required to determine the most advantageous proposal from a responsible and responsive offeror, taking into consideration price <u>and</u> the evaluation criteria set forth in the request for proposals.  A contract of this type may <u>not</u> be awarded only on the basis that a proposal contains the lowest price.[31]

The Procurement Act requires that evaluation criteria in a request for proposals include all standards by which the acceptability of the proposal will be determined.  This includes standards for quality, workmanship, results of inspections and tests, and suitability for a particular purpose, and all other performance measures that will be utilized.[32]

---

[31]  <u>See</u> § 6(g) ("The chief procurement officer shall determine the most advantageous proposal from a responsible and responsive offeror taking into consideration price and the evaluation criteria set forth in the request for proposals.").

[32]  <u>See</u> § 6(e) ("shall include all standards by which acceptability will be determined as to quality, workmanship, results of inspections and tests, and suitability for a particular purpose, and shall also include all other performance measures that will be utilized").

**Uniform Procurement Act – Responsive Proposals**

The chief procurement officer may award a contract <u>only</u> to a responsible and responsive offeror, as the Procurement Act defines those terms.  The chief procurement officer may <u>not</u> award a contract to an offeror whose bid or proposal does not conform in all respects to the specifications in the request for proposals.[33]

---

[33] <u>See</u> § 6(g) ("The chief procurement officer shall determine the most advantageous proposal from a responsible and responsive offeror …."); § 2 ("A responsive bidder or offeror is a person or company who has submitted a bid or proposal which conforms in all respects to the invitation for bids or request for proposals.").

**Uniform Procurement Act – Contractor Work on RFP**

The Procurement Act does <u>not</u> prohibit a contractor, or an employee of a contractor, from drafting or consulting on the drafting of a request for proposals with an employee of a town or public agency.  That, alone, is not enough to prove that a contract was made in violation of a provision of the Procurement Act.

**Uniform Procurement Act § 17(c) - General**

Defendants have alleged that PSG is liable for a violation of Section 17(c) the Procurement Act. In order to prove PSG liable for such a violation, the Defendants must prove each of the following elements by a preponderance of the evidence:

1.    That Michael Sause conspired with Gregory Thomson to cause

2.    a contract to be solicited or awarded

3.    in violation of a provision of the Procurement Act, and

4.    that PSG is vicariously liable for Mr. Sause's conduct.[34]

To prove the element of a conspiracy between Mr. Sause and Mr. Thomson, Defendants must prove by a preponderance of the evidence:

1.    That Mr. Sause and Mr. Thomson had a common plan;

2.    That the plan was to cause a contract to be solicited or awarded in violation of a provision of the Procurement Act;

3.    That each of the participants knew of the plan and its purpose; and

4.    That they took affirmative steps to encourage the achievement of the result.[35]

---

[34]  See § 17(c)

[35]  See Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1563-64 (1st Cir. 1994) (civil conspiracy)

**Uniform Procurement Act § 17(c) – "Violation" Element**

A finding that a contract was in violation of a provision of the Procurement Act, alone, is not enough to prove a violation of section 17(c) of the Procurement Act. It is not a violation that the request for proposals merely gave PSG an "unfair advantage" in securing the contract. Also, it is not enough for you to find that Michael Sause and Gregory Thomson conspired together to draft the request for proposals.

To find PSG liable for a violation of section 17(c), you must find that Defendants have proven each of the elements of section 17(c) as I have explained them to you by a preponderance of the evidence.

**Vicarious Liability -- General**

I am now going to talk to you about the law of vicarious liability. The principles of vicarious liability arise by operation of law, and apply where an employee has committed a wrongful act and the employer is without fault for that act.[36]

As I have already stated, PSG is legally responsible for conduct by Mr. Sause, or by any of its employees, in a particular claim <u>only if</u> the Defendants prove that PSG is vicariously liable for that conduct.

