## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

```
_____
                                    )
PROFESSIONAL SERVICES               )
GROUP, INC.,                        )
                                    )
          Plaintiff,                )
                                    )
     v.                             )
                                    )
TOWN OF ROCKLAND, ROCKLAND          )
SEWER COMMISSION, GREGORY           )
THOMSON and MICHAEL SAUSÉ,          )
                                    )
          .                         )
_____)
                                    )
TOWN OF ROCKLAND, ROCKLAND          )
SEWER COMMISSION,                   )
                                    )
     Plaintiffs in Counterclaim     )    Civil No. 04-11131-PBS
          and Crossclaim            )
                                    )
     v.                             )
                                    )
PROFESSIONAL SERVICES               )
GROUP, INC.,                        )
                                    )
     Defendant in Counterclaim,     )
                                    )
and                                 )
                                    )
MICHAEL SAUSÉ,                      )
                                    )
     Crossclaim Defendant           )
_____)
```

### MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE
### EXPERT TESTIMONY OF STEPHEN GUNZBURGER

Plaintiff/Counterclaim Defendant Professional Services Group, Inc. ("PSG") has moved to exclude the proposed expert testimony of Stephen Gunzburger ("Mr. Gunzburger").

Defendants/Counterclaim Plaintiffs Town of Rockland and the Rockland Sewer Commission ("Rockland") intend to offer Mr. Gunzburger as an expert witness to testify about the "economic advantage" PSG allegedly obtained as a result of its 1998 contract with Rockland, presumably to establish Rockland's purported damages under the Massachusetts Conflict of Interest law (Chapter 268A).

PSG has no objection to admitting evidence of the net income it derived from its contract with Rockland. Indeed, PSG intends to introduce such evidence in support of its claim for damages as a result of Rockland's breach of that contract. Mr. Gunzburger's proposed expert testimony, however, is inadmissible for three reasons. <u>First</u>, no expert testimony is necessary to establish PSG's net income because that information is readily identifiable on PSG's annual income statements without any analysis by a witness with specialized expertise. <u>Second</u>, testimony about what constitutes "economic advantage" requires a legal conclusion that usurps the role of the trier of fact. <u>Third</u>, Rockland's disclosure for Mr. Gunzburger's proposed testimony is inadequate because it does not identify with specificity the opinions on which he intends to testify or the bases for those opinions.

## **RELEVANT FACTS**

Rockland has brought counterclaims against PSG arising from a 1998 contract by which PSG provided wastewater treatment services to Rockland (the "1998 Contract"). Rockland alleges, in relevant part, that PSG violated the Massachusetts Conflict of Interest law by giving something of value to the Superintendent of the Rockland Sewer Commission in return for, or because of, an official act – presumably his award of the 1998 Contract to PSG. As damages for this alleged violation, Rockland claims that it is entitled to the "economic advantage" PSG received as a result of the 1998 Contract.

On June 30, 2006, Rockland served on PSG an expert disclosure for Mr. Gunzburger. <u>See</u> Letter to Joanne D'Alcomo, Esq. from Stephen Gunzburger dated June 30, 2006) (attached hereto at Tab A). In this disclosure – which barely exceeds one page – Mr. Gunzburger states that he was asked to opine about "profits and any other economic advantage" that PSG received as a result of the 1998 Contract. Without explanation, Mr. Gunzburger states, "In my opinion the profits that PSG (and later US Filter) earned on the contract during those years can be determined by ascertaining the income that was earned." Mr. Gunzburger concludes that the "minimum profits" earned from the beginning of the contract until the effective date of its termination in April 2004 totaled $1,211,979. Although Mr. Gunzburger does not indicate how he calculated this figure, it appears to be taken directly from certain income statements that PSG produced during discovery. These income statements reflect the net operating income from the Rockland project for each year of the 1998 Contract. <u>See</u> Income Statements 1998 through 2004 (attached hereto at Tab B).

