**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| PROFESSIONAL SERVICES ) | |
| GROUP, INC., ) | |
|   ) | |
|   Plaintiff, ) | |
|   ) | |
|   v. ) | |
|   ) | |
| TOWN OF ROCKLAND, ROCKLAND ) | |
| SEWER COMMISSION, GREGORY ) | |
| THOMSON and MICHAEL SAUSÉ, ) | |
|   ) | |
|   . ) | |
| _____) | |
|   ) | |
| TOWN OF ROCKLAND, ROCKLAND ) | |
| SEWER COMMISSION, ) | |
|   ) | |
|   Plaintiffs in Counterclaim ) | Civil No. 04-11131-PBS |
|   and Crossclaim ) | |
|   ) | |
|   v. ) | |
|   ) | |
| PROFESSIONAL SERVICES ) | |
| GROUP, INC., ) | |
|   ) | |
|   Defendant in Counterclaim, ) | |
|   ) | |
| and ) | |
|   ) | |
| MICHAEL SAUSÉ, ) | |
|   ) | |
|   Crossclaim Defendant ) | |
| _____) | |

**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE ARGUMENT AND EVIDENCE OF PRELIMINARY PRICING CONTAINED IN DRAFT WORK NOTES AS A PROPER MEASURE OF DAMAGES**

Plaintiff/Counterclaim Defendant Professional Services Group, Inc. ("PSG") submits this memorandum in support of its motion to exclude evidence or argument by

Defendants/Counterclaim Plaintiffs the Town of Rockland and the Rockland Sewer Commission (collectively, "Rockland") that a tentative pricing structure contained in handwritten work notes created by the firm of Woodard & Curran in 1997 serves as a proper measure of damages for Rockland's counterclaim under the Uniform Procurement Act.  As explained below, the handwritten work notes are not the equivalent of a proposal and cannot appropriately be used as though they were.  Moreover, even if the work notes could be treated as though they were a draft proposal, the numbers contained in those notes are too speculative to serve as the proper measure of damages in this case because the draft pricing structure was never finalized or submitted to Rockland. The evidence should thus be excluded for the purposes of damage calculations, and Rockland should be precluded from presenting argument to the jury on this ground.

## RELEVANT BACKGROUND

This case involves, in relevant part, counterclaims that Rockland has brought against PSG arising from a 1998 contract ("1998 Contract") under which PSG operated Rockland's wastewater treatment plant.  Rockland alleges, among other claims, that the contract was procured in violation of the Massachusetts Uniform Procurement Act, M.G.L. ch. 30B, § 1 *et. seq*. ("Chapter 30B") because the Superintendent of the Rockland Sewer Commission conspired with a PSG employee in 1997 to give an advantage to PSG during the procurement process.

In July 1997, the Rockland Sewer Commission issued a request for proposals ("RFP") for a new contract to operate Rockland's wastewater treatment facilities from 1998 through 2008. Woodard & Curran was one of the firms that expressed interest in submitting a proposal, and requested permission to submit a proposal that deviated from the RFP.  Sewer Superintendent Gregory Thomson, with the advice of the Office of the Inspector General, responded that such proposals could not be considered.  Shortly thereafter, Woodard & Curran wrote to Thomson that

2

it was not inclined to submit a proposal to Rockland, stating "[a]s someone whose original involvement with Rockland dates back almost twenty years, I can understand your possible reluctance to change after 15 years of contract operations with Metcalf & Eddy/PSG. If your interest is to continue doing what you are doing, we respect that and do not wish to interrupt your process or interfere with a strong relationship. However we do not feel comfortable providing you with an approach and budget to use for comparison." See Tab A (letter from Woodard & Curran to Thomson). Woodard & Curran did not submit a proposal to Rockland, and PSG received the contract for the period 1998 through 2008.

Discovery obtained from Woodard & Curran during this litigation included undated handwritten internal notes reflecting that Woodard & Curran had apparently considered two alternative draft pricing structures during the 1997 procurement process. See Tab B (work notes). Some of the notes reflect a draft pricing structure for a proposal that deviated from the Minimum Submission Requirements of the 1997 RFP. Id. This pricing structure was tentatively calculated at $943,932.[1]

## ARGUMENT

Rockland argues that the difference between the draft pricing structure reflected in the Woodard & Curran notes and the amount Rockland paid PSG during performance of the 1998 Contract is an appropriate measure of damages for its Chapter 30B claim. Rockland is wrong for two reasons. First, the handwritten work notes – complete with cross-outs and internal questions – are not the equivalent of a proposal and cannot fairly be treated as such. Second, even if the work notes could fairly be treated as a proposal, it is too speculative to assume that the pricing

---

[1] The notes also reflect a draft proposal that included the 1997 RFP's requirement for a belt filter press and ten-person staffing plan. Rockland has not argued that the tentative pricing structure set forth in that draft provides a proper measure of damages on its Chapter 30B claim.

3

structure would not have changed from the time the notes were prepared (approximately August 1997) to the time the proposal was due to be finalized and submitted (October 1997).

