UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| PROFESSIONAL SERVICES GROUP, INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TOWN OF ROCKLAND, et al, | ) ) |
| . | ) ) |
|_____| ) |
| TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, | ) ) ) ) |
| Plaintiffs-in-Counterclaim and Crossclaim | ) ) )     Civil No. 04-11131-PBS |
| v. | ) ) |
| PROFESSIONAL SERVICES GROUP, INC., | ) ) ) |
| Defendant-in-Counterclaim, | ) ) |
| and | ) ) |
| MICHAEL SAUSÉ, | ) ) |
| Crossclaim Defendant | ) ) |
|_____| ) |

**TOWN OF ROCKLAND AND ROCKLAND SEWER COMMISSION'S REQUEST FOR JURY INSTRUCTIONS**

The Town of Rockland and the Rockland Sewer Commission hereby request the following instructions be given to the jury:

INSTRUCTION NO. 1.        TOWN DEFINED FOR PURPOSES OF INSTRUCTIONS

When the word "Town" is used in these instructions, it is used to refer to both the Town of Rockland and the Rockland Sewer Commission.


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 2.          CORPORATION DEFINED; ACTS THROUGH AGENTS

A corporation is not a living creature. When a corporation acts, it can only act through human beings.  Because PSG is a corporation, it can only act through human beings, such as employees.

*Commonwealth v. Angelo Todesca Corp.*, 446 Mass. 128, 135 (2006)


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn


INSTRUCTION NO. 3.          CORPORATION DEFINED; ACTS THROUGH AGENTS

"A corporation is a creature of law, a 'separate and distinct legal entity…that can only act through its agents.' "PSG is a creation of the law that can only act through its agents.

*Sarvis v. Boston Safe Deposit & Trust Co.*, 47 Mass. App. Ct. 86, 96 (1999), quoting *Sunrise Properties, Inc. v. Bacon, Wilson, Ratner, Salvage, Fialky & Fitzgerald, P.C.*, 425 Mass. 63, 66 (1997).


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 4.          AGENT DEFINED

An agent is a person "who is authorized to act for or in place of another [,who may be referred to as a principal]."

*Black's Law Dictionary* (8th ed. 2004)

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 5.          PRINCIPAL DEFINED

A principal is a person "who authorizes another to act on his or her behalf as an agent."

*Black's Law Dictionary* (8th ed. 2004)

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 6.          VICARIOUS LIABILITY – EMPLOYEES AS AGENTS

An employee is an agent of his employer.

*See Kansallis Finance Ltd., v. Fern*, 421 Mass. 659, 662 (1996) ("servants…are categorized as agents of their principals"), citing *Restatement (Second) of Agency* § 218 Title B, Torts of Servants, introductory note, fourth par. (1957) (servants are agents of their master); W.A. Seavey, *Agency* § 2(B) (1964) (master and servant included in agency relation).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 7.          CORPORATE LIABILITY IS NECESSARILY VICARIOUS

"[A corporation's] liability is 'necessarily vicarious.'"  A corporation cannot act on its

own, except through human agents, and therefore corporations may be liable – and we call this

"vicarious liability" -- for the conduct of their agents, such as employees.

*Sarvis v. Boston Safe Deposit & Trust Co.*, 47 Mass. App. Ct. 86, 96 (1999), quoting
*Commonwealth v. L.A.L. Corp.,* 400 Mass. 737, 743 (1987) (internal citation omitted).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 8.     VICARIOUS LIABILITY DEFINED

Vicarious liability is "liability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) based on the relationship between the two parties."

*Black's Law Dictionary* (8th ed. 2004)

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 9.          VICARIOUS LIABILITY – THEORY

The law allows for vicarious liability because of the premise that "as between two innocent parties—the principal-master and [another party]—the principal-master who for his own purposes places another in a position to do harm to [another]… should bear the loss." Under the law, "[a] principal who requires an agent to transact his business, and can only get that business done if [others] … deal with the agent as if [they were dealing] with the principal, cannot complain if the innocent third party suffers loss by reason of the agent's act." In the law, we sometimes use the terms "master" and "servant" to describe the legal relationship between a principal and an agent, such as the relationship between an employer and employee. "[T]he master who must put an instrument into his servant's hands in order to get his business done, must also bear the loss if the servant causes harm to a stranger in the use of that instrument as the business is transacted."

*Kansallis Finance Ltd., v. Fern*, 421 Mass. 659, 664 (1996)

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 10.        PRINCIPAL UNAWARE

Under the law of vicarious liability, a principal may be liable for conduct of which it is

"totally unaware."

Under the law of vicarious liability, a principal may be liable for conduct in which it was

"entirely uninvolved."

 *See Kansallis Finance Ltd., v. Fern*, 421 Mass. 659, 671 (1996)


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 11.        VICARIOUS LIABILITY – RESPONDEAT SUPERIOR

A principal may be held vicariously liable for the acts of its agent if those acts were committed within the scope of the agent's employment. An employer such as PSG may be held liable for the acts of its employees if those acts were committed within the scope of the employees' employment.

Therefore, you may find PSG liable for the actions of Michael Sause if you find that Sause's actions were committed within the scope of his employment with PSG.

