UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PROFESSIONAL SERVICES GROUP, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, GREGORY THOMSON and MICHAEL SAUSÉ, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, | ) ) ) ) | |
| Plaintiffs-in-Counterclaim and Crossclaim | ) ) ) | Civil No. 04-11131-PBS |
| v. | ) ) | |
| PROFESSIONAL SERVICES GROUP, INC., | ) ) ) ) | |
| Defendant-in-Counterclaim, | ) ) | |
| and | ) ) | |
| MICHAEL SAUSÉ, | ) ) | |
| Crossclaim Defendant | ) ) | |

**OPPOSITION OF DEFENDANTS AND PLAINTIFF-IN-COUNTERCLAIM TOWN OF ROCKLAND AND ROCKLAND SEWER COMMISSION TO PLAINTIFF'S MOTION TO EXCLUDE PROPOSED EXPERT TESTIMONY OF JOHN J. SULLIVAN**

JS#142843v1

Defendants and Plaintiffs-in-Counterclaim Town of Rockland and Rockland Sewer Commission (collectively "Rockland" or "Town" ) opposes the Motion of Plaintiff and Defendant-in-Counterclaim Professional Services Group, Inc. ("PSG") to Exclude Proposed Expert Testimony of John J. Sullivan ("Sullivan"), and as their reasons therefore state the following:

## I.   Introduction

PSG has moved to exclude the proposed expert testimony of Sullivan, an accountant who was hired by the Town to perform a forensic audit before this action was commenced. PSG's asserted reasons are that (1) the Town's disclosure of Sullivan's anticipated testimony purportedly does not meet the expert report requirements of Fed. R. Civ. P. 26(a)(2) and (2) Rockland's response to PSG's document request has not been supplemented to include materials that PSG believes are subject to disclosure.

Rockland opposes this motion on four grounds. First, it is immaterial whether Rockland's disclosures concerning Sullivan satisfy the expert report requirements of Rule 26(a)(2) because no such report is required where Sullivan's testimony will be that of a fact witness under Fed. R. Evid. 701. Second, even if Sullivan is deemed to be an expert offering testimony under Fed. R. Evid. 702, there is still no requirement of an expert report because Sullivan is not a "witness who [was] retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Third, even if the requirements of Rule 26(a)(2)(B) do apply, Rockland's disclosures in fact satisfy the requirements for an expert report under that Rule. Fourth, Rockland's response to PSG's

document request was accurate when made, and Rockland has no duty to supplement its response.

II. **Factual Background Concerning Sullivan's Report, PSG's Knowledge of Sullivan's Report, and PSG's Extensive Access to the Accountant's Workpapers**

In 2002, nearly two years before this litigation, Rockland retained Sullivan to perform a forensic audit of the Rockland Sewer Commission. Sullivan issued his forensic investigation report on February 25, 2004, two months before PSG filed suit and five months before Rockland filed its Counterclaim against PSG. None of these facts is in dispute; PSG has admitted them in their memorandum in support of the present motion. See Memorandum In Support of Motion to Exclude Propose Expert Testimony of John J. Sullivan ("PSG Memorandum"), at 2, 4.

Sullivan's forensic report has been widely circulated, *and PSG officials attended a meeting in Rockland with Town officials even before PSG's contract was terminated at which Sullivan presented some of his findings.* PSG has had a copy of Sullivan's report since 2004. In response to PSG's document request, in early 2005 Rockland obtained the workpapers for the forensic audit from Sullivan's accounting firm and provided them to PSG -- a fact that PSG acknowledges in its papers filed in support of this motion. PSG Memorandum, at 5.

The Town relied in part on the findings in the forensic audit in deciding to terminate PSG's contract. In this lawsuit, PSG maintains that the Town wrongfully terminated the contract, and the Town intends to defend itself in part by relying on the audit and Sullivan's findings. Sullivan will testify as a fact witness about the audit he conducted for the Town and his findings. To the extent his audit contains opinions based

on his expertise as an accountant, he will also be testifying concerning the opinions reported in the audit, in particular opinions concerning charges and expenditures by PSG.

In an abundance of caution, and even though it was not required, Rockland served a disclosure indicating that Sullivan may also testify as an expert. The disclosure incorporated by reference Sullivan's 2004 forensic investigation report, which sets forth Sullivan's opinions and reasons and refers to data that he considered. The disclosure also included his qualifications, a statement concerning publications, a disclosure of his past testimony, and a statement concerning his compensation.

