UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PROFESSIONAL SERVICES GROUP, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, GREGORY THOMSON and MICHAEL SAUSÉ, | ) ) ) ) ) . ) ) | |
| TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, | ) ) ) ) | |
| Plaintiffs-in-Counterclaim and Crossclaim | ) ) ) ) | Civil No. 04-11131-PBS |
| v. | ) ) | |
| PROFESSIONAL SERVICES GROUP, INC., | ) ) ) ) | |
| Defendant-in-Counterclaim, | ) ) | |
| and | ) ) | |
| MICHAEL SAUSÉ, | ) ) ) | |
| Crossclaim Defendant | ) ) | |

**<u>OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE ARGUMENT AND EVIDENCE OF PRELIMINARY PRICING CONTAINED IN DRAFT WORK NOTES AS A PROPER MEASURE OF DAMAGES</u>**

JS#129120v1

The Defendants/Counterclaimants Town of Rockland and Rockland Sewer Commission (collectively referred to herein as "Town" or "Town of Rockland" or "Rockland") hereby oppose Plaintiff Professional Service's Group, Inc.'s ("PSG") Motion in Limine To Exclude Argument And Evidence of Preliminary Pricing Contained In Draft Work Notes As A Proper Measure of Damages (Docket No. 91). The information PSG seeks to exclude from the trial is highly probative of the amount of damages due the Town of Rockland for its counterclaim brought under the Massachusetts Uniform Procurement Act, G.L. ch. 30B. Such damages would not be speculative. There is no reason to exclude the evidence.

**I. Background**

The subject of this motion arises from the procurement conducted in 1997 to operate the Town of Rockland's Wastewater Treatment Plant. PSG was the incumbent operator at the time. Michael Sausé, the former Vice President and Area Manager of PSG, conspired with the then-Sewer Superintendent Gregory Thomson in drafting the request for proposals and its addenda to give PSG a clear advantage in the bidding. Sausé has testified that he prepared the RFP, and every addendum that was issued to address matters raised by prospective bidders, in an effort to direct the contract to PSG.

Because of Sausé's efforts, several provisions of the Request for Proposals gave PSG a distinct advantage and deterred prospective bidders. One such provision was a minimum labor cost, which prevented competitors from offering a lower price for labor. Another provision was the requirement that any bids include a particular type of equipment known as a "belt filter press" to handle sludge dewatering that was "equal to or better in quality, age and hours run" to the one that PSG was using at the time. This gave PSG a competitive advantage because it already had a contract for the equipment that PSG was already operating at the plant and

prevented potential bidders from coming up with alternative, potentially more cost-effective, proposals. Yet another restrictive provision specified that a bidding company had to have "provided successful contract operations at a minimum of five water pollution control facilities similar in size and complexity to the Rockland facilities for at least five years." See 1997 RFP at Part III.d, Exhibit A. This prevented certain competing companies from bidding, despite the fact that they were highly qualified and had individuals with ample experience.

The evidence shows that two prospective bidders voiced criticism of the RFP because it prevented bidders from coming up with alternatives to what was being done by PSG. One such prospective bidder was Woodard & Curran, a competing company that had begun its operation and management business four and one half years prior to the time for bidding. Although Woodard & Curran did not meet the five-year requirement, it was highly qualified, having already operated over twenty wastewater treatment facilities and having management with an average of over twenty years of experience in the field. Woodard & Curran requested the option to submit an "alternate" proposal that did not incorporate a belt filter press that it believed would result in savings, which was denied. When the approach was rejected, Woodard & Curran informed the Town that it would not submit a bid, complaining that the RFP "seems to be heavily weighted in favor of your incumbent operator," PSG. Had Woodard & Curran submitted a bid, it could have been considered by the Town despite having four and a half rather than five years experience, because the RFP states that "the Commission reserves the right to waive minor informalities [and] . . . accept any Proposal which, in their opinion, is in the best interest of the Town of Rockland." See 1997 RFP at 6, Exhibit A.; Addendum #2 to RFP, Ex. B (reiterating to Woodard & Curran that its proposal could be considered, but that rankings of "experience" would be based on the firm itself rather than the "proposers management team.")

