**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
)
PROFESSIONAL SERVICES )
GROUP, INC., )
)
        Plaintiff, )
)
   v. )
)
TOWN OF ROCKLAND, ROCKLAND )
SEWER COMMISSION, GREGORY )
THOMSON and MICHAEL SAUSÉ, )
)
)
_____)
)
TOWN OF ROCKLAND, ROCKLAND )
SEWER COMMISSION, )
)
        Plaintiffs in Counterclaim )   Civil No. 04-11131-PBS
        and Crossclaim )
)
v. )
)
PROFESSIONAL SERVICES )
GROUP, INC., )
)
        Defendant in Counterclaim, )
)
and )
)
MICHAEL SAUSÉ, )
)
        Crossclaim Defendant )
_____)

**OPPOSITION TO DEFENDANTS' MOTION _IN LIMINE_**
**TO PRECLUDE PROFESSIONAL SERVICES GROUP, INC.**
**FROM OFFERING TESTIMONY OF LOST PROFITS**

Plaintiff Professional Services Group, Inc. ("PSG") opposes the motion _in limine_ of

Defendants Town of Rockland and Rockland Sewer Commission to preclude PSG from offering

testimony of lost profits (the "Motion").  PSG intends to offer evidence of its lost profits through

lay opinion testimony under Rule 701 of the Federal Rules of Civil Procedure, and thus no expert

disclosures on this issue are required.  The Defendants assert that testimony about PSG's lost

profits is "by its very nature opinion testimony" that can only be offered through an expert, and

that the Court should preclude PSG from introducing evidence of its lost profits.  Their claim

ignores well-established federal law expressly interpreting Rule 701 to permit lay witnesses with

personal knowledge of the books and records of a business to offer an opinion about the

business's expected lost profits.

I.      **WELL-ESTABLISHED FEDERAL LAW PERMITS A PARTY TO PROVE LOST PROFITS UNDER RULE 701 THROUGH THE LAY OPINIONS OF PERSONS WITH PERSONAL KNOWLEDGE OF THE PARTY'S BOOKS AND RECORDS.**

In order to prove lost profits as part of its breach of contract claim, PSG must show only

that the "loss of them appears to have been the direct result of the wrong complained of and …

they are capable of proof to a reasonable degree of certainty."  Herbert A. Sullivan, Inc. v. Utica

Mutual Ins. Co., 439 Mass. 387, 413 (2003) (quoting Lowrie v. Castle, 225 Mass. 37, 51 (1916)).

"The plaintiff [is] not required to prove its lost profits with mathematical precision.  Under our

cases, an element of uncertainty is permitted in calculating damages and an award of damages

can stand on less than substantial evidence.  This is particularly the case in business torts, where

the critical focus is on the wrongfulness of the defendant's conduct."  Ricky Smith Pontiac, Inc.

v. Subaru of New England, Inc., 14 Mass. App. Ct. 396, 426 (1982).

Rule 701 permits a lay witness to testify about opinions that are "rationally based on the

perception of the witness," "helpful to a clear understanding of the witness' testimony or the

determination of a fact in issue," and "not based on scientific, technical, or other specialized

knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  Courts consistently have held that

opinions about lost business profits offered by a witness with personal knowledge of the books

and records of the business qualify under this rule.

In Teen-Ed, Inc. v. Kimball International, Inc., 620 F.2d 399 (3d Cir. 1980), the district

court refused to permit the plaintiff's bookkeeper to testify about his company's lost profits.  The

Third Circuit reversed the district court's decision, holding that the bookkeeper's "personal

knowledge of appellant's balance sheets" was sufficient to enable him "to testify to his opinion

of how lost profits could be calculated and to inferences that he could draw from his perception

of Teen-Ed's books." Id. at 403.  This was true, the court stated, even if the bookkeeper could

have qualified as an expert witness because of his knowledge of accounting principles.  Id.

Noting that the "essential difference" between an expert and a lay witness is that the expert is

permitted to answer hypothetical questions, the court concluded that "[a] projection of lost

profits based on evidence of record regarding decreased sales of a certain product may not

accurately be characterized as 'hypothetical.'" Id. at 404.

Other circuits have followed Teen-Ed in affirming the use of lay witnesses to establish

lost profit damages.  See, e.g., Melford Olsen Honey, Inc. v. Adee, 2006 WL 1816411 (8th Cir.

July 5, 2006) (denying post-trial motion challenging jury award of lost profits where award was

supported by testimony of non-experts who were familiar with plaintiff's accounts); Mississippi

Chemical Corp. v. Dresser-Rand Co., 287 F.3d 359 (5th Cir. 2002) (affirming admission of lay

testimony about lost profits by plaintiff's risk management director who had personal knowledge

of plaintiff's books); Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 265 (2d Cir. 1995)

(company president could testify about lost profits under Rule 701 because "[a] company

president certainly is capable of projecting lost profits where the projection is based on evidence

of decreased sales."); State Office Systems, Inc. v. Olivetti Corp. of America, 762 F.2d 843, 846

(10th Cir. 1985) (company's president and treasurer permitted to give opinion testimony

regarding company's lost future profits based on his personal knowledge of company operations,

sales, and profits).

