UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROFESSIONAL SERVICES GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, GREGORY THOMSON and MICHAEL SAUSÉ, <br><br> Defendants. <br><br> TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, <br><br> Plaintiffs-in-Counterclaim and Crossclaim <br><br> v. <br><br> PROFESSIONAL SERVICES GROUP, INC., <br><br> Defendant-in-Counterclaim, <br><br> and <br><br> MICHAEL SAUSÉ, <br><br> Crossclaim Defendant | Civil No. 04-11131-PBS |

**OPPOSITION OF TOWN OF ROCKLAND AND ROCKLAND
SEWER COMMISSION TO MOTION TO
<u>EXCLUDE EXPERT TESTIMONY OF RONALD A. MICHALSKI, P.E.</u>**

Defendants and Plaintiffs-in-Counterclaim Town of Rockland and Rockland Sewer

Commission (collectively "Rockland") oppose the Motion of Plaintiff Professional Services

Group, Inc. ("PSG") to Exclude Expert Testimony of Ronald A Michalski and as their reasons therefore state the following:

## I. Introduction

Ronald A. Michalski, P.E. ("Michalski"), a registered professional engineer and Senior Vice President of the engineering firm of Tighe & Bond, was the author of Rockland's 1994 Request for Proposals ("RFP") for the operation of its wastewater treatment facility—a document that is not only central to the issues in this case, but a document that PSG has placed upon its trial exhibit list. More than anyone, Michalski is in a position to draw distinctions between a legitimate RFP and the corrupt RFP that PSG prepared in 1997. Accordingly, Michalski will be a fact witness at trial, in addition to providing expert testimony.

Michalski has more than 34 years of experience in the municipal engineering field. His areas of expertise include solid waste, water pollution control and water treatment and distribution. He has assisted numerous clients with project planning and financing advice.

Issues pertaining to RFP's—particularly an RFP for the operation of a wastewater treatment plant--are not likely to be within the common understanding of the average juror. A municipality's acquisition of these services is quite different than a municipality's purchase of school supplies or textbooks for its public schools, which might be something an average juror would more readily understand. Accordingly, Rockland intends to offer Michalski's testimony as a means of educating the jury concerning the complex issues surrounding RFP's.

Among the complex claims and defenses presented in this case are those arising under Massachusetts competitive bidding statute, G. L. c. 30B, sec. 17, the conflict of interest statute, G. L. c. 268A, as well as G. L. c. 93A. Given these complexities, the jury will require an explanation of what an RFP is, how an RFP works, and what the procurement process requires.

Michalski can provide this information. Similarly, as an expert who is regularly involved in the drafting of RFP's, Michalski can testify as to those specifications in an RFP that foster competitive bidding and those that chill competition—again issues that are central to this case.

Similarly, because this case involves issues of negligence, unfair and deceptive conduct, violations of the conflict-of- interest statute and the uniform procurement act, Rockland will require—and the jury will need—testimony from a witness with an engineering background to place PSG's behavior in context so that a determination can be made that such conduct was, in fact, wrongful, negligent and deceitful.

It is in these contexts that Rockland plans to offer Michalski as a witness at trial.

**II.    The Motion Should Be Denied Because Michalski's Knowledge, Skill, Experience, Training, and Education Will Each Assist the Trier of Fact to Understand Evidence and Determine Facts in Issue Regarding Relevant Industry Standards and PSG's Deviations From Those Industry Standards**

Rule 702 of the Federal Rules of Evidence states, in relevant part

> "[i]f . . . specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The "law affords trial judges with substantial discretion in connection with the admission or exclusion of opinion evidence," that will be upheld on appeal absent manifest error. <u>Bogosian v. Mercedes-Benz of North America, Inc.</u>, 104 F.3d 472, 476 (1st Cir. 1997), quoting <u>Salem v. United States Lines Co.</u>, 370 U.S. 31, 35 (1962). In determining whether to admit or exclude expert testimony, the court first determines if the proposed expert is qualified by "knowledge, skill, experience, training, or education." <u>Id.</u> (quoting Fed. R. Evid. 702). Next,

the court must decide "if the subject matter of the expert opinion properly concerns 'scientific, technical, or other specialized knowledge.'" Id.  Finally, the court, as gatekeeper, determines if the expert evidence will assist the fact finder insofar as it is reliable, and relevant to the facts of the case. Id.

When the average juror is unlikely to be knowledgeable about the standards and practices of a particular industry, expert testimony regarding those standards and practices are helpful to the jury.  See F.D.I.C. v. Refco Group, Ltd., 184 F.R.D. 623, 630 (D. Col. 1999).  Such is the case here. As stated above, the jury is not likely to be familiar with the purpose or requirements of RFP's, the process by which they are prepared, and how the inclusion or exclusion of particular terms and specifications can impede or foster competition in the procurement process. Michalski is clearly qualified by knowledge, skill, experience, training, and education, to testify concerning these issues, and his explanations and opinions will assist the jury's understanding.

### A. Michalski is Qualified to Give Expert Testimony on the Standards Applied in the Environmental Engineering Industry in Preparing Requests for Proposals for Public Procurement of Services.

Although in its motion PSG has not challenged Michalski's qualifications to give expert testimony in these proceedings as to the applicable industry standards, and has therefore waived any such challenge, Michalski is nonetheless qualified by his knowledge, skill, experience, training, and education to testify under Fed. R. Evid. 702 on the prevailing standards applied in the environmental engineering industry when preparing requests for proposals in connection with public procurements.  Because Rockland's claims against PSG rest in part upon PSG's gross deviations from those industry standards, an objective and educated explanation to the finder of fact by an expert on that issue is both necessary and appropriate under the circumstances.

