UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

PROFESSIONAL SERVICES
GROUP, INC.,

              Plaintiff,

    v.

TOWN OF ROCKLAND, ROCKLAND
SEWER COMMISSION, GREGORY
THOMSON and MICHAEL SAUSÉ,
         .
         .
_____

TOWN OF ROCKLAND, ROCKLAND
SEWER COMMISSION,

              Plaintiffs-in-Counterclaim
              and Crossclaim

v.

PROFESSIONAL SERVICES
GROUP, INC.,

              Defendant-in-Counterclaim,

and

MICHAEL SAUSÉ,

              Crossclaim Defendant
_____

Civil No. 04-11131-PBS

## PLAINTIFF'S PRETRIAL BRIEF

      Plaintiff Professional Services Group, Inc. ("PSG") submits this pretrial brief pursuant to

the Court's order in this case and to Local Rule 16.5(F).

## I.    LEGAL ISSUES FOR TRIAL

### A.    Defendants Must Prove a Violation of a Specific Provision of the Procurement Act

To succeed in proving their counterclaim under § 17(c) of the Procurement Act,
Defendants must prove a violation of a specific provision of the Act.  See c. 30B, § 17(c).  *It is
not enough*, contrary to Defendants' suggestion, that the RFP for the 1998 Contract provided an
"advantage" to PSG in the proposal process, or that Michael Sause and Gregory Thomson
worked together to draft the RFP.  See Final Joint Pretrial Memorandum, at 9 (7/14/06)
(Defendants' Summary) (Sause and Thomson conspired "in an effort to give PSG a clear
advantage in the bidding"); id. at 10 ("two provisions of the Request for Proposals … gave PSG
a distinct advantage and deterred prospective bidders"); id. (requirement in RFP "gave PSG a
competitive advantage").  No such circumstance, alone, constitutes a basis for liability under §
17(c) of the Procurement Act.

Defendants' allegations in this case concern potentially only two provisions of c. 30B.
The closest that Defendants have come to alleging a specific violation of c. 30B is the allegation
in their Counterclaim that the RFP "amounted to a proprietary specification, precluding
competition for the services to be procured."  See Counterclaim ¶ 23.  Section 14 of the
Procurement Act provides that "all specifications shall be written in a manner which describes
the requirements to be met without having the effect of exclusively requiring a proprietary
supply or service, or a procurement from a sole source."  c. 30B, § 14.  Thus, to prove a violation
of this section, Defendants must prove that the RFP was written so as to preclude proposals from
any potential respondents to the RFP other than PSG.

Defendants have focused on two aspects of the RFP for the 1998 Contract in support of
their c. 30B claim: (1) a minimum labor cost and (2) the "belt filter press" requirement.  See

2

Final Joint Pretrial Memorandum, at 10 (7/14/06) (Defendants' Summary).  To succeed under §

14, however, Defendants must prove that no potential respondents to the RFP, other than PSG,

could have met these requirements in their proposals.  Defendants cannot prove a violation of §

14 merely because either of these elements of the RFP gave PSG a "distinct" or "competitive

advantage."  See Final Joint Pretrial Memorandum, at 10 (7/14/06) (Defendants' Summary).

Defendants have also suggested that "collusion" between Sause and Thomson was itself a

violation of c. 30B.  Section 10 of c. 30B requires that:

> A person submitting a bid or a proposal for the procurement or
> disposal of supplies or services to any governmental body shall
> certify in writing, on the bid or proposal, as follows:
>
> The undersigned certifies under penalties of perjury that this bid or
> proposal has been made and submitted in good faith and without
> collusion or fraud with any other person.

c. 30B, § 10.  In this case, PSG's proposal for the 1998 Contract included such a certification.

