UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
PROFESSIONAL SERVICES                   )
GROUP, INC.,                            )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )
                                        )
TOWN OF ROCKLAND, ROCKLAND              )
SEWER COMMISSION, GREGORY               )
THOMSON and MICHAEL SAUSÉ,              )
                                        )
                .                       )
_____)
                                        )
TOWN OF ROCKLAND, ROCKLAND              )
SEWER COMMISSION,                       )
                                        )
        Plaintiffs-in-Counterclaim      )   Civil No. 04-11131-PBS
        and Crossclaim                  )
                                        )
v.                                      )
                                        )
PROFESSIONAL SERVICES                   )
GROUP, INC.,                            )
                                        )
        Defendant-in-Counterclaim,      )
                                        )
and                                     )
                                        )
MICHAEL SAUSÉ,                          )
                                        )
        Crossclaim Defendant            )
_____)


**TOWN OF ROCKLAND'S AND ROCKLAND SEWER COMMISSION'S
SUPPLEMENTAL MEMORANDUM OF LAW REGARDING "APPORTIONMENT" OF
DAMAGES UNDER THE UNIFORM PROCUREMENT ACT**

As referenced at the final pretrial conference in this matter on July 21, the Town of Rockland and the Rockland Sewer Commission (together "the Town") hereby submit this memorandum of law regarding the appropriate interpretation of the "apportioned" clause in the Uniform Procurement Act, G.L. 30B § 17(c).

PSG has argued that the provision is a blame-assigning mechanism whereby damages and costs can somehow be "apportioned" to individuals or entities from whom the Town is not seeking recovery, thereby reducing the Town's recovery. The Town, however, believes that the provision means that, *after* a harmed "governmental body" (in this case, the Town) is awarded damages and costs, the Court may, as an equitable matter, apportion the damages awarded amongst the defendants from whom the governmental body sought recovery. In this case, since the Town is seeking recovery only against PSG, the Town takes the position that the apportionment sentence has no application.

At the conference, the Court suggested PSG's interpretation had some merit, and specifically cited the law of comparative negligence as analogous to the view of the statute urged by PSG. The Court appeared to base its view on the issue on its belief that the law of comparative negligence allowed juries to assign percentages of fault to persons or entities against whom the injured party was <u>not</u> seeking recovery. As shown below, this understanding of Massachusetts law was incorrect.

PSG's argument relies on the last line of the following provision:

A person who causes or conspires with another to cause a contract to be solicited or awarded in violation of a provision of this chapter shall forfeit and pay to the appropriate governmental body a sum of not more than two thousand dollars for each violation. In addition, the person shall pay double the amount of damages sustained by the governmental body by reason of the violation, together with the costs of any action. If more than one person participates in the violation, the damages and costs may be apportioned among them.

G.L. 30B,§ 17(c).[1]

PSG's position is meritless because, as demonstrated below, it is contradicted by analogous statutes and caselaw, including the comparative negligence statute. It is also inconsistent with both the purposes of the statute and standard principles of statutory construction. Finally, application of PSG's interpretation of the statute in this instance would violate the Supremacy Clause of the U.S. Constitution.

I.     **The Massachusetts Comparative Negligence Statute Does Not Permit Liability to Be Apportioned To Parties From Whom Recovery Is Not Being Sought**

At the pretrial hearing on July 21, 2006, the Court analogized the "apportioned" language in the Uniform Procurement Act to the idea of comparative negligence. On that basis, the Court suggested that it might be inclined to allow the jury in this case to assign percentages of fault to Gregory Thomson and Michael Sausé, in addition to PSG, even though the Town is not seeking recovery from Thomson or Sausé. The Court's analogy appears to be based upon a mistaken impression of the Massachusetts law of comparative negligence.

