UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
_____
                                      )
PROFESSIONAL SERVICES                 )
GROUP, INC.,                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )
                                      )
TOWN OF ROCKLAND, ROCKLAND            )
SEWER COMMISSION, GREGORY             )
THOMSON and MICHAEL SAUSÉ,            )
                                      )
_____ )
                                      )
TOWN OF ROCKLAND, ROCKLAND            )
SEWER COMMISSION,                     )
                                      )
            Plaintiffs-in-Counterclaim )      Civil No. 04-11131-PBS
            and Crossclaim            )
                                      )
      v.                              )
                                      )
PROFESSIONAL SERVICES                 )
GROUP, INC.,                          )
                                      )
            Defendant-in-Counterclaim, )
                                      )
and                                   )
                                      )
MICHAEL SAUSÉ,                        )
                                      )
            Crossclaim Defendant      )
_____ )
```

### PLAINTIFF'S MOTION FOR ORDER TO EXCLUDE EVIDENCE OR ARGUMENT THAT PSG ISSUED CHECKS TO ROCKLAND IN A NEGLIGENT MANNER

In April 2005, Rockland obtained a $220,000 judgment against Wainwright Bank from the Suffolk County Superior Court. Rockland's lawsuit against Wainwright was based, in part, on allegations that Wainwright wrongfully permitted Sewer Superintendent Gregory Thomson to

1

deposit checks that were made payable only to the Town, thereby permitting him to embezzle thousands of dollars from Rockland. Rockland now appears poised to argue to the jury, directly contrary to the position it took in the Superior Court, that in fact *PSG* was negligent for issuing checks that actually *did* list Thomson as a payee, thereby granting him the authority to deposit the checks into the Wainwright Bank account. For the following reasons, PSG respectfully requests that Rockland be precluded from introducing evidence or taking a position in this case that is contrary to the one that it so successfully pressed against Wainwright Bank a mere sixteen months ago.

## FACTS

Rockland has alleged that PSG negligently permitted Thomson and former PSG employee Michael Sause to embezzle hundreds of thousands of dollars in rebate checks that were issued by PSG to Rockland. As a part of its defense to this claim, PSG intends to call Cindy Solomon, the contract accountant in charge of the Rockland sewer contract, to testify about the procedure by which the checks representing the rebate amounts were issued to Rockland. Based on Rockland's opening statement, PSG anticipates that Rockland will question Ms. Solomon about the payees listed on those checks in an attempt to prove that the PSG negligently caused the checks to list Thomson as a payee, thereby authorizing him to deposit the checks personally and thus enabling him to embezzle an alleged $165,656.55 from Rockland.

This position is directly contrary to the position taken by Rockland in an Amended Complaint filed against Wainwright Bank in the Suffolk County Superior Court on January 6, 2005 – six months after Rockland filed its counterclaims against PSG. See Tab A (Docket Sheet and Amended Complaint for Town of Rockland v. Wainwright Bank & Trust Co., Case No. 2004-5243-H (Suffolk County Superior Court)). In the Amended Complaint, Rockland

specifically alleged that Wainwright Bank was negligent in permitting Thomson (and Sause) to deposit the checks issued by PSG to Rockland because Wainwright "knew or should have known that Sause and Thomson were *not* authorized to indorse [sic], to attempt to negotiate, or deposit any check *on which the Town was the named payee* . . ." See Tab A (Amended Complaint), pp. 9, ¶ 50 (emphasis added); see also id., pp. 3, ¶ 7(h) (alleging that Wainwright "recklessly and negligently disregarded the fact that funds from checks *made out to the Town* were being used by Sause and Thomson"), pp. 6, ¶ 25 (alleging Rockland learned in 2004 "of each of the checks *payable to the Town* that had been deposited in" the Wainwright account), pp. 8, ¶ 44 (alleging that Wainwright "converted the Town's property when it accepted checks *made out to the Town* for deposit"), pp. 10, ¶ 51(g) (Wainwright was negligent in "disregarding that funds from checks *made out to the Town of Rockland* were being used by Sause and Thomson") (emphases added).

Rockland clearly benefited from taking this position. In April 2005, Wainwright Bank agreed to pay Rockland $220,000, representing the face value of the checks that Thomson and Sause deposited into the Wainwright account plus an additional amount in excess of $50,000. On April 14, 2005, by agreement of the parties, Rockland obtained a judgment in the case from the Superior Court. See Tab A (Docket Sheet).

## ARGUMENT

The doctrine of judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 211-12 (1st Cir. 1987). "[T]he function of judicial estoppel is to protect the integrity of the courts. An effective legal system depends upon norms of candor and responsibility. . . . If parties feel free to select contradictory positions before different tribunals to suit their ends, the integrity and efficacy of the courts will suffer." Id. at

214 (citations omitted).  Consistent with this principle, the doctrine is properly applied "when a litigant is playing fast and loose with the courts, and when intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." Id. at 212 (citations and internal punctuation omitted).  This is typically shown where (1) the positions at issue are mutually exclusive; and (2) the party succeeded in persuading a court to accept its prior position.  Alternative System Concepts v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004).  In addition, courts may properly look to whether the party asserting the inconsistent position would derive an unfair advantage absent estoppel.  See id.  However, "[t]hese factors do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel.  Additional considerations may inform the doctrine's application in specific factual contexts."  New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001).

