# Commonwealth of Massachusetts
# SUFFOLK SUPERIOR COURT
# Case Summary
# Civil Docket

## Rockland v Wainwright Bank & Trust Co

Details for Docket: SUCV2004-05243

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | SUCV2004-05243 | **Caption:** | Rockland v Wainwright Bank & Trust Co |
| **Filing Date:** | 12/02/2004 | **Case Status:** | Disposed: by Settlement |
| **Status Date:** | 04/14/2005 | **Session:** | Civil H, 3 Pemberton Sq, Boston |
| **Lead Case:** | NA | **Case Type:** | Complex |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | F | **Discovery:** | 09/28/2005 |
| **Service Date:** | 03/02/2005 | **Disposition:** | 01/26/2006 |
| **Rule 15:** | 05/01/2005 | **Rule 12/19/20:** | 05/01/2005 |
| **Final PTC:** | 11/27/2005 | **Rule 56:** | 10/28/2005 |
| **Answer Date:** | 05/01/2005 | **Jury Trial:** | YES |

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | SUCV2004-05243 | **Caption:** | Rockland v Wainwright Bank & Trust Co |
| **Filing Date:** | 12/02/2004 | **Case Status:** | Disposed: by Settlement |
| **Status Date:** | 04/14/2005 | **Session:** | Civil H, 3 Pemberton Sq, Boston |
| **Lead Case:** | NA | **Case Type:** | Commercial paper |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | F | **Discovery:** | 09/28/2005 |
| **Service Date:** | 03/02/2005 | **Disposition:** | 01/26/2006 |
| **Rule 15:** | 05/01/2005 | **Rule 12/19/20:** | 05/01/2005 |
| **Final PTC:** | 11/27/2005 | **Rule 56:** | 10/28/2005 |
| **Answer Date:** | 05/01/2005 | **Jury Trial:** | YES |

## Parties Involved

2 Parties Involved in Docket: SUCV2004-05243

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Wainwright Bank & Trust Co | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Plaintiff |
| **Last Name:** | Rockland | **First Name:** | Town of |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

## Attorneys Involved

3 Attorneys Involved for Docket: SUCV2004-05243

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | JAGE01 |
| **Last Name:** | D'Alcomo | **First Name:** | Joanne |
| **Address:** | 1 Financial Center | **Address:** | |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02111 | **Zip Ext:** | |
| **Telephone:** | 617-951-0500 | **Tel Ext:** | |
| **Fascimile:** | 617-951-2414 | **Representing:** | Rockland, Town of (Plaintiff) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | JAGE01 |
| **Last Name:** | Blatchford Jr | **First Name:** | Howard P |
| **Address:** | 1 Financial Center | **Address:** | 15th floor |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02111 | **Zip Ext:** | 2621 |
| **Telephone:** | 617-951-0500 | **Tel Ext:** | |
| **Fascimile:** | 617-951-2414 | **Representing:** | Rockland, Town of (Plaintiff) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | GOOD01 |

| | | | |
|---|---|---|---|
| **Last Name:** | Kennedy | **First Name:** | Don M |
| **Address:** | 53 State Street | **Address:** | Exchange Place |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | 2881 |
| **Telephone:** | 617-570-1000 | **Tel Ext:** | |
| **Fascimile:** | 617-523-1231 | **Representing:** | Wainwright Bank & Trust Co, (Defendant) |

## Calendar Events

No Calendar Events found for Docket: SUCV2004-05243.

There are currently no calendar events associated with this case.

