UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PROFESSIONAL SERVICES GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, GREGORY THOMSON and MICHAEL SAUSÉ, <br><br> . <br><br> TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, <br><br> Plaintiffs-in-Counterclaim and Crossclaim <br><br> v. <br><br> PROFESSIONAL SERVICES GROUP, INC., <br><br> Defendant-in-Counterclaim, <br><br> and <br><br> MICHAEL SAUSÉ, <br><br> Crossclaim Defendant | Civil No. 04-11131-PBS |

**TOWN OF ROCKLAND'S AND ROCKLAND SEWER COMMISSION'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING PRIVATE RIGHT OF ACTION UNDER THE UNIFORM PROCUREMENT ACT**

JS#150879v1

This supplemental memorandum addresses the Town of Rockland"s and Rockland Sewer Commission's arguments concerning the existence of a private right of action under Massachusetts' Uniform Procurement Act, G.L ch, 30B, § 17(c).

I. **The Text of 30B Contemplates A Right of Action For Governmental Bodies**

Section 17(c) of the Uniform Procurement Act states the following:

> A person who causes or conspires with another to cause a contract to be solicited or awarded in violation of a provision of this chapter shall forfeit and **pay to the appropriate governmental body** a sum of not more than two thousand dollars for each violation. In addition, the person shall pay double the amount of damages sustained by the governmental body by reason of the violation, *together with the costs of any action*. If more than one person participates in the violation, the damages and costs may be apportioned among them.

G.L. 30B,§ 17(c) (emphasis added). PSG has argued that Section 17(c) does not provide a right of action for the Town to bring a suit under the statute. See PSG Motion to Dismiss (Docket No. 73). PSG makes no attempt, however, to explain what is meant by the provision mandating that a violator of the law shall pay damages to the governmental body "together with the costs of any action." If a governmental body is unable to bring a claim under the statute as PSG argues, then the governmental body would not incur any "costs" related to an action. It is a basic rule of statutory construction that a statute should not be interpreted in such a way so as to make a part of the statute superfluous or nonsensical. See, e.g. Bombardieri v. Registrar of Motor Vehicles, 426 Mass. 371, 378, 688 N.E.2d 954 (1998) ("A statute should not be construed in such a way as to make it a nullity when a sensible construction is readily available."); Nercessian v. Board of Appeals on M.V. Liab. Policies & Bonds, 46 Mass.App.Ct. 766, 770-771, 709 N.E.2d 1134 (1999) (statutory interpretation must be done "in harmony with common sense and sound reason."). As stated by the Supreme Judicial Court:

> The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all the words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.

Hanlon v. Rollins 286 Mass. 444, 447, 190 N.E. 606 (1934).

As stated in the Town's earlier opposition, the only Court to consider the question of whether a governmental body has a private right of action under this statute determined that such a right of action exists. Town of Lunenburg v. Carlson, 2005 WL 937730 (Mass.Super. March 31, 2005) (Agnes, J.). The Court stated that:

> [T]he Legislature has, very clearly expressed its intention, as the Town points out, to allow municipalities and towns to sue and be sued. There being no express prohibition against private actions nor any express reservation for public actions, as well as the Legislature's intent to allow towns to sue and be sued, and the fact that the Town possesses a right that the public at large does not have, the Town should be allowed to pursue its claim under G.L. c. 30B.

Id. at *3; see also, All Brands Container Recovery, Inc., v. Merrimack Valley Distributing Co., Inc., 54 Mass. App. Ct. 297, 764 N.E.2d 931 (2002) (analyzing question of existence of private right of action under bottle bill). PSG has argued that Lunenberg was wrongly decided, but neither the statutory text, the caselaw, nor the purpose of the statute supports that position.

