UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PROFESSIONAL SERVICES GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOWN OF ROCKLAND, et al, <br><br> . | ) ) ) ) ) ) Civil No. 0411131-PBS ) ) ) ) ) ) |

**TOWN OF ROCKLAND'S AND ROCKLAND SEWER COMMISSION'S
PROPOSED JURY VERDICT FORM (revised)**

The Defendants hereby submit this proposed jury verdict form, revised:

NOTE: ANSWER ALL APPLICABLE QUESTIONS EVEN IF IT LEADS TO DUPLICATION OF MONIES AWARDED.  ANY DUPLICATION OF MONIES AWARDED WILL BE ADDRESSED BY THE COURT SINCE THE TOWN CANNOT RECEIVE DUPLICATE PAYMENTS OR DOUBLE RECOVERY.

I.  Uniform Procurement Act

1. Did Michael Sausé cause, or conspire with Gregory Thomson to cause, the contract to operate the Rockland wastewater treatment plan to be solicited or awarded in 1997 in violation of the Massachusetts Uniform Procurement Act?

    **YES**_____      **NO**_____

    [If your answer is "Yes," please proceed to Question 2.]
    [If your answer is "No," please proceed to Question 4.]

2. Is PSG vicariously liable for the acts of Michael Sausé in causing, or conspiring to cause, the contract to operate the Rockland wastewater treatment

plan to be solicited or awarded in 1997 in violation of the Massachusetts Uniform Procurement Act?

**YES**_____    **NO**_____

   [If your answer is "Yes," please proceed to Question 3.]
   [If your answer is "No," please proceed to Question 4.]

3. Please state the amount of money, if any, in each of the following categories of damages claimed by the Town that you award the Town for damages suffered as a result of any violation of the Uniform Procurement Act:

   a. cost of new procurement in 2004 _____
   b. difference in what Town paid and what it likely would have paid if the violation(s) had not occurred _____
   c. rebate money withheld by PSG for 2003-2004 contract year_____
   d. costs associated with checks issued by PSG and deposited by Michael Sausé or Gregory Thomson _____
   e. costs associated with funds claimed by Town to have been mishandled by PSG _____
   f. cost of forensic audit _____.

   [PLEASE PROCEED TO QUESTION 9.]

II. Breach of Contract

4. Did PSG breach its contract with the Town and the Sewer Commission?

   **YES**_____    **NO**_____

   [If your answer is "Yes," please proceed to Question 5.]
   [If your answer is "No," please proceed to Question 9.]

5. Was the breach of contract committed by PSG a material and substantial breach of its contract?

   **YES**_____    **NO**_____

   [If your answer is "Yes," or "No" please proceed to Question 6.]

6. Please state the amount of money, if any, in each of the following categories of damages claimed by the Town and the Sewer Commission that you award the Town and the Sewer Commission for damages sustained as result of the breach:

      a. cost of new procurement in 2004 _____
      b. rebate money withheld by PSG for 2003-2004 contract year_____
      c. costs associated with checks issued by PSG and deposited by Michael Sausé or Gregory Thomson _____
      d. costs associated with funds claimed by Town to have been mishandled by PSG _____
      e. cost of forensic audit _____ .

    [If your answer to Question 5 above was "Yes," please proceed to Question 9.]
    [If your answer to Question 5 above was "No," please proceed to Question 7.]

7. Did the Town and the Sewer Commission breach the 1998 contract with PSG?

    **YES**_____        **NO**_____

    [If your answer is "Yes," please proceed to Question 8.]
    [If your answer is "No," please proceed to Question 9.]

8. State the amount of money you award PSG for any breach of contract by the Town and Sewer Commission. [NOTE: You may not award more than $1 because PSG is bound by its attorneys' representations that it is seeking no more than $1 from the Town].

    _____

III. Fraud

9. Did PSG commit fraud in its participation in the 1997 procurement process concerning a contract to operate the Rockland wastewater treatment plant?

    **YES**_____        **NO**_____

    [If your answer is "Yes," please proceed to Question 10.]
    [If your answer is "No," please proceed to Question 11.]

