UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
PROFESSIONAL SERVICES                   )
GROUP, INC.,                            )
                                        )
                Plaintiff,              )
                                        )
        v.                              )
                                        )
TOWN OF ROCKLAND, et al,                )
                                        )    Civil No. 04-11131-PBS
                                        )
            .                           )
_____)
                                        )

**TOWN OF ROCKLAND'S AND ROCKLAND SEWER COMMISSION'S
SUPPLEMENTAL REQUEST FOR  JURY INSTRUCTIONS**

        In addition to the instructions previously submitted to the Court, the Town of Rockland

and the Rockland Sewer Commission hereby request that the following instructions be given to

the jury:

INSTRUCTION NO. 62.    UNIFORM PROCUREMENT ACT – BAD FAITH

The state law that governed the issuance of the Request for Proposals in this case, and the procurement process in this case, is called the Uniform Procurement Act. The act requires public officials to act in good faith in seeking bids and conducting the procurement. It is a violation of the Uniform Procurement Act if PSG caused, or conspired to cause, the Town of Rockland to act in bad faith in issuing the request for proposal and conducting the procurement. The Town contends in this lawsuit that PSG, acting primarily through Michael Sausé, caused, or conspired to cause, the Town to act in bad faith in issuing the request for proposals and conducting the procurement in 1997.

See Bradford & Bigelow, Inc. v. Commonwealth, 24 Mass.App.Ct. 349, 355, 509 N.E.2d 30, 34 (Mass. App. Ct. 1987); Amanti & Sons, Inc. v. R.C. Griffin, Inc., 53 Mass.App.Ct. 245, 758 N.E.2d 153, 162 (Mass. App. Ct. 2001)

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 63.      BAD FAITH

Your determination of whether bad faith conduct occurred in connection with the issuance of the Request for Proposals and the conduct of the procurement should be determined in the context of the purposes of the Uniform Procurement Act.  The purposes of the law are "to establish an open and honest procedure for competition for public contracts" and "'to prevent favoritism, to secure honest methods of letting contracts in the public interest, to obtain the most favorable price, and to treat all persons equally.'"

Mangano v. Wilmington, 51 Mass.App.Ct. 857, 859 (2001) (quoting Phipps Prods. Corp. v. Massachusetts Bay Transp. Authy., 387 Mass. 687, 691-692 (1982)); Modern Constr. Co., Inc. v. City of Lowell, 391 Mass. 829, 840 (1984).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 64.    UNIFORM PROCUREMENT ACT M.G.L. 30B, §§10, 17

It is a violation of the Uniform Procurement Act if PSG falsely certified "that its bid or proposal [was] made and submitted in good faith and without collusion or fraud with any other person." M.G.L. 30B, § 10.  The Town contends that PSG violated the Uniform Procurement Act when it submitted an affidavit with its proposal in 1997 stating that PSG had not, directly or indirectly, participated in any collusion or otherwise taken any action in restraint of free competitive bidding in connection with its proposal.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 65.     UNIFORM PROCUREMENT ACT M.G.L. 30B

It is a violation of the Uniform Procurement Act if PSG caused, or conspired with another to cause, the contract to be awarded to someone other than "a person [or business] who has a capability to perform fully the contract requirements, and the integrity and reliability which assures good faith performance." M.G.L. 30B, § 3.   The Town claims that PSG, acting primarily through Michael Sausé, caused, or conspired with Gregory Thomson to cause, the contract to be awarded to PSG, and that PSG did not have the "integrity and reliability which assures good faith performance."

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 66.        UNIFORM PROCUREMENT ACT – DAMAGES

If you find that PSG violated the Uniform Procurement Act in obtaining the contract with

Rockland, the Town is entitled to damages suffered by the Town as a result of any violation.

G. L. c. 30B § 17(c).   The Town is seeking as damages:

> (a)        The cost the Town incurred in conducting a new procurement process in 2004;
>
> (b)        the difference in what the Town paid PSG and what it likely would have paid if the violations had not occurred;
>
> (c)        the rebate money withheld by PSG for the 2003-2004 contract year;
>
> (d)        costs associated with checks issued by PSG and deposited by Michael Sause or Gregory Thomson
>
> (e)        costs associated with funds claimed by the Town to have been mishandled by PSG
>
> (f)        cost of the forensic audit that the Town commissioned.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 67.     FRAUD – RECKLESSNESS  SUFFICIENT

Fraud does not require that false statements be made intentionally.  If PSG made false statements to the Town of Rockland with reckless disregard of the actual facts, that is sufficient to support a finding of fraud.   In assessing whether any false representations by PSG were reckless or negligent, you may consider whether the PSG benefited from the misrepresentation.

