UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| PROFESSIONAL SERVICES ) <br> GROUP, INC., Plaintiff, ) <br> v. ) <br> ) <br> TOWN OF ROCKLAND, ROCKLAND ) <br> SEWER COMMISSION, GREGORY ) <br> THOMSON and MICHAEL SAUSÉ, ) <br> Defendants ) <br> ) <br> TOWN OF ROCKLAND, ROCKLAND ) <br> SEWER COMMISSION, ) <br> Plaintiffs-in-Counterclaim ) <br> and Crossclaim, ) <br> v. ) <br> ) <br> PROFESSIONAL SERVICES ) <br> GROUP, INC., ) <br> Defendant-in-Counterclaim, ) <br> ) <br> and ) <br> ) <br> MICHAEL SAUSÉ, ) <br> Crossclaim Defendant ) <br> ) | Civil No. 04-11131-PBS |

**MEMORANDUM OF DEFENDANTS
REGARDING PLEADING OF FRAUD**

**I. Introduction**

Plaintiff and Defendant-in-Counterclaim Professional Services Group, Inc. ("PSG") has filed a memorandum asserting that Defendants Town of Rockland and Rockland Sewer Commission (collectively "Rockland") should not be permitted to rely upon the fact that PSG filed a false anti-collusion affidavit as a basis for Rockland's

affirmative defense or counterclaim sounding in fraud.[1] Notwithstanding the facts that (a) Rockland made specific disclosures in more than one pre-trial submission that it intended to rely upon PSG's false non-collusion affidavit as a basis for its fraud counterclaim and (b) the anti-collusion affidavit and evidence concerning the falsity of that affidavit have already been received in evidence, PSG now maintains that the heightened pleading requirements that apply to allegations of fraud preclude Rockland's reliance upon the falsity of the non-collusion affidavit as a basis for establishing PSG's fraud because the affidavit itself was not specifically identified in Rockland's counterclaim.

PSG's argument should be disregarded. Its memorandum confuses the pleading of fraud with the proof of fraud. PSG never complained about the sufficiency of PSG's pleading, nor did it ever seek a more definite statement of that pleading. Moreover, PSG cannot claim surprise by Rockland's reliance upon the false anti-collusion affidavit where that affidavit has been the subject of pre-trial submissions and has already been received in evidence.

---

[1] As for PSG's claim that the Town should not be permitted to use fraud as an affirmative defense to void the contract, the Town hereby states that it does not seek to void the contract on the basis of fraud, and instead seeks damages (as made clear by its proposed jury verdict form). Similarly, with respect to Chapter 268A, the Town does not intend to seek to void the contract, and instead seeks damages in the amount of PSG's "economic advantage" as provided by the statute. This position on Chapter 268A is also made clear by the Town's proposed jury verdict form.

Consequently, this memorandum will only address PSG's argument as it relates to Rockland's fraud counterclaim.

## II. Discussion

### A. The Counterclaim Satisfies the Requirements of Notice Pleading

The underlying principle of notice pleading is that a pleading must give fair notice of a party's claim. Although with respect to allegations of fraud, Fed. R. Civ. P. 9(b) imposes an additional requirement that "the circumstances of fraud or mistake shall be stated with particularity," this requirement "does not render the general principles of simplicity set forth in [Fed. R. Civ. P.] 8 entirely inapplicable to pleadings alleging fraud; rather…the two rules must be read in conjunction with each other." Wright & Miller, 5A Federal Practice and Procedure: Civil 3d §1298 at 183 (West 2004); accord McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228-229 (1st Cir. 1980). Thus, the provisions of Rule 8(a) providing for "a short and plain statement of the claim," those of Rule 8(e) providing for "simple, concise, and direct" allegations, and the provisions of Rule 8(f) providing that "all pleadings shall be so construed as to do substantial justice" apply with equal force in pleadings asserting claims for fraud. Id.

Rockland's Answer and Counterclaim meets the combined requirements of Fed. R. Civ. P. 8 and 9(b). First, the Answer alleges prominently on page 1, in the very first paragraph: "Thomson and PSG, by and through Sause, conspired to defraud, and did defraud, the Town." The Counterclaim part of the document states "the circumstances" of PSG's fraud in the procurement process for the contract that is the subject of this litigation. Among other allegations, Rockland asserted the following general allegations concerning the procurement process by which the subject contract was awarded to PSG:

> 19. The Request for Proposals ("RFP") that was issued by the Sewer Commission for Contract No. 2 was prepared by Gregory Thompson ("Thomson"), the former Superintendent of the Sewer Commission, at the direction of Sause.
>
> 20. The Town of Rockland's Chief Procurement officer did not solicit proposals for Contract No. 2.
>
> 21. The RFP was intentionally written by Thompson and Sause to include requirements that favored PSG.

