UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROFESSIONAL SERVICES GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, GREGORY THOMSON, and MICHAEL SAUSÉ, <br><br> Defendants. <br> _____ <br> TOWN OF ROCKLAND and ROCKLAND SEWER COMMISSION, <br><br> Plaintiffs-in-Counterclaim and Crossclaim, <br><br> v. <br><br> PROFESSIONAL SERVICES GROUP, INC., <br><br> Defendants-in-Counterclaim, <br><br> and MICHAEL SAUSÉ, <br><br> Defendant-in-Crossclaim. | 04-CV-11131-PBS |

MEMORANDUM OF LAW *AMICUS CURIAE* of the MASSACHUSETTS
ATTORNEY GENERAL and the MASSACHUSETTS INSPECTOR GENERAL

Massachusetts Attorney General Thomas F. Reilly and Massachusetts Inspector General Gregory W. Sullivan provide this memorandum of law *amicus curiae* to assist the Court in deciding a question of state law: Whether a city or town that has awarded a contract under the state Uniform Procurement Act, M.G.L. c. 30B (the "Act"), may bring a civil action under Section 17(c) of the Act, which provides that:

> A person who causes or conspires with another to cause a contract to be solicited or awarded in violation of a provision of this chapter <u>shall forfeit and pay to the appropriate governmental body a sum of not more than two thousand dollars for each violation</u>. In addition, <u>the person shall pay double the amount of damages sustained by the governmental body by reason of the violation, together with the costs of any action</u>. If more than one person participates in the violation, the damages and costs may be apportioned among them.

M.G.L. c. 30B, § 17(c) (emphasis added). It is the position of both the Attorney General and the Inspector General that the plain language of Section 17 authorizes a contracting city or town to bring an action to recover the amounts set forth in Section 17(c). Therefore, the *amici* respectfully submit that the counterclaim brought by the Town of Rockland ("Rockland") against PSG under M.G.L. c. 30B, § 17(c), should not be dismissed on the ground that Rockland has no right of action.

STATEMENT OF *AMICI* INTEREST

A.  The Attorney General

The Attorney General is the "chief law officer for the commonwealth." See <u>Secretary of Administration and Finance v. Attorney General</u>, 367 Mass. 154, 159, 326 N.E.2d 334, 336 (1975). In this role, he has the authority and duty to appear for all state agencies in litigation and "to set a unified and consistent legal policy for the Commonwealth." <u>Id.</u> at 163, 326 N.E.2d at 338-39; see also M.G.L. c. 12, § 3. He is authorized to provide opinions "upon questions of law submitted to him by the governor and council or by either branch of the general court" and to advise legislative committees on the legal effect of proposed legislation. M.G.L. c. 12, § 9. Under the Massachusetts Rules of Civil Procedure, he must be notified and is entitled to intervene as of right in any matter in which the constitutionality of a state statute or local

ordinance or by-law is challenged. Mass. R. Civ. P. 24(d). Given his wide-ranging authority over the Commonwealth's legal policy, the view of the Attorney General on the meaning of a particular statute is entitled to some weight. This is especially so here where the question concerns enforcement of a statute designed to protect public funds.

B.   The Inspector General

The Office of the Inspector General was created in 1980 to

> prevent and detect fraud, waste and abuse in the expenditure of public funds, whether state, federal, or local, or relating to programs and operations involving the procurement of any supplies, services, or construction, by agencies, bureaus, divisions, sections, departments, offices, commissions, institutions and activities of the commonwealth, including those districts, authorities, instrumentalities or political subdivisions created by the general court and including the cities and towns.

M.G.L. c. 12A, § 7 (emphasis added). The Inspector General has authority to promulgate regulations, M.G.L. c. 12A, § 6, and to "supervise, coordinate, and conduct audits and investigations, when necessary" in order to "prevent or detect fraud, waste, and abuse in the expenditure of public funds." M.G.L. c. 12A, § 8 (incorporating M.G.L. c. 12A, § 7). In accordance with his regulations, the Inspector General must report possible criminal violations to state or federal law enforcement authorities; may refer possible civil recoveries to the Attorney General; or may make referrals to other public agencies. See 945 C.M.R. 1.09(1),(2),(3). The Inspector General may refer investigative or audit findings to the State Ethics Commission or other federal, state, or local agencies. 945 C.M.R. 1.09(3)(a),(b). Specifically with respect to the Uniform Procurement Act and with the approval of the Attorney General, the Inspector General may bring a civil action under Section 17(d) to recover double damages and fines from a person

who has caused or conspired to cause a contract to be awarded in violation of the Act. See M.G.L. c. 30B, § 17(c), (d).

