**Massachusetts Office of the Inspector General**

# Bid Protests Under M.G.L. c. 30B, The Uniform Procurement Act

Janet Werkman, Esq., and Lisa Price, Esq.,
Office of the Inspector General

*This article was originally prepared for and appeared in a Massachusetts Continuing Legal Education, Inc. publication, <u>Public Procurement Contracts</u>, 1996. All rights reserved.*

The purpose of this article is to guide procurement officials and local counsel in the assessment of bid protests under M.G.L. c. 30B.[1] Following a discussion of the role of the Office of the Inspector General (OIG) and the legal framework for a civil action challenging a contract award, the article presents an analysis of Massachusetts court decisions interpreting public procurement law. This analysis sets out the principles applied by Massachusetts courts to two of the major issues that lead to bid protests: the adequacy of the specifications used to solicit competition and the discretion of the awarding authority to reject some or all of the bids received.

**M.G.L. c. 30B and the Role of the Office of the Inspector General**

M.G.L. c. 30B, the Uniform Procurement Act, prescribes the procedures to be used by local governmental bodies, including cities, towns, counties, local authorities, and districts, to solicit competition for contracts for supplies and services, to dispose of surplus supplies, and to acquire or dispose of real property.[2] Enacted in 1990, M.G.L. c. 30B was modeled on the American Bar Association's Model Procurement Code. The statute was drafted by the OIG in collaboration with the Massachusetts Association of Public Purchasing Officials, the Massachusetts Association of School Business Officials, the City Solicitors and Town Counsel Association, and others.

M.G.L. c. 30B is based on the premise that fair and open competition for public contracts promotes honesty and accountability in government and protects the taxpayers' interest in securing contracts with qualified vendors on favorable terms. The purpose of the statute is to establish a framework that ensures fair competition with all competitors on an equal footing.

Since the enactment of M.G.L. c. 30B, the OIG has provided extensive training and technical assistance to local governments, and continues to offer regular training programs. The OIG published a manual in 1990, revised in a 1995 edition, entitled *Municipal, County, District, and Local Authority Procurement of Supplies, Services and Real Property*. This manual provides practical advice and step-by-step guidance in following the statutory procedures and is available from the State Bookstore. The OIG also publishes a quarterly newsletter, the *Procurement Bulletin*, which reaches a circulation of more than 2,000 public officials. The OIG fields thousands of inquiries, requests for assistance, and bid protests annually from public officials,

concerned citizens, and vendors. Under its enabling statute, M.G.L. c. 12A, the OIG is required to act to prevent and detect fraud, waste, and abuse in the expenditure of public funds; accordingly, a complaint from any source -- such as a vendor, a concerned citizen, or a public official -- can provide the impetus for a review of the procurement process. The OIG handles all complaints without regard for the standing of the complainant.

The OIG continually assesses its contribution to the integrity of, and public confidence in, state and local government. The OIG is vigilant in detecting fraud, waste, and abuse, but the Office's principal objective is to prevent fraud, waste, and abuse before they occur. The OIG has set an aggressive, proactive prevention agenda reflected in a three-part prevention strategy:

- Capacity building -- providing training and technical assistance to public officials.

- Timely intervention -- intervening in transactions before fraud, waste, or abuse occurs.

- Dissemination of lessons learned -- widely distributing information to public officials to prevent the recurrence of problems we have identified in other agencies and jurisdictions.

**Bid Protests to the OIG**

There are no statutory provisions or regulations establishing an administrative procedure for bid protests under M.G.L. c. 30B.[3] However, in keeping with the Office's prevention agenda, the OIG has developed an informal process to help resolve disputes efficiently and ensure compliance with the law. A protest can be initiated by a phone call or letter from any individual alleging a violation of M.G.L. c. 30B. Upon receiving a bid protest or other complaint, the OIG will contact the public officials responsible for the procurement to request documents or information. M.G.L. c. 12A, §§9 authorizes the OIG to request the assistance of any public official in obtaining documents and information relating to a procurement, and requires every public official to cooperate with such a request.

M.G.L. c. 12A, §§14, and the regulations governing OIG procedures found at 945 CMR 1.04, contain whistleblower protections that require OIG staff to maintain the confidentiality of informants and complainants. For this reason, OIG staff are not permitted to disclose the identity of the person lodging the bid protest or complaint without that person's permission.

OIG staff contact the awarding authority after receiving a bid protest or complaint to discuss the basis for the complaint and all of the relevant facts and issues with the public officials responsible for the procurement. After obtaining all of the relevant documents and information, including any explanation or clarification offered by the public officials, the OIG provides these public officials with an informal opinion as to whether the procurement process complied with M.G.L. c. 30B. To expedite this informal review, the OIG typically handles the inquiry via telephone and fax machine; the OIG does not conduct a hearing. The opinion offered by the OIG at the conclusion of the fact-finding review is advisory and does not have the force of law.

Notwithstanding the fact that the outcome of the OIG's expeditious dispute resolution process is a non-binding opinion, the great majority of bid protests are effectively resolved in this manner. In general, awarding authorities regard the OIG as a useful arbiter and choose to heed the OIG's

advice. If, in the opinion of the OIG, the procurement process failed to comply with the statutory requirements, the OIG may advise canceling the procurement and starting over. If, on the other hand, the problems are flagged at an earlier stage in the process -- before bids have been opened -- it may be possible to preserve the process through the issuance of an addendum. Most protesters also accept the OIG's finding that the procurement process complied with M.G.L. c. 30B and drop the matter rather than pursue the costly avenue of litigation.

**Civil Actions**

Since there is no formal administrative procedure for bid protests, any protester with standing to bring a complaint to Superior Court may do so in the first instance, without resort to the OIG. By the same token, if a disputed award is not resolved by the issuance of an OIG opinion, the protestor may bring the complaint to Superior Court, where the matter will proceed *de novo*.

