UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROFESSIONAL SERVICES GROUP, INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, GREGORY THOMSON and MICHAEL SAUSÉ, | ) ) ) ) ) |
| TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, | ) ) ) ) |
| Plaintiffs-in-Counterclaim and Crossclaim | ) ) ) |
| v. | ) ) |
| PROFESSIONAL SERVICES GROUP, INC., | ) ) ) ) |
| Defendant-in-Counterclaim, | ) ) |
| and | ) ) |
| MICHAEL SAUSÉ, | ) ) ) |
| Crossclaim Defendant | ) ) |

Civil No. 04-11131-PBS

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR JUDGMENT AS A MATTER OF LAW ON ALL COUNTS</u>**

Plaintiff Professional Services Group, Inc. ("PSG") has moved for judgment as a matter of law on its breach of contract claim against Defendants Town of Rockland ("Town") and Rockland Sewer Commission ("Sewer Commission") (collectively "Defendants") and on all of Defendants' claims. For the reasons discussed below, after more than two weeks of trial and

despite repeated transformations of the theories and bases of their claims in this case, Defendants have failed to prove any affirmative defense to Plaintiff's claim or any of the counts in their counterclaim.  Therefore, the Court should enter judgment as a matter of law in favor of PSG on all counts.

## STANDARD OF REVIEW

Fed. R. Civ. P. 50(a) provides: "If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party …."  Rule 50(a) "allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'"  Weisgram v. Marley Co., 528 U.S. 440, 448 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2521, p. 240 (2d ed. 1995)).

## ARGUMENT

**I.  Defendants Cannot Prove Fraud Based on the Non-Collusion Affidavit, and Have Explicitly Disclaimed Such Fraud as a Basis for Invalidating the Contract**

Defendants now assert that the "factual basis" for the fraud count in their counterclaim is that "PSG committed fraud by submitting a bid and falsely representing in the anti-collusion affidavit that its bid or proposal  has been made or submitted in good faith and without collusion or fraud with any other person."  See Declaration Identifying the Factual Basis for Each Individual Claim (8/6/06) (Docket No. 123) ("Defendants' 8/8/06 Statement"), at 6.  However, Defendants have *explicitly disclaimed* any "fraud in the inducement" theory as a basis for invalidating the 1998 Contract.  See Memorandum of Defendants Regarding Pleading of Fraud (8/18/06) (Docket No. 131), at 2 n.1 ("*[T]he Town hereby states that it does not seek to void the contract on the basis of fraud*" (emphasis added)).

2

Moreover, Defendants cannot assert the non-collusion affidavit as the basis for the fraud count in their counterclaim because it is entirely different from the fraud alleged by Defendants in their Answer and Counterclaim. There, Defendants based their fraud claim entirely upon PSG's conduct in relation to the rebate funds at issue in this case. See Counterclaim ¶ 53 ("In furtherance of its effort to defraud the Town, PSG established unauthorized bank accounts and deposited public funds therein; knowingly failed and refused to rebate to the Town monies due and owing to the Town under Contract No. 2; absconded with Town property upon vacating the Sewer Plant; made unauthorized expenses with public funds; and converted public funds to personal use (collectively the 'Fraudulent Activity').").

For a pleading of fraud, Fed. R. Civ. P. 9(b) requires that "the circumstances constituting fraud … shall be stated with particularity." The purposes of this requirement is, in part, to prevent plaintiffs from "shooting first" and developing their claims later in allegations of fraud. See United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004) (rule purpose includes "prevent[ing] the filing of suits that simply hope to uncover relevant information during discovery" (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996)). The issue is not whether Defendants alleged fraud with sufficient particularity in their Counterclaim; the issue is whether Defendants may now try to prove a fraud that is entirely different from the fraud particularized in their pleading. Although Defendants suggest that Plaintiff has had sufficient notice of the fraud that they now intend to prove from other documents that Defendants have filed in this case, see Memorandum of Defendants Regarding Pleading of Fraud (8/18/06), at 5-6, such a suggestion wrongly implies that parties may ignore Rule 9(b) as long as they can figure out the basis for the fraud alleged at some point before the case goes to the jury, despite any prejudice they might suffer. See Morrison Assur. Co. v. N.

