UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

PROFESSIONAL SERVICES                )
GROUP, INC.,                         )
                                     )
            Plaintiff,               )
                                     )
      v.                             )
                                     )
TOWN OF ROCKLAND, ROCKLAND           )
SEWER COMMISSION, GREGORY            )
THOMSON and MICHAEL SAUSÉ,           )
_____)
                                     )
TOWN OF ROCKLAND, ROCKLAND           )
SEWER COMMISSION,                    )
                                     )
            Plaintiffs-in-Counterclaim   )       Civil No. 04-11131-PBS
            and Crossclaim           )
                                     )
v.                                   )
                                     )
PROFESSIONAL SERVICES                )
GROUP, INC.,                         )
                                     )
            Defendant-in-Counterclaim,   )
                                     )
and                                  )
                                     )
MICHAEL SAUSÉ,                       )
                                     )
            Crossclaim Defendant     )
_____)

**PLAINTIFF'S SECOND PROPOSED JURY INSTRUCTIONS**

Plaintiff Professional Services Group, Inc. ("PSG") submits the following proposed jury

instructions based on revisions to the draft instructions provided by the Court on August 21,

2006.  Plaintiff submits these proposed instructions subject to the Court's ruling on Plaintiff's

Motion for Judgment as a Matter of Law, and reserves the right to amend or supplement these proposed instructions.

**Part II: SPECIFIC INSTRUCTIONS**

**Instruction No. 10 - Scope of Employment**

A corporation is liable for the acts and omissions of its employees in certain circumstances. To prove that PSG is vicariously liable for Michael Sause, Aram Varjabedian, and other employees' acts or omissions, Rockland and the Sewer Commission must prove each of the following:

First: That each of the acts committed by the employee was within the course and scope of employment or agency given to him by PSG, or, if not within the course and scope of such employment or agency, that the act of the employee was later approved by the corporation;

Second: That each of the acts committed by the employee was of the kind which he is authorized by the corporation to perform; and

Third: That the employee committed each of the allegedly improper acts with the intent to benefit the corporation as opposed to himself or someone else.

In order to establish that an act was committed within the course and scope of employment, the evidence must show that the act related directly to the general duties that the employee was expected to perform by the defendant corporation. It is not necessary for the plaintiff to prove that the act was authorized by the corporation formally or in writing. Also, the knowledge of an employee acquired while acting within the scope of his employment is imputed to the employer.

## Instruction No. 11 - Uniform Procurement Act

Let me begin by discussing procurement law. The Uniform Procurement Act, which you have heard referred to as Chapter 30B, requires that a contract be awarded, based on "the most advantageous proposal from a responsible and responsive offeror taking into consideration price and the evaluation criteria set forth in the request for proposals." Mass. Gen. Laws ch. 30B, §6(g).

A "responsive offeror" is one who has submitted a proposal which conforms in all respects to the request for proposals." Mass. Gen. Laws ch. 30B, §3.

A "responsible offeror" is "a person who has a capability to perform fully the contract requirements, and the integrity and reliability which assures good faith performance." Mass. Gen. Laws ch. 30B, §3.

In submitting a proposal, an offeror must certify "under penalties of perjury that this bid or proposal has been made and submitted in good faith and without collusion or fraud with any other person." Mass. Gen. Laws ch. 30B, §10. "Collusion" in this provision refers only to collusion related to a proposal, not collusion related to a request for proposals. "Collusion" also refers only to collusion among persons submitting proposals.

## **Instruction No. 11(a) - Uniform Procurement Act - Invalidity**

The Uniform Procurement Act states that any contract made in violation of the Act is invalid.  Therefore, if you find that PSG made a knowingly false certification that PSG's proposal was made in good faith and without collusion or fraud with any other person, Rockland and the Sewer Commission had the right to cancel the contract because the contract was invalid and Rockland and the Sewer Commission cannot be liable for breach of contract.

If the contract was invalid because it was procured by fraudulent collusion, neither party can be liable for breach of contract, and you must skip over those questions (Questions 2 through 8) on the verdict form.

## Instruction No. 11(b) - Uniform Procurement Act – Damages

In addition to making a contract invalid, the Uniform Procurement Act allows a party to recover damages under certain circumstances.  To receive damages under the Uniform Procurement Act, Rockland and the Sewer Commission must prove that Michael Sause, acting within the scope of his employment and on behalf of PSG, caused or conspired with Gregory Thomson to cause a contract to be solicited or awarded in violation of a provision of the Uniform Procurement Act by causing PSG to knowingly and falsely certify that its proposal was made in good faith and without collusion or fraud with any other person.

If Rockland and the Sewer Commission meet their burden of proof, then you may award the damages caused by the violation.