In addition, PSG's vicarious liability for an employee's conduct depends on the specific conduct at issue. In other words, even if you find that the Defendants have proven that PSG is vicariously liable for some of a particular employee's conduct, PSG may not be vicariously liable for other conduct of that same employee.

Each time you consider different conduct by a particular employee, you must determine whether the Defendants have proven that PSG is vicariously liable for that particular conduct of that employee.

---

[36] <u>Elias v. Unisys Corp.</u>, 410 Mass. 479, 481 (1991) ("[T]he principles of vicarious liability apply where only the agent has committed a wrongful act. The principal is without fault. The liability of the principal arises simply by the operation of law and is only derivative of the wrongful act of the agent.").

## Vicarious Liability -- Actual & Apparent Authority

An employer may be vicariously liable for the acts of an employee in a particular situation if the employee has actual authority or apparent authority from the employer to act in a certain way in that situation.

Actual authority results when an employer explicitly manifests consent, either through words or conduct, that the employee should act on behalf of the employer in a particular way in a particular situation.[37]

Apparent authority results from conduct by an employer which causes a third person reasonably to believe that a particular employee has authority to act in a particular way in a particular situation.[38]

Only acts by an employer – not acts of an employee – can create apparent authority.[39]

If a person has information which would lead a reasonable person to believe that an employee is violating the orders of his employer, or that the employer would not wish the employee to act under the circumstances known to the employee, then the employee cannot be acting with apparent authority.  Any substantial departure by an employee from the usual methods of conducting business is ordinarily a sufficient warning of lack of authorization.[40]

To prove that an employee acted with apparent authority from PSG in a particular situation, Defendants must prove that a reasonable person dealing with that employee under the circumstances in this case would have thought that the employee was acting with PSG's authority to perform the specific conduct at issue.[41]  In other words, the person dealing with the PSG employee must have reasonably believed that PSG consented to that employee's particular conduct on behalf of PSG.[42]

The test is not what the person dealing with a PSG employee in a particular situation actually thought, but what a reasonable person in that situation would think.

---

[37] Theo & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 743 n.14 (2000) ("Actual authority results when the principal explicitly manifests consent, either through words or conduct, that the agent should act on behalf of the principal.").

[38] Hudson v. Mass. Property Ins. Underwriting Ass'n, 386 Mass. 450, 457 (1982) ("Apparent or ostensible authority results from conduct by the principal which causes a third person reasonably to believe that a particular person ... has authority to enter into negotiations or to make representations as his agent.")

[39] Kansallis Finance Ltd. v. Fern, 421 Mass. 659, 665 n.5 (1996) ("it is only those things that the principal has done to create the appearance that are measured"); Restatement (Third) Agency § 2.03.

[40] Restatement (Second) Agency § 166 cmt.a.; see also Int'l Brotherhood of Police v. Mem. Press, Inc., 31 Mass. App. Ct. 138, 141 (1991) ("the fact that an act is done in an outrageous or abnormal manner has value in indicating that the servant is not actuated by an intent to perform the employer's business").

[41] Kansallis Finance Ltd. v. Fern, 421 Mass. 659, 666 (1996) (apparent authority question is "whether a reasonable person in the victim's circumstances in the particular case would have taken the agent to be acting with the principal's authority")

[42] Theo & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, (2000) ("Apparent authority is created … [where conduct] which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him" (quoting Restatement (Second) Agency § 27)).

**Damages –Introduction**

Now I am going to talk to you about damages.

Before a party can recover damages for any claim, that party must prove that the other party is liable under that claim, according to the law as I have explained it to you.

The fact that I charge you on a measurement of damages is not, and should not be considered by you, as any indication that I think damages should be awarded. I give you these instructions on damages solely because I am required to charge you on all phases of the case that you might have to consider. If a party has not proven that the other party is liable on a particular claim, then you will not consider the issue of damages on that claim.[43]

---

[43] See Mass. Superior Court Civil Practice Jury Instructions § 14.3.1 (2003 Supp.)