Mr. Gunzburger also opines that "to the extent that PSG or U.S. Filter, treated, as charged to this contract, overhead or general expenses in the running of what I understand was the regional office in Norwell, or the headquarters or other offices, in determining income, such additional amounts also gave the companies and economic benefit because such overhead and general expenses would otherwise have been expected to have been incurred in the office's operations." Without providing either a total "economic advantage" calculation or specific identification (beyond some anecdotal examples) of those expenses he believes should be treated as profit, Mr. Gunzburger states that PSG also gained an "economic advantage" to the extent that overhead, general expenses or other expenses not directly associated with the running of the wastewater treatment plant were charged against income. Mr. Gunzburger discloses no

principles or methodology that he applied in reaching his conclusion, but instead simply states that his conclusion is based on his "education, training and experience."

## ARGUMENT

**I. Mr. Gunzburger's Proposed Expert Testimony Should be Excluded Because It Does Not Involve Scientific, Technical or Other Specialized Knowledge That Is Necessary to Assist the Trier of Fact.**

A witness may testify as an expert only if she has "scientific, technical or other specialized knowledge" that "will assist the trier of fact to understand the evidence or to determine a fact in issue …." Fed. R. Evid. 702. Here, Mr. Gunzburger's proposed expert testimony would not assist the trier of fact for the following reasons.

A. No specialized knowledge is necessary to ascertain PSG's net income.

In his disclosure, Mr. Gunzburger proposes to provide expert testimony that PSG's "minimum profit" totaled $1.211 million under the 1998 Contract. While Mr. Gunzburger does not explain how he arrived at this figure, it appears that he simply added the net income line on PSG's Income Statement for each of the contract years in question.[1]

Net income is simply revenue minus direct expenses, and that information appears on the Income Statements as a specific line item. No "specialized" knowledge is required to calculate this figure, and thus there is no reason for Mr. Gunzburger – a witness who lacks any personal

---

[1] Mr. Gunzburger's income figures for the periods 3/1/98-2/28/99 and 3/1/99-12/31/99 do not appear to correlate to the net income reflected in PSG's Income Statements, although his income figures do correlate to net income for the remaining periods. Thus, there is some doubt about the methodology Mr. Gunzburger used in preparing his disclosure. To the extent Mr. Gunzburger has failed to identify his methodology, it is an additional ground for precluding his testimony under Rule 702. See United States v. Monteiro, 407 F. Supp. 2d 351, 357-58 (D. Mass. 2006) (court's role under Rule 702 requires an assessment of reliability of the methodology underlying the testimony and a determination of whether that methodology properly can be applied to the facts of the case, including whether the expert is a qualified proponent of the methodology); Figueroa v. Simplicity Plan de Puerto Rico, 267 F. Supp. 2d 161, 167 (D. P.R. 2003) (excluding proposed expert testimony because expert's failure to reveal methodology in written report meant that testimony would not assist the trier of fact).
.

4

knowledge of PSG's financial statements or accounting methods – to testify about PSG's net income, either as an expert *or* a lay witness.  See Highland Capital Management v. Schneider, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005) (expert cannot be called simply for "rehashing" of otherwise admissible evidence about which he has no personal knowledge); In re Rezulin Products Liab. Litig., 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (rejecting portions of plaintiffs' expert's testimony that was "a narrative reciting selected regulatory events" because "[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence").  Indeed, the parties likely can stipulate as to what PSG's net income totaled during the life of the 1998 Contract.

     Even without a stipulation, Rockland is capable of introducing this evidence without an expert witness by calling a PSG employee as a lay witness, having the Income Statements admitted as business records, and asking the employee to identify for the jury the net income amounts.  Alternatively, Rockland can call its own summary witness to testify about the net income amounts reflected in the Income Statements.  See Fed. R. Evid. 1001.  In fact, if Rockland wishes to call Mr. Gunzburger as a summary witness for this purpose, PSG has no objection to his testimony.  What Rockland cannot do, however, is take simple, straight-forward information about PSG's net income and give it some elevated significance in the jury's mind by introducing it through the testimony of an expert witness.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 595 (1993) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.") (quoting Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)).

B.   <u>Expert testimony about what constitutes "economic advantage" would usurp the role of the trier of fact.</u>

Although Mr. Gunzburger's disclosure is vague and confusing, it appears that he proposes to testify that PSG's net income – what he loosely calls "profit" – constituted an "economic advantage" to PSG as a result of the 1998 Contract. While he does not define the meaning of "economic advantage," presumably he using that term as it appears in Chapter 268A as a measure of damages. <u>See</u> Mass. Gen. L. ch. 268A, § 21(b) (municipality may sue "any person who has acted to his economic advantage" and "may recover damages for the city or town in the amount of such economic advantage"). Thus, it appears that Mr. Gunzburger seeks to offer an expert opinion on the *legal standard* the jury should apply in assessing damages under Chapter 268A.