**A.     <u>The Work Notes Are Not the Equivalent of a Proposal.</u>**

The handwritten work notes that were maintained in Woodard & Curran's internal work file are not the same as a proposal that has been finalized and submitted for consideration. A proposal contains two parts – the technical proposal and the price proposal. The technical proposal reflects the firm's plan for how it will run the plant and contains within it all of the technical requirements of the RFP. The price proposal sets forth the operator's proposed budget that would be needed to perform all of the duties reflected in the technical proposal in any given year. The technical proposal is critical for a complete evaluation of the proposal. This is because the RFP process is not like the typical bidding process where the deciding factor is cost. Instead, under the RFP process, the technical proposal is so significant that price proposals are not reviewed by the same individuals who are reviewing the operational plans set forth in the technical proposal. <u>See</u> M.G.L. ch. 30B, § 6(d) ("The chief procurement officer may open the price proposals at a later time, and shall open the price proposals so as to avoid disclosure to the individuals evaluating the proposals on the basis of criteria other than price."). Technical proposals can be quite complex, are typically dozens of pages long, and address all of the specifications in the RFP.

The few pages of work notes produced by Woodard & Curran come nowhere near this threshold. They are handwritten, reflect tentative plans and preliminary thoughts, and contain internal questions, cross-outs, and thoughts on areas where follow-up is needed – perfectly appropriate for internal work documents but not for the type of proposal required by Chapter 30B. It is simply inappropriate to treat them as anything more than what they are, inadmissible

hearsay containing the preliminary assessment of a firm that ultimately decided *not* to create or submit a proposal to Rockland. Rockland should be precluded from arguing otherwise.

**B.     The Proposed Pricing Structure Set Forth in the Work Notes Is Too Speculative to Warrant Its Admission as a Measure of Damages**

Even if the work notes could be considered the equivalent of a draft proposal, the preliminary numbers reflected in Woodard & Curran's handwritten internal notes are not sufficiently final to allow them to serve as a measure of damages. A damage award must be based on fact, not speculation. See Snelling & Snelling of Mass., Inc. v. Wall, 345 Mass. 634, 635-36 (1963); see also Connolly v. Suffolk Cty. Sherriff's Dept., 815 N.E.2d 596, 605 (Mass.App.Ct. 2004) ("damages cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty"). "If the plaintiff's proffered evidence permits no more than 'pure speculation and guesswork,' then the damage evidence is insufficient as a matter of law." Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors, 850 F.2d 803, 816 (1st Cir. 1988).

Here, because of the tentative, incomplete nature of the work notes themselves, there is no basis for the jury to find that a proposal would have been submitted to Rockland with the same pricing structure and the same numbers as they appear in those notes. See Bruno v. Restuccia, 2005 WL 705379 at * 11 (Mass. Sup. Ct. (Feb. 29, 2005)) (in assessing the value of plaintiff's lost opportunity on a development project, "appraisals based on the assumption that no substantial changes would occur to the preliminary plans . . . are of little or no value in determining the value of the project").

Woodard & Curran were toying with the idea of using a different technology from the sludge dewatering processes that Rockland was using. The processes contemplated in the non-conforming draft would have required the installation of entirely different equipment, as well as

5

new contracts with third-party vendors to haul and dispose of the sludge. Courts are appropriately wary of accepting preliminary plans as appropriate measures of damages. <u>See</u>, <u>e.g.</u>, <u>Bruno</u>, 2005 WL 705379 at * 11 ("Where the scope and nature of the business venture is not definite, [plaintiff] cannot establish damages to a reasonable certainty."). Given the necessity of installing entirely different equipment and entering into new contracts with third-party vendors before the plan could be finalized, it cannot be said with any reasonable certainty that the numbers reflected in the notes would not have been adjusted before the proposal was submitted. Rockland is not entitled to ask the jury to measure damages from speculation, and argument to the contrary should be excluded from trial. <u>Accord</u> <u>Russo v. Baxter Healthcare Corp.</u>, 140 F.3d 6, 12 (1st Cir. 1998) (noting in dicta that plaintiffs failure to apply for foreign patents resulted in "sheer speculation as to his asserted damages").

## CONCLUSION

For all of the foregoing reasons, PSG respectfully requests that Rockland be precluded from arguing that the tentative pricing structure contained in Woodard & Curran's internal handwritten work notes provide an appropriate measure of damages for its Chapter 30B claim, or for any other claim in this case.

                    Respectfully submitted,
                    **PROFESSIONAL SERVICES GROUP, INC.**,
                    By its attorneys,


                    ___/s/ Sara Noonan_____
                    Maria R. Durant (BBO # 558906)
                    David M. Osborne  (BBO # 564840)
                    Sara E. Noonan (BBO # 645293)
                    DWYER & COLLORA, LLP
                    Federal Reserve Plaza
                    600 Atlantic Avenue, 12th Floor
                    Boston, MA  02210
                    (617) 371-1000


Dated: July 14, 2006

## CERTIFICATE OF SERVICE

    I, Sara E. Noonan, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on this 14th day of July, 2006.


                    _____/s/Sara Noonan_____
                    Sara E. Noonan