You may find PSG liable for the actions of other PSG employees if you find that their actions were committed within the scope of their employment with PSG.

*Worcester Insurance Co. v. Fells Acre Day School, Inc.,* 408 Mass. 393, 404 (1990)

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 12.        WHEN CONDUCT IS WITHIN SCOPE OF EMPLOYMENT

"[C]onduct of an agent is within the scope of employment if [1] it is of the kind [the person] is employed to perform…; [2] if it occurs substantially within the authorized time and space limits…; and [3] if it is motivated, at least in part, by a purpose to serve the principal… ."

*Worcester Insurance Co. v. Fells Acre Day School, Inc.,* 408 Mass. 393, 404 (1990), quoting *Wang Laboratories, Inc. v. Business Incentives, Inc*., 398 Mass. 854, 859 (1986)

"The fact that the predominant motive of the agent [ or employee] is to benefit himself does not prevent the act from coming within the scope of employment as long as the act is otherwise within the purview of his authority.

*Wang Laboratories, Inc. v. Business Incentives, Inc*., 398 Mass. 854, 859 (1986)


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 13.    EMPLOYER LIABLE EVEN IF CONDUCT IS IN EXCESS OF, OR ABUSE OF, AUTHORITY

An employer is liable for an employee's conduct if it is within the scope of the employee's authority – even if the conduct "constituted an abuse or excess of the authority" given by the employer. The law takes the position that the employer "is justly held responsible when the [employee] , through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury on [another] person."

Pinshaw v. Metropolitan Dist. Com'n  402 Mass. 687, 695, 524 N.E.2d 1351, 1356 (Mass.,1988)

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 14.      EMPLOYER VICARIOUSLY LIABLE FOR INTENTIONAL
TORT OF EMPLOYEE WITHIN SCOPE OF EMPLOYMENT

An employer may be held liable for the intentional wrongful conduct of an employee if

the conduct was committed within the scope of employment. An employer may be held liable for

the negligent conduct of an employee if the conduct was committed within the scope of

employment.

 See *Worcester Insurance Co. v. Fells Acre Day School, Inc.,* 408 Mass. 393, 404 (1990) ("An
employer may be held vicariously liable for the intentional tort of an agent if the tortious act or
acts were committed within the scope of employment.")

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 15.          VICARIOUS LIABILITY – ACTUAL OR APPARENT
                                              AUTHORITY

In addition to imposing liability upon a principal for the acts of an agent committed

within the scope of the agent's employment, liability may also be imposed upon a principal

where the agent acted with the actual or apparent authority of the principal.

This method of determining vicarious liability is particularly appropriate where the harm to the

victim resulted from the voluntary transaction of business, as in the cases of contracts, and in

cases of fraud and misrepresentation.

Therefore, liability may be imposed upon PSG if you find that its employees acted with

PSG's actual or apparent authority.

*Kansallis Finance Ltd., v. Fern*, 421 Mass. 659, 664 (1996)


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 16.        ACTUAL AUTHORITY DEFINED

The term "actual authority" means "the [a]uthority that a principal intentionally confers

on an agent or the authority that the agent reasonably believes he or she has as a result of the

agent's dealing with the principal. Actual authority can be either express or implied."

*Black's Law Dictionary* (8th ed. 2004)


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 17.      EXPRESS AUTHORITY DEFINED

Express authority is "[a]uthority given to the agent by explicit agreement, either orally or in writing."

*Black's Law Dictionary* (8th ed. 2004)


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 18.     IMPLIED AUTHORITY DEFINED

Implied authority is "[a]uthority given by the principal to the agent as a result of the principal's conduct, such as the principal's earlier acquiescence to the agent's actions."

*Black's Law Dictionary* (8th ed. 2004)


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 19.     FURTHER DEFINITION OF ACTUAL AUTHORITY

Where an agent has "actual authority to transact the very business or to do the very act that causes the harm, the agent acts as the extension of the will of his principal and the case for vicarious liability is very clear."

*Kansallis Finance Ltd., v. Fern*, 421 Mass. 659, 665 (1996)


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 20.     APPARENT AUTHORITY DEFINED

Apparent authority is "authority that a third party reasonably believes an agent has, based on the third party's dealings with the principal, even though the principal did not intend to confer the authority. Apparent authority can be created by law even when no actual authority has been conferred."

*Black's Law Dictionary* (8th ed. 2004)


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 21.        - FURTHER DEFINITION OF APPARENT AUTHORITY

A principal will deem to have conferred authority upon a person to act in the principal's behalf—

even if he does not grant that person actual authority to act--when a principal has engaged in

conduct that "causes a third person reasonably to believe that a particular person has such

authority."

*Kansallis Finance Ltd., v. Fern*, 421 Mass. 659, 665 (1996), quoting *Neilson v. Malcolm Kenneth Co*., 303 Mass. 437, 441 (1939)


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 22.      – THEORY OF APPARENT AUTHORITY

Even where the agent's authority is apparent, but not actual, the principal will still be

vicariously liable because "vicarious liability recognizes that it is the principal who for his own

purposes found it useful to create the impression that the agent [was] act[ing] with his authority."