    III.    **Legal Argument**

        A.    **Because Sullivan was not required to submit an expert report, the contents of Rockland's disclosure concerning his testimony are therefore immaterial.**

Read together, Rule 26 of the Federal Rules of Civil Procedure and Rules 701 and 702 of the Federal Rules of Evidence contemplate three scenarios involving witnesses who may offer opinion evidence at trial, each with different disclosure requirements. First, there is the scenario involving witnesses who may testify as to facts that they have perceived. Lay witnesses may also testify as to their opinions and inferences provided they are

> (a) rationally based on the perception of the witness,
> (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. The fact that a lay witness may also have professional expertise in a particular area is immaterial to whether their testimony—even opinion testimony—may be admitted under Rule 701. See, e.g. West Tennessee Chapter of Associated Builders

and Contractors, Inc. v. Memphis, 219 F.R.D. 587, 589-590 (W. D. Tenn. 2004) ("The fact that a person has expertise does not lead to the conclusion that the person may be offered as an expert at trial…Nor does the fact that a person has expertise mean that the person *must* be offered as an expert at trial.") (emphasis in original).

Rule 26 of the Federal Rules of Civil Procedure contains absolutely *no* disclosure requirements with respect to lay witnesses who may offer opinion or inference testimony under Fed. R. Evid. 701. See Fed. R. Civ. P. 26(a)(2)(A) (requiring disclosure only for those witnesses who will provide testimony under Fed. R. Evid. 702, 703 and 705); see also, Gomez v. Rivera Rodriguez, 344 F.3d 103, 113-114 (1st Cir. 2003) ("A party need not identify a witness as an expert so long as the witness played a personal role in the unfolding of the events at issue and the anticipated questioning seeks only to elicit the witness's knowledge of those events.").[1]

Second, there is the scenario involving witnesses who were *not* retained for the purpose of providing expert testimony at trial, but who nonetheless are "qualified as an expert by knowledge, skill, experience, training, or education" and who may testify "in the form of an opinion or otherwise" concerning their "scientific, technical, or other specialized knowledge," provided other foundational criteria are met. Fed. R. Evid. 702.

---

[1] This category is that in which PSG apparently claims its lost profit witnesses fit , but they do not, which is why the Town moved to preclude any evidence proferred by PSG of lost profits. Any opinions that a PSG employee developed as to PSG's lost profits for the years 2004 to 2008 was based on calculations performed purely for this litigation (since PSG has produced no pre-litigation documents or any other documents with the calculations), and the lost profits calculations were not a factual event that took place earlier which the employee(s) observed or participated in. Rather, the calculations of lost profits were done using the employee's experts – accounting – for purposes of testifying in this litigation, making the individual, at minimum, a Rule 702 witness. PSG has not formally designated which of its witnesses will be testifying about lost profits. In addition, PSG has not produced the documents relating to the claimed lost profits, which were required to be produced by Magistrate Judge Collings' June 26 ruling on the Town's motion to compel production of documents.

Rule 26 of the Federal Rules of Civil Procedure only requires that the *identity* of such a witness be disclosed. Fed. R. Civ. P. 26(a)(2)(A).

Finally, there is the scenario involving a witness "who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). It is *only* in this situation that Rule 26 of the Federal Rules of Civil Procedure requires that the disclosure include a written report.

Because Sullivan's anticipated testimony falls within either the first scenario—that of the percipient fact witness—or the second scenario—the expert witness who was not retained for the purpose of providing trial testimony—there is no requirement that he file an expert's report. Accordingly, it is immaterial whether the disclosure that was served complies with the expert report requirements of Fed. R. Civ. P. 26(a)(2)(B).

### 1. There is no disclosure requirement attendant to Sullivan's testimony as a fact witness

Rockland retained Sullivan in October of 2002—not to provide expert testimony—but to conduct a forensic audit. He completed his work and issued his forensic investigation report on February 25, 2004. PSG commenced this action three months later on May 28, 2004. Accordingly, Sullivan completed his work on the forensic audit well before PSG commenced this action.

Sullivan 's anticipated testimony—and the disclosure requirements attendant to it—are most likely to fall within the first scenario described above, i.e. that of the percipient fact witness, who, notwithstanding having expertise, may testify as to facts that he has learned as well as opinions and inferences that are rationally based upon his perceptions, all of which are within the scope of Fed. R. Evid. 701.

There are no expert disclosure requirements for opinion testimony offered by a fact witness, much less any requirement that an expert report be submitted. See Fed. R. Civ. P. 26(a)(2)(A). There are numerous cases where courts have allowed the admission of the opinions of a fact witness—even one with the qualifications of an expert in the absence of an expert witness report.