PSG was the sole bidder and was awarded the contract. PSG's bid was for an annual cost of $1,269,704, adjusted yearly based on the Consumer Price Index and Net Power Costs The price was subsequently negotiated down to $1,200,000 annually, with the same yearly adjustments. A witness who worked at Woodard & Curran at the time, and who represented the company at the pre-proposal briefing and in interactions with then Rockland Sewer Superintendent Gregory Thomson, is expected to testify that if Woodard & Curran had been able to make its bid, would have it would have bid substantially lower, in the amount of $943,932 annually. Contemporaneous notes by the witness corroborate that expected testimony, and it is those notes PSG seeks to exclude. See Woodard & Curran Notes, Docket No. 91 at Tab B. PSG seeks to exclude notes of Woodard & Curran's alternative proposal and use of those notes to prove damages.

## II. PSG's Motion Should Be Denied Because It Puts The Cart Before The Horse

Damages for violations of the Uniform Procurement are assessed at "double the amount of damages sustained by the governmental body by reason of the violation, together with the costs of any action." G.L. ch. 30B § 17. In this case, the Town of Rockland contends that, among the damages sustained was the difference in cost between what was paid to PSG for performing the wastewater operations and what the Town of Rockland would have paid if the bidding process had been competitive. See United States v. Cripps, 460 F. Supp. 969, 976 (E.D.Mich. 1978) ("[t]he measure of damages under the False Claims Act in cases involving collusive bidding is the difference between what the government actually paid out to the contractor and what it would have paid for the same work in the competitive market.") One important piece of evidence with respect to that measure of damages is the price proposal developed by Woodard & Curran that PSG seeks to exclude.

PSG argues that damages cannot be awarded speculatively, so therefore evidence of Woodard & Curran's pricing proposals should be excluded from the trial. Such an argument is backwards. The question of whether evidence is too speculative to award damages is an issue for either the Court or the jury to determine *after having heard all of the admissible evidence on the subject.* It makes no sense to exclude probative documents based upon the argument that those particular documents are insufficient proof, by themselves, of the appropriate measure of damages. It is only after viewing *the totality* of evidence on the subject of damages that it is appropriate to determine whether or not sufficient evidence on a measure of damages has been presented to be non-speculative. By asking the Court to rule as a matter of law that such damages would be speculative, PSG is essentially making a summary judgment argument. The deadline for summary judgment motions has long since passed.

Motions in limine to exclude evidence are principally based upon evidentiary rules. PSG has not made any argument based on the Rules of Evidence that the evidence it seeks to exclude is irrelevant, or unduly prejudicial, or insufficiently reliable. PSG cannot make such arguments because no such arguments exist. Woodard & Curran's price proposal is highly probative to the issue of damages incurred by the Town of Rockland.

The only evidentiary reason cited by PSG in support of its motion to exclude is a single sentence claiming that the documents are "inadmissible hearsay." The price proposal documents are not inadmissible hearsay, however, for at least three reasons. As an initial matter, there are several reasons that the documents are relevant and probative for reasons other than the "truth of the matter asserted," and therefore they are being introduced for a non-hearsay purpose. Fed. Rule of Evid. 801(c). The very fact that the documents were created is evidence that Woodard &

Curran seriously contemplated making an alternative proposal.  See, e.g., U.S. v. Balthazard, 360 F.3d 309, (1st Cir. 2004)

      Furthermore, the author of these notes, Jack Bonomo, is the witness who is expected to testify at trial about Woodard & Curran's experience with the 1997 RFP.  Bonono is expected to testify as to what Woodard & Curran would have bid had it believed that the RFP process was being conducted fairly.  To the extent that PSG makes either an express of implied charge that Bonono's testimony is a "recent fabrication" or is based on an "improper influence or motive," his earlier notes are admissible under Federal Rule of Evidence 801(d)(1)(B) for prior consistent statements.  To the extent that Bonomo has any difficulty in testifying fully and accurately about the events of nine years ago, the notes are admissible under Federal Rule of Evidence 803(5) as "recorded recollections."