In support of their claim that PSG must offer expert testimony to prove lost profits, the

Defendants rely upon several state court cases, arguing that "Massachusetts law is the applicable

law in this case." Motion at 3. The premise of their claim is fundamentally flawed. In a

diversity action such as this one, it is federal law, not state law, that governs procedural matters.

See Rodi v. Southern New England School of Law, 389 F.2d 5, 19 (1st Cir. 2004). The

admissibility of testimony by witnesses – including lay opinion and expert witnesses – is a

procedural matter to be determined by the court in accordance with federal law. See, e.g.,

Brooks v. American Broadcasting Companies, Inc., 999 F.2d 167, 173 (6th Cir. 1993) ("The

admissibility of expert testimony is a matter of federal, rather than state, procedure. Therefore,

whether an expert should be permitted to testify is controlled by federal law.") (citing Salas v.

Wang, 846 F.2d 897, 900 (3d Cir. 1988)).

Moreover, the Defendants *themselves* concede that Massachusetts state courts "have

never imposed a strict requirement that lost profit damages must be calculated by an expert," but

merely have noted that expert testimony "is beneficial to the claim." Motion at 3. The

Defendants cite a number of cases in which the use of expert testimony is noted, but the fact that

*some* litigants have used expert testimony to prove lost profit damages does not mean that expert

testimony is *essential* to proving such damages. Indeed, the Defendants fail to cite a single case

standing for the proposition that evidence of lost profits cannot be admitted through the opinion

testimony of a lay witness.

**II.      PSG HAS PRODUCED TO THE DEFENDANTS ALL OF THE DOCUMENTS THAT FORM THE BASIS OF ITS LOST PROFIT CALCULATION.**

The Defendants also are wrong in claiming that PSG has not disclosed the documents that form the basis of its lost profit calculations.  PSG voluntarily made available to the Defendants thousands of pages of financial data and profit projections – including documents responsive to Request Nos. 39-41 – *before* Magistrate Judge Collings issued his discovery order on June 28, 2006.  All of the documents upon which PSG has calculated its lost profits have been produced to the Defendants, and the Defendants' claim to the contrary is simply untrue.  PSG also has provided the Defendants with a disclosure of the manner in which lost profits have been calculated.[1]

Furthermore, the measure of lost profits in this case is not a "complex calculation."  A witness with personal knowledge of PSG's books and records merely needs to extrapolate PSG's revenue and costs during the first six years of the 1998 Contract to estimate the profit that PSG would have earned had the Defendants not terminated the 1998 Contract.  Because "an element of uncertainty is permitted in calculating damages," Ricky Smith Pontiac, 14 Mass. App. Ct. at 426, such an extrapolation – based upon the witness' personal knowledge of PSG's books and records – is sufficient to permit the matter to go to the jury.  See, e.g., Teen-Ed, 620 F.2d at 404 (vacating district court's exclusion of lost profit evidence where party sought to offer a "projection of lost profits based on evidence of record regarding decreased sales of a certain product"); Securitron Magnalock, 65 F.3d at 265 (company president could testify about lost

---

[1]In the Motion, the Defendants suggest for the first time that Rule 26 of the Federal Rules of Civil Procedure required PSG to provide an "explanation as to how [its damages estimate] was calculated." See Motion at 5.  Rule 26 requires the disclosure of  the "computation of any category of damages claimed."  Fed. R. Civ. P. 26(a)(1).  PSG has claimed only one category of damages in this litigation – its lost profits under the 1998 Contract – and it provided an estimate of that category of damages in its automatic disclosures.  PSG has revised this computation and disclosed that information to the Defendants, as well as detail about how that computation was made.

profits under Rule 701 because "[a] company president certainly is capable of projecting lost profits where the projection is based on evidence of decreased sales.").

## III.     CONCLUSION

At trial, PSG expects to introduce evidence of its breach of contract damages through witnesses with personal knowledge of the books and records of PSG.  Those witnesses will testify about opinions that are rationally based on their own perceptions, and thus will be admissible under Rule 701.  Given the well-established law permitting parties to prove lost business profits in this manner, there is no basis for the Defendants' attempt to preclude PSG from even putting that evidence before the jury.  The Defendants will have an opportunity to cross-examine those witnesses and to argue to the jury that their testimony should be discounted or rejected.  It is up to the jury, however – not the Defendants – to assess the weight to be accorded that evidence.

Respectfully submitted,

**PROFESSIONAL SERVICES GROUP, INC.**,
By its attorneys,


/s/David M. Osborne_____
Maria R. Durant (BBO # 558906)
David M. Osborne  (BBO # 564840)
Sara E. Noonan (BBO # 645293)
DWYER & COLLORA, LLP
Federal Reserve Plaza
600 Atlantic Avenue, 12th Floor
Boston, MA  02210
(617) 371-1000

Dated: July 20, 2006

## CERTIFICATE OF SERVICE

       I, David M. Osborne, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on July 20, 2006.

                                        /s/David M. Osborne_____
                                        David M. Osborne