The record in this case is clear that Michalski is well-qualified to explain those industry standards, and to opine upon PSG's deviations therefrom. Specifically, Michalski, a professional engineer with a graduate degree in Environmental Engineering from Cornell University, has over thirty-four (34) years environmental experience in the areas of solid and water waste management, water pollution control, and water treatment and distribution. Between 1975 and the present, Michalski has worked with countless municipalities, including the Town of Rockland, in planning, designing, permitting, constructing, managing, and procuring numerous public works projects, which services included preparing and circulating requests for proposals for public procurements in the competitive proposal process. Based upon the foregoing, there is ample, unrefuted evidence for the Court to find that Michalski has the requisite knowledge, skill, experience, training, and education to qualify as an expert on the prevailing standards applied in the environmental engineering industry when preparing requests for proposals in connection with public procurements.

> **B. The Subject Matter of Michalski's Opinion Properly Concerns His Specialized Knowledge of the Standards Applied in the Environmental Engineering Industry in Preparing Requests for Proposals for Public Procurement of Services.**

As stated above, Rockland's claims against PSG rest in part upon its gross deviations from industry standards followed in the environmental engineering industry when preparing requests for proposals for public procurements, which industry standards Michalski is well equipped to explain to the finder of fact, and to opine that PSG deviated from those industry standards in preparing RFP's for public procurements on behalf of Rockland. For example, Michalski has come to know as an environmental engineering professional that it is the practice and standard of that industry to prepare RFP's for public procurements without including stipulations and other requirements that would give an unfair advantage to the particular firm

preparing that request. Michalski has also come to know that it is standard in the environmental engineering industry when preparing requests for proposals for public procurements to do so by establishing a response schedule that enables *all* vendors to obtain and evaluate the documentation and information necessary to participate in the process, regardless of their prior knowledge, if any, of the particular procurement project. These industry standards, as Michalski has come to learn them over the last 34 years, are the applicable, relevant principals against which the jury should gauge the conduct of PSG in this case.

      **C. Michalski's Opinion is Based on Reliable Principles, and is Relevant to the Issue of Whether or Not PSG Deviated from Prevailing Industry Standards.**

Michalski's opinion is based upon reliable principles, and is also relevant to the issue of whether or not PSG adhered to, or deviated from prevailing industry standards in preparing public procurements requests for and on behalf of Rockland. As previously discussed, Michalski has years of high level, practical experience in the environmental engineering industry -- over 34 --  during which time he has become intimately familiar with the standards followed in his industry, which industry standards are the principles applicable in this case. See Northeast Drilling, Inc. v. Inner Space Services, Inc., 243 F.3d 25, 38 (1st Cir. 2001) (industry standards appropriate subject of expert testimony); Cook v. Navistar Int'l Trans. Corp., 940 F.2d 207, 213 (7th Cir. 1991) (same); McCabe v. Crawford & Co., 272 F. Supp. 2d 736, 739-41 (N.D. Ill. 2003) (same); Refco Group, Ltd., 184 F.R.D. at 630 (same). Michalski is uniquely qualified to explain these industry standards to the lay juror, and to opine upon PSG's deviations therefrom. In addition, Michalski is well qualified to explain to the finder of fact the detailed process of preparing and circulating RFP's for public procurements in the competitive proposal process. These standards, and Michalski's opinions thereon, are directly relevant to the jury's

determination of whether or not PSG adhered to, or deviated from prevailing industry standards in preparing requests for proposals for public procurements on behalf of Rockland.

Based upon the foregoing, the Court should find that Michalski is qualified to give testimony, that the subject matter of Michalski's opinion properly concerns technical or other specialized knowledge, and that Michalski's testimony will assist the fact finder insofar as it is reliable, and relevant to the facts of this case.

### III.  PSG's Has Misperceived the Purpose of an Expert Report

A recurring theme in PSG's motion is the notion that Michalski's testimony should be excluded because his report is insufficient to establish or satisfy all the requirements of Fed. R. Evid. 702.  This is a misguided argument. It improperly engrafts the requirements of Fed. R. Evid. 702 onto those of Fed. R. Civ. P. 26(a)(2), the purpose of which is only "to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial." See Ortiz-Lopez v. Sociedad Espanola de Auxilio Muto y Beneficia de Puerto Rico, 248 F.3d 29, 35 (1st Cir. 2001); see also Mounger v. Goodyear Tire & Rubber Co., 2000 WL 1466198, *2 (D. Kan., September 22, 2000) (purpose of report to give opposing party reasonable opportunity to prepare for cross examination and arrange for rebuttal expert witnesses).

When measured under the appropriate rule, Fed. R. Civ. P. 26(a)(2), Michalski's report is sufficient because it sets forth all matters about which Michalski will testify, and states the bases for his opinions and conclusions.  See M&M Towing Co. v. United Capitol Ins. Co., 1998 WL 814620, *1 (E.D. La., November 23, 1998).

### IV.  Conclusion

For the reasons stated, Rockland requests that PSG's motion to exclude Michalski's testimony be denied, and that the court grant Rockland such other relief as may be proper.

        TOWN OF ROCKLAND AND
        ROCKLAND SEWER COMMISSION,

        By their attorneys:

        /s/Howard P. Blatchford

        _____
        Joanne D'Alcomo (BBO # 544177)
        Howard P. Blatchford, Jr. (BBO #045580)
        Seth Nesin (BBO # #650739)
        JAGER SMITH P.C.
        One Financial Center
        Boston, Massachusetts 02111
        617-951-0500

Dated: July 20, 2006