**B.    Defendants Have No Right to a Jury Trial on Their Claims Under the Uniform
Procurement Act and the Conflict of Interest Statute, and the Court, in Its
Discretion, Should Reserve Judgment on Those Claims**

Defendants have no right to a jury trial on their claims under the Uniform Procurement

Act and the Conflict of Interest Statute because the civil enforcement provisions of each statute

create new substantive rights in wholly new causes of action.  See Nei v. Burley, 388 Mass. 307,

315 (1983); Dep't Revenue v. Jarvenpaa, 404 Mass. 177, 188 (1989); see also Memorandum of

Law in Support of Motion to Strike Defendants' Jury Trial Demand as to Conflict of Interest and

Procurement Act Counts.  As the SJC has noted regarding the Conflict of Interest Statute, in

particular, actions for "civil violations of G.L. c. 268A are essentially sui generis and do not

express a civil claim, right or remedy which was recognized at common law as requiring a jury

trial."  Zora v. State Ethics Comm'n, 415 Mass. 640, 652-53 (1993).

Combined with the unprecedented application of these statutes in this case and the lack of guiding authority on their appropriate interpretation, particularly with respect to their damages provisions, as well as the presence of Defendants' c. 93A claim, the Court should exercise its discretion and reserve these claims for its own judgment. Reserving judgment on the c. 268A and c. 30B claims in this case would be no more difficult or complicating for the Court, the parties, or the jury than reserving on a c. 93A claim.

C.    **The Court Should Reserve Any Issue of Multiple Damages and Apportionment of Damages for Its Own Judgment**

The Conflict of Interest Statute explicitly invests the Court—not the jury—with the determination of multiple damages under its civil enforcement provision. <u>See</u> c. 268A, § 21(b) ("the city or town or state *may in the discretion of <u>the court</u>* recover additional damages … in an amount not exceeding twice the amount of the economic recovery" (emphasis added)). The Court also may reserve the issue of c. 93A multiple damages to its own judgment. <u>See, e.g.</u>, <u>Stark v. Patalano Ford Sales, Inc.</u>, 30 Mass. App. Ct. 194, 204 (1991).

In addition, as Plaintiff has stated above and argued more extensively in support of its motion on the issue, Defendants have no right to a jury trial on their c. 30B claim. Moreover, neither the statute nor relevant caselaw provides any guidance regarding the appropriate interpretation of § 17(c) and the discretionary apportionment clause of its damages provision, in particular, to guide the Court in instructing the jury in this uncharted area of the law. Therefore, even if the Court submits the issue of liability under Defendants' statutory claims to the jury, the Court should, in its discretion, reserve judgment on the issue of multiple damages under c. 93A and c. 268A, and the issue of apportionment under c. 30B.

## II.     REQUESTS FOR RULINGS

Plaintiff hereby requests that the Court grant each of Plaintiff's pending motions, for the reasons discussed above and in the memoranda of law that accompany the motions:

1.  Rule 12(b)(6) Motion to Dismiss Defendants' Counterclaim Under the Uniform Procurement Act;

2.  Motion to Strike Defendants' Jury Trial Demand as to Conflict of Interest and Procurement Act Counts; and

3.  Assented to Motion to Dismiss, or in the Alternative to Amend the Complaint to Remove, Tortious Interference Claim.

## III.     REQUESTS FOR INSTRUCTIONS, VOIR DIRE, AND JURY VERDICT FORM

Plaintiff here incorporates by reference the Request for Jury Instructions and voir dire it has previously filed in this case.  See PSG's First Proposed Jury Instructions (7/14/06); PSG's First Proposed Voir Dire Questions (7/14/06).  Pursuant to Local Rule 16.5(F), Plaintiff reserves the right to request additional instructions and voir dire questions.

Pursuant to the Court's request at the pretrial conference on July 21, 2006, PSG will file separately a proposed jury verdict form.

Respectfully submitted,

PROFESSIONAL SERVICES GROUP, INC.,
By its attorneys,

_____/s/ David M. Osborne_____
Maria R. Durant (BBO # 558906)
David M. Osborne  (BBO # 564840)
Sara E. Noonan (BBO # 645293)
DWYER & COLLORA, LLP
Federal Reserve Plaza
600 Atlantic Avenue, 12th Floor
Boston, MA  02210
(617) 371-1000

Dated:  July 24, 2006

5

**CERTIFICATE OF SERVICE**

    I, David M. Osborne, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on July 24, 2006.

                      /s/ David M. Osborne
                    David M. Osborne