The law in Massachusetts is that comparative negligence is only assigned to a person or persons "*against whom recovery is sought*." G.L. 231 § 85 (emphasis added) The Supreme Judicial Court's interpretation of that statute is that "the plain language of § 85" "requires comparison only with that of active participants at trial, i.e., 'persons against whom recovery *is* sought' or 'defendants.'" <u>Shantigar Foundation v. Bear Mtn. Builders</u>, 441 Mass. 131, 137, 138, 804 N.E.2d 324 (Mass. 2004) ("The statute does not direct the jury to apportion negligence among all tortfeasors who may have caused the injury, only those against whom recovery 'is' sought.") For that reason, a jury assigning comparative negligence is <u>not</u> permitted to apportion

---

[1] Counsel for the Town has looked through the entire legislative history for G.L. 30B. There is no relevant legislative history.

negligence to persons from whom the plaintiff is no longer seeking a recovery because they have already settled or whom were never sued to begin with. Shantigar Foundation, 441 Mass. at 144, 804 N.E.2d. at 334 (affirming trial court's decision not to allow jury to apportion damages to tortfeasor who had previously settled because "the statute applies only to named parties who participate in the trial."); Correia v. Firestone Tire & Rubber Co., 388 Mass. 342, 350-352, 446 N.E.2d 1033 (holding that negligent employer who was immune from suit by virtue of having paid workers' compensation benefits may not be included in the jury's negligence calculus); Allen v. Chance Mfg. Co., 873 F.2d 465, 467 (1st Cir.1989) (holding that under § 85, "the fault of non-parties ... is not to be taken into account").

In this case, the only party against whom the Town seeks recovery is PSG. The Town has never asserted any claims against Gregory Thomson. The Town initially had cross-claims against Michael Sausé, but he has declared bankruptcy and therefore the Town could not recover from him personally. See 11 U.S.C. § 727(b). If the Uniform Procurement Act is interpreted in the same manner as the Comparative Negligence Statute, neither the jury nor the Court is permitted to assign any fault or responsibility to Thomson or Sausé, because the Town is not seeking recovery from either of them.

There is nothing improper about the Town's decision to pursue its claim solely against one party. In the Massachusetts system of joint and several liability, a plaintiff injured by more than one tortfeasor may sue any or all of them for its full damages. See Kabatchnick v. Hanover-Elm Bldg. Corp., 331 Mass. 366, 368, 119 N.E.2d 169 (1954); Mitchell v. Hastings & Koch Enters., Inc., 38 Mass.App.Ct. 271, 280, 647 N.E.2d 78 (1995). It is then the responsibility of tortfeasors who pay more than their pro rata share of damages to seek partial reimbursement, or contribution, from other joint tortfeasors, see G.L. c. 231B, § 1. To the extent the statutory

scheme set up by the Uniform Procurement Act mirrors that of the Comparative Negligence Statute, the responsibility to recover from Mr. Thomson or Mr. Sausé would fall squarely on PSG's shoulders. If PSG wants to pursue Mr. Thomson or Mr. Sause on an indemnification theory, that, too, is open to PSG.

## II.    The Town's Interpretation Of "Apportioned", As Described Below, Is The Only Interpretation Consistent With The Purpose of The Statute

The purpose of competitive bidding statutes is, in addition to ensuring that the bidding authority awards public contracts to the lowest responsible bidder, "to establish an open and honest procedure for competition for public contracts." Modern Constr. Co., Inc. v. City of Lowell, 391 Mass. 829, 840 (1984).  G.L. c. 30B, as well as other bidding statutes, is intended "'to prevent favoritism, to secure honest methods of letting contracts in the public interest, to obtain the most favorable price, and to treat all persons equally.'" Mangano v. Wilmington, 51 Mass.App.Ct. 857, 859 (2001) (quoting Phipps Prods. Corp. v. Massachusetts Bay Transp. Authy., 387 Mass. 687, 691-692 (1982)).   A failure to comply with the statutory bidding requirements will generally render a contract entered into without such compliance void. Phipps Prods. Corp., 387 Mass. at  691, 443 N.E.2d 115.

Inherent in open and honest competition is the idea that specifications may not be designed to favor certain potential bidders.  It is clear that "ingeniously contrived specifications operating to the benefit of a particular bidder or subsupplier ... could hardly be permitted to thwart the legislative objective" of the public bidding process.   See Pacella v. Metropolitan District Commission, 339 Mass. 338, 346 (1959); see also Bowman v. Drewry, 1996 WL 1748441 at *8 (Mass.Super. Jan. 11, 1996) ("a criterion that would effectively exclude all but one potential offeror would be contrary to the policy articulated in § 14 [of G.L. ch. 30B].").

The remedial statute at issue is as follows:

> [1]A person who causes or conspires with another to cause a contract to be solicited or awarded in violation of a provision of this chapter shall forfeit and pay to the appropriate governmental body a sum of not more than two thousand dollars for each violation. [2]In addition, the person shall pay double the amount of damages sustained by the governmental body by reason of the violation, together with the costs of any action. [3]If more than one person participates in the violation, the damages and costs may be apportioned among them.