     Here, Rockland's contradictory allegations regarding the checks presented to Wainwright Bank present a "classic" case of judicial estoppel.  See Patriot Cinemas, 834 F.2d at 214 (describing "the 'classic' case of judicial estoppel" as one where "a litigant asserts inconsistent statements of fact or adopts inconsistent positions on combined questions of fact and law").  Rockland's position regarding Thomson's authority to deposit the checks in the lawsuit against Wainwright and the position it intends to argue in this case are clearly mutually exclusive.  A year and a half ago, Rockland alleged that *Wainwright* was negligent in permitting Thomson to deposit checks that were *not* made payable to him.  See Tab A, pp. 9-10, ¶¶49-50, 51(g).  Rockland now wishes to argue the exact opposite position to this jury – that the checks *were* made payable to Thomson, and that *PSG* was negligent in doing so.  Either the checks were made payable to Thomson or they were not.  Rockland should be precluded from contradicting its prior position that they were not.

Admittedly, Rockland did not have to prove its allegations at trial in order to prevail. To the contrary, Wainwright appears to have capitulated to Rockland's demands a mere three months after Rockland filed its Amended Complaint, agreeing to pay not only the $165,656.66 that Rockland alleges was deposited into the Wainwright account, but an additional $54,343.45 on top of that. As such, the settlement was at least as clear a success for Rockland as a victory at trial would have been. "Frequently, . . . a settlement represents capitulation. Persons who triumph by inducing their opponents to surrender have 'prevailed' as surely as persons who induce the judge to grant the summary judgment." Kale v. Obuchowski, 985 F.2d 360, 361-62 (7th Cir. 1993); accord Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 604-05 (9th Cir. 1996) (holding that a favorable settlement constitutes the "success" required to invoke judicial estoppel because "[i]n our view, the fact that the plaintiff prevailed by obtaining a favorable settlement rather than a judgment should have no more relevance than in the context of civil rights attorney's fees awards, i.e., none whatever"); but see In re Bankvest Capital Corp., 375 F.3d 51, 60 (1st Cir. 2004) (judicial estoppel not shown where bankruptcy court approved settlement without accepting factual or legal assertions of the complaint). Given that Rockland won such a complete victory after such a short amount of time, it should be precluded from now abandoning the factual underpinnings of that lawsuit in order to attempt to gain an advantage with this jury.

This is not a case where new evidence may have caused Rockland to rethink its prior factual assertions. By its own admission, Rockland was familiar with each of the checks before it filed the Amended Complaint. See Tab A, pp. 6, ¶ 25. Indeed, Rockland had a particular need to be accurate in its allegations against Wainwright. It had already filed its counterclaims against PSG and, presumably, it was aware that the factual allegations contained in its complaint against

5

Wainwright would constitute judicial admissions against Rockland in this litigation. See Fed. R. Evid. 801(d)(2)(B) ("a statement of which the party has manifested an adoption or belief in its truth" is not hearsay); M.G.L. ch. 231 § 87 ("In any civil action, pleadings shall not be evidence on the trial, but the allegations contained therein shall bind the party making them."). Moreover, Rockland had an obligation to ensure that the factual assertions it made to the Superior Court were made pursuant to a good faith belief in their accuracy. See Mass. R. Civ. P. 11(a) ("[t]he signature of an attorney to a pleading constitutes a certificate that . . . there is good ground to support it"). Surely, the interest in judicial integrity is not furthered by permitting Rockland to shape its factual assertions depending upon who it is suing and, hence, where its monetary interests lie.

Nor is this a situation where a party has alleged inconsistent legal theories at the outset of litigation.[1] Rockland alleged at the Superior Court that the checks were not made payable to Thomson as a matter of fact; it intends to argue in this case that the checks were made payable to Thomson as a matter of fact. This case thus fits squarely within the First Circuit's "prototypical case" for judicial estoppel – "when a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage." Synopsys, 374 F.3d at 33. Permitting Rockland to argue that Thomson was in fact a payee creates the appearance either that the Superior Court was misled when it entered a judgment against Wainwright, or that the jury is being misled in this case. It is precisely this "specter of inconsistent determinations," and the concomitant threat to principles of judicial integrity, that

---

[1] It should be noted that at least one of the claims alleged by Rockland against Wainwright is in direct contravention to the claims and defenses raised by Rockland six months earlier in this Court. Cf. Tab A, pp. 12, ¶ 64 (alleging claim against Wainwright for "tortious interference with contractual and advantageous business relations" between Rockland and PSG) with Counterclaim, pp. 11-12 (alleging contract was obtained in violation of Chapter 30B) and id. pp. 14, ¶ 53 (alleging claim against PSG for fraud in establishing "unauthorized bank accounts and deposit[ing] public funds therein").

6

ought to guide this Court in the exercise of its discretion. See id.. For all of the foregoing reasons, this Court should preclude evidence or argument that PSG negligently issued checks that listed Thomson as a payee.

                                    Respectfully submitted,
                                    **PROFESSIONAL SERVICES GROUP, INC.**,
                                    By its attorneys,

                                      /s/ David M. Osborne
                                    Maria R. Durant (BBO # 558906)
                                    David M. Osborne  (BBO # 564840)
                                    Sara E. Noonan (BBO # 645293)
                                    DWYER & COLLORA, LLP
                                    Federal Reserve Plaza
                                    600 Atlantic Avenue, 12th Floor
                                    Boston, MA  02210
                                    (617) 371-1000

Dated:  August 3, 2006

**CERTIFICATE OF SERVICE**

     I, David M. Osborne, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on August 3, 2006.

                                      /s/ David M. Osborne
                                    David M. Osborne