## Full Docket Entries

14 Docket Entries for Docket: SUCV2004-05243

| Entry Date: | Paper No: | Docket Entry: |
|---|---|---|
| 12/02/2004 | 1 | Complaint |
| 12/02/2004 | | Origin 1, Type A03, Track F. |
| 12/02/2004 | 2 | Civil action cover sheet filed |
| 01/06/2005 | 3 | Amended complaint of Town of Rockland & Jury Demand (all issues) |
| 01/06/2005 | 4 | Motion of Plaintiff for Appointment of Jodrey & Associates, Inc - |
| 01/06/2005 | 4 | Filed and ALLOWED (Brassard,J) (Dated 1/6/05) |
| 01/31/2005 | 5 | SERVICE RETURNED: Wainwright Bank & Trust Co(Defendant) (accepted |
| 01/31/2005 | 5 | by attorney on 1/25/05) |
| 04/01/2005 | | Case status changed to 'Needs review for answers' at service deadline |
| 04/01/2005 | | review |
| 04/14/2005 | 6 | Stipulation of Dismissal (filed 4/7/05) as to plff vs deft with |
| 04/14/2005 | 6 | prejudice and without costs JUDGMENT entered on docket pursuant to |
| 04/14/2005 | 6 | Mass R Civ P 58(a) as amended and notice sent to parties pursuant to |
| 04/14/2005 | 6 | Mass R Civ P 77(d) |

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS								SUPERIOR COURT
									CIVIL ACTION
									NO. 2004-5243-H

|  |  |
|---|---|
| TOWN OF ROCKLAND, | ) |
| Plaintiff, | ) |
| v. | ) |
| WAINWRIGHT BANK & TRUST CO., | ) |
| Defendant. | ) |

### AMENDED COMPLAINT

No responsive pleading having been filed, plaintiff hereby amends its complaint as follows:

1. Plaintiff Town of Rockland ("the Town") is a municipal corporation with a usual place of business at 246 Union Street, Rockland, Plymouth County, Massachusetts.

2. Defendant Wainwright Bank & Trust Co. ("Wainwright" or "Bank") is a financial institution with a usual place of business at 63 Franklin Street, Boston, Suffolk County, Massachusetts.

#### Count I – Mass Gen. Laws, Ch. 93A

3. On or about December 1, 1997, Wainwright opened an account in the name of the Town. The account was in the name of the Town until at least 1999. At all relevant times, the Town was a customer of the Bank.

4. The Town learned no earlier than 2003 that Wainwright allowed a Town employee, Gregory Thompson ("Thompson"), and Michael Sausé ("Sausé"), an employee of a private contractor performing work for the Town, to deposit and remove funds from the Town's account. Sausé was a manager of Professional Services Group, Inc., ("PSG"), which became part of U.S. Filter Corp., now a subsidiary of Siemens AG.

5. Thompson and Sausé were given sole checkwriting authority on the account by the Bank. None of the transactions by Thomson or Sausé was authorized and, upon information and belief, the Bank had no documents of any kind indicating or suggesting that the Town had authorized such transactions.

6. Instead of sending account statements to the Town at its municipal offices in Rockland, Massachusetts, the Bank sent periodic statements of account activity addressed to "33 Sleeper Street, Apt. 407, Boston, MA," which was clearly a residential address. At no time has the Town conducted business from 33 Sleeper Street, Apt. 407, Boston, MA. The address was that of Sausé.

7. Wainwright committed the following unfair and deceptive acts and practices, among others:

> a. The Bank breached its fiduciary duty to the Town, in whose name an account was held at the bank;
>
> b. The Bank recklessly and negligently failed to safeguard funds held in the name of its customer, the Town;
>
> c. The Bank recklessly and negligently failed to provide statements that accounted for the use of funds to the Town, its customer, and instead sent statements to a Boston residential address that was the home of a person not authorized by the Town to control or receive Town funds;
>
> d. The Bank recklessly and negligently failed to adopt and implement adequate procedures to prevent and detect patently improper and unauthorized attempts to withdraw funds;

JS PCDocs #50575\1                                     2

e.  The Bank recklessly and negligently failed to train and supervise personnel in the most basic procedures for preventing fraud on accountholders, and unauthorized and improper withdrawal of funds from accountholders' accounts;

f.  The Bank recklessly and negligently failed to adopt and implement adequate procedures and practices for the detection of even the most obvious attempts of unauthorized conversion and diversion of funds, in this case funds in the Town of Rockland's account, and unauthorized withdrawal of funds;

g.  The Bank converted funds of the Town to the use of Sausé and Thomson;

h.  The Bank recklessly or negligently disregarded the fact that funds from checks made out to the Town were being used by Sausé and Thomson;

i.  The Bank recklessly and negligently performed its implied contract with the Town, its customer, and breached the covenant of good faith and fair dealing in such contract;