II. **Courts Have Regularly Allowed Losing Bidders To Bring Actions Under 30B and Other Procurement Statutes Despite The Lack Of Express Authorization In The Statute**

PSG argues that Section 17(c) does not expressly provide that a municipality or other governmental body can sue for violations of Chapter 30B, and, therefore, the Town is precluded from doing so. This argument is contradicted, however, by the fact that courts have permitted losing *bidders* to bring lawsuits for violations of the Uniform Procurement Act, even though there is no provision expressly authorizing that type of action. For example, in White's Farm

Dairy, Inc. v. City of New Bedford 10 Mass.L.Rptr. 348, 1999 WL 823885 (Mass.Super. Ct. 1999), the court considered a claim brought by a dairy producer because a municipality's procurement process did not comply with Chapter 30B.  The court heard the claim and awarded damages to the plaintiff losing bidder.  See id. at 14. ("a bidder wrongfully deprived of a contract by an awarding authority's failure to give its bid fair consideration in accordance with statutory procedures is entitled to recover the reasonable cost of preparing its bid.").  The court even discussed Section 17(d), authorizing the Inspector General to bring a suit, but obviously discounted any notion – like that raised by PSG here – that Section 17(d) somehow prevents a harmed party from suing under the statute.

The presumption that private actions may be brought without express statutory authorization extends to other procurement statutes as well.  For example, in E. Amanti & Sons, Inc. v. R.C. Griffin, Inc., 53 Mass.App.Ct. 245, 758 N.E.2d 153 (Mass. App. Ct. 2001), a losing bidder sued for a violation of G.L. c. 30, § 39M, a construction bidding statute.  That statute does not include any mention of who is authorized to sue for violations.  Nonetheless, the court affirmed the trial court's award of damages under the statute.

Similarly, in Bradford & Bigelow, Inc. v. Commonwealth, 24 Mass.App.Ct. 349, 509 N.E.2d 30 (Mass. App. Ct. 1987), a losing bidder sued for a violation of G.L. c. 5, § 1, a procurement statute for contracts for the printing of public documents.  That statute also does not include a provision authorizing losing bidders to bring an action.  Despite the lack of such a provision, the plaintiff was awarded damages and the decision was affirmed, after a slight unrelated modification.  The "[l]egislature is presumed 'to know the preexisting law and the decisions of [the Supreme Judicial Court].'" Boehm v. Premier Ins. Co., 446 Mass. 689, 691, 846 N.E.2d 1145, 1147 (Mass. 2006) (quoting Selectmen of Topsfield v. State Racing Comm'n, 324

Mass. 309, 313, 86 N.E.2d 65 (1949)).  There is no reason to think that it intended 30B to be treated differently from other procurement statutes.

PSG seems to acknowledge this general presumption in favor of rights of action, but believes that that Section 17(d), which provides that the inspector general may bring a civil action under the statute, somehow strips towns and other governmental bodies of their right to bring claims.  See PSG Motion to Dismiss (Docket No. 73) (stating that if the legislature "had not included § 17(d) in the Act at all, then Defendants might be better able to assert a right of action under § 17(c).")  The argument is that, because the inspector general, and only the inspector general, is given an express right to bring an action, the legislature must have intended it to be an exclusive right.  This argument is mistaken for several reasons.  As an initial matter, the provision that the "costs of any action" be paid to the governmental body, which was discussed earlier, would not make sense if the Inspector General had exclusive rights to bring an action.  It makes no sense for the Town to receive "costs of any action" if only the Inspector General is incurring costs.  Furthermore, as shown by White's Farm Dairy, Inc., 10 Mass.L.Rptr. 348, 1999 WL 823885, losing bidders are permitted to bring suit under the statute, so the Inspector General's right to sue cannot possibly be exclusive.

A more understandable reading of Section 17(d) is that the provision expressly grants the authority to the Inspector General's office to bring suit because the Inspector General would have no standing, and thus no ability to bring such an action in the absence of that provision.  A logical inference is that the legislature viewed the enforcement of the statute so important to governmental bodies that it authorized the inspector general to bring litigation to enforce it in the event that cash-strapped municipalities lacked the resources to do so. Had the legislature intended to provide an exclusive authority that only the Inspector General could institute a civil

action under the statute, it would have been a simple matter to draft Section 17(d) using the words "the inspector general shall have *exclusive* authority" to bring actions, or "*only* the inspector general shall have authority." Instead, the provision merely confers authority on the inspector general to bring actions, stating that "inspector general shall have authority." Nothing about the provision is intended to strip authority away from a party that otherwise would have a remedy under § 17(c).