10. Please state the amount of money, if any, in each of the following categories of damages claimed by the Town and Sewer Commission that you award the Town and Sewer Commission for damages suffered as a result of such fraud:

      a. cost of new procurement in 2004 _____
      b. difference in what Town paid and what it likely would have paid if the fraud had not occurred _____

      c. rebate money withheld by PSG for 2003-2004 contract year _____
      d. costs associated with checks issued by PSG and deposited by Michael Sausé or Gregory Thomson _____
      e. costs associated with funds claimed by Town to have been mishandled by PSG _____
      f. cost of forensic audit _____
      g. profits earned by PSG from operating the plant under the 1998 contract and PSG's use and enjoyment of profits _____

## IV. Conspiracy

11. Did Michael Sausé conspire with Gregory Thomson to commit fraud in connection with the 1997 procurement process concerning the operation of the Rockland wastewater treatment plant?

    **YES**_____     **NO**_____

    [If your answer is "Yes," please proceed to Question 12.]
    [If your answer is "No," please proceed to Question 14.]

12. Is PSG vicariously liable for Michael Sausé's acts in conspiring to commit fraud in connection with the 1997 procurement process concerning the operation of the Rockland wastewater treatment plant?

    **YES**_____     **NO**_____

    [If your answer is "Yes," please proceed to Question 13.]
    [If your answer is "No," please proceed to Question 14.]

13. Please state the amount of money, if any, in each of the following categories of damages claimed by the Town and Sewer Commission that you award the Town and Sewer Commission for damages suffered as a result of such conspiracy to commit fraud:

          a. cost of new procurement in 2004 _____
          b. difference in what Town paid and what it likely would have paid if the violation(s) had not occurred _____
          c. rebate money withheld by PSG for 2003-2004 contract year _____
          d. costs associated with checks issued by PSG and deposited by Michael Sausé or Gregory Thomson _____
          e. costs associated with funds claimed by Town to have been mishandled by PSG _____
          f. cost of forensic audit _____

      g. profits earned by PSG from operating the plant under the 1998 contract and PSG's use and enjoyment of profits _____ _____ .

## V. Conflict of Interest Law, Ch. 268A, § 2(a)(1)

14. Did PSG, directly or indirectly, corruptly give anything of value to Gregory Thomson when he was a Town employee with the intent to influence any official act or any act within Thomson's official responsibilities?

    **YES**_____     **NO**_____

    [If your answer is "Yes," please proceed to Question 15.]
    [If your answer is "No," please proceed to Question 17.]

15. Did PSG act to its economic advantage in engaging in such conduct?

    **YES**_____     **NO**_____

    [If your answer is "Yes," please proceed to Question 16.]
    [If your answer is "No," please proceed to Question 17.]

16. What was the amount, in dollars, of the economic advantage received by PSG?

    _____

## VI. Conflict of Interest Law, Ch. 268A, § 2(a)(2)

17. Did PSG directly or indirectly, corruptly give anything of value to Gregory Thomson, at any time when he was a Town employee with the intent to influence him to (a) commit or aid in committing any fraud or (b) to collude in or allow any fraud, or (c) make opportunity for the commission of any fraud, on the Town and Sewer Commission?

    **YES**_____     **NO**_____

    [If your answer is "Yes," please proceed to Question 18.]
    [If your answer is "No," please proceed to Question 20.]

18. Did PSG act to its economic advantage in engaging in such conduct?

    **YES**_____     **NO**_____

    [If your answer is "Yes," please proceed to Question 19.]
    [If your answer is "No," please proceed to Question 20.]

19. What was the amount, in dollars, of the economic advantage received by PSG?

   _____

VII. Conflict of Interest Law, Ch. 268A, § 2 (a)(3)

20. Did PSG, directly or indirectly, corruptly give anything of value to Gregory Thomson, at any time when he was a Town employee with the intent to induce him to do any act in violation of his lawful duty, or fail, in violation of his lawful duty, to do any act?

   **YES**_____        **NO**_____

   [If your answer is "Yes," please proceed to Question 21.]
   [If your answer is "No," please proceed to Question 23.]

21. Did PSG act to its economic advantage in engaging in such conduct?

   **YES**_____        **NO**_____

   [If your answer is "Yes," please proceed to Question 22]
   [If your answer is "No," please proceed to Question 23.]