Kozdras v. Land/Vest Properties, Inc., 382 Mass. 34, 42, 413 N.E.2d 1105, 1110 (Mass. 1980); Christian v. Mooney, 400 Mass. 753, 764, 511 N.E.2d 587, 593 (Mass. 1987).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 68.    FRAUD – NO INTENT NECESSARY

PSG may be liable for fraud even if it did not have intent to deceive. It is the general rule that "(i)f a statement of fact which is susceptible of actual knowledge is made as of one's own knowledge and is false, it may be the basis for an action of deceit without proof of an actual intent to deceive."

Pietrazak v. McDermott, 341 Mass. 107, 110, 167 N.E.2d 166 (1960). See McMahon v. M & D Builders, Inc., 360 Mass. 54, 271 N.E.2d 649 (1971); Maxwell v. Ratcliffe, 356 Mass. 560, 254 N.E.2d 250 (1969).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 69.     FRAUDULENT CONDUCT

Fraud need not occur as the result of a false statement.   Both "[d]eclarations and conduct calculated to mislead and which in fact do mislead one who is acting reasonably are enough to constitute fraud."   Misrepresentation refers to "not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth."

Boston Five Cents Sav. Bank v. Brooks, 309 Mass. 52, 55-56, 34 N.E.2d 435, 437 (1941); Kannavos v. Annino, 247 N.E.2d 708, 712, 356 Mass. 42, 48 (Mass. 1969); Restatement (Second) of Torts, which uses Restatement: Torts § 525.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 70.     FRAUD

It is fraud if you find that PSG submitted a proposal that falsely represented it was made or submitted without collusion or fraud with any other person, or falsely represented that PSG had not taken any action in restraint of free competitive bidding in connection with its proposal.

It is also fraud if you find that PSG's conduct misled the Town into the belief that the procurement process was being conducted in good faith and in compliance with the Uniform Procurement Act, and the Town relied upon that misrepresentation to its detriment.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 71.     FRAUD –DAMAGES

If PSG committed fraud, damages may include the disgorgement of all of PSG's profits earned as a result of the fraud. The law allows someone who has been harmed by fraud to prevent a party who has committed fraud from being unjustly enriched as a result of the fraud. Consequently, if you find that PSG committed fraud, you may award the Town damages equivalent to the amount of profits that PSG earned on the contract from March 1, 1998 when the contract at issue began, until April 12, 2004, when PSG left the wastewater treatment plant.  You may also award damages for PSG's use of those profits for the years that PSG retained those profits.

See Janigan v. Taylor,  344 F.2d 781, 786 -87 (1st Cir.).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 72.     FRAUD –ADDITIONAL DAMAGES

If PSG committed fraud, the Town is entitled to damages that occurred as a result of the Town's reliance on PSG's fraudulent representations and conduct.  The Town is seeking the following damages:

> (a)     the cost the Town incurred in conducting a new procurement process  in 2004;

> (b)     the difference in what the Town paid PSG and what it likely would have paid if the fraud had not occurred;

> (c)     the rebate money withheld by PSG for the 2003-2004 contract year;

> (d)     costs associated with checks issued by PSG and deposited by Michael Sause or Gregory Thomson

> (e)     costs associated with funds claimed by the Town to have been mishandled by  PSG

> (f)     cost of the forensic audit that the Town commissioned

> (g)     profits earned by PSG from operating the plant under the 1998 contract, including PSG's use and enjoyment of such profits during the years that those profits were retained .

Reisman v. KPMG Peat Marwick LLP ,   787 N.E.2d 1060, 1068-69 (Mass.App.Ct. 2003).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 73.     CHECK PAYEE RULES

One issue in this case is how certain checks were made out by PSG, and its successor company, U.S. Filter. There are legal rules and laws governing how checks are to be interpreted for cashing and depositing purposes.   During the times applicable to this case, PSG's headquarters and US Filter's headquarters, were in Texas, and its controller was based in Texas.

It has been the law of Texas at least since 1996, and during all of the period 1997 through 2002, that  if a check is  made payable to three people or entities and it is ambiguous as to whether it is payable to the payees alternatively, then the check can be cashed, deposited or endorsed by any one of them.   You may consider the law of Texas that was in effect at the relevant times  when you weigh PSG's conduct in issuing the checks that are the subject of this lawsuit.