And, in an earlier paragraph, the Counterclaim asserts that PSG and the Sewer Commission signed the Contract at issue, "Contract No. 2," that resulted from the RFP. Counterclaim, Par. 8.

By reference, Rockland specifically incorporated these allegations in Count I of its Counterclaim that alleges a claim for fraud. In addition, Rockland made the following allegations in Count I:

> 51. PSG knowingly made false representations of material facts to the Town for the purpose of inducing the Town to act thereon.
>
> 52. The Town relied upon the truth of the representations of PSG and acted thereon to its detriment.

PSG's anti-collusion affidavit, which is specifically mandated by Massachusetts law, see G. L. c. 30 § 10, and was submitted as part of the procurement process of which the RFP was also a part, falsely asserts that the procurement process was untainted. Accordingly, the allegations of fraud that Rockland made in its Counterclaim are directly linked to the anti-collusion affidavit. Rockland's allegations explain the circumstances of PSG's fraud in the procurement process. The fact that the allegations of the Counterclaim do not specifically mention the anti-collusion affidavit is immaterial and meaningless.

### B. There Has Been Sufficient Notice of Rockland's Fraud Claims

PSG has no grounds to make the assertion that "[h]aving arrived at the middle of the trial," Rockland may not abandon one basis for proving fraud "in favor of one that they now prefer." Memorandum at 3. As noted above, Rockland has always maintained that PSG's collusion in the procurement process was one basis for its allegations of fraud. Moreover, there have been numerous references to collusion in the bidding process generally, and to the anti-collusion affidavit specifically, in the two Joint Pretrial Memoranda filed in this matter.

In the first Joint Pretrial Memorandum, filed on June 21, 2006, Rockland identified the following issues in the Section entitled "Additional Defendants' Disputed Facts:"

> MM. Whether there was collusion between PSG and the Rockland Sewer Superintendent in the 1997 procurement that resulted in the award of the contract to PSG.
>
> * * *
>
> OO. Whether PSG committed misrepresentation when it stated, in submitting its bid to the Town of Rockland in 1997 that it had "not participated in any collusion, or otherwise taken an y action in restraint of free competitive bidding in connection with this proposal."

Joint Pretrial Memorandum filed on June 21, 2006, at 17. In that same memorandum, Rockland identified the anti-collusion affidavit as proposed trial exhibit: "Non-collusion affidavit submitted by PSG to Town of Rockland 10/1/97Oc [sic]." Joint Pretrial Memorandum filed on June 21, 2006, at 47.

In the second Joint Pretrial Memorandum, filed on July 14, 2006, under the heading entitled "Additional Defendants' Disputed Issues of Fact," Rockland again Rockland identified the following issues:

> KK.  Whether there was collusion between PSG and the Rockland Sewer Superintendent in the 1997 procurement that resulted in the award of the contract to PSG.
>
> * * *
>
> MM.  Whether PSG committed misrepresentation when it stated, in submitting its bid to the Town of Rockland in 1997 that it had "not participated in any collusion, or otherwise taken any action in restraint of free competitive bidding in connection with this proposal."

Joint Pretrial Memorandum filed on July 14, 2006, at 18. Rockland also alluded to the anti-collusion affidavit in the Defendants' Summary in the same Joint Pretrial Memorandum, where it recited that "[i]n submitting the bid, PSG represented falsely, under penalties of perjury, that its bid was not the result of any collusion." Id., at 11.
In addition, the anti-collusion affidavit has itself been received in evidence at trial, as part of PSG's proposal to the Town of Rockland in response to the RFP. See Exhibit No. 137.

To the extent there may have been any deficiency in Rockland's Counterclaim (which Rockland denies), these subsequent filings gave additional notice of the fraud alleged. See Bonilla v. Trebol Motors Corp., 150 F.3d 77, 81 (1st Cir. 1998) (even where pleading arguably did not describe alleged fraud with sufficient particularity, subsequent submissions made in connection with an opposition to summary judgment provided sufficient notice of fraud and would be considered a *de facto* amendment or supplement to the pleading's allegations.) PSG cannot, therefore, claim any surprise.

                    Respectfully submitted,
                    TOWN OF ROCKLAND,
                    ROCKLAND SEWER COMMISSION
                    By its attorneys,

                    */s/ Howard P. Blatchford, Jr.*
                    _____
                    Joanne D'Alcomo
                    BBO #544177
                    Howard P. Blatchford, Jr.
                    BBO #045580
                    Seth Nesin
                    BBO #650739
                    JAGER SMITH P.C.
                    One Financial Center
                    Boston, MA 02111
                    (617) 951-0500

Dated: August 18, 2006.

Case 1:04-cv-11131-PBS   Document 131   Filed 08/18/2006   Page 8 of 8