## ARGUMENT

### SECTION 17 OF THE UNIFORM PROCUREMENT ACT PERMITS CONTRACTING MUNICIPALITIES TO RECOVER FINES AND DOUBLE DAMAGES FROM PERSONS WHO SECURE CONTRACTS IN VIOLATION OF THE ACT.

   A.   By its Plain Language, Section 17(c) Creates a Liability
        to Contracting Municipalities for Violations of the Act.

As recognized by the Massachusetts Superior Court in 2005, the Act "creates a right to reimbursement for a governmental body, if it is a party to the type of contracts allowed by the [Act]." Memorandum of Decision and Order, Town of Lunenberg v. Carlson, Worcester Superior Court No. 03-00573, 2005 WL 937730, 19 Mass. L. Rptr. 221 (March 21, 2005, Agnes, J.) at *3.[1] Although this decision is not a precedential appellate decision, its reasoning is sound, and the *amici* urge its adoption. The Superior Court decision incorporates a straightforward reading of the plain language of Section 17(c) of the Act. See Massachusetts Community College Council v. Labor Relations Comm'n, 402 Mass. 352, 354, 522 N.E.2d 416, 417 (1988) ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms.") (citation omitted).

Whether a statute provides a right of action for its enforcement depends on whether the statute "creates a right in favor of the plaintiff distinct from the public at large." All Brands Container Recovery, Inc. v. Merrimack Valley Distrib. Co., 54 Mass. App. Ct. 297, 300, 764

---

[1] The *amici* understand that a copy of the Lunenberg decision has already been provided to the Court.

N.E.2d 931, 934 (2002).[2]  Section 17(c) plainly does create such a right, as noted by the Superior Court in Lunenberg.  Upon proving that a contract was secured in violation of the Act, a contracting municipality is entitled by Section 17(c) to recover "double the amount of damages sustained . . . by reason of the violation" and a $2000 fine, "together with the costs of any action."  See M.G.L. c. 30B, § 17(c).  A person who has secured a contract in violation of the Act "shall forfeit and pay to" the contracting municipality these amounts.  Id.  Thus, the plain language of the statute contemplates that a "governmental body" -- defined in part as a city or town, see M.G.L. c. 30B, § 2 -- may bring an action to recover these funds.

By the Act's terms, the public at large does not have a similar right of recovery because the public at large does not suffer the damage a municipality does by a violation of the Act.  A contract awarded in violation of the Act is invalid and, therefore, the contracting municipality is legally barred from continuing to make payments under it.  M.G.L. c. 30B, § 17(b).  Section 17(c) permits the municipality to recover the public dollars paid under the invalid contract to re-procure the goods or services it requires in conformance with the Act and within the limits of its budgetary capacity.  Therefore, contracting municipalities in Rockland's position hold a right of recovery under Section 17 that is "distinct from the public at large" and they should be entitled to exercise that right.  See All Brands, 54 Mass. App. Ct. at 300, 764 N.E.2d at 934.

---

[2]Although this debate has been phrased as whether the Town of Rockland has a "private" right of action under the Act, this denomination is not entirely accurate.  The Town of Rockland is not a private party but a political subdivision of the Commonwealth and the Town seeks to recover not private funds but public dollars.  See M.G.L. c. 30B, § 1 ("This chapter shall apply to every contract for the procurement of supplies, services or real property and for disposing of supplies or real property by a governmental body as defined herein.") (emphasis added).  The opinions of the *amici* as expressed herein are limited to the rights of a contracting municipality to bring an action under M.G.L. c. 30B, § 17.

B.  Section 17(d) Extends Enforcement Authority to the Inspector General, but Does Not Strip Municipalities of their Authority to Enforce the Act

Section 17(d) permits the Inspector General, with the approval of the Attorney General, to bring an action to recover the amounts set forth in Section 17(c). M.G.L. c. 30B, § 17(d) ("The inspector general shall have authority to institute a civil action to enforce paragraph (c) if authorized by the attorney general."). Nothing in Section 17(d) purports to retract the ability of contracting municipalities to bring their own actions that was plainly granted by Section 17(c), as discussed above. Section 17(d) by its terms grants additional enforcement authority to the Inspector General without undermining the authority already vested in municipalities.