M.G.L. c. 30B expressly incorporates a rule previously established in a series of Massachusetts decisions interpreting other bidding statutes: any contract entered into in violation of the statute is invalid and payment to the vendor under such an invalid contract is prohibited. M.G.L. c. 30B, §§17. See also *Majestic Radiator Enclosure Company, Inc., v. County Commissioners of Middlesex*, 397 Mass 1002, 1986. A civil action to enjoin the award and performance of a contract is the primary enforcement mechanism for M.G.L. c. 30B and other public bidding statutes. Under Massachusetts law, any aggrieved bidder has standing to bring a civil action challenging the award of a contract in violation of a public procurement law.[4] The protesting bidder need not show that "but for" the awarding authority's failure to comply with the statute, the bidder would have been awarded the contract; the challenging party need only show that it possessed the potential to obtain the contract by virtue of having submitted a bid. *Quincy Ornamental Iron Works, Inc. v. Findlen*, 353 Mass. 85, 87-88 (1967).

An aggrieved bidder will generally attempt to enjoin the contract award. The grant or denial of an injunction is critical to the posture of the litigation, since in most cases the only remedy available to a bidder after the contract has been awarded is recovery of bid preparation costs.[5] The inadequacy of the remedy available at law to an aggrieved bidder has been deemed to constitute "irreparable harm" for purposes of determining that injunctive relief is warranted. The Supreme Judicial Court has opined that once a contract has been awarded, the aggrieved bidder's opportunity for consideration as a bidder is forever lost, and the right to recoup its costs for bid preparation falls far short of being the equivalent of the potential to win the contract in a fair bidding process. *Modern Continental Construction Co., Inc. v. Lowell*, 391 Mass. 829, 837 (1984).

In addition to the liberal standing afforded to an aggrieved bidder, Massachusetts law offers standing to any ten taxable inhabitants of a city, town, regional school district, or district to challenge the award of a contract in violation of a bidding law. Under M.G.L. c. 40, §§53, taxpayers may petition a court to enforce laws relating to the expenditure of their tax money by local officials. Massachusetts courts have determined that the violation of a statute designed to prevent abuse of public funds is, by itself, sufficient harm to justify an injunction in a taxpayer suit. *Edwards v. City of Boston*, 408 Mass. 643, 646-47 (1990). To enjoin a contract award, a court need only find a likely violation of the bidding law. *Id*.

**Assessing the Merits of a Bid Protest**

The manual published by the OIG and the OIG training programs offer advice to help procurement officials to avoid bid protests. This advice is largely based on common-sense rules such as:

- Provide vendors with an adequate description of the supplies or services you need.

- Follow the advertising rules.Use clear, objective evaluation criteria that let vendors know what standards you will use to judge their qualifications and their responses.Play by your own rules; don't change the specifications after the bids have been opened.

Adhering to these basic rules can help awarding authorities steer clear of disputes with vendors. Nonetheless, a bid protest can arise despite the best efforts of procurement officials. An awarding authority faced with a protest must assess the merits of the complaint and respond in a way that is both legally defensible and serves the awarding authority's best interests.

The remainder of this article discusses Massachusetts case law as it applies to problems that frequently give rise to bid protests. The purpose of this discussion is to help procurement officials and local counsel analyze a procurement problem and apply the appropriate legal principle. Much of the case law deals with two major issues that may result in disputes over a contract award: the adequacy of the specifications used to solicit competition for the contract and the awarding authority's discretion to reject some or all of the bids received. The discussion that follows analyzes these two issues and presents the principles expressed by the Massachusetts courts.

**I. Adequate Specifications**

M.G.L. c. 30B requires that contracts valued at more than $10,000 be awarded through either an invitation for bids or a request for proposals (RFP) process. The specific requirements for conducting such a formal competition are found in M.G.L. c. 30B, §§§§5 and 6, respectively. Section 5 sets out procedures for soliciting bids and awarding a contract to the lowest responsive and responsible bidder, while section 6 establishes a process for evaluating competing proposals using comparative criteria and price to select the most advantageous offer. Both of these sections require the solicitation to include a purchase description for the supplies or services sought and all evaluation criteria that will be used to determine the acceptability and suitability of proposed supplies or services, including standards for quality, workmanship, and results of inspections or tests.

A carefully drafted purchase description is a vital element of any M.G.L. c. 30B procurement. The purchase description must contain a detailed description of supplies needed, a clear description of the scope of services and work products required in a services contract, and enough information about the quantities needed, using either actual quantities or the best available estimates, to permit vendors to submit a firm price. The purchase description should also include the schedule for performance, delivery terms, warranty terms, and other required business terms of the procurement. A procurement can be successfully challenged by an aggrieved bidder (or by ten taxpayers) if the purchase description is not sufficiently detailed to enable vendors to submit bids on a common footing.

The purchase description as defined in M.G.L. c. 30B constitutes the specifications upon which

the contract will be based. Adequate specifications for the contract are essential to fair competition. Massachusetts courts have delineated the standards that specifications must meet in a series of decisions interpreting various state and local procurement statutes; the principles set forth in these decisions apply to procurements undertaken under M.G.L. c. 30B, as well as to contracts awarded under other public bidding statutes.

### An awarding authority must specify the quantity and quality of supplies or services needed with as much definiteness as practicable.

This basic principle -- the necessity of adequate specifications to permit fair competition -- was set out in *Sweezey v. Mayor of Malden*, 273 Mass. 536, (1931). In *Sweezey*, the City of Malden solicited bids pursuant to a local ordinance for a street paving contract. The *Sweezey* court found that the City did not comply with the ordinance because the City's specifications for the paving work failed to specify the required grade, quality, and type of material to be used and the manner in which the paving surface was to be laid. The Court invalidated the contract award, explaining that:

> To permit each bidder to furnish his own specifications for the construction of the wearing surface might, and probably would, allow a substantial variance in the manner of construction and its cost. Such a manner of bidding would not result in bids being submitted on any common basis. Where, as here, each bidder is invited to bid upon his own specifications, it is plain that there can be no real competition between such bidders. Such an advertisement not only destroys competition, but gives city officials an opportunity to exercise favoritism in awarding contracts.

*Id*. at 542. To ensure genuine competition, "[t]he advertisement and the plans and specifications must state the quantity and quality of the work required with as much certainty and definiteness as may be practicable." *Id*. at 540.