Am. Reinsurance Corp., 588 F. Supp. 1324, 1329 (N.D. Ala. 1984) ("Rule 9(b) limits the right of amendment during trial where fraud is the issue, because fraud must be pled with particularity for the purpose of advising the defendant in advance of trial exactly what the defendant is called upon to defend against."). If Defendants wanted to pursue a different theory of fraud from the one in their Counterclaim, they should have sought leave to amend their Counterclaim.

Apparently, Defendants have attempted to abandon their pleading of fraud either because (1) they are unable to prove PSG liable for the conduct of Sause and Thomson in establishing "unauthorized bank accounts" and making "unauthorized expenses" with the funds therein, or (2) even if PSG were held liable for such fraud, any recovery of damages would be duplicative of amounts that Defendants have recovered separately from the relevant banks. See Nota Constr. Corp. v. Keyes Assoc., Inc., 45 Mass. App. Ct. 15, 20 n.1 (1998) (If a party "has recouped those same losses from others, those sums would be deducted because it cannot recover twice."); see also Fox v. F & J Gattozzi Corp., 41 Mass. App. Ct. 581, 589 (1996) (affirming judgment notwithstanding the verdict on claims with duplicative damages). Either way, Defendants are stuck with the fraud claim as specified in their pleadings.

However, Defendants have presented insufficient evidence to prove PSG liable for the conduct of Sause alleged in connection with that fraud. The only evidence of Sause's intent in establishing "unauthorized bank accounts" and making "unauthorized expenses" with the funds therein was Sause's own testimony that he did so entirely to steal money for his own personal use. See Schlichte v. Granite Sav. Bank, 40 Mass. App. Ct. 179, 182 (1996) (acts done entirely for an employee's own purposes are not within the "scope of employment" for purposes of respondeat superior liability). Therefore, the Court should enter judgment as a matter of law in favor of Plaintiff on Defendants' fraud claim.

4

## II. Defendants Cannot Prove Fraud or Negligent Misrepresentation Based on the Non-Collusion Affidavit

Even if Defendants can now assert a fraud entirely different from that in their pleadings, Defendants have failed to prove the fraud that they now assert. "Under Massachusetts law, to make out a claim for fraud, plaintiffs must show ... that the plaintiff *actually relied*" on a misrepresentation by a defendant. Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 132 (1st Cir. 2006) (emphasis added). In this case, however, the Town and Sewer Commission have presented no evidence of any actual reliance on the non-collusion affidavit that PSG submitted. Seven witnesses from the Town and Sewer Commission have testified at trial, and not one has testified that he or she ever saw or read—let alone relied upon—the non-collusion affidavit in awarding the 1998 Contract to PSG (or in doing anything else, for that matter).[1] Based on this lack of evidence, Defendants cannot meet their burden of proof on an essential element of their claim, or prove that the non-collusion affidavit caused them any damages.

Moreover, to prove a fraud claim, a "plaintiff's reliance on the defendant's false statement must be reasonable and justifiable under the circumstances." Collins v. Huculak, 57 Mass. App. Ct. 387, 391 (2003). Defendants, however, cannot prove justifiable or reasonable reliance on the non-collusion affidavit because their own agent, Gregory Thomson, was an equal partner with Michael Sause in any wrongful conduct that rendered that affidavit false.

Like fraud, negligent misrepresentation requires both actual and justifiable reliance on a misrepresentation. See Sampson v. MacDougall, 60 Mass. App. Ct. 394, 400 (2004) (negligent misrepresentation requires proof that misrepresentation "caus[ed] and result[ed] in pecuniary loss" to plaintiffs "by their justifiable reliance upon" the misrepresentation). Therefore,

---

[1] See Trial Testimony of Lawrence Chafee, William Stewart, Kevin Donovan, Eric Hart, Karen Sepeck, Ann-Marie Hyland, and Gregory Thomson.

5

Defendants' failure to present any evidence of actual or justifiable reliance on the non-collusion affidavit precludes PSG's liability on either claim.

### III. Defendants Have Established No Basis for Finding the 1998 Contract Invalid

The primary issue in this case is whether the 1998 Contract between PSG and Defendants for the operation of Defendants' wastewater treatment facilities was valid. None of the parties disputes that they formed a contract—the only issue is whether Defendants were justified in terminating that contract in 2004. However, because Defendants have established no basis for finding the 1998 Contract invalid, their only defense to Plaintiff's breach of contract claim fails.