## Instruction No. 12 - Counterclaim - Fraud

In addition to its claim against PSG for knowingly and falsely making a certification under the Uniform Procurement Act that its proposal was made in good faith and without collusion or fraud with any other person, Rockland and the Sewer Commission have stated a claim that the contract was fraudulently induced in violation of the law.

The term fraud is generally defined in the law as an intentional or reckless misrepresentation of material existing fact made by one party to another to induce the other party to act, and upon which the other party actually and justifiably relies with resulting injury or damage.

In order to prevail on a claim of fraud, Rockland and the Sewer Commission must prove by a preponderance of the evidence each of the following seven elements:

**FIRST:**      that Patrick McMahon made a misrepresentation of existing fact;

**SECOND:**      that the misrepresentation of fact was material;

**THIRD:**      that McMahon made the misrepresentation of fact with knowledge of its falsity or made a false statement of fact recklessly where accurate facts were reasonably available to McMahon;

**FOURTH:**      that McMahon made the misrepresentation with the intention to induce Rockland and the Sewer Commission to act upon it;

**FIFTH:**      that Rockland and the Sewer Commission actually and reasonably relied on the misrepresentation as true;

**SIXTH:**      that Rockland and the Sewer Commission were injured as a result of their reliance; and

**SEVENTH:**      that the PSG employee making the false statement, McMahon, was acting within the scope of his employment and on behalf of PSG.

**Instruction No. 13 - Fraud / Negligent Misrepresentation - Reasonable Reliance**

To prove fraud, Rockland and the Sewer Commission must prove that they relied on the false statement. Furthermore, Rockland and the Sewer Commission must prove that their reliance was reasonable and justifiable under the circumstances.

The Town of Rockland and the Rockland Sewer Commission are not entitled to rely on a representation that they know to be false, or if the falsity of the representation is obvious to them.

The Town of Rockland and the Rockland Sewer Commission cannot reasonably rely on statements that are preposterous or palpably false. Parties claiming justifiable reliance are required to use their senses, and cannot recover if they blindly relied upon a misrepresentation the falsity of which would be obvious if they utilized the opportunity to make a cursory examination or investigation.

To prove fraud, Rockland and the Sewer Commission must also prove that they actually relied upon a statement by PSG that they have proven to be false.

**<u>Instruction No. 15 - Damages for Fraud</u>**

If you find that the contract was induced by a fraud, you must determine what amount of damages were proximately caused by the fraud.  In other words, Rockland and the Sewer Commission must prove the amount of damages which the fraud was a substantial factor in causing.

## Instruction No. 16 - PSG' s Breach of Contract Claim

In order to prevail on its claim of breach of contract, PSG must demonstrate by a preponderance of the evidence that:

(1) A valid agreement existed between the parties;

(2) PSG performed, or was ready, willing, and able to perform its obligations under the contract;

(3) the Sewer Commission failed to perform its obligations under the contract by terminating the contract without a legal excuse; and

(4) As a "natural consequence" of the Sewer Commission' s failure to perform, PSG has suffered damages.

I will now explain each of these elements in more detail.

## Instruction No. 17 - Element One: A Contract

First, PSG must prove that it had a valid contract with the Sewer Commission.  A contract is an agreement between two or more parties creating rights or obligations based on the mutual promises in the agreement.  Here, the parties do not dispute that they entered into a ten-year contract in 1998 in which the Sewer Commission promised to pay for services rendered by PSG, but they do dispute that the contract is valid.

A party to a valid contract may not unilaterally cease to perform its obligations under the contract unless it has a legal excuse.  A party that cancels or ceases to perform its obligations under a valid contract has breached that contract.

**<u>Instruction No. 18 - Second Element</u>**

PSG must prove that it performed its obligations under the contract and did not breach the contract in a material way. Therefore, a breach exists if a party fails to perform an obligation which it has undertaken to perform under a contract. A material breach is one that involves an essential feature of the contract that goes to the heart of the agreement.

A corporation has breached its contract if it failed to perform a material term of its contract regardless of whether the employee was acting within the scope of his employment even if the corporation did not authorize the misconduct.

## **Instruction No. 19 - Implied Covenant of Good Faith and Fair Dealing**

A duty of good faith and fair dealing is implicit in the performance of every contract, even if not stated by the parties or written in the contract.

"The implied covenant of good faith and fair dealing provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."

This duty does not create rights not otherwise provided for in the contract but rather concerns the manner of performance of the contract. The scope of the duty of good faith and fair dealing is only as broad as the contract itself.

In order to prevail on its breach of contract claim, PSG must also prove that it complied with this duty of good faith and fair dealing. A breach of the duty of good faith and fair dealing would also constitute a legal excuse for termination of the contract by Rockland and the Sewer Commission.