**Damages – Not Speculative**

Damages must be proved with a reasonable degree of certainty.  Thus, damages cannot be speculative.  Any damages that a party claims to have suffered, including any compensatory damages, must be computed by rational methods upon a firm factual basis.  Therefore, any damages sought must be proven and not left to speculation.

In order to recover damages, a party must establish that its damages are ascertainable by reference to some definite standard, either of market value, established experience, or direct inference from known circumstances.[44]

---

[44] See Mass. Superior Court Civil Practice Jury Instructions § 14.3.1(l)  (2003 Supp.)

**Damages – Mitigation**

A party who has been damaged by the wrongful act of another is bound to exercise reasonable care and diligence to avoid loss and to minimize damages.  A party who has been damaged may not recover for losses that could have been prevented by reasonable efforts on its part.  Any damages you award must <u>not</u> include that amount which the party claiming damages could have reasonably prevented.[45]

---

[45] <u>See</u> Mass. Superior Court Civil Practice Jury Instructions § 14.3.1(o)  (2003 Supp.)

**Damages – Not Duplicative**

A party may not recover duplicative or cumulative damages for the same harm.

In this case, Defendants are seeking damages from PSG under a number of claims. Where the same acts cause the same injury or loss to Defendants under more than one claim, the Defendants may recover only once for that injury or loss. In order to recover damages under more than one of their claims, Defendants must prove PSG's liability for each of those claims <u>and</u> must present evidence of distinct, separate losses under those claims.[46]

---

[46] <u>See</u> <u>Fox v. F & J Gattozzi Corp.</u>, 41 Mass. App. Ct. 581, 583 (1996) ("Because damages in a tort claim and a contract claim often overlap, a plaintiff must present evidence of distinct, separate losses to justify recovery beyond the breach of contract claim."); <u>Szalla v. Locke</u>, 421 Mass. 448 (1995) ("Where the same acts cause the same injury under more than one theory, duplicative damage recoveries will not be permitted. Even if the wrongdoing occurred at different times during the parties' relationship, the damages incurred by the plaintiff were the same. The plaintiff must elect from among the counts.").

**Damages – Breach of Contract**

As I have explained to you, each of the parties in this case has brought a claim for breach of contract against the other. In addition, Defendants have brought a claim for breach of the implied covenant of good faith and fair dealing. If you find either party liable for one of these claims, then you must determine what contract damages to award.

The basic principle of contract damages is that the injured party should be put in as good a position as if the other party had fully performed its obligations under the contract. However, to recover damages for breach of contract, a party must demonstrate that the damages complained of were caused by the breaching party's conduct. If the damages were caused by the nonbreaching party, or by someone other than the party that breached the contract, then the nonbreaching party is <u>not</u> entitled to damages from the party that breached the contract.

A party that has proven a breach of contract is entitled to recover damages sufficient to give it the benefit of its contractual bargain, as long as such damages are reasonably proved. In other words, the party is entitled to those damages that would put it in a position to obtain that which it has bargained to obtain, so far as compensation in money can be computed by rational methods upon a firm basis in fact.

A party that proves a breach of contract is entitled to recover both general and consequential damages. General damages are those which flow according to common understanding as the natural and probable result of the breach. Consequential damages result from special circumstances known or presumed to have been known to the parties.

Again, the damages you award should not be speculative. You should arrive at a figure within a reasonable range, a figure supported by the evidence and by inferences drawn from the evidence.[47]

---

[47] <u>See</u> Mass. Superior Court Civil Practice Jury Instructions § 14.3.1  (2003 Supp.)

**Damages – Fraud / Negligent Misrepresentation**

If you find that Defendants have proven PSG liable for fraud or for negligent misrepresentation, according to the law as I have explained it to you, then you must determine the amount of damages.