Expert testimony on legal standards cannot assist the trier of fact and usurps the province of both the court (in instructing the jury on the law) and the jury (in applying the law to the facts). <u>Cf.</u> <u>Nieves-Villanueva v. Soto-Rivera</u>, 133 F.3d 92, 100 (1st Cir. 1997) ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact") (citation omitted). It is simply improper for Rockland to attempt to use an expert to substitute his judgment for that of the trier of facts. <u>See</u> <u>DiBella v. Hopkins</u>, 2002 WL 31427362, at * 3 (S.D.N.Y. Oct. 30, 2002) (citing <u>United States v. Blizerian</u>, 926 F.2d 1285, 1294 (2d Cir. 2002)).

Moreover, while the term "economic advantage" is not defined by Chapter 268A, it consists of everyday words that a jury is perfectly capable of understanding without an expert's gloss. "Expert testimony on a subject that is well within the bounds of a jury's ordinary experience generally has little probative value." <u>United States v. Montas</u>, 41 F.3d 775, 784 (1st Cir. 1994). Accordingly, no expert testimony is needed or even permissible under Rule 702.

**II.    Mr. Gunzburger's Proposed Expert Testimony Should Be Excluded Because Rockland Did Not Provide the Expert Disclosures Required by Rule 26(a)(2)(B).**

A party proposing to offer the testimony of an expert witness must disclose a written report that was prepared and signed by the expert witness and "contain[s] a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions and any exhibits to be used as a summary of or support for the opinions. Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Mr. Gunzburger's bare-bone disclosure fails to meet this requirement.

In particular, Mr. Gunzburger proposes to testify that, *if* certain charges such as "overhead" or "specialized expenses" are included in the costs that were subtracted from PSG's revenue to obtain its net income figures, those charges constituted an economic advantage that should be added back into PSG's net income. He speculates that these expenses *could* include "overhead or general expenses in the running of what I understand was the regional office in Norwell" as well as "legal fees" and "public relations matters." However, he fails to identify or quantify any specific expenses beyond a "minimum" of $36,000 that he vaguely is "assuming" to be "overhead" during the first two years of the 1998 Contract. Cf. Dana Corp. v. American Standard, Inc., 866 F. Supp. 1481, 1501 (N.D. Ind. 1994) ("an expert may not assume a fact and then apply his expertise to the assumed fact to produce an opinion"). He also fails to explain how the additional "economic advantage" beyond simple net income affects his overall calculation of PSG's economic advantage.

Detailed expert disclosure requirements are "consonant with the federal courts' desire to make trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992) (analyzing need for timely and complete expert disclosures under prior discovery rules).

7

Mr. Gunzburger's disclosure fails to comply with these requirements because it does not inform PSG about the nature of his opinion with regard to "economic advantage" or how he arrived at that opinion. This inadequate disclosure has prejudiced PSG because PSG cannot prepare an effective cross examination of Mr. Gunzburger if it does not know what his testimony will be, nor can PSG determine whether a rebuttal expert will be needed.

## CONCLUSION

For all of the foregoing reasons, PSG respectfully requests that the Court exclude the proposed expert testimony of Mr. Gunzburger.

>Respectfully submitted,
>**PROFESSIONAL SERVICES GROUP, INC.**,
>By its attorneys,
>
>/s/David M. Osborne_____
>Maria R. Durant (BBO # 558906)
>David M. Osborne  (BBO # 564840)
>Sara E. Noonan (BBO # 645293)
>DWYER & COLLORA, LLP
>Federal Reserve Plaza
>600 Atlantic Avenue, 12th Floor
>Boston, MA  02210
>(617) 371-1000

Dated: July 14, 2006

**CERTIFICATE OF SERVICE**

      I, David M. Osborne, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on July 14, 2006.

                                            /s/David M. Osborne_____
                                            David M. Osborne