*Kansallis Finance Ltd., v. Fern*, 421 Mass. 659, 665 (1996)


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 23.    – VICARIOUS LIABILITY – PRINCIPAL LIABLE
REGARDLESS OF SCOPE OF EMPLOYMENT

Although a principal ordinarily will not be held liable for the acts of an agent that exceed

the scope of the agent's authority, there are some circumstances where liability will nevertheless

be imposed vicariously upon a principal even where the agent has acted beyond the scope of his

employment . For example, a principal will be vicariously liable without regard to whether the

agent acted within the scope of his employment where the principal took an unreasonable risk

that resulted in his agent misusing his authority—actual or apparent—to act on the principal's

behalf.

*Kansallis Finance Ltd., v. Fern*, 421 Mass. 659, 665-666, n6 (1996).


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 24.    - PRINCIPAL VICARIOUSLY LIABLE FOR FRAUD OF
AGENT

"Generally, the fraud of an agent acting in the course of his employment binds his

principal."

*Makino, U.S.A., Inc. v. MetLife Capital Credit Corp.,*, 25 Mass. App. Ct. 302, 313 (1988), citing
*Bockser v. Dorchester Mutual Fire Insurance Co*., 327 Mass. 473, 477 (1951)

"[A] principal who puts an agent in a position which enables the agent, while apparently

acting within his authority, to commit a fraud on [another] …is subject to liability."

*Kansallis Finance Ltd., v. Fern*, 421 Mass. 659, 668 (1996).


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 25.        - PRINCIPAL'S LIABILITY FOR FRAUD OF AGENT

A principal's liability for the fraud of an agent results if "the agent's position facilitates…the

fraud, in that from the point of view of the third person the transaction seems regular on its face

and the agent appears to be acting in the ordinary course of the business confided to him."

*Makino, U.S.A., Inc. v. MetLife Capital Credit Corp.*,, 25 Mass. App. Ct. 302, 313 (1988),
quoting *Restatement (Second) of Agency* § 261 comment a (1958)


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 26.       - PRINCIPAL VICARIOUSLY LIABLE FOR DECEPTIVE
ACTS OF AGENT


A principal is liable for the deceptive acts of an agent if the deceptive acts "were within the actual authority, implied authority or apparent authority, or, if not within {the agent's} authority were ratified by the principal."

*Makino, U.S.A., Inc. v. MetLife Capital Credit Corp.*,, 25 Mass. App. Ct. 302, 312 (1988)


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 27.     CORPORATION VICARIOUSLY LIABLE FOR CRIMINAL
ACTS OF EMPLOYEE

A corporation can be held liable for the conduct of an employee that amounts to a

criminal offense.

*See Commonwealth v. Angelo Todesca Corp.*, 446 Mass. 128, 133-136 (2006).


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 28.          CORPORATION VICARIOUSLY LIABLE FOR CRIMINAL
ACTS OF EMPLOYEE

A corporation can be held liable for the criminal conduct of its employee where it is established

that the employee "[1] was placed in a position by the corporation where he had enough power,

duty, responsibility and authority to act for and in behalf of the corporation to handle the

particular business or operation or project of the corporation in which he was engaged at the time

that he committed the criminal act…and [2] that he was acting for and on behalf of the

corporation in the accomplishment of that particular business or operation or project, and that he

committed a criminal act while so acting."

*See Commonwealth v. Angelo Todesca Corp*., 446 Mass. 128, 133-136 (2006), quoting
*Commonwealth v. Beneficial Finance Co*., 360 Mass. 188, 256 (1971), cert. denied sub. nom.
*Farrell v. Massachusetts*, 407 U.S. 910 (1972, and sub nom. *Beneficial Finance Co. v.
Massachusetts*, 407 U.S. 914 (1972).


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

OUTSIDE SCOPE OF EMPLOYMENT - EMPLOYER LIABLE BY RATIFICATION

An employer is not only liable for wrongful conduct committed by its employees acting within the scope of their employment but, "by ratification may become responsible for such acts when committed in excess of their authority."

No formal act of ratification is required for an employer such as PSG to be held responsible for the employee's wrongful conduct.   An employer's knowledge of, and ratification of, an employee's wrongful activity may be inferred from the circumstances.

*Pinshaw v. Metropolitan District Commission,* 33 Mass.App.Ct. 733, 735, 604 N.E.2d 1321 (1992).

Evidence of ratification on the part of an employer may include "a failure to investigate and discipline an employee."   Evidence of ratification may also include " failure to disavow an employee's unauthorized action".  Evidence of an employer's ratification may also include failure "to mitigate the harm caused once the facts are ascertained." *Pinshaw v. Metropolitan District Commission,* 33 Mass.App.Ct. 733, 735, 604 N.E.2d 1321 (1992).

INSTRUCTION NO. 29.        NO REQUIREMENT THAT CORPORATE OFFICIALS HAD
KNOWLEDGE

For purposes of imposing liability upon a corporation for the criminal acts of an

employee, "there is no requirement that corporate officials had knowledge of their employees'

criminal acts.. ."

*See Commonwealth v. Angelo Todesca Corp*., 446 Mass. 128, 133-136 (2006), citing
*Commonwealth v. L.A.L. Corp.,* 400 Mass. 737, 743 (1987).