For example, in Gomez v. Rivera Rodriguez, supra, the First Circuit reversed a judgment in a case where a witness' testimony had been excluded because, inter alia, the witness had not filed an expert report. In Gomez, former municipal employees brought suit alleging that their employment contracts had been improperly terminated and that they then had not been not rehired because of their prior political activity. The defendants had sought to offer the testimony of Puerto Rico's Deputy Secretary for Legal Affairs who had discussed with the municipality's mayor the ground rules for the hiring of employees under new policies applicable to the program under which the employees formerly worked. The issue was whether the Deputy Secretary should have been permitted to testify in the absence of an expert report where the defendants had disclosed that he would provide testimony concerning the reasons for the mayor's decision not to rehire the employees. The First Circuit ruled that the District Court committed error when it excluded the Deputy Secretary's testimony because no report had been filed. The court held that the testimony should have been admitted because it "would have been based upon personal knowledge acquired before any litigation had begun. [The Deputy Secretary] was an actor with regard to the occurrences from which the tapestry of the lawsuit was woven, and the defendants sought to present his testimony on that basis." Id., at 113.  Similarly, here, Sullivan, the accountant is, "an  actor with regard to the

occurrences from which the tapestry of the lawsuit was woven." It is his report that, in addition to the Inspector General's direction, led to termination of the contract.

In another case, <u>United States v. Wells</u>, 211 F. 3d 988, 997-998 (6th Cir. 2000), the Sixth Circuit ruled that an expert report (as then required by Fed. R. Civ. P. 16(a)(1)(E)) was not required where physicians provided their opinions as fact witnesses because their testimony was based upon their firsthand observations of their patient prior to litigation. And in <u>West Tennessee Chapter of Associated Builders and Contractors, Inc. v. Memphis</u>, <u>supra</u>, the District Court ruled that consultants who had conducted a racial disparity survey for the defendant municipality prior to litigation would be permitted to testify as to their opinions under Rule 701. The court ruled that the consultants "have opinions rationally based on their perceptions of the study, since they were the individuals who conducted the study… Any personal information [they] could convey would be welcome to the factfinder, and they qualify as lay witnesses." 219 F.R.D., at 590.  Once again, the situation is similar to the circumstances here, where a person with expertise – Sullivan, an accountant – will be testifying about his audit (or study) and opinions contained within the study.

### 2. There is no requirement for an expert report because Sullivan was not specially retained to provide expert testimony in

Even if Sullivan is deemed to be a witness who may provide expert testimony under Rule 702 (instead of being a fact witness who provides opinion testimony under Rule 701), there is still no requirement that he submit an expert report because that requirement applies only to experts "retained or specially employed to provide expert testimony." Fed. R. Civ. P. 26(a)(2)(B).  Rockland did not retain Sullivan to provide

expert testimony -- it retained him to conduct a forensic audit well prior to the commencement of this case. While he will be compensated for his time in testifying – since he is a professional and is taking time away from his accounting practice to appear – he was <u>not</u> retained for the purpose of giving testimony.

The Advisory Committee's Note to the 1993 amendments to Rule 26 that imposed the requirement of expert reports for certain expert witnesses drew a distinction between witnesses retained to provide expert testimony, from whom the Rule requires an expert report, and fact witnesses such as Sullivan who happen to have expertise, from whom no report is required:

> The requirement of a written report in paragraph 2(B), however, *applies only to those experts who are retained or specially employed to provide such testimony in the case* or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.

Advisory Committee's Note, Fed. R. Civ. P. 26, 1993 Amendments (emphasis added).

In a recent case involving expert testimony proffered by a treating physician, a District Court relying upon the Advisory Committee's Note (as well as the First Circuit's analysis of the law concerning expert disclosures as articulated in <u>Gomez</u>, <u>supra</u>) held that "[b]ecause [treating physicians] necessarily rely on their opinions as experts in treating patients, treating physicians are not bound by the expert report requirements of Rule 26 so long as they limit their testimony to those opinions they formed and relied on during the course of their examination and treatment of the patient." <u>Gonzalez v. Executive Airlines, Inc.</u>, ---F.R.D.---, 2006 WL 833134 *4 (D.P.R. 2006). Applying this rationale here, any opinion that Sullivan may have formed as a professional in the course

of his forensic examination should be admissible (assuming other foundational requirements are met) without regard to the filing of an expert's report.