      PSG has failed to cite a single case in which evidence of damages was *excluded* from the trial because it was too speculative, which is what PSG is requesting.  In each of the cases cited by PSG, a party presented its evidence of damages, and the Court determined, after having viewed that evidence, that the evidence was insufficient as a matter of law to go to the jury.  See, e.g. Wells Real Estate, Inc. v. Greater Lowell Bd. Of Realtors, 850 F.2d 803, 816 (1st Cir. 1988) (holding that evidence of damages actually presented at trial was too speculative); Bruno v. Restuccia, 2005 WL 705379 at *11-12 (Mass. Sup. Ct. Feb. 29, 2005) (holding that evidence of damages was too speculative and that damages expert was not credible due to "numerous errors and questionable conclusions.")  The Town of Rockland should not be deprived of making its argument before it has even had an opportunity to present its evidence.

      The Town of Rockland is entitled to "double the amount of damages sustained by the governmental body by reason of the violation, together with the costs of any action."  G.L. ch.

30B § 17.  The work notes from Woodard & Curran that PSG seeks to exclude are merely some of the evidence that will be presented at trial with respect to these damages.  Information from both fact and expert witnesses, including Jack Bonomo, will also shed light on this measure of damages.

**III. Evidence of What Woodard & Curran's Bid Would Have Been Were It Not For The Bid Rigging Is Not Speculative**

Although it is never stated explicitly, PSG also appears to argue that, as a matter of law, the Town of Rockland cannot recover damages for the increased price that it paid PSG over what it would have paid if there had been a competitive bidding process.  As noted above, this is actually a motion for summary judgment, and should be denied for failure to meet the summary judgment deadline.  But even if the Court considers the motion, it should be denied because there exists significant evidence under which a jury could properly assign damages to PSG on this basis.

    **A.  PSG's Argument That The Notes Are Not Equivalent To An Actual Proposal Is Irrelevant**

PSG's first argument about Woodard & Curran's price proposal is that it cannot be used to support a damages argument because it was never turned into a formal proposal. Such an argument, if adopted by the Court, would prevent any similar claims from ever proving damages. The very basis of the claim is that, because the RFP process was engineered to give PSG an unfair advantage, there were no other bidders.  A claim with these allegations will never have a formal proposal for comparison, because the other bidders were deterred from bidding.  The law cannot be that a sole bidder can never be liable for damages under 30B.

All of the doubts expressed by PSG with respect to the notes go to their weight, not their admissibility. PSG will have ample opportunity to make arguments to the jury that the Woodard & Curran notes should not be given much weight because they were never submitted in a formal proposal and might well have been modified. PSG can cross-examine the Town's witnesses, including Jack Bonomo, the person at Woodard & Curran who wrote the notes and performed the calculations on which those notes are based. PSG can proffer testimony from its own witnesses about the RFP process and why the Woodard & Curran price proposal should be ignored. Had it wished to do so, PSG could have introduced expert testimony to explain why the technology that Woodard & Curran contemplates in its price proposal was inadequate. All of these would be perfectly acceptable ways to combat the significance of the notes – but there is no evidentiary rule under which they are properly excluded.

**B. PSG's Argument That The Evidence of Damages Is Too Speculative Is A Mischaracterization of Law and Fact**

PSG appears to argue, although it is not entirely clear, that the very notion of comparing Woodard & Curran's contemplated price proposal to the actual price paid by the Town to PSG is too speculative a measure for damages. Such an argument is flawed for two reasons: it intimates that the sole evidence of Woodard & Curran's contemplated price proposal are the handwritten notes PSG seeks to exclude from the trial. And it misstates the law with respect to the standard of proof necessary to prove damages.

The Woodard & Curran notes are merely one of several forms of evidence that will inform the jury about what the Town of Rockland might have paid for wastewater treatment in a competitive bidding process. As mentioned earlier, Jack Bonomo, the individual in charge of the bidding process at the time for Woodard & Curran, will testify about what Woodard & Curran was prepared to propose. Michael Sausé, PSG's former vice president, testified at his deposition

that the price proposal that he worked on and submitted on behalf of PSG would likely have been lower if there had been competition. Expert Ronald Michalski, PE will testify about the significant financial advantages that PSG had over competitors in the 1997 RFP, information that a jury could use to reasonably infer that PSG's contract was for a higher amount than it would have been in a competitive bidding process. See Report of Ronald Michalski, PE, Ex. C at 2-3.