G.L. 30B § 17(c).

Under the Town's interpretation of the statute, *"[a] person* who causes or conspires with another to cause a contract to be solicited or awarded in violation of a provision of [Chapter 30B]" is obligated "to forfeit and pay to the appropriate governmental body a sum of not more than two thousand dollars for each violation." G.L. 30B § 17(c) (emphasis added). Under the Town's interpretation, the "person" – meaning the very same person found "to have caused or conspired with another to cause a contract to be solicited or awarded" in violation of the statute – "in addition" … "shall pay double the amount of damages sustained by the governmental body by reason of the violation, together with the costs of any action." G.L. 30B § 17(c). Then, "[i]f more than one person participates in the violation, \ the damages and costs may be apportioned among them. G.L. 30B § 17(c). The "damages" and "costs" referred to as being those that may be apportioned are those "damages" and "costs" referenced in the second sentence of the statute; those "damages and costs" subject to potential apportionment are thus not just any "damages" and "costs", but those "damages" for which a person has already been found obligated to pay, doubled, as provided in the second sentence, and those "costs" for which a person has already been found obligated to pay, in the second sentence. The "them" among whom the "damages" may be apportioned are those who are referred to in the first and second sentences. The "them" doesn't refer to some abstract group of entities and people who may or may not be defendants – it refers to any persons  "who cause[d] or conspire[d] with another to cause a contract to be

solicited or awarded in violation of a provision of this chapter" and who are required to "forfeit and pay to the appropriate governmental body a sum of not more than two thousand dollars for each violation" and who are found obligated to "pay double the amount of damages sustained by the governmental body by reason of the violation, together with the costs of any action." Id.

Under PSG's interpretation, "damages" and "costs" could be apportioned to persons or entities who are not defendants in the Section 17(c) claim, or even in the case, thus allowing a governmental body's recovery to be reduced by an abstract apportionment assigned to someone who may not be in the case to defend himself. Such a construction is totally at odds with the remedial purposes of the statute. There is nothing in the third sentence of the statute that takes away from the governmental body the right to recover "double the amount of damages….together with the costs of any action." Yet, that is exactly what PSG's interpretation would do, because it would give PSG (or others) the ability to "apportion" to absent individuals and other non-defendants "damages" and "costs" that the Town was entitled to recover – even though the Town was not seeking such recovery from those entities and individuals and thus no judgment could be entered against those individuals or entities.

The Town's interpretation of the statute is a strong deterrent to prevent favoritism and to prevent municipalities from being hurt by a bidder or governmental official who acts improperly to subvert the procurement process. A potential bidder that convinces a governmental official to rig a bid would face the strong possibility of being forced to pay twice the damages and costs incurred by the Town, a steep penalty. Furthermore, in most cases the Town would be able to recover twice its damages and costs, as the statute specifies. By contrast, PSG's interpretation is far less likely to achieve the objectives of the statute. If a governmental body's recovery were reduced by some amount "apportioned" to individuals or entities from whom recovery is not

even being sought, then the whole purpose of the remedy would be undermined. It would transform what is supposed to be a remedial statute – that is, a statute designed to provide a governmental body such as a town with a monetary remedy – into a statute that predominantly assigns blame and incidentally may provide some compensation. There is little incentive for a governmental body to take advantage of a remedial provision so interpreted, on behalf of its citizens, if the governmental body risks prevailing at trial, only to have the court or a jury transfer "damages" and "costs" of the lawsuit to a person or entity against whom no recovery was sought. Similarly, the deterrent impact of the statute would be considerably diminished if a potentially corrupt bidder knows that even if a governmental body prevails, the bidder may be able to shift the "damages" and "costs" to absent individuals or entities from whom the governmental body has not sought recovery.