j.  The Bank failed to disclose to the Town, a customer of the Bank, its inadequate, reckless, and deficient procedures and practices for processing checks, handling funds and sending statements that accounted for the use of funds in accounts;

k.  The Bank failed to disclose to the Town, a customer of the Bank, its inadequate, reckless and deficient procedures and practices for the safeguarding of the Town's interest as a customer of the Bank;

l.  The Bank misrepresented itself to the consuming public as a safe, careful, reliable financial institution when, in fact, its internal practices were so careless and deficient that obvious improprieties in the diversion of Town funds was allowed to occur repeatedly from late 1997 to 1999;

m.  The Bank recklessly and negligently failed to adopt and implement adequate practices and procedures for the handling of funds, processing of checks and sending of statements to customers accounting for the use of funds;

n.  The Bank recklessly and negligently failed to adopt and implement oversight procedures for the detection of fraud and criminal activity at the Bank.

    o. The Bank maintained such deficient practices and procedures that the Bank repeatedly allowed Sausé and/or Thompson to withdraw funds held in the name of the Town for their own use and gave them exclusive access to account statements showing account activity;

    p. The Bank had such lax oversight and detection procedures during this period that Sausé's and Thompson's maneuvers to divert public funds in an account at the Bank went wholly undetected by the Bank;

    q. The Bank aided and abetted Sausé's and Thompson's efforts to convert and divert Town funds, and furthered a conspiracy by them to convert and divert Town funds.

8. By letter dated December 1, 2004, the Town made demands on the Bank, detailing the Bank's unfair and deceptive conduct. Although the Bank responded, it did not respond with a reasonable offer within thirty days.

9. As a result of Wainwright's unfair and deceptive practices, the Town suffered and continues to suffer harm and damages.

### Count II – Conspiracy

10. The Town incorporates the allegations contained in the previous paragraphs as part of this Count and pleads in addition to, and alternatively, the paragraphs below.

11. Sometime in late 1997, Sausé approached Wainwright about opening a checking account for Town funds.

12. Sausé represented to Wainwright that PSG made periodic payments to the Town in connection with an ongoing business or contractual relationship and that there was a desire to conceal the payments.

13. Thompson offered to assist, and in fact did assist, Sausé in establishing an account that would conceal PSG payments and other payments that were Town funds.

14. Upon information and belief, the Wainwright employee determined that, to help conceal the payments, the account should have an address other than that which the Town ordinarily used.

15. The Bank made Sausé and Thompson the only signatories on the account. Thomson was an employee of the Town at the time, but he was not authorized to open or maintain a bank account with the name of the Town.

16. The address listed for the account was 33 Sleeper Street, Apt. 407, Boston, MA.

17. At the time the Bank opened the account, Sausé resided at 33 Sleeper Street, Apt. 407, Boston, MA.

18. After opening the account, the Bank periodically mailed statements for the account in the Town's name to Sausé's residential address at 33 Sleeper Street, Apt. 407, Boston, MA.

19. Beginning on or about December 2, 1997 and continuing until at least February 26, 1999, Wainwright accepted for deposit various checks into the account in the Town's name.

20. Sausé and Thomson each lacked authority to endorse or deposit into the account any check payable to the Town, or to expend funds in a bank account at Wainwright held in the name of the Town.

21. None of the endorsements on the checks was authorized.

22. The Bank presented the checks for collection, collected the amounts of the checks, and credited the account with the amounts collected.

23. The funds deposited into the Wainwright account constituted property of the Town.

24. Sausé and/or Thompson withdrew all of the Town's funds from the account and expended those funds for purposes other than for the benefit of the Town.

25. The Town did not learn of the situation involving the funds until 2003 and did not learn until 2004 of each of the checks payable to the Town that had been deposited in that account, and of the amounts of funds in the account that had been withdrawn by Sausé and Thompson.

26. By its conduct, the Bank engaged in a common plan with Sausé and/or Thomson to deprive the Town of its property.

27. The common plan involved the commission of tortious acts against the Town including, but not limited to, conversion of the Town's property to the use of Sausé and/or Thomson.