An analogous situation was considered by the Appeals Court in Bradford & Bigelow, Inc. v. Commonwealth, 24 Mass.App.Ct. 349, 509 N.E.2d 30 (Mass. App. Ct. 1987). In that case, an injured party – a losing bidder – was allowed to bring suit under a bidding statute despite the fact that the statute authorized a state agency to bring suit. The bidder was allowed to seek damages under G.L. ch. 5 § 1, despite the fact that the statute specifically provides that "[t]he department of labor and workforce department shall enforce this section".

    III.    **Interpreting The Law In The Manner PSG Suggests Could Leave Municipalities Completely Without A Remedy If A Contractor Breached A Contract That Was the Result of a Unlawful Procurement**

If the law is interpreted as PSG urges, the very purpose of Chapter 30B would be undermined. A municipality could be left *with no remedy at all* by an unscrupulous vendor who both violated the Act and then committed egregious breaches of the contract that resulted from unlawful procurement. It would create a bizarre situation in which it might be better for a contractor to have caused a violation of the Uniform Procurement Act than to have been in compliance. That absurd and unjust result could not have possibly been intended by the legislature in creating the remedy of Section 17(c).

In this case, for example, the factfinder could find a violation of the Uniform Procurement Act, rendering the Town's contract with PSG invalid. Thus, under PSG's

interpretation, the Town could be left with no remedy for the contractor's – PSG's – failure to live up to the obligations of the contract. An interpretation leading to such a result makes no sense. Section 17(c) of the Uniform Procurement Act is a remedial provision intended to allow a governmental body to obtain relief for damages sustained as a result of contracts awarded improperly. A basic principle of statutory interpretation is that remedial statutes "are to be liberally construed to effectuate their goals." Town of Franklin v. Wyllie, 443 Mass. 187, 196, 819 N.E.2d 943, 950 (Mass. 2005). "The rule for the construction of remedial statutes is that cases within the reason, though not within the letter, of a statute shall be embraced by its provisions." Batchelder v. Allied Stores Corp. 393 Mass. 819, 822, 473 N.E.2d 1128, 1130 (Mass. 1985) (quoting 3 C. Sands, Sutherland Statutory Construction § 54.04, at 570 (4th ed. 1974)). It would be a strained interpretation of this remedial statute for it to be construed to *prevent* Towns from obtaining the remedies delineated in the statute.

      The interpretation urged by PSG is contradictory to the purposes of the statute. The purpose of competitive bidding statutes is, in addition to ensuring that the bidding authority awards public contracts to the lowest responsible bidder, "to establish an open and honest procedure for competition for public contracts." Modern Constr. Co., Inc. v. City of Lowell, 391 Mass. 829, 840 (1984). G.L. c. 30B, as well as other bidding statutes, is intended "'to prevent favoritism, to secure honest methods of letting contracts in the public interest, to obtain the most favorable price, and to treat all persons equally.'" Mangano v. Wilmington, 51 Mass.App.Ct. 857, 859 (2001) (quoting Phipps Prods. Corp. v. Massachusetts Bay Transp. Authy., 387 Mass. 687, 691-692 (1982)). Phipps Prods. Corp., 387 Mass. at 691, 443 N.E.2d 115.

      Giving governmental bodies a private right of action is a strong deterrent to prevent municipalities from being hurt by a bidder who acts improperly to subvert the procurement

process. By contrast, if Towns were at the mercy of the Inspector General's office to recover damages, it is doubtful that those goals would be adequately effectuated, because the Inspector General's office only has limited resources with which to pursue litigation. PSG's interpretation would transform what is supposed to be a remedial statute – that is, a statute designed to provide a governmental body such as a town with a monetary remedy – into a statute that would tend to insulate unscrupulous contractors from liability.

### IV.     Conclusion

For the reasons stated above, PSG's motion to dismiss the claim brought under Chapter 30B should be denied.

>
> TOWN OF ROCKLAND AND ROCKLAND
> SEWER COMMISSION
> By their attorneys,
>
> /s/ Seth Nesin
> _____
> Joanne D'Alcomo
> BBO #544177
> Howard P. Blatchford, Jr.
> BBO #045580
> Seth Nesin
> BBO #650739
> JAGER SMITH P.C.
> One Financial Center
> Boston, MA 02111
> (617) 951-0500
>
> DATED: August 11, 2006