22. What was the amount, in dollars, of the economic advantage received by PSG?

   _____

VIII. Conflict of Interest Law, Ch. 268A, § 3(A)

23. Did PSG directly or indirectly give anything of substantial value to Gregory Thomson, for or because of any official act to be performed by Thomson?

   **YES**_____        **NO**_____

   [If your answer is "Yes," please proceed to Question 24.]
   [If your answer is "No," please proceed to Question 26.]

24. Did PSG act to its economic advantage in engaging in such conduct?

   **YES**_____        **NO**_____

[If your answer is "Yes," please proceed to Question 25.]
[If your answer is "No," please proceed to Question 26.]

25. What was the amount, in dollars, of the economic advantage received by PSG?

   _____

IX. Negligent Misrepresentation

26. Did PSG make a false representation when it submitted an affidavit to the Town at the time it submitted its proposal in 1997 stating that PSG had not, directly or indirectly, participated in any collusion or otherwise taken any action in restraint of free competitive bidding in connection with its proposal?

   **YES**_____        **NO**_____

   [If your answer is "Yes," please proceed to Question 27.]
   [If your answer is "No," please proceed to Question 29.]

27. Did the Town reasonably rely on such representation?

   **YES**_____        **NO**_____

   [If your answer is "Yes," please proceed to Question 28.]
   [If your answer is "No," please proceed to Question 29.]

28. Please state the amount of money, if any, in each of the following categories of damages claimed by the Town that you award the Town for damages suffered as a result of such misrepresentation:

   a. cost of new procurement in 2004 _____
   b. rebate money withheld by PSG for 2003-2004 contract year_____
   c. costs associated with checks issued by PSG and deposited by Michael Sausé or Gregory Thomson _____
   d. costs associated with funds claimed by Town to have been mishandled by PSG _____
   e. cost of forensic audit _____.

X. Negligence

29. Did PSG owe a duty of care to the Town and the Sewer Commission in the handling of Town and Sewer Commission funds held in accounts in PSG's possession?

**YES**_____     **NO**_____

[If your answer is "Yes," please proceed to Question 30.]
[If your answer is "No," please proceed to Question 32.]

30. Did PSG breach this duty of care to the Town and Sewer Commission?

**YES**_____     **NO**_____

[If your answer is "Yes," please proceed to Question 31.]
[If your answer is "No," please proceed to Question 32.]

31. Please state the amount of money, if any, in each of the following categories of damages claimed by the Town and the Sewer Commission that you award the Town and Sewer Commission for damages suffered as a result of such breach of the duty of care:

   a. costs associated with checks issued by PSG and deposited by Michael Sausé or Gregory Thomson _____
   b. costs associated with funds claimed by Town to have been mishandled by PSG _____
   c. cost of forensic audit _____.

[PLEASE PROCEED TO END]

XI. Negligence

32. Did PSG owe a duty of care to the Sewer Commission in the handling of Sewer Commission funds held in accounts in PSG's possession?

**YES**_____     **NO**_____

[If your answer is "Yes," please proceed to Question 33.]
[If your answer is "No," please proceed to end.]

33. Did PSG breach this duty of care to the Sewer Commission?

**YES**_____   **NO**_____

[If your answer is "Yes," please proceed to Question 34.]
[If your answer is "No," please proceed to end.]

34. Please state the amount of money, if any, in each of the following categories of damages claimed by the Sewer Commission that you award the Sewer Commission for damages suffered as a result of such breach of the duty of care:

    a. costs associated with checks issued by PSG and deposited by Michael Sausé or Gregory Thomson _____
    b. costs associated with funds claimed by Town to have been mishandled by PSG _____
    c. cost of forensic audit _____ .

END OF QUESTIONS

_____
Foreperson of the Jury
Date: August \_\_\_, 2006

TOWN OF ROCKLAND AND
ROCKLAND SEWER COMMISSION,

By their attorneys:

/s/   Seth Nesin
_____
Joanne D'Alcomo (BBO # 544177)
Seth Nesin (BBO # #650739)
JAGER SMITH P.C.
One Financial Center
Boston, Massachusetts 02111
617-951-0500