Tex. Bus. & Commerce Code Ann. § 3.110

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 74.     NEGLIGENT HANDLING OF FUNDS

A party that handles funds for another party has a special obligation and duty of care under the law.  If you find that PSG was grossly negligent in the handling of the Town's funds, the Town is entitled to compensation to place it in as good a position financially as it would have been if PSG had acted appropriately.

F.D.I.C.  v. Holbrook  &  Johnston; 36 Mass.App.Ct. 424, 428-29 , 632 N.E.2d 424 (Mass.App.Ct. 1994).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 75.     RECOVERY OF ATTORNEYS' FEES

The Town of Rockland received settlements from two banks in connection with checks that were issued by PSG representing Town funds, but which were deposited in Wainwright Bank and North Abington Cooperative Bank.   The Town incurred attorney's fees in suing those banks and obtaining those settlements.   Those attorneys' fees are recoverable from PSG if you find that PSG's negligent handling of the Town's funds caused the Town to have to sue the banks or take action to recover those funds.

M. F. Roach Co. v. Town of Provincetown, 355 Mass. 731, 247 N.E.2d 377, 378 (Mass. 1969).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 76.          CONFLICT OF INTEREST LAW, M.G.L. CH. 268A  - VALUE

A party need not use its own money to violate the Conflict of Interest Law.  A violation may occur if, for example, PSG gave something of value to Gregory Thomson, even if it used money belonging to the Town of Rockland or someone else.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 77.     CONFLICT OF INTEREST LAW, M.G.L. CH. 268A, § 3(a)(1) –

SUBSTANTIAL VALUE

For purposes of the Conflict of Interest Law, "substantial value" can be as little as $50 in cash, however, the item of value need not be monetary.

It is a violation of law if PSG gave something of substantial value to Gregory Thomson for or because of Gregory Thomson's role in the procurement process concerning the operation of the Town's wastewater treatment plant.  It is a violation of law if PSG provided hotel or travel accommodations to Gregory Thomson for or because of Gregory Thomson's role in the procurement process concerning the Town's wastewater treatment plant.

The Conflict of Interest Law is also violated if something of substantial value is provided to a municipal employee as a reward for an official act.  Therefore, by way of example, if you find that  PSG took Gregory Thomson to the "Foxy Lady", and that PSG did so for or because of Gregory Thomson's role in PSG being the sole bidder on the contract to operate the Town of Rockland's wastewater operations, you may find a violation of the Conflict of Interest law.

Massachusetts v. Famigletti, 354 N.E.2d 890, 4 Mass. App. 584 (Mass. App. Ct. 1976);
Massachusetts v. Hayes, 40 N.E.2d 27, 311 Mass. 21 (1942)

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 78.    CONFLICT OF INTEREST LAW, M.G.L. CH. 268A, § 2(a)(1)

It is a violation of the Conflict of Interest Law if  PSG, directly or indirectly, through Michael Sausé or otherwise, corruptly gave anything of value to Gregory Thomson when he was a Town employee with the intent to influence any official act or any act within Thomson's official responsibilities.

If you find that PSG committed such conduct, and acted to its economic advantage in doing so, the Town is entitled to damages equivalent to the amount of such economic advantage.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 79.          CONFLICT OF INTEREST LAW, M.G.L. CH. 268A, §

2(a)(2)

It is a violation of the Conflict of Interest Law if PSG, directly or indirectly, corruptly gave anything of value to Gregory Thomson, at any time when he was a Town employee with the intent to influence him  (a) to commit or aid in committing any fraud or (b) to collude in or allow any fraud, or (c) to make opportunity for the commission of any fraud, on the Town and Sewer Commission.

If you find that PSG committed such conduct, and acted to its economic advantage in doing so, the Town is entitled to damages equivalent to the amount of such economic advantage.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 80.      CONFLICT OF INTEREST LAW, M.G.L. CH. 268A, § 2 (a)(3)

It is a violation of the Conflict of Interest law if PSG, directly or indirectly, through Michael Sausé or otherwise, corruptly gave anything of value to Gregory Thomson, at any time when he was a Town employee with the intent to induce him to do any act in violation of his lawful duty, or fail, in violation of his lawful duty, to do any act.