In addition to a statute's plain language, the Supreme Judicial Court has been guided by the statute's policy goals in evaluating the existence of a private right of action. See Everett Town Taxi v. Board of Aldermen of Everett, 366 Mass. 534, 536, 320 N.E.2d 896, 898 (1974) (considering judicial "obligation to construe a legislative act so as to effectuate fully the statutory purpose" in finding private right of action to sue for enforcement of state conflict-of-interest law even in the absence of express statutory language creating such a right) (citations omitted); see also Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 543, 689 N.E.2d. 799, 801 (1998) (concluding that "legislative intent [is] the determinative factor in deciding whether a private cause of action can be implied from a statute"). The public policy goals that underlie the Act support permitting the Town of Rockland to seek recovery of its public dollars as expressly permitted by Section 17(c).

In the words of the Office of the Inspector General, the Act "is based on the premise that fair and open competition for public contracts promotes honesty and accountability in

6

government and protects the taxpayers' interest in securing contracts with qualified vendors on favorable terms."  Janet A. Werkman and Lisa Price, Office of the Inspector General, *Bid Protests Under M.G.L. c. 30B, the Uniform Procurement Act*, originally prepared for <u>Public Procurement Contracts</u> (Massachusetts Continuing Legal Education 1996), http://www.mass.gov/ig/igpubl.htm#code (copy attached as Exhibit 1) at 1.  The Massachusetts Legislature signalled the importance of these interests by including a strict and unusual double-damages provision.  <u>See</u> M.G.L. c. 30B, § 17(c) (contracting governmental body to be paid "double the amount of damages sustained . . . by reason of the violation").  Permitting a contracting party who violated the Act to escape Section 17(c) liability where a contracting municipality is ready, willing, and able to enforce the provision through litigation would undermine the integrity of public funds that the Act seeks to ensure.

For this reason, Section 17(d), which gives the Inspector General additional enforcement authority, should not be viewed as supplanting the right of contracting municipalities to recover damages under Section 17(c).  Section 17(c) and Section 17(d) should be read harmoniously to set forth complementary causes of action that will ensure more widespread recovery of misspent public dollars.  Where, as here, the municipality is engaged in litigation anyway and thereby compelled to defend itself on the basis of the Act's invalidation of the contract at issue, requiring a separate action by the Inspector General to enforce the affirmative-repayment obligations of Section 17(c) would further neither the public interest nor judicial economy.[3]  In other situations,

---

[3] If, as the plaintiff argues, Section 17 restricts enforcement to the Inspector General, it would create the anomalous result that the Inspector General would bring the enforcement action, but the municipality would recover the cost of bringing it.  <u>See</u> M.G.L. c. 30B, § 17(c) (requiring payment of court costs to contracting municipality).  This Court should avoid interpreting the statute to reach such a result.  <u>See</u> <u>Attorney General v. School Comm. of Essex</u>, 387 Mass. 326,

where more than one municipality has entered into invalid contracts or where the contracting municipality does not seek recovery under Section 17(c), the Inspector General may enforce Section 17(c) -- if authorized to do so by the Attorney General -- in furtherance of his mandate to "prevent and detect fraud, waste and abuse in the expenditure of public funds." See M.G.L. c. 12A, § 7.  Allowing either the contracting municipality or the Inspector General to pursue recovery is supported by the plain language of the Act and advances the important public-policy considerations underlying the Act.

## CONCLUSION

For the reasons stated above, the *amici* respectfully submit that Rockland may assert a claim against PSG under M.G.L. c. 30B, § 17(c).

Respectfully submitted,

THOMAS F. REILLY, Attorney General of the Commonwealth of Massachusetts, and GREGORY W. SULLIVAN, as Inspector General for the Commonwealth of Massachusetts,

By their attorney,

THOMAS F. REILLY
ATTORNEY GENERAL


/s/ Juliana deHaan Rice
Juliana deHaan Rice, BBO 564918
Assistant Attorney General
Government Bureau
One Ashburton Place
Boston, Massachusetts 02108-1698
(617) 727-2200, ext. 2062

Dated:  August 18, 2006

---

336, 439 N.E.2d 770, 777 (1982).

**Certificate of Service**

The undersigned counsel hereby certifies that this document filed through the ECF system will be sent electronically to all registered participants and that paper copies will be sent to any nonregistered participants on August 18, 2006.

/s/ Juliana deHaan Rice
Juliana deHaan Rice
Assistant Attorney General