### An awarding authority may solicit bids on alternative specifications or on a job whose scope is bracketed within well-defined limits.

Another SJC decision, *Devir v. Mayor of Malden*, 277 Mass. 502 (1931), followed closely on the heels of *Sweezey*, and elaborated on the parameters of the requirement for detailed specifications. In *Devir*, another paving contract subject to the same bidding ordinance at issue in the *Sweezey* case was challenged on the basis of the City's use of indefinite specifications. In *Devir*, the City's specifications allowed bidders to bid alternatively on either or both of two different types of specified paving surfaces. In addition, bidders were instructed to submit bids on a per square yard basis and were informed that the City would award a contract to pave any one or more of four specified areas on four different streets. Bidders were free to bid on each of these streets separately or on any combination of the streets named.

The *Devir* decision upheld the contract award, noting that this manner of soliciting bids, which left open alternatives for the type of material and the amount of work, did not *per se* violate the requirement for fair competition on equal footing. Under the facts presented in this case, the Court found that the bidders had an adequate description of the two types of paving surface to permit them to prepare competitive unit prices. In addition, the bidders knew the number of square yards to be paved on each of the four streets, and the minimum and maximum amount of

work to be performed, depending on the City's decision to pave one or all of the streets. The Court found that based on this information, each bidder had an equal opportunity to submit a competitive price.

### An awarding authority may not use open-ended or "problem-oriented" specifications.

The inherent danger in using open-ended specifications was squarely addressed in a landmark Massachusetts procurement case, *Datatrol , Inc. v. State Purchasing Agent*, 379 Mass. 679 (1980). *Datatrol* dealt with a challenge to the award of a contract by the State Lottery Commission for a computer system pursuant to M.G.L. c. 7, §§22, the statute governing the Commonwealth's procurement of supplies. It is noteworthy that the applicable statute consisted of one terse sentence requiring advertisement and the receipt of bids that contained no language requiring detailed specifications. Despite the sparse statutory language, the *Datatrol* court found that the Commission's RFP process violated the legal requirement for open competition because it failed to provide vendors with an adequate description of the desired computer system.

In *Datatrol*, the RFP used by the State Lottery Commission contained a description of the purposes of an On-Line Number Selection Lottery Processing System, the jobs the system would do, and the support services to be furnished by the bidder. The RFP did not contain detailed descriptions of many aspects of the system itself; instead, the specifications for the technical components of the proposed hardware and software were left open. The RFP also asked vendors to specify a proposed business arrangement for the procurement. The Commission characterized its RFP as a "problem oriented bid specification"; that is, it posed a general problem to be solved and asked bidders to supply the specifications for a system that would solve the problem.

The *Datatrol* decision makes it clear that this "problem-oriented" approach to procurement does not satisfy the requirement of fair and open competition for public contracts. *Datatrol* reaffirmed the *Sweezey* principle that specifications must be sufficiently specific to ensure that vendors are competing on a common footing. Noting that M.G.L. c. 7, §§22 did not explicitly require award to the low bidder, the Court explained that the requirement for definite specifications is not dependent upon a statutory low bidder requirement. The rationale for the common footing requirement is not simply to make possible a mathematically precise comparison of bid prices, but also to ensure that proposals solicited through an RFP process can be meaningfully compared and evaluated on the basis of the specified evaluation criteria.

According to *Datatrol*, the point of the common footing requirement is not to ensure such definite specifications that all bidders are bidding on exactly the same thing. The requirement is designed to ensure meaningful, manageable comparison of competing offers. The Court reiterated the rule established in the *Devir* decision that an awarding authority may solicit bids on alternative specifications, or on a job whose scope is bracketed within well-defined limits, as long as the process ensures fair comparison.

### II. An Awarding Authority's Discretion to Reject Bids

Section 9 of M.G.L. c. 30B provides that "[t]he procurement officer may cancel an invitation for bids, a request for proposals, or other solicitation, or may reject in whole or in part any and all bids or proposals when the procurement officer determines that cancellation or rejection serves

the best interests of the governmental body." The procurement officer is required to state, in writing, the reason for a cancellation or rejection. *Id.* [6] On its face, this provision would appear to give awarding authorities a great deal of discretion to determine when to accept or reject bids. However, related provisions within M.G.L. c. 30B and Massachusetts case law clearly limit that discretionary authority.

When an awarding authority solicits bids under M.G.L. c. 30B, §§5, the contract must be awarded to the lowest responsive and responsible bidder. M.G.L. c. 30B, §§5(g). When proposals are solicited pursuant to M.G.L. c. 30B, §§6, an awarding authority must award the contract to the most advantageous proposal from a responsible and responsive offeror, taking into consideration price and non-price evaluation criteria. M.G.L. c. 30B, §§6(g).

**A. Authority to reject a bidder as not responsive**

Section 2 of M.G.L. c. 30B defines a responsive bidder as "a person who has submitted a bid or proposal which conforms in all respects to the invitation for bids or request for proposals." However, M.G.L. c. 30B, §§5(f) provides that "[t]he procurement officer shall waive minor informalities or allow the bidder to correct them." See also M.G.L. c. 30B, §§6(f). Therefore, the determination of a bidder's responsiveness turns on whether a bid deviation is categorized as a minor informality.

Minor informalities are defined within M.G.L. c. 30B as "minor deviations, insignificant mistakes, and matters of form rather than substance of the bid, proposal, or contract document which can be waived or corrected without prejudice to other offerors, potential offerors, or the governmental body." M.G.L. c. 30B, §§2. There are no reported cases interpreting this provision; however, the Massachusetts courts have dealt with the issue of minor informalities in cases involving other public bidding statutes. In these cases, the courts have fashioned rules of decision for determining when an awarding authority may classify a particular bid deviation as a minor informality. These general rules are articulated most succinctly in *Peabody Construction Co, Inc. v. City of Boston*, 28 Mass. App. Ct. 100 (1989). "If a bid violates a statutory requirement in matters of substance the bid must be rejected." *Id*. at 103. In these situations, the awarding authority must reject the bid even where no harm to the public is shown, where the violation benefits the public, or where there is no showing of bad faith. *Id*. (citations omitted). However, if "the deviation from the statutory requirements is minor or trivial, the authority has discretion and may either accept or reject the bid." *Id*. at 104. Finally, when "the deviation [is] not from a statutory requirement but rather from a requirement imposed by the authority . . . the authority has the discretion to accept or reject the bid." *Id*. However, an awarding authority is not obligated to consider a deviation from its own procedural requirements as a minor informality, and may reject a bidder on that basis. *Builders Realty Corp. of Mass. v. City of Newton*, 348 Mass. 64 (1964).