#### A. Defendants Have Failed to Prove the 1998 Contract Invalid Under c. 30B

Defendants have failed as a matter of law to establish that the 1998 Contract was invalid under the Uniform Procurement Act, Mass. Gen. L. c. 30B, § 17(b) ("a contract made in violation of this chapter shall not be valid"). Defendants contend that the 1998 Contract was invalid because it was made in violation of c. 30B, § 10, which requires an offeror responding to a request for proposals ("RFP") to certify that the "proposal has been made or submitted in good faith and without collusion or fraud." See § 10. First, however, the plain language of that provision concerns a *proposal*, not a request for proposals ("RFP"). The only evidence in this case in any way suggestive of relevance to § 10 related to Sause's and Thomson's work *on the RFP*. Second, Defendants have presented no evidence that Pat McMahon, who submitted the required certification for PSG, had any knowledge of any conduct that may have rendered the certification false, and have failed to present evidence sufficient to impute any such knowledge of Michael Sause to PSG (or McMahon) on a theory of vicarious liability. Third, § 10 plainly addresses collusion among persons submitting proposals, not between an agent of a company submitting a proposal and an agent of the procuring municipal body.

6

Defendants contend that they also may prove the 1998 Contract invalid based on the requirement that a chief procurement officer must award a contract to a "responsible offeror." See c. 30B, § 2 (defining "responsible offeror"), § 6 (requiring award of contract to "responsible offeror").  However, the relevant provisions of c. 30B only require that, at the time a contract is awarded, a chief procurement officer determine that the offeror bears characteristics that "assure[] good faith performance" of its obligations under the contract.  In other words, an awarding authority cannot award a contract to an offeror that, at the time of the award, does not "assure[] good faith performance" of its obligations under the contract.  See id.  In this case, there is no evidence that the Town failed to meet its obligation under § 6, nor that, at the time the contract was awarded, PSG failed to "assure[] good faith performance" of its obligations under the contract.  At the time that the 1998 Contract was awarded, PSG and its predecessor had been operating the Town's wastewater facilities in good faith since 1982.

Furthermore, Defendants have failed to present evidence sufficient to prove that PSG lacked "the integrity and reliability which assure[d] good faith performance" of its contractual obligations based solely on its alleged vicarious liability for the conduct of Sause: Defendants cannot prove that PSG bore vicarious liability for Sause's conduct, see infra IV., V., or that such conduct would cause PSG to lack "the integrity and reliability which assures *good faith performance*" of its contractual obligations.  See § 2.  All of the evidence at trial concerning PSG's performance of its contract obligations reiterated Defendants' satisfaction with that performance.

Defendants have apparently abandoned their original "proprietary source" theory for the invalidity of the contract under c. 30B, for which there has been no evidence.  See Defendants' 8/8/06 Statement, at 2-5 (identifying bases of c. 30B claims); see also c. 30B, § 14 ("[A]ll

7

specifications shall be written … without … exclusively requiring a proprietary supply or service, or a procurement from a sole source."); Counterclaim ¶ 23 ("As written, the RFP amounted to a proprietary specification …."). Thus, Defendants are left to contend that general "bad faith" is sufficient to invalidate a contract under c. 30B. See Defendants' 8/8/06 Statement, at 2-3. However, Defendants' only support for this contention is caselaw concerning distinct provisions of <u>other</u> statutes applied in very different factual circumstances than those of this case. See id. (citing <u>Bradford & Bigelow, Inc. v. Commonwealth</u>, 24 Mass. App. Ct. 349, 354 (1987); <u>E. Amanti & Sons, Inc. v. R.C. Griffin, Inc.</u>, 53 Mass. App. Ct. 245 (2001)). Consequently, Defendants have failed to establish any basis for c. 30B invalidity of the 1998 Contract.