**<u>Instruction No. 21 - Third Element</u>**

Next, PSG must prove that the Sewer Commission committed a material breach of the contract.  That is, PSG must prove that the Sewer Commission failed to perform an essential element of its express contractual promise, or failed to comply with its own duty to deal in good faith and fair dealing with PSG, without legal excuse.

In this case, PSG claims that Rockland and the Sewer Commission materially breached the terms of the contract by canceling the contract without legal excuse before the term was over.

**Instruction No. 23 - Damage**

Finally, to find breach of contract, you must find that PSG was harmed by the Sewer Commission' s breach, and compensate PSG for such harm by awarding it damages in an amount that is not speculative.

The fundamental principle of law upon which damages for breach of contract are assessed is that the injured party shall be placed in the same position he would have been in if the contract had been performed.

Thus, if PSG proved that the Sewer Commission breached the contract without legal excuse, the proper measure of damages is the amount necessary to put PSG in a position as good as it would have been in if the Sewer Commission had performed its obligation under the contract. This includes actual losses under the contract, i.e., the amount that the Sewer Commission was reasonably required to pay and has not paid. Here, PSG is asking for only one dollar although it claims it lost more.

## **Instruction No. 24 - Rockland's Counterclaims Against PSG**

In addition to the claims of fraud, Rockland and the Sewer Commission have asserted various counterclaims against PSG.  (1) breach of contract; (2) conflict of interest; and (3) negligent misrepresentation.

### Instruction No. 25 - Breach of Contract

Rockland' s and the Sewer Commission's first claim against PSG is for breach of contract.  In order to prevail on their breach of contract claim, Rockland and the Sewer Commission must prove by a preponderance of the evidence that:

(1) An agreement between the parties existed;

(2) The Sewer Commission performed, or was ready, willing and able to perform, its obligations under the contract;

(3) PSG failed to perform its obligations under the contract;

(4) As a natural consequence of PSG' s failure to perform its obligations, Rockland and the Sewer Commission have been damaged in an amount that is not speculative.

## Instruction No. 26 - First Element

In order to prevail on Rockland's and the Sewer Commission's breach of contract claim, Rockland and the Sewer Commission must prove that there was a valid agreement between the parties supported by valid consideration, that the Sewer Commission was ready, willing and able to perform.  Neither party disputes the existence of the agreement, but Rockland and the Sewer Commission do dispute it was a valid contract.

## <u>Instruction No. 27 - Good Faith and Fair Dealing</u>

Rockland's and the Sewer Commission's breach of contract claim also includes a contention that PSG breached the covenant of good faith and fair dealing.  Both parties to a contract are subject to a covenant of good faith and fair dealing, which provides "that neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract."  If Rockland and the Sewer Commission prove that PSG breached this duty of good faith and fair dealing, they have proven breach of contract.

## Instruction No. 29 - Conflict of Interest: Mass. Gen. Laws ch. 268A

### Introduction

Rockland and the Sewer Commission have asserted counterclaims against the plaintiff PSG under several provisions of Massachusetts General Laws Chapter 268A, commonly known as the conflict of interest statute.  I will now elaborate on these claims.

## <u>Instruction No. 30 - Claim Under Mass. Gen. Laws ch. 268A, § 2(a)</u>

Rockland's and the Sewer Commission's first claim is under § 2(a) of the statute.  In order to prevail on this claim, Rockland and the Sewer Commission must prove by a preponderance of the evidence that:

(1)    Sause, directly or indirectly, corruptly gave, offered, or promised something of value to Thomson;

(2)    When doing so, Sause corruptly intended[1] to influence Thomson in connection with an official act in the drafting and publication of the 1997 RFP;

(3)    That Thomson was motivated by what Sause gave him to perform that official act; and[2]

(4)    That Sause was acting within the scope of his employment and on behalf of PSG.

---

[1] <u>U.S. v. Ferber</u>, 996 F. Supp. 90, 103 (D. Mass. 1997) ("[A] bribery offense under section 2 . . . requires a corrupt intent to give something of value in exchange for specific influence.").

[2] <u>Scaccia v. State Ethics Comm'n</u>, 431 Mass. 351, 356 (2000) ("Bribery also typically involves a quid-pro-quo, in which the giver corruptly intends to influence an official act through a 'gift,' and that 'gift' motivates an official to perform that official act.  In effect, what is contemplated is an exchange, involving a two-way nexus.").

### Instruction No. 31 - Claim Under Mass. Gen. Laws ch. 268A, § 3(a)

Rockland and the Sewer Commission have also brought a separate claim under § 3(a) of the Conflict of Interest Statute.  In order to prevail on this claim, Rockland and the Sewer Commission must prove by a preponderance of the evidence that Sause, directly or indirectly, gave, offered, or promised something of substantial value to Thomson for or because of any specific official act performed or to be performed by Thomson in the drafting and publication of the 1997 RFP.  Rockland and the Sewer Commission must also prove that Sause was acting within the scope of his employment and on behalf of PSG.