For a claim of fraud or negligent misrepresentation, a party may recover the benefit of what it was promised by the other party, which is calculated as the amount of money that would put that party in the position that it would have been in if the situation had been as represented by the other party.  A party that proves a claim of fraud or negligent misrepresentation is entitled to recover damages sufficient to give it the benefit of the bargain that it had with the other party, if those damages are proved with reasonable certainty.

If the fraud  or negligent misrepresentation caused a party to incur any additional expenses that were reasonably foreseeable as a result of the misrepresentation, then you are to award the an additional amount of money that will compensate it for those additional expenses that it incurred.

A party may not recover all of its expenses that resulted from the fraud or misrepresentation, but only those that were reasonably foreseeable. [48]

---

[48] See Mass. Superior Court Civil Practice Jury Instructions §§ 20.1.8, 20.2.1 (2003 Supp.)

**Damages – Negligent Supervision**

If you find that Defendants have proven PSG liable for negligence in its supervision of Mr. Sause, then Defendants are entitled to receive those damages that PSG's negligence directly and proximately caused, if those damages are proved with reasonable certainty.

As I have previously explained, a proximate cause is that which, in continuous sequence, unbroken by a new cause, produces an event, and without which the event would not have occurred. It may be assisted or accelerated by other incidental and ancillary matters. But if it is the continuous and operative and potent factor, then the chain of causation is not broken.[49]

---

[49] <u>Roberts v. Southwick</u>, 415 Mass. 465, 472 (1993) (proximate cause)

**Damages – Civil Conspiracy**

If you find that Defendants have proven PSG liable for civil conspiracy, as I have explained that claim to you, then you will award those damages that were directly and proximately caused by the civil conspiracy, if those damages are proved with reasonable certainty.[50]

---

[50] See Willett v. Herrick, 242 Mass. 471, 573 (1922).

**Damages – Conversion**

If Defendants prove that PSG is liable for a claim of conversion, then the Defendants are entitled to recover the fair and reasonable market value of the property converted at the time and place of the conversion.

Defendants may not recover damages for the value of any converted property that has been returned to them.  If you find that PSG is liable for conversion, and that converted property has been returned to the Defendants, you should subtract from any damages award the value of that property at the time it was returned.[51]

---

[51] See Welch v. Kosasky, 24 Mass. App. Ct. 402 (1987).

**Damages – Uniform Procurement Act § 17(c)**

If you find that the Defendants have proven that PSG is vicariously liable for Mr. Sause conspiring with Gregory Thomson to cause a contract to be solicited or awarded in violation of a provision of the Procurement Act, according to section 17(c) of the Procurement Act as I have explained it to you, then you must determine the amount of damages and costs sustained by Defendants <u>by reason of the violation</u>.  You may only award those damages and costs by reason of the violation that are proved with reasonable certainty.

If you find that Defendants have proven a violation of section 17(c), then you may apportion damages and costs among those who participated in the violation.[52]  To "apportion" means to divide into proportionate shares.[53]

In other words, if you find that Mr. Sause conspired with Gregory Thomson to cause a contract to be solicited or awarded in violation of a provision of the Procurement Act, then you may divide the damages and costs that occurred <u>by reason of the violation</u> into proportionate shares for Mr. Thomson and Mr. Sause.  If you apportion damages and costs in this way, then PSG is liable <u>only</u> for Mr. Sause's share of those damages and costs.

---

[52] <u>See</u> § 17(c).
[53] Black's Law Dictionary.

**Damages – c. 268A**

If you find that the Defendants have proven that PSG is liable for a violation of a section of chapter 268A by Mr. Sause, then you may award damages to the Defendants in the amount of the economic advantage that PSG received <u>as a result of</u> that violation, or $500, whichever is greater.[54]

If you award the amount of PSG's economic advantage, then that amount must be proved with reasonable certainty.

---

[54] <u>See</u> c. 268A, § 21(b).