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 30.        - NO REQUIREMENT THAT CORPORATION  RATIFY
CRIMINAL ACTS

For purposes of imposing liability upon a corporation for the criminal acts of an

employee, there is no requirement that such conduct be " 'performed, authorized, ratified,

adopted or tolerated by' corporate officials or managers.' "

*See Commonwealth v. Angelo Todesca Corp*., 446 Mass. 128, 133-136 (2006), quoting
*Commonwealth v. Beneficial Finance Co*., 360 Mass. 188, 254 (1971), cert. denied sub. nom.
*Farrell v. Massachusetts*, 407 U.S. 910 (1972, and sub nom. *Beneficial Finance Co. v.
Massachusetts*, 407 U.S. 914 (1972).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 31.     NO ESTOPPEL IF REPRESENTATION IS CONTRARY TO
LAW

A municipal government like the Town of Rockland is not be bound by any

representations that any of its employees may have made that are contrary to law.

*See Phipps Products Corp. v. Massachusetts Bay Transportation Authority*, 387 Mass. 687, 693-
694 (1982) ("[T]he public interest in compliance with bidding procedures established by law
overrides the equities that would appropriately be considered in a purely private
transaction…The public interest in the enforcement of the laws of the Commonwealth cannot be
defeated by failures of public officials to perform their duties.")

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 32.      NO RELIANCE ON REPRESENTATION OF MUNICIPAL
OFFICIAL

A private party is not justified in relying on a municipal official's representation that is

contrary to law.

*See Phipps Products Corp. v. Massachusetts Bay Transportation Authority*, 387 Mass. 687, 693-694 (1982)


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 33.       BREACH OF CONTRACT

A contract is a promise, or a set of promises, between two or more parties to do or not do a certain thing.  A breach of contract is the failure of a party to a contract, in the absence of a legal excuse or impossibility of performance, to perform any promise which forms the whole or a part of the contract.  If you find that the Town of Rockland had a legal excuse to terminate the contract, then you must find that it did not breach.

A breach may occur with regard to an implied provision of a contract.  An implied provision is one that is recognized by the parties to exist and bind them in their actions despite the fact that it was not specifically spelled out or agreed to by the parties to the contract.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 34.        BREACH OF GOOD FAITH AND FAIR DEALING

There is an implied covenant of good faith and fair dealing between parties to every contract.  Parties to a contract are obligated to deal honestly and in good faith in both the performance and the enforcement of the terms of their contract.

The contract between PSG and the Town contains this implied covenant of good faith and fair dealing.  Failure to deal honestly and in good faith is a breach of the contract.

*Blank v. Chelmsford OB/GYN, P.C.*, 420 Mass. 404, 407 (1995); *Hawthorne's Inc. v. Warrenton Realty, Inc.*, 414 Mass. 200, 211 (1993); *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 471 (1991); *Fortune v. National Cash Register Co.*, 373 Mass. 96, 104 (1977).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 35.        MATERIAL BREACH

PSG claims that the Town breached the contract by terminating it.  However, if PSG's prior actions had constituted a "substantial breach going to the root of the contract," the Town was entitled to terminate performance under the contract and to recover contract damages.

*Ward v. American Mutual Liability Insurance Co.*, 15 Mass. App. Ct. 98, 101 (1983); *Quintin Vespa Co. v. Construction Serv. Co.*, 343 Mass. 547, 554 (1962).

Moreover, if the Town was relieved from performance, it is not liable for further damages incurred by PSG as a result of the contract termination.  *Ward,* 15 Mass. App. Ct. 98, 101 (1983).

If you find that PSG materially breached the contract between PSG and the Town, then you may treat that as evidence that the Town was entitled to disregard any further obligations under the contract.  *Id.*

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 36.       MATERIAL BREACH

You must determine whether PSG's actions constituted a material breach of the contract between the parties.  A material breach of an agreement occurs when there is a breach of "an essential and inducing feature of the contract."  *Lease-It, Inc. v. Massachusetts Port Authority*, 33 Mass. App. Ct. 391, 396 (1992), citing *Bucholz v. Green Bros.*, 272 Mass. 49, 52 (1930).

Factors to be considered in determining whether the breach was material include the following:

> (a)    the extent to which the Town was deprived of the benefit which it reasonably expected;
>
> (b)    the extent to which the Town could be adequately compensated for the part of that benefit of which it was deprived;
>
> (c)    the extent to which PSG would suffer forfeiture;
>
> (d)    the likelihood that PSG would cure its breach, taking account of all the circumstances including any reasonable assurances; and
>
> (e)    the extent to which the behavior of PSG comports with standards of good faith and fair dealing.

*O'Connell Mgt. Co. v. Carlyle-XIII Managers*, 765 F.Supp. 779, 783 (D. Mass. 1991); Restatement (Second) of Contracts §241 (1981).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 37.          CHECK PAYEE RULES

One issue in this case is how certain checks were made out by PSG, and its successor company, U.S. Filter. There are legal rules and laws governing how checks are to be interpreted for cashing purposes. Under the law, if a check is made payable to two or three people or entities, alternatively, any of them may cash it, deposit it or endorse it.  If a check made out to three people or entities, but not in the alternative, it may only be cashed, deposited or endorsed by all three together.  If a check is made payable to three people or entities and it is ambiguous as to whether it is payable to the payees alternatively, then the check can be cashed, deposited or endorsed by any one of them.