Treating physicians, of course, are not the only experts who may testify as to their opinions without having first submitted an expert report under Fed. R. Civ. P. 26(a)(2)(B). Any expert may testify without having submitted an expert report provided they have not been "retained or specially employed to provide expert testimony." Fed. R. Civ. P. 26(a)(2)(B); see, also, Brandt Distributing Co., Inc. v. Federal Insurance Co., 247 F. 3d 822, 825-826 (8th Cir. 2001) (no error in permitting fire department captain to testify that a fire was "a fraud fire" and "set for fraudulent purposes" in the absence of an expert witness report where his investigation was conducted prior to litigation, he was not retained as an expert by the defendant insurer who offered his testimony, his identity had been disclosed, and a copy of his official report had been provided to all parties prior to trial). See also, Cicero v. Paul Revere Life Insurance Co., 2000 WL 656666 (N.D. Ill. 2000) (plaintiff's accountant permitted to testify as an expert without having filed expert report under Rule 26(a)(2)(B) because he had not been retained for the purpose of testifying at trial).

   **B.** **Even if Sullivan is subject to Fed. R. Civ. P. 26(a)(2)(B), the disclosure that was filed meets the requirements of an expert report**

Even in the event that Sullivan is deemed to be an expert retained to provide expert testimony under Fed. R. Evid 702—and there are no facts to support such a conclusion -- the precautionary disclosure that was served concerning his testimony nevertheless meets the requirements for an expert's report under Fed. R. Civ. P. 26(a)(2)(B).

Rule 26(a)(2)(B) requires that an expert's report include:

> [1] a complete statement of all opinions to be expressed and the basis and reasons therefor; [2] the data or other information considered by the witness in forming the opinions; [3] any exhibits to be used as a summary of or support for the opinions; [4] the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; [5] the compensation to be paid for the study and testimony; and [6] a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Sullivan's disclosure dated June 14, 2006, which incorporated his report dated February 25, 2004 entitled "Forensic Investigation," meets these requirements. That report expresses Sullivan's opinions and discloses the data and information that he considered in reaching those opinions. Moreover, Rockland previously produced to PSG Sullivan's work papers from the forensic audit, a fact that PSG concedes in its papers. See PSG Memorandum, at 5 ("PSG does have three groups of documents labeled 'Book One,' 'Book Two,' and 'Book Three,' which apparently represent Mr. Sullivan's 'Investigation Books' ."). The June 14 disclosure contained Sullivan's qualifications (in the form of an attached curriculum vitae), and statements concerning publications, compensation and prior testimony.

      **C.**    **Having produced all responsive documents, Rockland is not under any obligation to supplement its document response**

PSG's final argument is that Sullivan's testimony should be excluded because Rockland did not "seasonably amend its responses to PSG's document requests." PSG Memorandum, at 15-16. As PSG correctly observes, however, such a duty exists only in the limited situation where a party "learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise

been made known to the other parties during the discovery process in writing." Fed. R. Civ. P. 26(e)(2). See PSG Memorandum, at 15-16. Here, all of Rockland's responses were complete and accurate when made, and Rockland had no obligation to supplement its response.

Specifically, PSG asserts that Rockland failed to produce "all documents provided to Rockland by any auditing firm, all statements made by witnesses or potential witnesses, and all documents reviewed, consulted or relied upon by any witness" as PSG had requested in its request for production of documents. Id. In fact, Rockland produced all of those documents relating to Sullivan when it made available to PSG three volumes of Sullivan's work papers, documents that PSG concedes that it received. PSG Memorandum, at 5 ("PSG does have three groups of documents labeled 'Book One,' 'Book Two,' and 'Book Three,' which apparently represent Mr. Sullivan's 'Investigation Books' .").

If PSG truly believed that Rockland had failed to produce these documents, it would not have waited until the eve of trial to raise the issue for the first time. And there were numerous steps that PSG could have taken—but did not take—if it believed that additional documents existed that were not produced. For example, PSG never sought to subpoena documents from Sullivan, never sought to take his deposition, and never moved to compel production during the time that discovery was open. The failure to take any of these steps suggests that PSG is not serious about its assertion that Rockland had a duty to supplement that it did not fulfill.

**IV.     Conclusion**

For the reasons stated, PSG's motion should be denied.

                                    TOWN OF ROCKLAND,
                                    ROCKLAND SEWER COMMISSION
                                    By its attorneys,

                                    /s/ Howard P. Blatchford, Jr.
                                    _____
                                    Joanne D'Alcomo
                                    BBO #544177
                                    Howard P. Blatchford, Jr.
                                    BBO #045580
                                    Seth Nesin
                                    BBO #650739
                                    JAGER SMITH P.C.
                                    One Financial Center
                                    Boston, MA 02111
                                    (617) 951-0500

Dated: July 20, 2006.