Finally, PSG gives a misleading impression of the standard of proof to prove damages, particularly in a situation in which damages may not be capable of exact formulation. Damages "need not be proved with mathematical certainty, provided an award has a rational basis in the evidence." Jay Edwards, Inc. v. New England Toyota Distributor, Inc., 708 F.2d 814, 821 (1st Cir. 1983) (citing Ford Motor Co. v. Webster's Auto Sales, Inc., 361 F.2d 874 (1st Cir.1966)); see also Wallace Motor Sales, Inc. v. American Motor Sales Corp., 780 F.2d 1049, 1062 (1st Cir.1985) (applying Massachusetts law); Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 413, 788 N.E.2d 522 (2003); Our Lady of the Sea Corp. v. Borges, 40 Mass. App. 484, 488, 665 N.E.2d 128, 131. ("the extent of damages often must be left to estimate and judgment.")  Furthermore, "where the defendant's wrongdoing created the risk of uncertainty, the defendant cannot complain about imprecision." Jay Edwards, 708 F.2d at 821 (citing Bigelow v. RKO Radio Pictures, 327 U.S. 251, (1946)); cf. Restatement (Second) of Contracts § 352 cmt. a, at 145 ("Doubts [concerning calculation of damages] are generally resolved against the party in breach."). See generally Robert L. Dunn, Recovery of Damages for Lost Profits § 5.1 (4th ed. 1992) (damages must only be established with "reasonable certainty").  As the Supreme Court has stated:

> Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from

>   making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.

Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931).

Because of difficulty inherent in proving damages to a certainty, courts permit damages to be estimated based on a wide range of factors. See Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752 (1st Cir. 1996) (applying Massachusetts law and finding sufficient evidence of holding damages for lost profits based in part on what plaintiffs profits were in an earlier time period); Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc., 14 Mass. App. Ct. 396, 430-431 (1982) (reversing trial court that limited damages only to sales in a specific geographic area when a wider geographic area was a more appropriate measure of damages, despite the fact that plaintiff did not provide expert testimony about the wider area).

## IV. Evidence of Woodard & Curran's Bid Is Not Speculative

In light of the wide latitude claimants are given in proving damages where mathematical precision is impossible, the evidence of what Woodard & Curran's alternative bid would have been is far from speculative. Woodard & Curran was both qualified and interested in obtaining the wastewater treatment contract. Although Woodard & Curran did not meet the five-year requirement – which could have been waived by the Town if the bidding had been fair and open -- it was highly qualified, having already operated over twenty wastewater treatment facilities and having management with an average of over twenty years of experience in the field. In fact, the management team at Woodard & Curran had been responsible for operating the Town of

Rockland's wastewater facility between approximately 1983 to 1993, when they were with a different company. Woodard & Curran's alternative proposal for the 1998 contract would have used a different technology than the belt filter press, a sludge thickener. The sludge thickener technology was less expensive than a belt filter press and was still adequate to perform all of the required functions of the plant.

Woodard & Curran was not only qualified, it was undoubtedly interested in obtaining the contract. Representatives of Woodard & Curran attended the mandatory preliminary meeting for companies interested in bidding on the contract, and followed up with a plant tour and a series of letters with Gregory Thomson, the then-Sewer Superintendent, with respect to the requirements of the RFP. As evidenced by the notes that PSG seeks to exclude in this motion, Woodard & Curran went through the steps of creating two alternative price proposals to potentially submit using two different technologies.

Information about what a qualified and interested competitor would have bid had the procurement process been fair is the best possible evidence of damages. ."). See Robert L. Dunn, Recovery of Damages for Lost Profits § 5.3 (4th ed. 1992) ("The standard of proof is often said to be that the plaintiff is required to do no more than to supply the 'best evidence available' or the 'best available proof'"). It is difficult to imagine any evidence that would be superior in a case like this one where there was only one bidder due to an unfair and corrupt procurement. Evidence and argument based upon Woodard & Curran's potential bid should therefore not be excluded from the trial.

                    Respectfully submitted,

                    TOWN OF ROCKLAND and
                    THE ROCKLAND SEWER COMMISSION,
                    By their attorneys,

                    /s/Seth Nesin_____
                    Joanne D'Alcomo (BBO # 544177)
                    Seth Nesin (BBO # #650739)
                    JAGER SMITH P.C.
                    One Financial Center
                    Boston, MA 02111
                    (617) 951-0500

DATED: July 20, 2006