### III.    The Town's Interpretation Of "Apportioned" Is Supported By Generally Recognized Principles of Statutory Interpretation

Section 17(c) of the Uniform Procurement Act is a remedial provision intended to allow a governmental body to obtain relief for damages sustained as a result of contracts awarded improperly. A basic principle of statutory interpretation is that remedial statutes "are to be liberally construed to effectuate their goals." Town of Franklin v. Wyllie, 443 Mass. 187, 196, 819 N.E.2d 943, 950 (Mass. 2005). "The rule for the construction of remedial statutes is that cases within the reason, though not within the letter, of a statute shall be embraced by its provisions" Batchelder v. Allied Stores Corp. 393 Mass. 819, 822, 473 N.E.2d 1128, 1130 (Mass. 1985) (quoting 3 C. Sands, Sutherland Statutory Construction § 54.04, at 570 (4th ed. 1974)). Reading the "apportioned" language in the manner suggested by PSG violates this basic statutory principle. To the extent there is any ambiguity in the language, the statute should be

construed broadly to effectuate the purposes of the statute.  As explained in Part II, <u>supra</u>, the Town's interpretation is far more likely to effectuate the purpose of the statute.

Another principle of statutory interpretation is that any statute must be construed, where possible, as consistent with the purposes and provisions of the statutory scheme.  <u>See, e.g.</u> <u>Bombardieri v. Registrar of Motor Vehicles</u>, 426 Mass. 371, 378, 688 N.E.2d 954 (1998) ("A statute should not be construed in such a way as to make it a nullity when a sensible construction is readily available."); <u>Nercessian v. Board of Appeals on M.V. Liab. Policies & Bonds</u>, 46 Mass.App.Ct. 766, 770-771, 709 N.E.2d 1134 (1999) (statutory interpretation must be done "in harmony with common sense and sound reason.").  As stated by the Supreme Judicial Court:

> The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all the words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.

<u>Hanlon v. Rollins</u>  286 Mass. 444, 447, 190 N.E. 606  (1934).  The interpretation suggested by PSG would be entirely inconsistent with the portion of the same provision providing that the violator "*shall* pay double the amount of damages sustained by the governmental body by reason of the violation, together with the costs of any action" (emphasis added).  Use of the word "shall" indicates that the doubling provision is intended to be mandatory, yet under PSG's interpretation of the statute, the jury or Court could make a determination to diminish that award based upon the apparent culpability of a party who had never even been sued.

Yet another standard principle of statutory construction is that the "[l]egislature is presumed 'to know the preexisting law and the decisions of [the Supreme Judicial Court].'" <u>Boehm v. Premier Ins. Co.</u>, 446 Mass. 689, 691, 846 N.E.2d 1145, 1147 (Mass. 2006) (quoting

<u>Selectmen of Topsfield v. State Racing Comm'n</u>, 324 Mass. 309, 313, 86 N.E.2d 65 (1949)).  As explained in Part IV, <u>infra</u>, there are no examples of other statutes or cases that use "apportioned" in the manner urged by PSG, and it would therefore be inconsistent for the legislature to expect the word to be interpreted in that way.

**IV.    PSG's Interpretation of "Apportioned" And "Damages" Conflicts With Other Massachusetts Laws And Cases, As Well As Commonly Understood Legal Terms**

The closest analogous statute to G.L. ch. 30B, § 17(c)  is G.L. ch. 149, § 44, which deals with the public procurement process for construction contracts.    A similar "apportioned" provision appears in that statute.  The statute reads as follows:

> Each and every person who shall cause or conspire to cause any contract or preliminary plans and specifications to be split or divided for the purpose of evading the provisions of this section shall forfeit and pay to the commonwealth, a political subdivision thereof or other awarding authority subject to this section, the sum of not more than five thousand dollars and, in addition, such person or persons shall pay, apportioned among them, double the amount of damages which the commonwealth or political subdivision thereof or other awarding authority may have sustained by reason of the doing of such act, together with the costs of the action.

G.L. 149, § 44J.  As a public bidding statute, the purpose of G.L. 149, § 44J is also "to prevent favoritism, to secure honest methods of letting contracts in the public interest, to obtain the most favorable price, and to treat all persons equally."  <u>See</u> <u>Mangano v. Wilmington</u>, 51 Mass.App.Ct. 857, 859 (2001) (attributing that purpose to all public bidding statutes).  G.L. 149 § 44J sets up the exact same statutory scheme as G.L. § 30B, but because of the sentence structure, it is even clearer that the legislature did <u>not</u> intend for damages to be diminished due to the culpability of absent parties.  The statute specifically states that "such person or persons ***shall pay, <u>apportioned</u>*** ***<u>among them</u>***, double the amount of damages." G.L. 149, § 44J (emphasis added). Had the legislature intended that damages could be diminished to reflect the culpability of parties from

whom damages are not sought, it would not have used the mandatory words "shall pay." Given the similarity of the statutes in structure and in purpose, there is no reason to think the legislature intended to create a different scheme in G.L. 30B, § 17(c) than it had already created in G.L. 149, § 44J. They are both public bidding statutes; they both serve a remedial purpose. The slight variation in the recovery provision of the Uniform Procurement Act cannot possibly justify the major deviation in result that PSG urges.