28. The Bank knew of the common plan and its purpose.

29. The Bank took affirmative steps to help achieve the common plan's result by, among other things, advising and assisting Sausé in the opening of the Wainwright account, permitting Sausé and Thomson to be signatories on an account that was opened in the Town's name, mailing periodic bank statements for an account that was opened in the Town's name to Sausé's residential address so as to conceal activity in the Wainwright account from the Town, accepting for deposit checks bearing forged endorsements, assisting Sausé and Thomson in the withdrawal of funds from the Town's account, and concealing from the Town the fact of payments from PSG and other parties.

30. As a result of the conspiracy, the Town suffered and continues to suffer harm and damages.

### Count III – Aiding and Abetting

31. The Town incorporates the allegations contained in the previous paragraphs as part of this Count and pleads in addition to, and alternatively, the paragraphs below.

32. Thomson was employed by the Town as Superintendent of its Sewer Commission at the time that the Bank opened the Wainwright account, and during the time that checks bearing the Town's name were deposited into that account and funds were deposited into the account that was in the Town's name.

33. Thomson owed the Town a fiduciary's duty of utmost good faith and loyalty.

34. Thomson acquiesced in and participated in the opening of the Wainwright account, in the deposit of checks into that account, and in the withdrawal of funds from that account.

35. Thomson's actions with respect to the Wainwright account were in breach of his fiduciary duty to the Town.

36. The Bank was aware of Thomson's position with the Town by virtue of Thomson's name and office appearing on the face of at least four of the checks deposited into the account by the Bank, and, upon information and belief, by other means.

37. By its actions, the Bank aided and abetted and provided substantial assistance to Thomson to breach his fiduciary duty to the Town.

38. By its actions, the Bank aided and abetted Sausé and Thompson and provided substantial assistance in the conversion of the Town's checks and funds, and with the larceny and embezzlement of funds from the Town.

39. By its actions, the Bank provided substantial assistance to Thomson, and aided and abetted Thomson, in interfering with the Town's contract with PSG.

40. As a result of the Bank's aiding and abetting, inter alia, Thomson's breach of fiduciary duty, Thompson's and Sausé's conversion and Thompson's interference with the Town's contract and business relations with PSG, the Town suffered and continues to suffer harm and damages.

### Count IV - Conversion

41. The Town incorporates the allegations contained in the previous paragraphs as part of this Count and pleads in addition to, and alternatively, the paragraphs below.

42. The Town received delivery of checks made out to the Town that were deposited into the account, either directly or through delivery to an agent.

43. The Town received funds for the Town's account either directly or through an agent.

44. The Bank converted the Town's property when it accepted checks made out to the Town for deposit, presented them for collection and payment, and then credited the account with the proceeds collected from the checks in such a manner that the sole signatories on the account, Sausé and Thomson, would be allowed to withdraw the proceeds.

45. The Bank converted the Town's property when it took funds held in the name of the Town in the account and disbursed them at the request of Sausé and Thomson, who were not authorized to spend such funds on behalf of the Town.

46. As a result of the conversion, the Town suffered and continues to suffer harm and damages.

### Count V – Negligence/Recklessness

47. The Town incorporates the allegations contained in the previous paragraphs as part of this Count and pleads in addition to, and alternatively, the paragraphs below.

48. It was foreseeable to the Bank that the Town would be injured in the event that it accepted and collected any check payable to the Town and then credited the proceeds to the account in the absence of an authorized endorsement. Accordingly, the Bank owed the Town a duty to act with reasonable care.

49. The Bank accepted and collected checks made out to the Town without making any reasonable attempt to verify the endorsements on the checks or the authority of Sausé or Thomson to deposit them into the account in the Town's name.

50. The Bank knew or should have known that Sausé and Thomson were not authorized to indorse, to attempt to negotiate, or deposit any check on which the Town was the named payee or to withdraw funds held in the name of the Town.