If you find that PSG committed such conduct, and acted to its economic advantage in doing so, the Town is entitled to damages equivalent to the amount of such economic advantage.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 81.        CIVIL CONSPIRACY- FRAUD

If PSG, through Michael Sausé, conspired with Gregory Thomson to commit fraud in connection with the procurement and request for proposals, it is liable for any fraudulent conduct committed by Thomson as well as by Sausé.

See Gurney v. Tenney, 197 Mass. 457, 84 N.E. 428, 430 (1908); see also Phelan v. Atlantic Nat'l Bank, 301 Mass. 463, 17 N.E.2d 697, 700 (1938)

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 82.     CIVIL CONSPIRACY

It is a civil conspiracy if PSG agreed to act together with Gregory Thomson to inflict a wrong or an injury upon the Town of Rockland.  It is also a civil conspiracy if PSG agreed to act together with Gregory Thomson to commit a lawful act using unlawful means to inflict a wrong or injury upon the Town of Rockland.

See Gurney v. Tenney, 197 Mass. 457, 84 N.E. 428, 430 (1908); see also Phelan v. Atlantic Nat'l Bank, 301 Mass. 463, 17 N.E.2d 697, 700 (1938)

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 83.     DAMAGES – QUANTUM OF EVIDENCE

Under the law, the Town need not prove its damages with certainty. Uncertainty is permissible in estimating damages and the award of damages is permissible even if only meager evidence is presented.

BBF, Inc. v. Germanium Power Devices Corp. 430 N.E.2d 1221, *1227 (Mass.App., 1982)( "an element of uncertainty is permissible in estimating damages and the award of damages is permissible on meager evidence, in particular in business torts where the focus is on the wrongfulness of (the) defendants' conduct.")

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 84.        DAMAGES FOR NEGLIGENT MISREPRESENTATION

If PSG negligently misrepresented an important fact with the intention that the Town of Rockland would rely upon it, and the Town did rely upon it and suffered a financial loss, then the Town is entitled to damages that were reasonably foreseeable as a result of PSG's negligence.

The Town is seeking the following damages for negligent misrepresentation:

    a.  cost of the new procurement it conducted in 2004 _____
    b.  rebate money withheld by PSG for 2003-2004 contract year_____
    c.  costs associated with checks issued by PSG and deposited by Michael Sausé or Gregory Thomson _____
    d.  costs associated with funds claimed by Town to have been mishandled by PSG _____
    e.  cost of the forensic audit commissioned by the Town _____ _____.

See Anzalone v. Strand, 14 Mass.App.Ct. 45, 49, 436 N.E.2d 960, 962–63 (1982) (proper measure of damages for seller's unintentional misrepresentation of a parcel of real estate includes any pecuniary loss shown to have been suffered as a consequence of reliance on the misrepresentation).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 85.     BREACH OF CONTRACT

If you find that PSG breached its contract with the Town of Rockland, you should award any damages that you believe to be "the direct, natural result of the breach, and to have been in the contemplation of the parties when the contract was made as the probable result of the breach."

The Town contends that if there was a valid contract between it and PSG, it was breached. The Town is seeking the following damages for breach of contract:

   a.   cost of conducting the new procurement in 2004 _____
   b.   rebate money withheld by PSG for 2003-2004 contract year_____
   c.   costs associated with checks issued by PSG and deposited by Michael Sausé or Gregory Thomson _____
   d.   costs associated with funds claimed by Town to have been mishandled by PSG _____
   e.   the cost of the forensic audit commissioned by the Town _____ _____.

Weeks v. Calnan, 39 Mass. App. Ct. 933 (1995), quoting Greany v. McCormick, 273 Mass. 250 (1930).

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

INSTRUCTION NO. 86.        ROBERT CORVI'S ABSENCE AS WITNESS

During the course of the trial, you have heard testimony mentioning Robert Corvi, the former Chairman of the Rockland Sewer Commission.  Mr. Corvi has a health problem and is unable to testify.  As a result, neither PSG nor the Town was able to call him as a witness. No inference about either side's case should be drawn by his absence.

_____ Accepted

_____ Accepted in Substance

_____ Rejected

_____ Withdrawn

Respectfully submitted,

TOWN OF ROCKLAND and
THE ROCKLAND SEWER COMMISSION,
By their attorneys,


/s/Seth Nesin
Joanne D'Alcomo (BBO # 544177)
Seth Nesin (BBO # #650739)
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500


DATED:  August 18, 2006