M.G.L c. 30B differs from the public bidding statutes applied in these cases in an important respect. Unlike the other statutes, M.G.L. c. 30B includes a definition of the term "minor informality," and a statutory directive that awarding authorities *must* either waive bid deviations that meet that definition or allow a bidder to correct them.[7] M.G.L. c. 30B, §§§§5(f), 6(f). The cases that have interpreted other bidding statutes and applied the general rules articulated in *Peabody* are helpful to the extent that they give awarding authorities guidance as to what should

and should not be considered a minor informality in the context of a M.G.L. c. 30B case. This section will discuss some of the general principles that can be extrapolated from these cases.[8]

**An awarding authority must reject a bid that fails to meet a substantive statutory requirement.**

In cases involving other public bidding statutes, the Massachusetts courts have held that an awarding authority may not waive a bid deviation as a minor informality when it violates a statutory requirement in matters of substance. In *Modern Continental Construction Co., Inc. v. City of Lowell*, 391 Mass. 829 (1984), the City of Lowell solicited bids for construction of sewer pipelines and two pumping stations. The advertisement for bids stated that bidding would proceed in accordance with both M.G.L. c. 149, §§§§44A-44L and M.G.L. c. 30, §§39M. The plaintiff, who was the third lowest bidder, protested the bid on the grounds that the project should have been bid in its entirety under M.G.L. c. 149, which -- unlike M.G.L. c. 30, §§39M -- requires bidder prequalification. The plaintiff maintained that all bids must be rejected, and the project rebid. One of the City's arguments against mandatory rebidding was that, even if the court were to hold that M.G.L. c. 149 applied, rebidding was unnecessary because the low bidder's qualifications were such that the City substantially complied with the statutory requirement. The court disagreed and held that the statutory requirement for bidder prequalification could not be waived by the City as a minor informality. In *J.D'Amico, Inc. v. City of Worcester*, 19 Mass. App. Ct. 112 (1984), the court reached a similar result. In that case, the City of Worcester solicited bids on a municipal sewer contract. The low bidder submitted a bid deposit in the amount of five percent of the value of its bid, rather than the statutorily required amount of five percent of the value of the proposed work as estimated by the City. The City waived the difference in the amount of the bid deposit as a minor deviation and sought to award the contract to the low bidder. The Appeals Court ruled that the City could not legally waive strict compliance and held that "[t]he 'minor or formal deviation' exception to compliance with competitive bidding statutes does not generally apply to failure by a bidder to comply with a statutory requirement." *Id*. at 115.[9]

While M.G.L. c. 30B does not require either bidder prequalification or a bid deposit, it does require that all bidders submit a certification of good faith, also known as a non-collusion form. M.G.L. c. 30B, §§10. As this is a statutory requirement, the decisions in *Modern Continental* and *J. D'Amico* suggest that the omission of a non-collusion form is not a bid deviation that can be waived by the awarding authority as a minor informality.[10]

**An awarding authority must reject a bid that contains fraudulent representations.**

In a recent Superior Court decision, the court emphasized the statutory requirement that bids must be in all respects *bona fide*. In *ASEC Corp.-Holden Engineering, Inc., Joint Venture v. Mass. Highway Dept.*, 4 Mass. L. Rptr. No. 27, 604 (February 26, 1996), a Massachusetts Highway Department (MHD) bid required the submission of eight "form C's" as part of a bid package. Form C's are forms to be signed under oath before a notary by subcontractors who certify that they are ready, willing, and able to perform services for the bidder. The low bidder filed three form C's with forged signatures, and all were notarized by an absent notary. The plaintiff, an unsuccessful bidder, sought injunctive relief. The MHD took the position that these bid violations were minor deviations. The court disagreed and held that "falsification of

signatures and procurement of false notarizations on the bid documents was, under the circumstances, a matter of substance and not a mere 'minor deviation' which could be waived by the MHD." *Id*. at 606.

> **An awarding authority must reject a bid if it does not conform to the bid specifications in material respects, unless it can be changed without prejudice to fair competition or to the governmental body.**

Under M.G.L. c. 30B, a bidder may not change the price or any other provision of its bid in a manner prejudicial to the interests of the governmental body or fair competition after the bids have been opened. M.G.L. c. 30B, §§§§5(f), 6(f). In *Grande & Son, Inc. v. School Hous. Comm. of North Reading*, 334 Mass. 252 (1956), the Supreme Judicial Court considered the acceptance of a non-conforming bid in the context of another public bidding statute. In that case, the School Housing Committee of North Reading invited bids for a school building contract. The bid specifications stated the statutory requirement that bids include the names of subcontractors and the amounts of their bids. The low bid included a subbid for acoustical plaster mechanically applied rather than for acoustical tile, as required by the bid specifications. Despite its nonconforming bid, the Committee awarded the contract to the lowest bidder, and struck the provision for acoustical tile ceilings from the contract. The plaintiff, who was the second lowest bidder, brought suit. The court ruled that the Committee had no authority to accept an incomplete bid. The court stated that "[t]he provision for rejecting bids is not intended as a device to be adopted as part of the act of awarding a contract so as to justify making a contract different from that submitted to competitive bidding." *Id*. at 258. See also *Sciaba Construction Corp. v. City of Boston*, 35 Mass. App. Ct. 181 (1993). But see *W.J. Manning, Inc. v. Boston Traffic & Parking Comm*., 350 Mass. 24 (1965) (bidder's letter attached to bid, stating his assumption as to the meaning of the word "casualty" in the bid specifications, did not require rejection of the bid where it was clear the bidder intended to conform to the specification, whatever meaning was given to the term).

A recent Superior Court decision dealt with a nonconforming proposal in the context of a contract award under M.G.L. c. 30B. In *Bowman v. Denzil Drewry*, 5 Mass. L. Rptr. 5, 104 (May 6, 1996), the Town of Westborough requested proposals for lease of a municipal golf course restaurant. The RFP specified that the base rent would be subject to an annual increase based on the Consumer Price Index, starting in the second year of the lease. One proposer did not agree to these terms, and instead proposed a flat rent for five years before the escalator provision would take effect. The court held that a proposer's refusal to include the required rent escalator provision in his proposal was not a minor informality. The court stated that "nowhere was it left open for proposals to delete or modify the escalator term"; therefore, the Town had to reject the proposal. *Id*. at 107. The same proposer's hours of operation did not comport with the RFP specifications. The court held that this violation also required the Town to reject the proposal.

These cases articulate the general principle, applicable in all public bidding cases, that there must be conformity in material respects between the scope of work defined in the bid specifications, the bids, and the contracts that are ultimately entered into by the parties.

> **An awarding authority must reject a bid for failure to acknowledge receipt of addenda unless it can be waived without prejudice.**

A common bid deviation that raises special problems for awarding authorities is a bidder's failure to acknowledge receipt of addenda. In some cases involving other public bidding statutes, the courts have held that this lack of acknowledgment constituted a minor informality. In *Grant Construction Co. of R.I. v. City of New Bedford*, 1 Mass. App. Ct. 843 (1973), the City of New Bedford solicited bids for a construction project. The plaintiff, the second lowest bidder, sought to prevent the City from awarding the contract to the lowest bidder because the latter had not formally acknowledged receipt of an addendum to the bid specifications. The court held that, "[i]n light of the small and insignificant cost of the items covered by the addendum, [the low bidder's] failure to acknowledge receipt of the addendum was a minor deviation which did not preclude the city from accepting the bid." *Id*. at 843. See also *Mari & Sons Flooring Co., Inc. v. J.W. Bateson Co.*, 350 Mass. 499 (1966) (failure of subbidder to acknowledge addendum that did not concern the work it was bidding on was a minor deviation that did not require rejection of the subbid.) However, the Supreme Judicial Court reached a different result in another case, *J. & J. Electrical Co. v. Government Center Comm.*, 349 Mass. 172 (1965). In that case, the Government Center Commission sought bids for work on a new city hall building. The plaintiff submitted the lowest subbid for electrical work, but was rejected by the Commission for failure to acknowledge receipt of several addenda. While the addenda altered the cost of the work, the changes in costs were small and uncertain. Nevertheless, the court held that the awarding authority could reject the subbid.

In a M.G.L. c. 30B case, an awarding authority's determination would similarly turn on the specific facts of the situation. An awarding authority would have to determine if acknowledgment of the addenda could be waived, or obtained after the fact, without prejudice to fair competition or the governmental body.

> **An awarding authority must waive, or allow a bidder to correct, bid deviations that are properly determined to be minor informalities.**

As discussed earlier, under M.G.L. c. 30B, the awarding authority is required to waive minor informalities or allow a bidder to correct them. M.G.L. c. 30B, §§§§5(f), 6(f). In cases involving other public bidding statutes, the awarding authority has discretion to reject or accept bids that contain minor deviations. The following is a collection of cases applying both rules in which the Massachusetts courts have found that bid deviations constituted minor informalities.

In *Gil-Bern Construction Corp. v. City of Brockton*, 353 Mass. 503 (1968), the City of Brockton solicited bids for a site preparation contract in connection with the construction of a new high school. The bid specifications required bidders to submit a critical path analysis with their bids. The lowest bidder failed to include the analysis with its bid, but was still awarded the contract. The plaintiff, who was the second lowest bidder, brought suit seeking declaratory relief. The court held that the City could lawfully waive the timely submission of the analysis as a minor informality because it was not required by statute and its omission did not alter the bidder's obligation under the contract.

In *Chick's Construction Co. v. Wachusett Regional School Dist. Comm.*, 343 Mass. 38 (1961), the Wachusett Regional School District Commission sought bids on a school construction contract. The lowest bidder had made no entry for the cost of "rock excavation" on the bid form. The plaintiff, who was the second lowest bidder, brought suit alleging that the bid statute

required all bid forms to be completely filled in, and all incomplete forms to be rejected. The court held that this minor deviation did not require rejection, where it could be construed to mean that the low bidder intended to do the work at no extra charge.

In *Loranger v. Martha's Vineyard Regional High School Dist. School Comm.*, 338 Mass. 450 (1959), the Martha's Vineyard Regional High School District School Committee solicited bids for construction of a school building. The bid specifications requested a bid deposit as required by statute. The instructions to bidders stated that the payee should be the "Martha's Vineyard Regional School District." The low bidder's check was made payable to the "Martha's Vineyard Regional High School Building Committee." The plaintiff, an unsuccessful bidder, brought suit alleging that incorrect payee designation on the winning bidder's bid deposit check mandated rejection of the bid. The court held that the Committee was not obligated to reject the bid on the basis of this minor deviation.

In *J.J. & V. Construction Corp. v. Commissioner of Public Works of Fall River*, 5 Mass. App. Ct. 391 (1977), the City of Fall River solicited bids for a sewer construction project and required the submission of an equal opportunity employment certificate with all bids. The lowest bidder failed to include the certificate. The City permitted late submission of the certificate and awarded the contract to the lowest bidder. The plaintiff, an unsuccessful bidder, brought suit claiming that the winning bidder was not responsive to the bid specifications and should have been rejected. The court held that omission of the certificate could be considered a minor informality that the City had expressly reserved the right to waive.

While there are no reported cases interpreting M.G.L. c. 30B's minor informality provision, there have been several decisions at the trial court level. In *Eldorado Transp. Corp. v. Town of Lexington*, 5 Mass. L. Rptr. No. 8, 173 (May 27, 1996), the Town of Lexington requested proposals for a minibus transportation service contract. An unsuccessful proposer brought suit alleging that violations of M.G.L. c. 30B required rejection of the other two proposers. One of the proposers had failed to submit a sworn financial statement. The court held that the RFP requirements relating to the submission of financial statements are nonstatutory and upheld the awarding authority's decision to waive the submission. Another proposer had typed, rather than signed, his name to the certificate of non-collusion. The court held that "[a] signature consisting of a person's typewritten name is sufficient where it is evident that the person intended the typewritten name to authenticate the paper as his act." *Id*. at 177.

In *Duncan Indus. Parking Control Sys. v. The City of Boston*, Civil Action No. 95-4019 (August 2, 1995), the City of Boston solicited bids for parking meters. The lowest bidder failed to include with its bid a list of all past customers, as required by the bid specifications. The City awarded the contract to the lowest bidder. The plaintiff, who was an unsuccessful bidder, sought declaratory and injunctive relief. The court held that the bidder's failure to include the customer list could be considered a minor informality.

In *Moore v. Town of Chatham*, Civil Action No. 93-182 (April 1, 1993), the Town of Chatham requested proposals for lease/management of a municipal golf course. The Town's RFP required that bidders submit resumes for all staff members with management responsibilities. The selected proposer, who was also the incumbent, did not include the resumes for several staff who had worked at the golf course in previous years. An unsuccessful proposer brought suit alleging

that the selected proposal was not responsive and should have been rejected. The court held that this omission constituted a technical violation that did not require rejection of the proposal.

> **An awarding authority must correct a mistake in a bid when the mistake and the intended bid are clearly evident on the face of the bid document.**

A recent case, *Sciaba Construction Corp. v. City of Boston*, 35 Mass. App. Ct. 181 (1993), dealt with clerical errors in the context of another public bidding statute. In *Sciaba*, the City of Boston solicited bids for repair of a bridge. The bid specifications required that bidders submit separate prices for various categories of work. The lowest bid contained an obvious clerical error for one category of work -- the painting of reflectorized white lines -- but the correct bid price could readily be discerned. The City rejected all bids for the line painting work and awarded the contract to the overall lowest bidder for the remaining categories of work. The plaintiff, who was the second lowest bidder, brought suit seeking injunctive relief. The court held that "[a]bsent other considerations, an obvious clerical error that deceives no one does not require rejection of a bid." *Id*. at 185.[11] See also *DiMinico & Cincotta, Inc. v. Fire Comm. of Boston*, 346 Mass. 766 (1963) (omission of price readily ascertainable from other figures provided by the bidder did not require rejection of bid); *Fred C. McClean Heating Supplies, Inc. v. School Bldg. Comm. of Springfield*, 341 Mass. 322 (1960) (placement of figure under incorrect heading, and omission of figure under correct heading, were obvious clerical errors that did not compel rejection of the bid).

M.G.L. c. 30B essentially adopts the definition of a correctable mistake articulated in this line of cases, and specifies the remedy. M G.L. c. 30B, §§5(f) provides:

> If a mistake and the intended bid are clearly evident on the face of the bid document, the procurement officer shall correct the mistake to reflect the intended correct bid and so notify the bidder in writing, and the bidder may not withdraw the bid. A bidder may withdraw a bid if a mistake is clearly evident on the face of the bid document but the intended bid is not similarly evident.

> However, it is important to remember that the correction or modification of a bid may occur only in the limited circumstances described in the statute. As the court stated in *Bowman v. Denzil Drewry*, 5 Mass. L. Rptr. 5, 104 (May 6, 1996), "[t]he [Uniform Procurement] Act's limited provision for modification of a bid or proposal is not intended as a way to allow a non-responsive . . . proposal to belatedly transform itself into a responsive one." *Id*. at 108.

## B. Authority to reject a bidder as not responsible

An awarding authority must reject a bidder who is deemed not "responsible." Section 2 of M.G.L. c. 30B defines a responsible bidder as "a person who has the capability to perform fully the contract requirements, and the integrity and reliability which assures good faith performance." Awarding authorities are given a great deal of discretion in determining a bidder's responsibility. The general rule is that the determination of a bidder's competence is left to the discretion of the awarding authority, absent a showing that the awarding authority acted illegally, arbitrarily, or in bad faith. See *Catamount Construction, Inc. v. Town of Pepperell*, 7 Mass. App. Ct. 911 (1979).

In *Michael J. Connolly & Sons, Inc. v. Town of Bellingham*, Civil Action No. 95-1311 (August 25, 1995), the trial court addressed the issue of an awarding authority's discretion to determine a bidder's responsibility. In that case, the Town of Bellingham solicited bids on a school bus transportation services contract. The lowest bidder was rejected on the basis of poor references and then sued to enjoin the Town from awarding the contract to another bus company. The court found that the awarding authority's review of the lowest bidder's references was "businesslike, thorough, fair, and consistent with the advertisement for bid."

*Id*. at 8. On these facts, the court applied the rule that "[w]hether a low bidder is 'responsible' is virtually always left to the discretion of the awarding authority ... [t]he court will only intervene if the action of the awarding authority is shown to be illegal, arbitrary, or in bad faith." *Id*. at 7.

While the awarding authority enjoys considerable discretion to set reasonable standards for a bidder's responsibility, the standards must be applied fairly and a decision to reject a bidder for failing to meet the standards must be supported by facts. *Bradford & Bigelow, Inc. v. Commonwealth*, 24 Mass. App. Ct. 349 (1987) describes a set of circumstances in which an awarding authority was found to have acted arbitrarily, capriciously, and in bad faith in disqualifying a bidder as not responsible. In that case, Bradford & Bigelow (B & B), the lowest bidder for a state printing contract, was disqualified based on a determination by the Department of Labor and Industries that the firm did not pay its workers the legally required prevailing wages. The State Purchasing Agent rejected B & B's bid based on the prevailing wage issue and rejected the only other bid received on other grounds. B & B was subsequently determined to be in compliance with the prevailing wage law and reinstated as an eligible bidder.

The State Purchasing Agent then solicited a second round of bids. This time B & B's competitor submitted a lower bid and won the contract award. B & B sued, claiming that its rejection during the first round of bidding was without rational basis. The evidence presented at trial showed that B & B had been disqualified shortly after submitting the lowest bid despite having been certified as paying prevailing wages for the previous ten years. The evidence also showed that the disqualification was based on a determination that B & B, located in Danvers, was required to pay Boston wage rates, despite evidence that prevailing wage rates were based on local conditions and wages. In light of this evidence, the standards appeared to have been applied unfairly.

After concluding that state officials acted arbitrarily, capriciously, and in bad faith, a jury awarded B & B damages in the amount of the profits the firm lost when it was deprived of the contract. On appeal, the court upheld the damage award, ruling that the failure of public officials to consider bids fairly and in good faith will subject the awarding authority to liability for profits lost by the bidder.

### C. Authority to reject all bids

The previous discussion focused on circumstances in which an awarding authority may or must reject one or more bids. In some situations, however, the question is whether to reject *all* bids.

**An awarding authority must reject all bids when the process for soliciting competition has not complied with statutory requirements in matters of substance.**

A clear example of the application of this principle is an awarding authority's failure to comply with bid law provisions that require public notice. In a case involving another public bidding statute, *Phipps Products Corp. v. Massachusetts Bay Transp. Auth.*, 387 Mass. 687 (1982), the court required strict adherence to the advertising rules in the bid process. In *Phipps*, the Massachusetts Bay Transportation Authority (MBTA) sought bids on property it wished to sell. The only bid received was rejected when the MBTA decided to continue to market the property. More than one year after the original deadline for receipt of bids, the MBTA received an offer to purchase from the plaintiff. No further advertisement of the sale had been made, nor had further bids been solicited. A purchase and sale agreement was executed; however, prior to the closing, the MBTA sought to reverse its decision on the basis that it had not strictly adhered to the public bidding laws. The plaintiff brought suit seeking specific performance of the purchase and sale agreement. The court held that the MBTA had not fully complied with the statutory requirement that any sale of real property be advertised for three consecutive weeks. In so holding, the court rejected the argument that the MBTA's continued marketing of the property gave continuing validity to the initial advertisement, and made further advertising unnecessary. The court also rejected the argument that untimely advertising could be characterized as a minor deviation that could be waived by the awarding authority.

In *Five Star Transp., Inc. v. Town of Longmeadow*, Civil Action No. 94-1036 (August 22, 1994), the trial court reached a similar result in a case concerning M.G.L. c. 30B's public notice requirements. In *Five Star*, the Town of Longmeadow School Department solicited bids for school bus transportation service. The plaintiff was the lowest bidder. After the bid opening, but before the contract was executed, the School Department became aware that the invitation for bids had not been posted in accordance with M.G.L. c. 30B, §§5(c). The School Department then cancelled the process and rebid the contract. The plaintiff bid a second time, but was no longer the lowest bidder. The plaintiff then brought suit seeking a declaration that the first bids must be honored. The court held that the awarding authority had properly rejected the first bids and that the statutory requirement of posting notice could not be waived by the awarding authority as a minor informality.

> **An awarding authority may reject all bids when it is in the best interests of the awarding authority**.

In the absence of a statutorily flawed bid process, the limits on an awarding authority's discretion to reject all bids are not as clearly defined. M.G.L. c. 30B gives awarding authorities the right to reject any and all bids when rejection "serves the best interests of the governmental body." M.G.L. c. 30B, §§9. However, awarding authorities are also obligated to award contracts that are properly bid, if the contracts are awarded at all, to the lowest responsible and responsive bidders. M.G.L. c. 30B, §§5(g). In some instances, these statutory provisions may appear to be in direct conflict, as, for example, when an awarding authority wishes to reject all bids and readvertise a contract in an attempt to obtain a better price. A recent Supreme Judicial Court opinion, *Vining Disposal Service, Inc. v. Board of Selectmen of Westford*, 416 Mass. 35 (1993) defines the rule to be applied in this situation.

In *Vining,* the Town of Westford simultaneously solicited separate bids for a recycling contract and a refuse collection contract. The Town received four bids for the recycling contract. The lowest bidder was rejected as not responsive, leaving the plaintiff as the lowest responsive and

responsible bidder. The plaintiff's bid was approximately $5,000 more than the lowest bid. The Town also received five bids for the refuse collection contract. The three lowest bids were rejected as not responsive, and the plaintiff was again the lowest responsive and responsible bidder. The plaintiff's bid was approximately $89,500 more than the lowest bid. The Town decided to reject all bids, and rebid the contract. The Town's stated reasons for its decision were twofold: 1) the price differential between the lowest bids and the plaintiff's, and 2) the principles of fair competitive bidding advanced by M.G.L. c. 30B. In response, the plaintiff brought suit arguing that the Town must demonstrate a factual basis for its decision that rejection of all bids was in the best interest of the Town. Additionally, the plaintiff maintained that the discretion to reject bids on the basis of public interest did not extend to situations where the bids were reasonably priced, and that the Town's apparent intent was simply to try to get a better price for the same work.

The court rejected both of these arguments, stating that the plaintiff was attempting to add language to the statute that the Legislature did not see fit to use. *Id*. at 39. The statute does not require that the procurement officer demonstrate a factual basis for the decision, nor does it limit the authority to reject to situations where bids are unreasonably priced. *Id*. The court stated that legislative intent was to be ascertained from viewing the statute as a whole. *Id*. at 38. The court held that:

> General laws c. 30B "constitute[s] a consistent and harmonious whole, capable of producing a rational result consonant with common sense and sound judgment,". . . if §§5(g) is construed in light of §§9 as requiring that a municipal contract subject to the statute must be awarded to the lowest responsive and responsible bidder *if* it is awarded to anyone, but if the procurement officer concludes in good faith that municipal interests are best served by not awarding the contract to anyone, that is, by rejecting all the bids, the officer may do so and must state his reasons in writing.

*Id*. at 38 (alteration in original) (citation omitted). This decision gives awarding authorities wide latitude to define what action is in the best interest of the governmental body.

A recent opinion of the Massachusetts Appeals Court, *Petricca Construction Co. v. Commonwealth*, 37 Mass. App. Ct. 392 (1994), provides a warning that in certain factual situations, a court may look more closely at an awarding authority's reasons for rejection to determine whether they comport with the facts. In *Petricca*, the Massachusetts Highway Department (MHD) solicited bids for reconstruction of a road and bridge. MHD received five bids, and the plaintiff submitted the third lowest bid. The two lowest bids were rejected, leaving the plaintiff as the lowest responsible and eligible bidder. MHD decided to reject all bids "on account of purported concerns over potential delay of the project and the threat of litigation by all bidders," and to readvertise the contract. The plaintiff brought suit seeking injunctive relief. In a discussion of the merits of the case, the court stated that MHD's decision to rebid "was not based on any abuse of the process, or violation of any of the accepted rationales for rejecting bids, i.e. insufficient funds, ambiguous bid specifications, or new specifications on rebid." *Id*. at 397. Rather, MHD's stated reason for rebidding was the desire to avoid delay and litigation. *Id*. The court noted that MHD's rationale appeared contrary to the realities of the situation, since awarding the contract to the plaintiff would have caused no delay, and litigation was imminent regardless of whether the contract was awarded or rebid.

In another section of the *Petricca* decision, the court offered an interpretation of the bidding statute's provision allowing rejection of bids in the public interest. The court opined that, when interpreting a public bidding statute, equal weight should be given to the statutes' two stated objectives: 1) to create an open and honest competition among all bidders on an equal footing, and 2) to obtain the lowest price. *Id*. at 392. However, the court appeared to focus its discussion on the former objective. The court stated that if there were no restrictions on rejecting bids, "an awarding authority would be free to rebid a contract until a preferred bidder submitted the lowest price, and thwart one of the important legislative goals." *Id*. Regarding the latter objective, the court favorably cited decisions from other jurisdictions, which held that awarding authorities may not reject bids simply to obtain a lower price. *Id*. The court expressed its concern that municipal officials could use the power of rejection to steer contracts to persons of their choice.

The OIG does not read *Petricca* as altering the basic rule articulated by the Supreme Judicial Court in *Vining*: if public officials conclude *in good faith* that the awarding authority's interests are best served by rejecting all bids, they may lawfully do so. *Petricca* is perhaps most helpful in its indication that the court may examine the determination of "best interests" if the court finds circumstances that lead it to question whether public officials have improper motives. While the court in *Petricca* did not expressly find that the MHD acted arbitrarily or in bad faith, the language of the opinion hints at this suspicion. In a short concurrence, Justice Brown's words were less guarded. Justice Brown strongly rebuked the MHD for its decision to rebid the contract when the contract could have been awarded to the plaintiff at less than the MHD's own estimate. He stated that "[i]nstances such as this serve to decrease the public's confidence in governmental agencies and our public servants." *Id*. at 401. The lesson to be drawn from *Petricca* is not that an awarding authority may not reject all bids and readvertise a contract in order to obtain a better price. Rather, *Petricca* is a warning that if the stated reasons for rejection are sufficiently suspect, a court may determine that the awarding authority has overstepped the bounds of its discretion and acted arbitrarily.

---

**ENDNOTES**

[1] A protest may concern an invitation for bids or a request for proposals; this article uses the term "bid protest" to refer to a vendor complaint about either procurement process. For the sake of simplicity, this article also uses the term "bid" to refer to either a bid or a proposal.

[2] M.G.L. c. 30B does not apply to contracts for the design of public works or public buildings, or to construction contracts exceeding $25,000. The state's designer selection law, M.G.L. c. 7, §§§§38A1/2-O, sets out procedures for the procurement of design services for public building projects. Contracts for the construction of public works projects and public building projects are governed by bidding rules found in M.G.L. c. 30, §§39M, and M.G.L. c. 149, §§§§44A - L, respectively.

[3] The OIG is empowered under M.G.L. c. 30B, §§17 to bring a civil action if authorized by the Attorney General to impose fines and penalties on individuals who have violated the statute. The fines and penalties are payable to the awarding authority involved in the procurement.

[4] In the event that the court enjoins an invalid contract award for failure to comply with a bidding

statute, it may issue a declaratory judgment awarding the contract to the protesting bidder, provided that the bidder can support a legal claim to the contract.

[5] In order to recover the profits it lost as a result of being passed over for a public contract, an aggrieved bidder must prove that it was deprived of the contract through some conduct of the awarding authority tantamount to bad faith. *Bradford & Bigelow, Inc. v. Commonwealth*, 24 Mass. App. Ct. 349 (1987).

[6] Other public bidding statutes have similar provisions. See M.G.L. c. 149, §§44E; M.G.L. c. 30, §§39M.

[7] M.G.L. c. 149, §§44E(4), which outlines procedures for the procurement of modular buildings, includes a similar provision.

[8] Several of the cases discussed in this article are trial court decisions. While these cases have no precedential value, they are included here to assist the practitioner.

[9] In *The Middlesex Corp. v. P. Gioioso & Sons, Inc.*, 415 Mass. 1002 (1993), the Supreme Judicial Court suggested that this rule extends to requirements prescribed by either state or federal law.

[10] The OIG is aware of one unpublished, summary decision, issued pursuant to Rule 1:28 of the Massachusetts Appeals Court, which takes the position, arguably in *dicta*, that omission of the statutorily required non-collusion form could be waived as a minor deviation from a statutory requirement. See *Ryder Student Transportation Services, Inc. v. Randolph Public School Comm.*, Civil Action No. 92-1785 (August 2, 1993). However, this opinion is of no precedential value, and it is unclear whether the court would take this position in an unrelated case. In the opinion of the OIG, the better practice is to follow clear legal precedent established by the above-cited appellate decisions and reject any bid that violates the statutory requirement to include a certification of good faith.

[11] The court also noted that the City should not have deleted the line painting work from the contract, citing *Grande & Son, Inc. v. School Hous. Comm. of North Reading*, 334 Mass. 252 , 258 (1956). The court stated "[t]o allow the awarding authority to rely on the clause in the bid document [permitting rejection of bids] to change the scope of the work after the completion of the competitive bidding process would, in our view, open the door for manipulation of bids." *Id*. at 190.

---

**[Massachusetts Inspector General's Home Page]**
**[Massachusetts Home Page]**

*Revised December 30, 1997*