### B. Defendants Cannot Assert or Prove Any Alternative Basis for Finding the 1998 Contract Invalid, Including Fraud in the Inducement

Defendants may not prove any other alternative affirmative defense to the breach of contract claim because they failed to do so in their Answer and Counterclaim and have never amended that pleading. See Defendants' Answer and Counterclaim at 7-8 (listing affirmative defenses). Fed. R. Civ. P. 8(c) states that any "matter constituting an avoidance or affirmative defense" must be stated in a party's pleading or it is waived. See Rule 8(c). Moreover, Defendants have expressly abandoned fraud and Mass. Gen. L. c. 268A, § 21(a) as affirmative defense to Plaintiff's breach of contract claim. See Memorandum of Defendants Regarding Pleading of Fraud (8/18/06) (Docket No. 131), at 2 n.1 ("*[T]he Town hereby states that it does not seek to void the contract on the basis of fraud …*. Similarly, with respect to Chapter 268A, the Town does not intend to seek to void the contract …." (emphasis added)).

Because they have failed to establish any justification for their termination of the 1998 Contract in 2004, the Court should enter judgment as a matter of law in favor of Plaintiff on Plaintiff's breach of contract claim.

## IV.  Defendants Have Waived All Claims Against PSG Based on Respondeat Superior Liability for Conduct of Michael Sause

The Court should enter judgment as a matter of law in favor of Plaintiff on all counts in Defendants' counterclaim that are based upon Plaintiff's respondeat superior liability for conduct of Michael Sause because Defendants have executed a general waiver of their claims against Sause in this case.[2]

In Massachusetts, "the release of an agent precludes a claim against his principal who is liable solely on the theory of respondeat superior." Elias v. Unisys Corp., 410 Mass. 479, 484 (1991); see also Richmond v. Schuster Express, Inc., 16 Mass. App. Ct. 989, 990 (1983). "[A] covenant not to sue or [a] release will not discharge a vicariously liable party *if the covenant contains an express reservation of rights against that party*." Atlas Tack Corp. v. DiMasi, 37 Mass. App. Ct. 66, 71-72 (1994) (emphasis added).  Such an express reservation, however, must be "*very specific*." See id. (emphasis added); see also Medeiros v. Middlesex Ins. Co., 48 Mass. App. Ct. 51, 55 n.3 (1999) (citing Atlas and noting that "the supposed reservation of rights" at issue did not save vicarious liability claim because it was not "very specific").

On April 25, 2006, the Town granted a general waiver to Sause for its claims against him in this case. See Stipulation By and Between Debtor and Town of Rockland, Massachusetts for Limited Modification of Automatic Stay, Nunc Pro Tunc ("Stipulation"), In re: Michael R. Sause, No. 06-10059-MFW (Bankr. Del. Apr. 25, 2006).  That Stipulation notes:

> **WHEREAS,** the Debtor and Rockland, among others, are parties to a certain civil action pending in the United States District Court for the District of Massachusetts and styled as Professional Services Group, Inc. et al. v. Town of Rockland, et al., Civil

---

[2]  Plaintiff incorporates by reference the memorandum it submitted previously regarding this issue.  See Memorandum in Support re. Motion to Dismiss Defendants Claims Based Upon Plaintiff's Vicarious Liability (7/11/06) (Docket No. 75).

9

> Action No. 04-11131-PBS initiated by summons and complaint on or about May 28, 2004 (the "Civil Action"); and
>
> **WHEREAS,** Rockland holds one or more civil claims against the Debtor that it asserted in the Civil Action (the "Rockland Claims") ….

The Stipulation then states:

> 2. <u>Waiver of Rockland Claims</u>: In exchange for the modifications of the Automatic Stay [in Sause's bankruptcy] provided for herein, Rockland agrees to, and hereby does waive the Rockland Claims, both as to the Debtor and as to the Debtor's estate.

However, the Stipulation contains no express reservation of the right to pursue claims against PSG—let alone a very specific express reservation. At best, the Stipulation contains a vague and general implied reservation of the Town's right to proceed against PSG that must be inferred from the Stipulation as a whole and from the context in which Sause and the Town effected the Stipulation. As such, the Stipulation falls well below the <u>Atlas</u> standard. Defendants have waived every count against PSG in their counterclaim that is based upon PSG's respondeat superior liability for Sause's conduct. See <u>Elias</u>, 410 Mass. at 484; <u>Atlas</u>, 37 Mass. App. Ct. at 71; <u>Medeiros</u>, 48 Mass. App. Ct. at 55 n.3.

Even if Defendants had not waived respondeat superior liability, they have presented no evidence that any of Sause's alleged wrongful conduct was conduct of the kind that Sause was employed to perform, as required for respondeat superior liability. See <u>Wang Labs. v. Bus. Incentives</u>, 398 Mass. 854, 859 (1986). Therefore, the Court should enter judgment as a matter of law in favor of Plaintiff on Count I (fraud), Counts IV, V, and VI (c. 268A), Count VII (c. 30B), Count X (civil conspiracy), and Count XIV (negligent misrepresentation) in Defendants' counterclaim.

## V.    **Defendants Have Failed to Prove PSG Vicariously Liable for the Conduct of Michael Sause**

In addition to waiving its claims based on PSG's respondeat superior liability for Sause, Defendants cannot as a matter of law prove PSG liable for Sause's conduct under an alternative theory of vicarious liability.  An employer may be vicariously liable for the act of an employee on a contract-based theory if the employee had actual or apparent authority to act for the employer.  See Kansallis Fin. Ltd. v. Fern, 421 Mass. 659, 666 (1996); Theo & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 743 (2000).  Defendants have presented no evidence that Sause had actual authority for any of the wrongful conduct alleged.

Furthermore, Sause could not have acted with apparent authority because Gregory Thomson, with whom Defendants themselves allege Sause conspired in all of Sause's alleged wrongful conduct, could not have reasonably believed that Sause was acting with authority from PSG.  See Theo & Sons, Inc., 431 Mass. at 743 ("Apparent authority is created … [where conduct] which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him").  Finally, there has been no evidence that anyone at PSG—other than Sause—was aware of any wrongful conduct by Sause, or that the company in any way approved or ratified his conduct after the fact.

Defendants cannot prove PSG vicariously liable for any of the conduct of Michael Sause, under any theory, and therefore, each of their claims against PSG that is based on Sause's conduct fails as a matter of law.

**VI.    Defendants Have No Right of Action for Their Uniform Procurement Act Claim**

The Court should enter judgment in favor of Plaintiff on Defendants' claim under c. 30B, § 17(c) because § 17(c) provides no right of action for Defendants' claim.[3]

A right of action under a statute may be express or implied. However, "a clear legislative intent is necessary to infer" a cause of action from a statute. Loffredo v. Ctr. for Addictive Behaviors, 426 Mass. 541, 543 (1998); see also Lindsey v. Massios, 372 Mass. 79, 84-85 (1977) (requiring "clear legislative intent to create a cause of action"). Thus, courts should be "reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference." Loffredo, 426 Mass. at 544. A "violation of a statute that leads to a plaintiff's injury may figure as an element in an otherwise available cause of action, rather than … provid[ing] a plaintiff with a new cause of action." Id. (citing Berdos v. Tremont & Suffolk Mills, 209 Mass. 489, 496 (1911)).

In determining whether an implied right of action exists under a statute, a court must "consider whether there is any indication of legislative intent to create or deny" an implied right of action to enforce the distinct rights that the statute creates. See All Brands Container Recovery, Inc. v. Merrimack Valley Distrib. Co., Inc., 54 Mass. App. Ct. 297, 301 (2002). The Uniform Procurement Act provides "no hint" of a right of action for Defendants in this case. See id. The Procurement Act certainly contains no express right of action for their claim. See §§ 17(c), 17(d). Instead, the Act specifically assigns enforcement authority for § 17(c) to the inspector general. See § 17(d). When a right of enforcement "is expressly conferred upon specified public officers," it may be assumed that the Legislature did not intend to create a cause

---

[3] Plaintiff has addressed this issue at length in previous memoranda, which it incorporates here by reference. See Memorandum in Support re. Motion to Dismiss Defendants' Counterclaim Under the Uniform Procurement Act (7/10/06) (Docket No. 73); Brief in Response to *Amici* and Defendants Regarding Uniform Procurement Act Right of Action (8/20/06) (Docket No. 134).

of action for other parties, as well.  See Local 1445, UFCW v. Police Chief of Natick, 29 Mass. App. Ct. 554, 558 (1990); see also All Brands, 54 Mass. App. Ct. at 302 (citing Local 1445, UFCW).  This is because, "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." Loffredo, 426 Mass. at 547 (quoting Transamerica Mtge. Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979)); accord Local 1445, UFCW, 29 Mass. App. Ct. at 558 ("When a statute confers standing in relation to particular subject matter, that statute, rather than more general ideas about standing, governs who may initiate legal action in relation to the subject matter.").

Because the Act provides no right of action, express or implied, to Defendants in this case, they have no basis for their counterclaim under § 17(c) of the Act.

### VII.  Defendants Have Failed to Prove PSG Liable Under § 17(c) of the Procurement Act

As explained above, Defendants have failed to present evidence sufficient to find PSG liable for a violation of any specific provision of c. 30B, including, in particular, the certification requirement of § 10.  See supra III.A.  In addition to precluding the invalidity of the 1998 Contract under c. 30B, this failure precludes any liability of PSG under § 17(c) of c. 30B.

Section 17(c) states that "[a] person who causes or conspires with another to cause a contract to be solicited or awarded in violation of a provision of this chapter" shall be liable.  See § 17(c).  Proof of a violation of a specific provision of c. 30B is plainly and explicitly required under § 17(c).  Therefore, contrary to Defendants' assertion, such liability may not be based merely on some general notion of "bad faith."  See Defendants' 8/8/06 Statement, at 2-3.  Even if Defendants have a right of action under § 17(c), their failure to present evidence sufficient to prove a violation of any specific provision of c. 30B is fatal to their § 17(c) claim.  The Court should enter judgment as a matter of law on that claim in favor of Plaintiff.

**VIII.** **Defendants Have Failed to Prove Any Violation or Damages Under c. 268A**

    **A.** **Defendants Have Presented Insufficient Evidence to Prove Any c. 268A Violation**

Defendants' proof of a violation of c. 268A is limited to conduct that occurred *before* the July 1997 drafting and acceptance of the RFP for the 1998 Contract. Although some violations of c. 268A may, as a matter of law, be "backward-looking," see c. 268A, §§ 3(a), 17(b), Defendants seek as damages under c. 268A "the profits [PSG] earned from the start of the contract in 1998 until its termination in mid-April 2004." See Defendants' 8/8/06 Statement, at 11; see also c. 268A, § 21(b) (allowing damages "in the amount of such economic advantage" as a person has received from a violation of c. 268A). If the "economic advantage" that Defendants seek in this case is all of the profit that PSG received for its performance under the 1998 Contract, then the c. 268A violation that caused those damages must have occurred prior to the award of the 1998 Contract.

Defendants have alleged violations of §§ 2(a), 3(a), and 17(b) of c. 268A. Defendants also have identified the "drafting and acceptance" of the 1997 RFP as the "official act that PSG attempted to influence and reward" in violation of c. 268A. See Defendants' 8/8/06 Statement, at 10. To prove any of the c. 268A violations alleged, however, Defendants must prove that PSG provided, at a minimum, something "of value" to Gregory Thomson. See c. 268A, § 2(a) ("[w]however … corruptly gives, offers, or promises anything of value"); § 3(a) (requiring something "of substantial value"); §§ 1, 17(b) (prohibiting certain "compensation," defined as "any money, thing of value or economic benefit"). Moreover, each of these violations also requires proof of a linkage or nexus "to a particular official act." See Scaccia v. State Ethics Comm'n, 431 Mass. 351, 355-56 (2000); id. (discussing requirement as to §§ 2(a), 3(a)); see also §§ 17(a), (b) (prohibiting compensation in relation to a "particular matter"). Yet, the evidence of

14

conduct that occurred before the drafting of the 1997 RFP is insufficient as a matter of law to meet the requirements for any of the c. 268A violations alleged.

First, Defendants have failed to present evidence sufficient to prove that most of the conduct that occurred before the 1997 RFP constituted providing something "of value" to Thomson. The David Lurie legal advice letter was not something "of value" because its real purpose was to advise Sause whether PSG could hire Thomson while Thomson awaited town meeting approval for the new superintendent position. Moreover, Thomson already knew how to get the job of superintendent because Ann Hyland, the Town's counsel, provided that information to him months earlier—Thomson himself even testified that he did not use, rely upon, or perhaps even see that letter.

Similarly, the OIG seminar that Sause and Thomson attended in May 1997 did not constitute something "of value" that PSG provided to Thomson. The evidence showed that the Sewer Commission, not PSG, paid for Thomson's attendance. Nor did PSG pay for a hotel room for Thomson, who simply stayed in a room in which Michael Sause was already staying. Likewise, PSG paid nothing for Thomson's expenses at the Foxy Lady strip club—an activity that, again, was paid for with stolen rebate funds.

Defendants have also failed to present evidence sufficient to prove any nexus or link between the only remaining evidence of pre-RFP conduct and the "particular official act" of drafting the 1997 RFP: the trip to Miami Beach in 1995 occurred two years *before* the 1997 RFP, and well before Thomson even considered becoming superintendent of the Sewer Commission. Nor was there any testimony from either Sause or Thomson on this critical point. As such, it could not have had any specific link under c. 268A to the drafting of the 1997 RFP. Moreover,

15

this act also fails the "of value" standard because it was paid for with the Town's professional development account—<u>not</u> by PSG.

Finally, even if Defendants were entitled to prove a c. 268A violation in this case based upon the alleged "wining and dining" and travel of Gregory Thomson that occurred *after* the 1997 RFP, Defendants have presented no evidence that PSG, or Michael Sause personally, paid for any of that activity. On the contrary, the evidence showed that the Sewer Commission paid for the WEF conferences, and that stolen rebate money paid for the vacations to Puerto Rico, Cancun, and Las Vegas. As a matter of law, therefore, Defendants' evidence is insufficient to prove any c. 268A violation.

### B. Defendants Have Presented No Evidence of "Economic Advantage" That Resulted from the Drafting and Acceptance of the 1997 RFP

Defendants have not only failed to prove any violation of c. 268A, but have also failed to prove that any of the c. 268A violations alleged resulted in an "economic advantage" to PSG. <u>See</u> c. 268A, § 21(b) (allowing recovery of the "economic advantage" caused by a c. 268A violation). Defendants contend that the "drafting and acceptance" of the RFP—not the award of the 1998 Contract—was the "official act that PSG attempted to influence and reward" in violation of c. 268A. However, Defendants have claimed as damages under c. 268A all of PSG's profits under the 1998 Contract. <u>See</u> Defendants' 8/8/06 Statement, at 10.

Defendants have presented no evidence that the "drafting and acceptance" of the 1997 RFP itself caused any economic advantage to PSG. Even if the drafting and acceptance of the 1997 RFP caused PSG to submit the only proposal in response to that RFP, PSG's status as the only responsive offeror did not guarantee that the contract would be awarded to PSG. <u>See</u> c. 30B, § 6(e)(3) (allowing evaluation of proposals to require revisions of those proposals before contract is awarded), § 9 (allowing chief procurement officer to cancel RFP or reject proposals

16

when in the "best interests" of the town). The only economic advantage to PSG that the "drafting and acceptance" of the RFP, itself, may have caused would be whatever savings PSG achieved in the cost of preparing its own proposal. However, Defendants' failure to present any evidence as to this amount precludes them from recovering damages under c. 268A. See Bond Pharmacy, Inc. v. City of Cambridge, 338 Mass. 488, 493 (1959) (proof of damages requires more than speculation).

**IX.     Defendants Have Presented No Evidence of the Duty of Care Required to Prove Their Negligence Claim**

Defendants allege that PSG was negligent in that it failed, "as a professional manager, to manage the Town's money properly, thus leading to diversion of funds and improper expenditures." See Defendants' 8/8/06 Statement, at 14.[4] However, "[t]o prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care …." Jupin v. Kask, 447 Mass. 141, 146 (2006); see also Remy v. MacDonald, 440 Mass. 675, 677 (2004) ("If no such duty exists, a claim of negligence cannot be brought"). Although "the existence or nonexistence of a duty is question of law," Jupin, 447 Mass. at 146, Defendants have failed to present any basis for defining the existence or scope of a legal duty of PSG "to manage the Town's money properly." See, e.g., Harris v. Magri, 39 Mass. App. Ct. 349, 353 (1995) (stating "general requirement of expert evidence to establish [a failure] to meet the standard of care owed in the particular circumstances" of legal malpractice case (internal quotation omitted)). This failure precludes a finding of negligence in this case and, therefore, the Court should enter judgment in favor of Plaintiff on Defendants' negligence claim.

---

[4] Defendants' current theory of negligence, like the theories of most of their other claims in this case, is entirely different now from when the case began. See Counterclaim ¶¶ 113-116 (alleging that PSG breached duty to Town by "failing to prevent" Sause from engaging in wrongful conduct "in connection with the management, operation and maintenance of the Sewer Plant").

17

## X.    Defendants Have Failed to Prove a Violation of c. 93A

Defendants have also failed to present evidence sufficient to prove that PSG is liable for "unfair methods of competition and unfair or deceptive acts or practices" in violation of c. 93A. See Mass. Gen. L. c. 93A, § 2(a).

As discussed above, Defendants' waiver of PSG's respondeat superior liability precludes Defendants from proving any c. 93A violation against PSG based on the conduct of Michael Sause. See Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass. App. Ct. 86, 96 (1999) (applying respondeat superior "scope of employment" test to c. 93A claim). Therefore, Defendants cannot prove a c. 93A claim based on the same allegations and evidence that they have presented in support of their fraud, c. 268A, c. 30B, civil conspiracy, and negligent misrepresentation claims. Moreover, Defendants have failed to present evidence sufficient to prove that any of PSG's conduct amounted to a c. 93A violation, just as Defendants have failed to present evidence sufficient to prove any of their common law or other statutory claims. See Macoviak v. Chase Home Mortg. Corp., 40 Mass. App. Ct. 755, 760 (1996) (Plaintiff had "no reasonable expectation of proving a violation of c. 93A" because, "[a]lthough a claim under c. 93A goes far beyond the scope of the common law action for fraud, the plaintiff's c. 93A claim is solely based upon his underlying claim for common law fraud," which plaintiff could not prove. (internal quotation omitted)).

The "equitable nature" of c. 93A, § 9 liability is particularly relevant in this case. See Nei v. Burley, 388 Mass. 307, 314 (1983). Defendants' c. 93A claim is based on allegations that an agent of Plaintiff, Sause, conspired with Defendants' own agent, Thomson, to engage in various wrongful conduct. Although an employer may be vicariously liable under c. 93A for the conduct of an employee, there is certainly no evidence in this case, other than the incredible

18

testimony of Michael Sause, that anyone at PSG other than Sause had any knowledge of what Sause was doing or had reason to expect it.  There was no evidence that PSG as an organization, which with its predecessor had operated the Rockland wastewater facilities in Rockland since 1982, sought to do anything other than continue operating Rockland's wastewater treatment facilities in good faith; on the contrary, the only evidence of intentional misconduct concerned Sause's testimony that his goal was to steal as much money as possible from the Town for his and Thomson's own personal uses.  In the circumstances of this case, the Court should enter judgment in favor of Plaintiff on Defendants' c. 93A claim.  See Berenson v. Nat'l Fin. Servs., LLC, 403 F. Supp. 2d 133, 149 (D. Mass. 2005) (Young, J.)  ("circumstances of each case must be analyzed" to determine c. 93A liability).

## CONCLUSION

For all the foregoing reasons, PSG requests that the Court enter a verdict in favor of Plaintiff on Plaintiff's breach of contract claim and on all counts of Defendants' counterclaim.

    Respectfully submitted,
**PROFESSIONAL SERVICES GROUP, INC.**,
By its attorneys,

    /s/ David M. Osborne
Maria R. Durant (BBO # 558906)
David M. Osborne  (BBO # 564840)
Sara E. Noonan (BBO # 645293)
DWYER & COLLORA, LLP
Federal Reserve Plaza
600 Atlantic Avenue, 12th Floor
Boston, MA  02210
(617) 371-1000

Dated:  August 23, 2006

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULES 7.1(A)(2)

I, David M. Osborne, hereby certify that on August 23, 2006, I made an unsuccessful good faith attempt to eliminate and narrow the issues raised in this motion by conferring with opposing counsel.

/s/ David M. Osborne
David M. Osborne

## CERTIFICATE OF SERVICE

I, David M. Osborne, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on August 23, 2006.

/s/ David M. Osborne
David M. Osborne