The definition of "substantial value" is for you to determine in relation to the facts of this particular case.[3]

Rockland and the Sewer Commission must establish a link between the thing of substantial value given and a specific official act.[4]  An official act is defined as "any decision or action in a particular matter or in the enactment of legislation."[5]  What is given "can either be provided to an official as a reward for past action, to influence an official regarding a present action, or to induce an official to undertake a future action."[6]  However, Rockland and the Sewer

---

[3] Comm. v. Famialetti, 4 Mass. App. Ct. 584, 587 (1976) ("The commission which drafted the legislation says of the subsections which ultimately became §§ 3(a) through 3(d)•`Significant in these subsections is the provision that the thing given must be of `substantial value' .  The Commission concluded that this was a standard to be dealt with by judicial interpretation in relation to the facts of the particular case, and that it was more desirable than the imposition of a fixed valuation formula.  It should be noted that to constitute a criminal act the giving or receiving of the item of such `substantial value'  must be `for or because of an official act.,").

[4] Scaccia v. State Ethics Comm'n, 431 Mass. 351, 355 (2000) ("In light of Sun-Diamond, it is necessary to establish a link between a gratuity and an official act.") (citing United States v. Sun-Diamond Growers of Cal., 526 U.S. 398, 414 (1999)).

[5] Mass. Gen. Laws ch. 268A, § 1(h).

[6] Scaccia, 431 Mass. at 356.

22

Commission must prove a link between what Sause gave Thomson and Thomson's performance of a particular official act, not just undefined or generalized action.[7]

---

[7] Scaccia, 431 Mass. at 356 ("Therefore, in order . . . to establish a violation of G.L. c. 268A, § 3(a) and (b), there must be proof of linkage to a particular official act, not merely the fact that the official was in a position to take some undefined or generalized action, such as holding a hearing on proposed legislation that, if passed, could benefit the giver of the gratuity.").

**<u>Instruction No. 32 - Damages - Chapter 268, §21(b)</u>**

If PSG violated the conflict of interest law and in doing so acted to its economic advantage, Rockland and the Sewer Commission may recover damages in the amount of PSG's economic advantage that was caused by the drafting and publication of the 1997 RFP, or $500, whichever is greater.

## Instruction No. 33 - Negligent Misrepresentation - General

The Town of Rockland and Rockland Sewer Commission have also brought a claim against PSG for negligent misrepresentation in certifying a lack of collusion in PSG's proposal.

To prove PSG liable for negligent misrepresentation, Defendants Rockland and the Sewer Commission must prove each of the following elements by a preponderance of the evidence:

**FIRST:**       That Patrick McMahon made a false statement to the Defendants;

**SECOND:**   That this statement concerned some fact that a reasonable person would consider important to a decision that the Defendants were about to make;

**THIRD:**      That when McMahon made the false statement, McMahon negligently failed to determine whether it was true or false;

**FOURTH:**    That McMahon made the false statement with the intention that the Defendants would rely on that statement in making their decision;

**FIFTH:**        That in making their decision, Rockland and the Sewer Commission did in fact rely on the false statement as true;

**SIXTH:**        That the Defendants' reliance on the false statement was reasonable under the circumstances;

**SEVENTH:**   That the Defendants suffered some financial loss as a result of relying on the defendant' s false statement; and

**EIGHTH:**     That McMahon was acting within the scope of his employment and on behalf of PSG.

A person acted negligently in making a statement if he or she made a statement about an important fact without using the amount of care a reasonable person would use in those circumstances to see that what he or she said was true.

To prove a claim of negligent misrepresentation, Rockland and the Sewer Commission must also prove that they both actually and justifiably relied on a misrepresentation.

## Instruction No. 33(a) - Damages

If you find PSG liable for a material negligent misrepresentation, answer Question 13 yes.  You must then determine the amount of damages proximately caused by the negligent misrepresentation.

Respectfully submitted,

PROFESSIONAL SERVICES GROUP, INC.,
By its attorneys,

_____/s/ David M. Osborne_____
Maria R. Durant (BBO # 558906)
David M. Osborne  (BBO # 564840)
Sara E. Noonan (BBO # 645293)
DWYER & COLLORA, LLP
Federal Reserve Plaza
600 Atlantic Avenue, 12th Floor
Boston, MA  02210
(617) 371-1000

Dated:  August 23, 2006

## CERTIFICATE OF SERVICE

I, David M. Osborne, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on August 23, 2006.

_____/s/ David M. Osborne_____
David M. Osborne