M.G.L. 106 § 3-110 (added to Mass.General Laws February, 1998); Section 3-110, Uniform Commercial Code, 1190 Revision of Article 3, 2 Uniform Laws Annotated.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 38.       CONFLICT OF INTEREST LAW M.G. 268A § 2(a)(1) --
                          MUNICIPAL EMPLOYEE

The Town claims that PSG violated the Massachusetts Conflict of Interest Law. the Conflict of interest law applies to certain conduct aimed at influencing municipal employees. At all times relevant in this lawsuit, Gregory Thomson was a municipal employee within the meaning of the law.  A "municipal employee" is a person performing services for, or holding an office, position, employment or membership in a municipal agency, whether by election, appointment, contract of hire or engagement, whether serving with or without compensation, on a full, regular, part-time, intermittent or consultant basis." M.G.L.  268A § 1(g)

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly g[ave],… anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . . employee or had been selected to be such an employee, with the intent to . . . influence any official act or any act within [Thomson's] official responsibility[ies] . . .

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly … offer[ed] anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . . employee or had been selected to be such an employee, with the intent to . . . influence any official act or any act within [Thomson's] official responsibility[ies]

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly promis[ed] anything of value to . . . [Gregory Thomson,] at any time when he was a Town] . . . employee or had been selected to be such an employee, with the intent to . . . influence any official act or any act within [Thomson's] official responsibility[ies]

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 39.       CONFLICT OF INTEREST LAW M.G.L Ch. 268A  § 2(a)(1)  --
THOMSON AS "MUNICIPAL EMPLOYEE"

The Town claims that PSG violated the Massachusetts Conflict of Interest Law. the

Conflict of interest law applies to certain conduct aimed at influencing municipal employees. A

"municipal employee" is a person performing services for, or holding an office, position,

employment or membership in a municipal agency, whether by election, appointment, contract

of hire or engagement, whether serving with or without compensation, on a full, regular, part-

time, intermittent or consultant basis." M.G.L.  268A § 1(g).  At all times relevant in this lawsuit,

Gregory Thomson was a municipal employee within the meaning of the law.


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 40.    CONFLICT OF INTEREST LAW M.G.L. Ch. . 268A § 2(a)(1)  --
INFLUENCE OFFICIAL ACT

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly g[ave].. anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . . employee or had been selected to be such an employee, with the intent to . . . influence any official act or any act within [Thomson's] official responsibility[ies] . .

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly …offer[ed]…anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . . employee or had been selected to be such an employee, with the intent to . . . influence any official act or any act within [Thomson's] official responsibility[ies] . .

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly …promis[ed] anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . . employee or had been selected to be such an employee, with the intent to . . . influence any official act or any act within [Thomson's] official responsibility[ies] . .

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 41.    CONFLICT OF INTEREST LAW , M.G.L. Ch. 268A § 2(a)(2)  –
INTENT TO INFLUENCE TO COMMIT, OR AID IN, COMMITING FRAUD

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly
g[ave] .. anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . .
employee or had been selected to be such an employee, with the intent to . . . influence [him] to
commit or aid in committing … any fraud… on [the Town of Rockland or the Town of Rockland
Sewer Commission]."

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly
offer[ed] … anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . .
employee or had been selected to be such an employee, with the intent to . . . influence [him] to
commit or aid in committing …any fraud …on [the Town of Rockland or the Town of Rockland
Sewer Commission]."

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly
…promis[ed] anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . .
employee or had been selected to be such an employee, with the intent to . . . influence [him] to
commit or aid in committing ...any fraud on [the Town of Rockland or the Town of Rockland
Sewer Commission]."


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 42.     CONFLICT OF INTERST LAW M.G. L. Ch. 268A § 2(a)(2) –
INTENT TO INFLUENCE TO COLLUDE OR ALLOW ANY FRAUD

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly
g[ave] .. anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . .
employee or had been selected to be such an employee, with the intent to . . . influence [him] to
… collude in, or allow, any fraud, …on [the Town of Rockland or the Town of Rockland Sewer
Commission]."

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly
offer[ed] … anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . .
employee or had been selected to be such an employee, with the intent to . . . influence [him] to
..collude in, or allow, any fraud ..on [the Town of Rockland or the Town of Rockland Sewer
Commission]."

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly
…promis[ed] anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . .
employee or had been selected to be such an employee, with the intent to . . . influence [him] to
…collude in, or allow, any fraud, on [the Town of Rockland or the Town of Rockland Sewer
Commission]."


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 43.    CONFLICT OF INTERST LAW M.G. L. Ch. 268A § 2(a)(2) –
INTENT TO INFLUENCE TO MAKE OPPORTUNITY FOR THE COMMISSION OF
FRAUD

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly
g[ave] .. anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . .
employee or had been selected to be such an employee, with the intent to . . . influence [him] to
… make opportunity for the commission of any fraud on .. [the Town of Rockland or the Town
of Rockland Sewer Commission]."

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly
…offer[ed] .. anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . .
employee or had been selected to be such an employee, with the intent to . . . influence [him] to
… make opportunity for the commission of any fraud on .. [the Town of Rockland or the Town
of Rockland Sewer Commission]."

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly
…promis[ed] .. anything of value to . . . [Gregory Thomson, at any time when he was a Town] . .
. employee or had been selected to be such an employee, with the intent to . . . influence [him] to
… make opportunity for the commission of any fraud on .. [the Town of Rockland or the Town
of Rockland Sewer Commission]."


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 44.       CONFLICT OF INTEREST LAW M.G.L. Ch. 268A § 2  --
INTENT TO INDUCE COMMISSION OF ACT IN VIOLATION OF DUTY


It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly g[ave] … anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . . employee or had been selected to be such an employee, with the intent to . . . induce [him] to do …any act in violation of his lawful duty."

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly …offer[ed] … anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . . employee or had been selected to be such an employee, with the intent to . . . induce [him] to do … any act in violation of his lawful duty.

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly … promis[ed] anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . . employee or had been selected to be such an employee, with the intent to . . . induce [him] to do … do any act in violation of his lawful duty.


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 45.     CONFLICT OF INTEREST LAW M.G.L. CH. .268A § 2 -- INTENT TO INDUCE OMISSION IN VIOLATION OF DUTY


It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly g[ave] …anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . . employee or had been selected to be such an employee, with the intent to . . . induce [him] to .. omit to do any act in violation of his lawful duty;"

By "omit," I mean, to fail to do any act in violation of his lawful duty.

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly …offer[ed] … anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . . employee or had been selected to be such an employee, with the intent to . . . induce [him] to ..omit to do any act in violation of his lawful duty

It is a violation of the Conflict of Interest law if PSG "directly or indirectly, corruptly … promis[ed] anything of value to . . . [Gregory Thomson, at any time when he was a Town] . . . employee or had been selected to be such an employee, with the intent to . . . induce [him] to … omit to do any act in violation of his lawful duty."


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 46.      CONFLICT OF INTEREST LAW M.G.L. CH. 268A § 3(A) – SUBSTANTIAL VALUE FOR ACT TO BE PERFORMED

It is a violation of Conflict of Interest law if PSG "directly or indirectly [gave]… anything of substantial value to  . . . [Gregory Thomson], for or because of any official act …to be performed by [Thomson]."

It is a violation of Conflict of Interest law if PSG "directly or indirectly …offer[ed] … anything of substantial value to  . . . [Gregory Thomson], for or because of any official act …to be performed by [Thomson]."

It is a violation of Conflict of Interest law if PSG "directly or indirectly …promised …anything of substantial value to  . . . [Gregory Thomson], for or because of any official act … to be performed by [Thomson]."


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 47.    CONFLICT OF INTEREST LAW M.G.L. CH. 268A § 3(A) –
SUBSTANTIAL VALUE FOR ACT PERFORMED


It is a violation of Conflict of Interest law if PSG "directly or indirectly [gave], …
anything of substantial value to . . . [Gregory Thomson], for or because of any official act
performed …by [Thomson]."

It is a violation of Conflict of Interest law if PSG "directly or indirectly …offer[ed] …
anything of substantial value to . . . [Gregory Thomson], for or because of any official act
performed … by [Thomson]."

It is a violation of Conflict of Interest law if PSG "directly or indirectly …promised
…anything of substantial value to . . . [Gregory Thomson], for or because of any official act
performed … by [Thomson]."


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 48.          CONFLICT OF INTEREST LAW M.G.L. CH. 268A § 17 (a)(b) --
COMPENSATION IN RELATION TO MATTER IN WHICH TOWN HAS DIRECT AND
SUBSTANTIAL INTEREST

It is a violation of Conflict of Interest law if PSG "knowingly . . .  directly or indirectly

[gave], …. compensation" "in relation to any particular matter in which the [Town of Rockland]

is a party or has a direct and substantial interest.

It is a violation of Conflict of Interest law if PSG "knowingly . . .  directly or indirectly

… promise[d] …[Thomson] . . . compensation" "in relation to any particular matter in which the

[Town of Rockland] is a party or has a direct and substantial interest.

It is a violation of Conflict of Interest law if PSG "knowingly . . .  directly or indirectly

… offer[ed] [Thomson] . . . compensation" "in relation to any particular matter in which the

[Town of Rockland] is a party or has a direct and substantial interest.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 49.    CONFLICT OF INTEREST LAW , M.G.L. CH. 268,  § 21(b) --
DAMAGES

If PSG violated the Conflict of Interest Law, and, in doing so acted to its "economic advantage," the Town may recover damages in the amount of such economic advantage.

The Town maintains that the amount of PSG's economic advantage is the profits that it earned on work for the Town. It is up to you to determine the amount of PSG's economic advantage.


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 50.      CONFLICT OF INTEREST LAW , M.G.L. CH. 268, § 21(b)
ADDITIONAL DAMAGES

If PSG violated the Conflict of Interest Law, the Town of Rockland may "recover additional damages for the city or town in an amount not exceeding twice the amount of the economic recovery or five hundred dollars, whichever is greater." Therefore, if you find that PSG violated the Conflict of Interest Law, you may award up to twice the amount of PSG's economic advantage..

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 51.     UNIFORM PROCUREMENT ACT M.G.L. 30B §§2, 3, 6, 10, 17

It is a violation of law if PSG "cause[d] or conspire[d] with another to cause a contract to be solicited or awarded in violation of [the Uniform Procurement Act]."

The Uniform Procurement Act requirements that the contract be awarded, based on "the most advantageous proposal from a responsible and responsive offeror taking into consideration price and the evaluation criteria set forth in the request for proposals.  M.G. L. ch. 30B § 6(g),.

A "responsive offeror"  is "a person who has submitted a … proposal which conforms in all respects to the  request for proposals."  M.G.L. ch.  30B § 3

A "responsible offeror" is "a person who has a capability to perform fully the contract requirements, and the integrity and reliability which assures good faith performance." M.G.L. 30B, § 3.

In submitting a proposal, an offerer must certify "under penalties of perjury that this bid or proposal has been made and submitted in good faith and without collusion or fraud with any other person." M.G.L. 30B, § 10

INSTRUCTION NO. 52.    FRAUD

Fraud, includes all acts, conduct and statements or words by which one party takes unfair advantage of another party thereby causing that other party to do something he would not have done or avoid or refrain from doing something he would not have done and as a result suffer loss or damage or fail to make a gain or profit he otherwise would have made.  *Federal Deposit Insurance Corp. v. Holbrook & Johston*, 36 Mass. App. Ct. 424, 428 n.5 (1994).

The wrongful conduct may consist of concealment of a fact which the wrongdoer has a duty to disclose.  It may be of a past or present fact or of something that is to occur in the future.

*Judge v. Gallagher*, 17 Mass. App. Ct. 636, 642 (1984).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 53.     CIVIL CONSPIRACY

It is a civil conspiracy if PSG agreed to act together with Greg Thomson to inflict a wrong or an injury upon the Town of Rockland.  It is also a civil conspiracy if PSG agreed to act together with Greg Thomson to commit a <u>lawful</u> act using <u>unlawful</u> means to inflict a wrong or injury upon the Town of Rockland.

The agreement may be have made orally, or in writing, or may be implied by the conduct of the parties. The agreement may be proved from evidence there was knowledge the wrongful act was contemplated, there was collaboration, the contemplated act was adhered to, and one or more of the alleged co-conspirators participated in the act. In order for a civil conspiracy to be found to exist, one of the parties to the alleged conspiracy must commit an act in pursuit of the agreement and the conspiracy was a proximate cause of damage.

INSTRUCTION NO. 54.        NEGLIGENT PERFORMANCE OF A CONTRACT

"When a party binds [it]self by contract to do a work or to perform a service, [it] agrees by implication to do a workmanlike job and to use reasonable and appropriate care and skill in doing it.  Although the duty arises out of the contract and is measured by its terms" . . . the party can be held liable for "negligence in the manner of performing that duty . . . ."  *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.,* 439 Mass. 387, 395-396 (2003).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 55.    NEGLIGENCE

Negligence generally is the failure to exercise that degree of care which a reasonable person would exercise in the circumstances.[1] Negligence in its ordinary sense is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting on [him/her], a person of ordinary caution and prudence ought to exercise under the particular circumstances.[2]

You are asked to consider whether PSG exercised the degree of care which an ordinary, reasonably prudent company would have exercised in like circumstances  in accounting for and distributing the Town of Rockland's funds.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

---

[1] *Morgan v. Lalumiere*, 22 Mass.App.Ct. 262, 267, 493 N.E.2d 206, 210, *further app. rev. denied*, 398 Mass. 1103, 497 N.E.2d 1096 (1986) ("Without at least some minimal reference to the reasonable person standard and to the attendant circumstances, however, an instruction does not adequately convey the meaning of negligence." (citations omitted)).

[2] *Beaver v. Costin*, 352 Mass. 624, 626, 227 N.E.2d 344, 345–46 (1967) (citing *Altman v. Aronson*, 231 Mass. 588, 591, 121 N.E.2d 505, 506 (1919)).

INSTRUCTION NO. 56.        NEGLIGENCE

To prove that PSG was negligent in its handling of the Town of Rockland's funds, In order to recover for negligence against the defendant, the plaintiff must prove by a preponderance of the evidence four essential elements:

       1.     that PSG owed a duty to the Town;

       2.     that PSG breached that duty;

       3.     that the Town suffered injury or damage; and

       4.     that PSG's breach of its duty was a cause of the Town's injury or damage.[3]

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

---

[3] *Scott v. Thompson*, 5 Mass.App.Ct. 372, 374, 363 N.E.2d 295, 296 (1977); *Beaver v. Costin*, 352 Mass. 624, 626, 227 N.E.2d 344 (1967). Where economic loss is the only damage claimed, recovery is not allowed under a theory of negligence. *See Bay State-Spray & Provincetown Steamship, Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103, 107, 533 N.E.2d 1350, 1353 (1989); *see also Marcil v. John Deere Indus. Equip. Co.*, 9 Mass.App.Ct. 625, 629–31, 403 N.E.2d 430, 433–35 (1980).

INSTRUCTION NO. 57.    NEGLIGENT MISREPRESENTATION

The Town claims that PSG negligently misrepresented how funds were being spent and the fact that funds were being properly rebated, and as a result, the Town continued to make payments to PSG, and in particular, made larger payments than it would have done if it had known the true state of affairs.

The Town can recover money damages from PSG for negligent misrepresentation by proving by a preponderance of the evidence that:

1.     PSG falsely stated to the Town the amounts to be paid on the contract, and that a reasonable person would consider that to be important to the Town's decision about how much to pay PSG;

2.     when PSG stated to the Town the amounts to be paid on the contract, PSG negligently failed to determine whether it was true or false. PSG acted negligently if it did not use the amount of care a reasonable company would use in those circumstances to see that what it said was true.

3.     PSG stated the amounts to be paid on the contract with the intention that the Town would rely on that representation n making the decision about how much to pay PSG;

4.     the Town did in fact rely on PSG's statement as true, and that the Town's reliance was reasonable in the circumstances; and

5.     the Town suffered some financial loss as a result of relying on PSG's false representation.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 58.    DAMAGES FOR NEGLIGENT MISREPRESENTATION

If PSG did negligently misrepresent an important fact with the intention that the Town of Rockland would rely upon it, and the plaintiff did rely upon it and suffered a financial loss, then you are to award the Town an amount of money that is the difference between what the Town paid for the contract and what it was actually worth on the open market at that time if its true quality had been known.[4]

In addition, if this misrepresentation caused the Town to incur any additional expenses that were reasonably foreseeable as a result of PSG's negligence, then you are to award the Town an additional amount of money that will compensate it for those additional expenses that it incurred.[5]

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

---

[4] *Danca v. Taunton Sav. Bank,* 385 Mass. 1, 9, 429 N.E.2d 1129, 1133–34 (1982); Restatement (Second) of Torts § 552B(1) (1977).
[5] *See Anzalone v. Strand,* 14 Mass.App.Ct. 45, 49, 436 N.E.2d 960, 962–63 (1982) (proper measure of damages for seller's unintentional misrepresentation of a parcel of real estate was "the difference between the actual value of [the real estate] and the purchase price, plus any pecuniary loss shown to have been suffered as a consequence of [the buyer's] reliance on the misrepresentation.").

INSTRUCTION NO. 59.     DAMAGES

In determining the amount of damages to be awarded, mathematical accuracy or proof is not required. *Rombola v. Cosindas,* 351 Mass. 382, 385 (1966), and cases cited. While often times a precise amount of loss is impossible to calculate, PSG can not escape the consequences of wrongful conduct that has caused harm to the Town of Rockland if some reasonable damages calculation can be made. *Augat, Inc. v. Aegis, Inc.,* 417 Mass. 484, 491 (1994) and cases cited.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 60.    BANKRUPTCY

During the course of this case, you have heard that Michael Sause filed a voluntary Chapter 7 bankruptcy, which is essentially a liquidation of Mr. Sause's assets in order to try to pay his debts. Since the filing of Mr. Sause's bankruptcy, he received a discharge of his debts, which means he is no longer personally liable to pay those debts, even though the assets of his bankruptcy estate, if any, might be liable to pay those debts.  Under federal law, if PSG wanted to preserve its claims against Michael Sause personally (as opposed preserving those claims against his bankruptcy estate) even after he filed for bankruptcy, it would have had to take steps in the Bankruptcy Court, before certain deadlines, to try to do so.  That action would be the initiation of litigation against Mr. Sause in the bankruptcy court to object to his bankruptcy discharge and/or to have the bankruptcy court determine that his debts to PSG were not discharged by operation of bankruptcy law.  11 U.S.C. § 727; Fed. R. Bankr. P. 4004(a); 11 U.S.C. § 523(a); Fed. R. Bankr. P. 4007.  PSG, however, did not take any such actions, and as a result, any claims that PSG had against Michael Sause personally (as opposed preserving those claims against his bankruptcy estate) as a result of the conduct at issue in this lawsuit is no longer valid or enforceable against him.


_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 61.     DIRECT AND CIRCUMSTANTIAL EVIDENCE

Some evidence proves a fact directly, such as testimony of a witness who saw a jet plane flying across the sky. Some evidence proves a fact indirectly, such as testimony of a witness who saw only the white trail that jet planes often leave. This indirect evidence is sometimes referred to as "circumstantial evidence." In either instance, the witness's testimony is evidence that a jet plane flew across the sky."You are to consider both direct and circumstantial evidence.  The law permits you to give equal weight to both, but it is for you to decide how much weight to give the evidence.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

Respectfully submitted,

TOWN OF ROCKLAND and
THE ROCKLAND SEWER COMMISSION,
By their attorneys,


/s/Joanne D'Alcomo_____
Joanne D'Alcomo (BBO # 544177)
Seth Nesin (BBO # #650739)
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500


DATED:  July 14, 2006