The Town of Rockland is not seeking recovery under the Uniform Procurement Act from any party other than PSG. The Court therefore cannot require any party other than PSG to pay damages. "Damages" is a specific term used to refer to "money compensation *sought or awarded* as a *remedy* for a breach of contract or for tortious acts." Black's Law Dictionary (6th ed. 1990). (emphasis added). It is not synonymous with "injury"; rather, the term "damages" is only used within the context of litigation.

PSG's interpretation of the statute conflicts with this basic understanding of damages. There will only be "damages" capable of being apportioned in the event such damages have been awarded. At that point, there will only be one party from which such damages can be apportioned – PSG. Under PSG's interpretation, damages would not be "apportioned" amongst violators against whom a judgment was being entered; rather, damages to be entered in the form of a judgment against PSG would be diminished to reflect the culpability of supposed violators from whom the Town of Rockland has not sought recovery. This is an unsupportable reading of the statute.

All of the other statutes and cases in Massachusetts dealing with the apportionment of damages use the term to refer only to damages being divided after being awarded, rather than to a nebulous concept of injury in which damages are diminished based upon culpability or for any

other reason involving non-parties.    The other Massachusetts statutes and cases involve

apportioning damages amongst recipients rather than amongst payers.  For example, G.L. ch. 229

§ 6E, a wrongful death statute, states that:

> The amount of damages which may be awarded for injury and death in an
> action brought under section six C shall be apportioned by the jury
> between the legal representatives of the employee and the persons who
> would have been entitled under section two B to bring an action for his
> death.

Similarly, the Massachusetts Eminent Domain statute mentions apportionment of damages in

several different provisions.  That statute provides that, if multiple persons have an interest in a

parcel of land that is subject to a taking, the damages should be "apportioned."  See G.L. 79 §

7D.   However, if the property of a "tenant for life or for years" and a remainderman or

reversioner is subject to a taking, there shall be no "apportionment" of damages, and instead a

trustee should be appointed to pay out in the interests that had been agreed upon.  See G.L. 79 §

24.  If multiple persons have different interests in the parcel of land that is taken by eminent

domain, "such damages shall then be apportioned among the several parties who are found to be

entitled thereto, in proportion to their several interests and to the damages sustained by them."

G.L ch. 79 § 29.

    The use of "apportioned" and "damages" in these other statutes makes clear that the

damages being referred to are those that have been awarded, and that such damages are then

divided up.  It would be impossible to read those statutes in the manner that PSG reads G.L. ch.

30B, in which the amount of total damages awarded – and thus recoverable – changes based on

how they are apportioned.  The SJC has addressed a similar argument involving the ***increase*** in

damages under the wrongful death statute, G.L. ch. 229 § 6E.  See Neiss v. Burwen, 287 Mass.

82, 95, 191 N.E. 654, (Mass. 1934).  In Neiss, the trial court had interpreted "apportionment of

damages" to mean that the jury could assess punitive damages under two different theories of recovery for two different plaintiffs, thereby essentially doubling the rightful award.  The SJC reversed the trial court, holding that "apportion" merely meant that the total damages would be divided amongst the estate's administrator and the next of kin, and that under the statute "[t]here is no indication that a double penalty is to be imposed."  Id.  The concept that the total damages awarded would change based upon statutory language about apportionment was viewed as an "absurd result and would be altogether out of harmony with the general principles of damages … ."  Id. at 96.

The apportionment provisions of the eminent domain statute similarly apply after damages have been awarded.  The purpose of the "apportion" language in the statute is to avoid the "difficulties . . . arising from the necessity of settling the damages of each claimant separately."  Patterson v. City of Boston (1839) 40 Mass. 425, 23 Pick. 425.  The statute requires that "damages for the whole are to be assessed" and thereafter "damages shall be equitably apportioned" between owners with different interests in the same property.  Id. (interpreting similar predecessor statute to G.L ch. 79); see also Barnes v. City of Springfield, 168 N.E. 78, 87, 268 Mass. 497, 514 (1929)  (in apportioning damages amongst tenants in common under similar predecessor statute to G.L ch. 79, jury must first find total damages and then apportion damages among "the several parties entitled thereto.").

Even if PSG's interpretation that damages can be apportioned amongst non-parties had some merit, PSG's position that "apportioned" automatically means "apportioned based on fault" has no merit.  Culpability is not the only means by which damages are apportioned.  Mitchell v. Hastings & Koch Enters., Inc., 38 Mass.App.Ct. 271, 280, 647 N.E.2d 78 (1995) (noting that comparative negligence is irrelevant to the apportionment of damages among joint tortfeasors);

Neiss v. Burwen, 287 Mass. 82, 95, 191 N.E. 654 (1934) (apportioning payment of damages based upon theory of recovery); Barnes v. City of Springfield, 168 N.E. 78, 87, 268 Mass. 497, 514 (1929) (apportioning damages based upon interests in property).

In instances in which the legislature intends to diminish damages based upon culpability, it has used the term "assess" rather than "apportion." See G.L. ch. 229 § 6E (damages "shall be assessed with reference to the degree of culpability"); Boott Mills v. Boston & M. R. R. (1914) 106 N.E. 680, 218 Mass. 582 ("The conclusion that the death statutes were punitive and not compensatory in nature was founded in large part upon the words now employed in all such statutes, that the amount of damages which might be recovered were 'to be assessed with reference to the degree of culpability of the' person liable."); cf. First Nat'l Bank v. Judge Baker Guidance Ctr., 13 Mass.App.Ct. 144, 153, 431 N.E.2d 243 (1982) (concluding from reading Massachusetts statute and statutes of other jurisdictions that had Legislature intended to provide for equitable apportionment of estate tax burdens among beneficiaries of a will, "it knew how to do so").

As a matter, in a case involving violation of bidding laws, factors other than fault should be considered in the apportionment of damages among defendants. Logical factors to consider include ability of a defendant to pay, sophistication of the violator, and unjust enrichment, if any, enjoyed by the defendant.

In this case, the purposes of the statute would be undermined by allocating damages to either Michael Sausé or Gregory Thomson. The Town, which is the "governmental body" under the statute, would not receive "double the amount of damages it sustained," as it is entitled to under the statute if damages were apportioned to persons against whom the Town has not sought

recovery. The Court should therefore only apportion damages amongst parties from whom a governmental body is seeking recovery, and in this case, that is PSG.

### V. Apportionment of Damages To Michael Sausé Would Be In Violation Of The Supremacy Clause of the United States Constitution Because of his Bankruptcy

Finally, even if PSG's interpretation of Massachusetts law were correct, G.L. ch. 30B is preempted to the extent that damages would be apportioned against Michael Sausé. All of the conduct at issue in this case took place well before Michael Sausé declared and was discharged from bankruptcy. The bankruptcy code therefore specifically prohibits the attribution or apportionment of damages to him. See 11 U.S.C. § 524(a)(1) (voiding any judgment obtained *at any time* based on liability for a prepetition discharged debt); 11 U.S.C. § 524(a)(2) (stating that a discharge of bankruptcy "operates as an injunction against the … continuation of an action … to collect, recover or ***offset*** any such debt as a personal liability of the debtor").

Where state law is in direct conflict with the provisions of the Bankruptcy Code, the Supremacy Clause of Constitution dictates that state law be preempted. See U.S. Const. art. VI, cl. 2; Summit Inv. and Dev. Corp. v. Leroux, 69 F.3d 608, 610 (1st Cir.1995). It would therefore violation of the Supremacy Clause to apportion damages to Mr. Sausé, even if that were what the Massachusetts legislature intended.

### VI. Conclusion

For the reasons stated above, there is no legal basis for the Court, or the jury, to "apportion" damages in this case under the Uniform Procurement Act to any person or entity other than PSG.

                                        TOWN OF ROCKLAND  AND ROCKLAND
                                        SEWER COMMISSION

By their  attorneys,

/s/ Joanne D'Alcomo

_____

Joanne D'Alcomo
BBO #544177
Howard P. Blatchford, Jr.
BBO #045580
Seth Nesin
BBO #650739
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500

DATED:  July 27, 2006