51. The Bank acted recklessly and negligently by, inter alia:

   a. Opening an account in the name of the Town with Thomson and Sausé the only signatories and the only persons with authorization from the Bank to sign checks;

   b. failing to safeguard funds held in the name of the Town of Rockland, its accountholder;

    c.    failing to provide statements that accounted for the use of funds to the Town of Rockland, its customer, and instead sending statements to a Boston residential address that was clearly not that of a municipality;

    d.    failing to adopt and implement adequate procedures to prevent and detect patently improper and unauthorized attempts to withdraw funds;

    e.    failing to train and supervise personnel in the most basic procedures for preventing fraud on accountholders, and unauthorized and improper withdrawal of funds from accountholders' accounts;

    f.    failing to adopt and implement adequate procedures and practices for the detection of even the most obvious attempts of unauthorized conversion of funds, in this case funds in the Town of Rockland's account, and unauthorized withdrawal of funds;

    g.    disregarding the fact that funds from checks made out to the Town of Rockland were being used by Sausé and Thomson;

    h.    performing its implied contract with the Town of Rockland, an accountholder;

    i.    failing to adopt and implement adequate practices and procedures for the handling of funds, processing of checks and sending of statements to customers accounting for the use of funds;

    j.    failing to adopt and implement adequate oversight procedures for the detection of fraud and criminal activity in the opening of accounts and the maintenance of accounts at the Bank and account activity.

52. As a result of the Bank's recklessness and negligence, Thomson and Sausé were able to divert a substantial amount of funds intended for the benefit of the Town to their own use.

53. The Town has suffered and continues to suffer damages as a direct and proximate result of the Bank's recklessness and negligence.

### Count VI – Negligent or Reckless Enablement

54. The Town incorporates the allegations contained in the previous paragraphs as part of this Count and pleads in addition to, and alternatively, the paragraphs below.

55. It was foreseeable to the Bank that the Town would be injured if the Bank permitted persons to open an account at the Bank in the Town's name where those persons were not authorized by the Town to do so.

56. Accordingly, the Bank owed the Town, as the party in whose name the Wainwright account was opened, a duty of reasonable care.

57. The Bank established the Wainwright account without making any reasonable attempt to determine whether the Town had authorized the opening of that account.

58. In the absence of any form of authorization from the Town, and in view of Sausé's acknowledgment that he was employed by PSG, the Bank knew or should have known that Sausé was not authorized to act on the Town's behalf.

59. The Bank failed to follow reasonable commercial standards and banking practices and thereby breached its duty of care and acted negligently and recklessly when it permitted Sausé to open and maintain the Wainwright account in the Town's name, and in sending statements of account activity to an address that was clearly not that of the Town and obviously not that of any municipality.

60. The Town has suffered and continues to suffer damages as a direct and proximate result of the Bank's negligence and recklessness.

### COUNT VII – Tortious Interference with Contractual and Advantageous Business Relations

61. The Town incorporates the allegations contained in the previous paragraphs as part of this Count and pleads in addition to, and alternatively, the paragraphs below.

62. The Town had a written contract and/or a business relationship with PSG under which it was supposed to receive, from time to time, under certain conditions, funds;

63. The Bank knew of PSG's contract and/or business relationship with the Town and that the Town was supposed to receive funds from PSG.

64. By its conduct, the Bank knowingly and improperly caused PSG to breach its contract with the Town and interfered with the Town's business relations with PSG.

65. As a result of such conduct, the Town suffered and continues to suffer harm and damages.

### COUNT VIII – Breach of Contract

66. The Town incorporates the allegations contained in the previous paragraphs as part of this Count and pleads in addition to, and alternatively, the paragraphs below.

67. The Bank, by establishing an account in the name of the Town of Rockland, had an implied contractual relationship with the Town, to, inter alia, safeguard its funds and provide a regular accounting of the status of the funds in its account and of account activity.

68. By its conduct, the Bank breached its contract with the Town and breached the implied covenant of good faith and fair dealing.

69. As a result of such conduct, the Town suffered and continues to suffer harm and damages.

WHEREFORE, plaintiff Town of Rockland requests:

1. That judgment be entered in its behalf;

2. That it be awarded damages, interest, and costs;

3. That it be awarded multiple damages and its attorneys fees and costs under Mass Gen. Laws, Chapter 93A;

4. That it be granted such other relief as may be proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES AND CLAIMS

SO TRIABLE

TOWN OF ROCKLAND
By its Attorneys,

Joanne D'Alcomo
BBO #544177
Howard P. Blatchford, Jr.
BBO #045580
JAGER SMITH, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 951-0500

I HEREBY ATTEST AND CERTIFY ON
2/10/06, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: