UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROFESSIONAL SERVICES GROUP, INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, GREGORY THOMSON and MICHAEL SAUSÉ, | ) ) ) ) ) |
| TOWN OF ROCKLAND, ROCKLAND SEWER COMMISSION, | ) ) ) |
| Plaintiffs-in-Counterclaim and Crossclaim | ) ) ) ) |
| v. | ) ) |
| PROFESSIONAL SERVICES GROUP, INC., | ) ) ) ) |
| Defendant-in-Counterclaim, | ) ) |
| and | ) ) |
| MICHAEL SAUSÉ, | ) ) |
| Crossclaim Defendant | ) ) |

Civil No. 04-11131-PBS

**OPPOSITION BY PLAINTIFF PROFESSIONAL SERVICES GROUP, INC.
TO DEFENDANTS' ATTORNEYS' FEE PETITION**

Plaintiff Professional Services Group, Inc. ("PSG") submits this Opposition in response to the Attorneys' Fee Petition (Docket No. 193) of Defendants Town of Rockland and Rockland Sewer Commission (collectively "Rockland"). Rockland has submitted a request for fees and costs that is entirely unreasonable and unjustifiably disproportionate to the effort required for the

single successful theory of Rockland's c. 93A claim, and to the result achieved on that claim. From the outset of this litigation, Rockland has at every step engaged in an expansive, aggressive, and almost entirely unsuccessful litigation strategy, aimed at recovering a windfall from PSG. Now Rockland attempts in the Fee Petition to further this effort by inappropriately converting the whole case into one massive effort at "proving corruption." See Fee Petition at 4. In doing so, Rockland misconstrues and misapplies the factors for consideration in determining a "reasonable" attorneys' fees award under c. 93A. See Linthicum v. Ambrichault, 379 Mass. 381, 388-89 (1979).

As the Court is aware, "[t]he amount of reasonable attorneys' fees under c. 93A is within the broad discretion of the trial judge." DiMarzo v. Am. Mut. Ins. Co., 389 Mass. 85, 106 (1983). In consideration of the factors set forth below, this Court should exercise its discretion by substantially reducing the $635,926 in fees and $32,605.50 in expenses that Rockland requests.

**I.    PSG Is Not Responsible for Rockland's Expansive, Aggressive, and Almost Entirely Unsuccessful Litigation Strategy**

**A.    Rockland—Not PSG—Needlessly and Unsuccessfully Expanded the Scope of This Case**

Rockland's assertion that this matter constituted a "brazen ... litigation onslaught against the Town" by PSG is disingenuous. See Fee Petition at 4 n.3. It was Rockland—not PSG—that exploded the scope of this litigation and injected into this case multiple claims, issues, and theories, none of which were successful before the jury and most of which were unsuccessful in the c. 93A claim. Rockland easily could have engaged in "a much more focused action .... [that] would have required far less effort than was expended here," and should not be rewarded for its choice to the contrary. Sorenson v.

2

H&R Block, Inc., 2005 WL 2323196, at *5-6 (D. Mass. 2005) (Woodlock, J.); see also id. (noting, in regard to 93A attorneys' fees request, that "efforts for which plaintiff's attorneys now seek payment were not necessary to advance the simple, modest claim ultimately successful" and awarding only a fraction of the attorneys' fees sought); Industrial Gen. Corp. v. Sequoia Pac. Sys., 849 F. Supp. 820, 826 (D. Mass. 1994) (Stearns, J.), rev'd on other grounds, 44 F.3d 40 (1st Cir. 1995) (decrying c. 93A case that was "disturbingly overlawyered" and accordingly cutting fees and costs requested by 84%).

      Rockland asserted a total of 14 counts against PSG, including nine common law counts and four other statutory counts, in addition to the c. 93A count, and pursued each of those claims to the fullest. See Rockland's Answer and Counterclaim (Docket No. 11). Although the Court did not submit all of these claims to the jury, Rockland never relented in pursuing each of them. See Town of Rockland's and Rockland Sewer Commission's Proposed Jury Verdict Form (Docket No. 129) (Aug. 18, 2006) (proposing, after 2 weeks of jury trial, questions to jury regarding Uniform Procurement Act claim (with 6 categories of potential damages), breach of contract claim (5 categories), fraud claim (7 categories), civil conspiracy claim (7 categories), negligent misrepresentation claim (5 categories of damages), 4 different theories of Conflict of Interest Statute violations, and 2 theories of negligence (3 categories of damages each)). A simple review of the Special Verdict Form that the Court submitted to the jury, for example, shows the extent to which the issues in this litigation, from the filing of Rockland's multiple claims to the rejection, by the jury, of every claim submitted to it were driven by Rockland's aggressive strategy. See Special Verdict Form (Docket No. 149) (question 1(a). "Did the Town of Rockland prove ...?"; 1(b). "Did Rockland prove ...?"; 1(c). "Did Rockland prove ...?"; "Did

Rockland prove ...?"; 8(a). "Did Rockland prove ...?"; 8(b). "Did Rockland prove ...?"; 11. "Did Rockland prove ...?"; 12. "Did Rockland prove ...?").

PSG should not bear the burden in attorneys' fees and costs of Rockland's needlessly expansive and aggressive strategy. As Judge Woodlock has explained in examining a similarly over-inclusive c. 93A fee petition:

> [P]laintiffs' choice to press numerous unsuccessful claims not only increased costs to the extent it was necessary to research, brief, and conduct discovery on issues ultimately unconnected to the award, that choice also needlessly increased the costs associated with its successful claims.... Plaintiffs should not be permitted to benefit from that choice to the extent the decision needlessly prolonged the case.

Sorenson, 2005 WL 2323196, at *8; cf. Arthur D. Little, 995 F. Supp. at 223 (approving request for 93A fees for opposing certain counterclaims because losing party had "expanded exponentially the monetary stakes of this litigation by pressing the flip side of ADL's claims through its counterclaims").

Moreover, this was hardly the "David versus Goliath battle" that Rockland asserts it was. See Fee Petition at 4. The effort that Rockland's counsel expended in this case, according to the Fee Petition, and the size of the fee request belie any such assertion. Rockland at no time appeared disadvantaged or hobbled by a lack of resources in this case in pursuit of Rockland's multiple claims against PSG.[1] On the contrary, Rockland had unlimited access to both Gregory Thomson and Michael Sause, the primary witnesses in this case, both of whom were unavailable to PSG's counsel prior to trial. See id. at 5, 11, 12 (describing Sause's and Thomson's

---

[1] As a result of settlements totaling $410,000 from Wainwright Bank and North Abington Cooperative Bank, Rockland presumably had resources sufficient to fund this litigation. See Trial Ex. 242 (correspondence regarding $220,000 settlement from Wainwright Bank), 243 (correspondence regarding $190,000 from North Abington Cooperative Bank).

4

cooperation with Rockland's counsel); D'Alcomo Aff. (attached to Fee Petition) at 6 (same). Rockland thus had an enormous advantage in pressing its multiple claims against PSG.

Rockland's strategy in this case was not only needlessly expansive and aggressive: it also was an almost complete failure. See Linthicum, 379 Mass. at 388-89 (listing "the result obtained" among factors to consider in awarding c. 93A attorneys' fees). The jury rejected every one of Rockland's multiple statutory and common law counts. Thus, as to Rockland's 13 non-93A counts in this case, Rockland's "[s]ubstantial efforts" were "largely for naught." Sorenson, 2005 WL 2323196, at *8; see also id. (acknowledging that "[s]ubstantial efforts were undisputably expended in this case" on "complex legal issues" but were largely unsuccessful).

### B. Even on Its 93A Claim, Rockland Succeeded Only on a Single, Barely Asserted 93A Theory, Despite Taking a "Kitchen Sink" Approach

As with its multiple common law and other statutory claims, Rockland took a "kitchen sink" approach to its c. 93A claim. From the close of the jury trial in August 2006, Rockland's counsel took five months to compose "Proposed Findings of Fact, Rulings of Law and Conclusions" on Rockland's c. 93A claim. See Docket No. 165, attach. 1 (hereinafter "Rockland's 93A Filing"); see also Electronic Order Granting Rockland's Motion for Extension of Time for Filings in Connection with 93A Claim (Jan. 12, 2007) (the Court inquiring "Why is this taking so long?"). When finally completed, Rockland's 93A Filing stretched to 90 single-spaced pages.

Within those 90 single-spaced pages, Rockland argued its c. 93A claim under a number of different theories in the hope that something would stick. See Rockland's 93A Filing at 39-65; see also id. at 39-52 (alleging PSG violated c. 93A by "facilitating misuse and embezzlement" by Thomson of the funds in rebate accounts); id. at 53-55 (alleging PSG violated c. 93A by facilitating diversion of funds using third-party checks); id. at 56-59 (alleging PSG

5

violated c. 93A by creating a "professional development account" to hide monies from Rockland); id. at 24-25 (alleging PSG violated c. 93A by submitting false affidavit of non-collusion to Rockland). Even after the jury verdict rejected all of Rockland's multiple jury claims, Rockland still pursued theories of c. 93A recovery based on theories that the jury had rejected. See Memorandum & Order (Sept. 26, 2007) (Docket No. 185) (hereinafter "Sept. 26 Order") at 30 (stating that Rockland was pursuing multiple "theories of Chapter 93A liability ... derivative of state law claims rejected by the jury," such as "claims that the PSG certification was fraudulent or that this certification was a negligent misrepresentation"). Rockland thus continued to seek, on its c. 93A claim, the windfall that the jury had denied it.

Yet, despite its expansive efforts, Rockland succeeded only on one limited theory of c. 93A liability that Rockland had barely addressed in the 93A Filing. See id.; see also Rockland's 93A Filing at 75. The Court held that PSG violated c. 93A by aiding and abetting a breach of fiduciary duty by Rockland's employee, Gregory Thomson. See Sept. 26 Order at 22-23, 30. In reaching this conclusion, the Court rejected all other asserted bases of 93A liability, including all of Rockland's many c. 93A theories related to the misuse of rebate funds and bank accounts. See id. at 25, 33-34; see also Rockland's 93A Filing at 39-65. Thus, relative to the multiple theories of recovery that Rockland asserted, the Court's Order regarding Rockland's c. 93A claim was substantially limited. Compare Rockland's 93A Filing at 39-65 with Sept. 26 Order at 22-23, 30.

The damages that the Court awarded under c. 93A, compared to the c. 93A damages that Rockland sought, indicate further the extremely limited nature of Rockland's c. 93A success. Rockland sought over $2.0 million in preliminary 93A damages. See Rockland's 93A Filing at

88-89.  Yet the Court awarded Rockland only $116,250 in damages (before doubling).  See Sept. 26 Order at 34.  In other words, Rockland received only 5% of the damages sought.[2]

Moreover, both this Court and the jury have previously found that Rockland shared in responsibility for much of the conduct that Rockland attempts, in its Fee Petition, to attribute solely to PSG and the c. 93A claim (and for which Rockland is trying to make PSG pay).  In the c. 93A Order, this Court concluded that "the Sewer Commission is not without fault" for Gregory Thomson's and Michael Sause's misuse of rebate accounts—an issue that consumed a substantial majority of the jury trial in this matter, as well as most of Rockland's asserted theories of c. 93A liability.  See Sept. 26 Order at 33; Rockland's 93A Filing at 39-65.  The jury similarly recognized Rockland's share of the blame for the rebate accounts—and for practically everything else at issue in this case—by rejecting all of Rockland's claims and, in the Court's words, "saying a pox on both your houses."  See Sept. 26 Order at 26.  Even the theory on which the Court found PSG liable under c. 93A—aiding and abetting Thomson's breach of his fiduciary duty—indicates that Rockland's own employee was primarily responsible for the conduct at the root of PSG's 93A liability.[3]  See id. at 23; cf. Fee Petition at 26 (asserting incorrectly that "the Town succeeded in establishing ... that PSG ... was the wrongdoer, *not the Town*" (emphasis added)).  Such findings are hardly a "reasonable" foundation for Rockland to

---

[2] These figures do not account for the Court's doubling of 93A damages, where Rockland had sought treble damages.  See Arthur D. Little Int'l, Inc. v. Dooyang Corp., 995 F. Supp. 217, 224 (D. Mass. 1998) (Saris, J.) (recognizing that the doubling versus trebling of damages is a distinct issue).

[3] Notably, many of the "complicating" factors in Rockland's "fact-gathering effort" relate entirely and exclusively to factors under the control of Rockland and its employee Thomson. See Fee Petition at 5 (listing among the "hurdles facing the Town" that "[t]he Rockland Sewer Commission ... consists of three elected, part-time commissioners, and there was only one staff person and thus minimal record-keeping," that Thomson "left ... papers in disarray," and that "Thomson ... had not used a computer").

assert that PSG should pay for any amount close to <u>all</u> of Rockland's fees and costs for the c. 93A claim, let alone for practically everything else in this case.

### C. Rockland Should Not Be Rewarded for Its Failed & Excessive Strategy

An "attorney's fees award should ... eliminate any award for legal services rendered in connection with unsuccessful claims." <u>Nasco, Inc. v. Public Storage, Inc.</u>, 127 F.3d 148, 154 (1st Cir. 1997) (addressing c. 93A attorneys' fees awards (citation omitted)). Thus, Rockland's "effort expended on ... unsuccessful common law [and statutory] claim[s] brought in concert with a successful Chapter 93A claim should not be compensated." <u>Industrial Gen. Corp.</u>, 849 F. Supp. at 826; <u>see also</u> <u>Twin Fires Invest., LLC v. Morgan Stanley</u>, 445 Mass. 411, 431 (2005) (affirming 93A attorneys' fees award that "did not award fees that [the trial judge] estimated the plaintiffs incurred in presenting ... theories on which the plaintiffs did not prevail").

Even where courts have acknowledged that interconnected facts do not require c. 93A fee apportionment, those courts have rejected efforts at using c. 93A fee awards to reward such aggressive and unsuccessful efforts on non-c. 93A claims. <u>See</u> <u>id.</u>; <u>see also</u> <u>Nasco</u>, 127 F.3d at 154; <u>Sorenson</u>, 2005 WL 2323196, at *6; <u>Polycarbon Indus., Inc. v. Advantage Eng'g, Inc.</u>, 260 F. Supp. 2d 296, 308-09 (D. Mass. 2003) (Swartwood, M.J.) (concluding "as an initial determination" that prevailing 93A party could "recover, at most, one half" of the attorneys' fees and costs sought because party's 93A and common law claims "were based on several theories of liability as to which they/he did not prevail"). Likewise, as this Court has previously noted, 93A fees cannot reward the unsuccessful aspects of an only narrowly successful 93A claim. <u>See</u> <u>Arthur D. Little</u>, 995 F. Supp. at 224 (analogizing part of case "to cases that have reduced fee

awards for unsuccessful portions of 93A claims"); id. (cutting amount of fees related to unsuccessful parts of 93A claim in half).[4]

Rockland's near complete failure is thus a far cry from the "virtually total victory" that supported a significant attorneys' fees award in Arthur D. Little, 995 F. Supp. 217, for example. See Linthicum, 379 Mass. at 388-89 (listing "the result obtained" among factors to consider in awarding c. 93A attorneys' fees). Given the near total failure of Rockland's aggressive litigation strategy, awarding an amount of attorneys' fees anywhere near that requested would inappropriately "permit the tail to wag the dog" in this case. Equitable Life Assurance Soc'y v. Porter-Englehart, 867 F.2d 79, 91 (1st Cir. 1989); see also id. (rejecting attorneys' fees award that would "produce an undeserved windfall"). Even if, as courts have previously acknowledged, the purpose of a c. 93A attorneys' fees award is, in part, to serve as a public deterrence for unfair and deceptive trade practices, such a goal could be "realized with substantially greater efficiency in this case." See Sorenson, 2005 WL 2323196, at *9.

II.     **Contrary to Rockland's Assertions, Rockland's Multiple Claims in This Case Were Not "Inextricably Intertwined"**

In its quest for an "undeserved windfall," Rockland apparently includes in the Fee Petition nearly all of its fees and costs associated with this matter. See Equitable Life, 867 F.2d at 91. Rockland does so on the mistaken theory that the c. 93A claim was "inextricably intertwined" with the common law and statutory counts advanced. See Fee Petition at 8. Although there was, certainly, some relation among the facts that underlay some of Rockland's claims, Rockland disingenuously asserts that the whole case was one undifferentiated effort at "proving corruption." Id. at 4.

---

[4] In Arthur D. Little, in contrast to this case, plaintiff had won a jury verdict on its common law contract claim. 995 F. Supp. at 219.

In examining a c. 93A fee petition, "a court may isolate and address claims arising out of the same facts." Sorenson, 2005 WL 2323196, at *6. This principle applies despite the rule that 93A does not require apportionment on interconnected claims. The "interconnected" rule simply does not justify awarding attorneys' fees for an entire case when distinctions among claims, and the evidence supporting those claims, can be drawn. See id.; see also Industrial Gen. Corp., 849 F. Supp. at 826. Under Rockland's theory, in contrast, a plaintiff with a single colorable claim "would have no disincentive from driving up attorney's fees through allegations and legal theories of dubious merit that can be connected, in whatever an attenuated manner, to the core set of facts underlying the valid claim." Sorenson, 2005 WL 2323196, at *6.

In the Order regarding c. 93A liability, for example, this Court has already recognized a clear distinction among Rockland's various claims and theories of recovery. The Court drew a definite line between issues related to the procurement process and everything that came "later"—including, most notably, issues related to PSG's alleged "failure to oversee the rebate accounts." See Sept. 26 Order at 25 (distinguishing between procurement process and "[l]ater" events); id. at 33 (denying c. 93A liability based on "failure to oversee the rebate accounts"); see also id. at 30 (distinguishing successful theory of 93A liability from "state law claims rejected by the jury"). The "rebate accounts" issue constituted well over half of the time at the jury trial and, as noted above, was the basis for most of Rockland's theories of recovery under c. 93A. Thus, by any reasonable evaluation, the substantial majority of this case related to that single distinct and unsuccessful issue alone.

Additionally, the "relevant interconnectedness" that may preclude apportionment under c. 93A must be "more than factual." Sorenson, 2005 WL 2323196, at *6; see also Polycarbon Indus., 260 F. Supp. 2d at 308 (noting that 93A claim and common law claims "involved

essentially the same underlying facts *and legal analysis*" (emphasis added)); Arthur D. Little, 995 F. Supp. at 223 (rejecting reduction of fees for non-93A work because work was "factually *and legally* interconnected" (emphasis added)). In this case, in contrast, Rockland advanced a number of statutory and common law claims that were "not necessary" to the single, ultimately successful theory of c. 93A liability, and the legal elements of which were entirely distinct from those of the 93A claim. See Sorenson, 2005 WL 2323196, at *6. Although Rockland would like to lump all of its claims under the heading of "proving corruption," neither the facts nor the law support that effort.

### III.  The Fees Sought Are Entirely Disproportionate to the Damages Awarded

#### A.  Rockland Unjustifiably Seeks an Amount of Attorneys' Fees Three Times as Large as the Total Doubled Damages in this Case

"[O]rdinarily, one of the factors to be considered in an award of attorney's fees is the amount of the over-all recovery." Bertassi v. Allstate Ins. Co., 402 Mass. 366, 373 (1988) (examining 93A award); see also Sorenson, 2005 WL 2323196, at *7 (noting the "striking disparity between the fee request" and the damages awarded, and citing multiple cases in which fees were proportional to—and considerably less than—damages awarded). In seeking attorneys' fees and costs for practically all of Rockland's efforts in this case, however, Rockland's Fee Petition proposes an award that is roughly three times as large as the total amount of damages awarded (even after the Court-ordered doubling). Rockland's request is thus entirely disproportionate to the "over-all recovery" in this matter.

Another factor in calculating a reasonable 93A fee award is the "amount of awards in similar cases." Linthicum, 379 Mass. at 388-89. In contrast to Rockland's request, in cases before other judges of this Court that have involved damages approximately in the range of those awarded here, attorneys fees are regularly a fraction of the amount of damages awarded. See

11

Polycarbon Indus., 260 F. Supp. 2d at 309 (Swartwood, M.J.) (awarding $160,349 in c. 93A attorneys' fees in case with $520,000 in damages); Amcel Corp. v. Int'l Exec. Sales, Inc., 1997 U.S. Dist. Lexis 23543, at *33, 42 (D. Mass. 1997) (Lindsay, J.) (awarding $202,056 in c. 93A attorneys' fees in case with $443,174 in damages); Industrial Gen. Corp., 849 F. Supp. at 827 (Stearns, J.) (awarding $18,886 in c. 93A attorneys' fees in case with $80,100 in damages).

      **B.**    **Rockland's Contingent Fee Agreement Indicates the Completely Unreasonable Nature of the Fee Petition**

An evaluation of the amount of a contingency fee award in this case provides yet another indication of the unreasonableness of Rockland's Fee Petition. Although "[a] contingency fee agreement does not impose a ceiling on the amount of attorneys fees a court may properly award," Cambridge Trust Co. v. Hanify & King P.C., 430 Mass. 472, 479 (1999), "[a]pplication of the agreed upon percentage factor ought presumptively to be regarded as a reasonable fee," Smith v. Consalvo, 37 Mass. App. Ct. 192, 197 (1994). In this case, this principle is particularly apt given the substantial disparity between the potential attorneys' fees as calculated on a contingency basis and the fee award that Rockland is seeking as "reasonable" under c. 93A. Cf. Cambridge Trust Co., 430 Mass. at 479 n.8 (noting "general rule" that contingent fee arrangement is not relevant to statutory fee award).

As Rockland's Fee Petition indicates, Rockland's lead counsel "worked on contingency" during most of the case. See Fee Petition at 27. A 30% contingency fee of the $232,500 in doubled damages that the Court awarded in this case would yield attorneys' fees of $69,750. Rockland, however, seeks a fee award nearly 10 times as large.

IV. **Rockland's Fee Petition Includes Substantial Time Facially Unrelated to the c. 93A Claim Despite Rockland's Assertion to the Contrary**

In addition to including vast amounts of time spent on unsuccessful and distinguishable claims, Rockland's Fee Petition includes significant amounts of time for activities that are, on their face, plainly unrelated to Rockland's c. 93A claim. Most notably, "work necessitated only by the presence of a jury should be excluded entirely from any fee award." Eldridge v. Provident Cos., Inc., 2004 WL 1690382, at *5 (Mass. Super. 2004).

Rockland asserts that it has "removed time spent on matters that PSG could argue was not related to the Chapter 93A claim." Fee Petition at 8. Yet the Fee Petition includes numerous hours spent on "trial preparation," pretrial conferences, work on motions in limine and other evidentiary motions regarding what "should or should not be presented to the jury," id. at *5, as well as jury selection and attendance at each day of a three-week jury trial. See Fee Petition Ex. 7, 8; see also Eldridge, 2004 WL 1690382, at *5 (excluding fees for hours spent on motions in limine and jury instructions, and cutting "hours logged at the jury trial" because "jury trials invariably last longer than bench trials"). Rockland's inclusion of all of this time contributes significantly to the unreasonableness of Rockland's extravagant request.

V. **A Reasonable Fees and Costs Award in this Case Would Be a Fraction of What Rockland Requests**

As set forth above, Rockland's Fee Petition is entirely unreasonable. Rockland's Fee Petition, however, provides no guide in determining exactly what would be a reasonable attorneys' fees and costs award. As Judge Woodlock stated in Sorenson:

> [The documents that plaintiffs submitted in support of their fee petition] are quite lengthy, but, as noted above, *relate to all the legal work done by plaintiffs in pursuit of their fifteen claims. Plaintiffs have not attempted to pull out, or even estimate, the total hours that can be attributed to their successful claims. Perhaps plaintiffs were hesitant to break down their records in such a manner, concerned that doing so would be deemed an admission that the 93A claim was not*

13

> *inextricably intertwined with the remaining claims.* They were free to make such
> a choice. But because it appears clear to me ... that the successful claims for
> breach of contract and 93A can be severed from the remaining claims, I am left to
> calculate a fee without the assistance of focused records. To the extent that
> deficiency precludes me from precisely determining how time was expended, the
> benefits of any doubt will accrue to defendants.
> ....
> [I]t is plain, in the end, that the risk, and resulting cost, involved in pressing so
> many unsuccessful claims must fall squarely on the plaintiffs' shoulders. Where,
> as here, they do not attempt to compute the amount of time ... reasonably
> necessary to attain the ultimate result in this case, I will substantially reduce the
> requested amount.

Sorenson, 2005 WL 2323916, at *5, 9 (emphasis added); see also Twin Fires, 445 Mass. at 429, 431 (approving trial judge's "reasonable judgment as to the proportion of time spent on those aspects of the case for which ... fees should not be awarded," where the judge "could not realistically review each of the itemized descriptions of the voluminous attorney time records" and the "substance of the work" in those records "was elusive").

Judge Woodlock's opinion in Sorenson is highly instructive in determining reasonable attorneys' fees and costs in this case. In Sorenson, plaintiffs had alleged substantial damages as a result of the reporting, by one of defendant H&R Block's employees, to the IRS of a suspected fraud on plaintiff's tax returns. See 2005 WL 2323916, at *1. Beyond the perhaps ironic distinction between alleged damages resulting from a reported suspected fraud in Sorenson and alleged damages resulting from an allegedly hidden fraud here, the 93A attorneys' fees and costs issues raised in the two cases are strikingly similar.

In Sorenson, plaintiffs asserted 15 claims; here, Rockland asserted 14. See id. at *1. In Sorenson, plaintiffs asserted $5 million in damages; here, Rockland sought over $6 million. See id. In both cases, the relevant party "expand[ed] a narrow case well-beyond its firmest footing." See id. at *8. Plaintiffs in Sorenson expended "[s]ubstantial efforts" on "complex legal issues," yet "in the end those claims went nowhere." See id. at *8. Where Rockland only succeeded on

14

one limited and barely asserted theory of its c. 93A claim, the Sorenson plaintiffs succeeded on "a narrow 93A violation," as well as a single common law claim (for breach of contract). See id. at *4. Moreover, in both cases, the 93A prevailing party received only a fraction of the damages sought. See id. at *8 (noting plaintiffs had been awarded only $630 in damages).

In both cases, the 93A prevailing party sought a fee award significantly higher than the damages awarded. See id. at *1 (noting that plaintiffs sought $180,000 in attorneys' fees and costs). The Sorenson plaintiffs, like Rockland, based their request in large part on the asserted "interconnectedness" of the their 93A claim and other, unsuccessful claims. See id. at *6. Judge Woodlock acknowledged that there was "a set of facts upon which the many different theories and claims rested." See id. Yet Judge Woodlock also recognized distinctions among plaintiffs' claims, as well as the need to "pare[ ] away" the unsuccessful claims. See id. at *7. As a result of this undertaking, combined with many of the other factors at issue in Rockland's Fee Petition, Judge Woodlock awarded the Sorenson plaintiffs only 10% of the attorneys' fees and costs requested. See id. at *1 (awarding $18,900 of the $180,000 sought).

Judge Woodlock's award of only 10% of the fees and costs sought in Sorenson is comparable to fee request reductions in similar cases. See Industrial Gen. Corp., 849 F. Supp. at 827. In Industrial Gen. Corp., for example, the court considered a purportedly "complex" business dispute over computerized voting machines that was actually, "[i]n essence," a "simple common law breach of contract" case. See id. at 822. After evaluating the plaintiffs' petition for 93A fees and costs, Judge Stearns awarded plaintiff only 16% of the amount requested. See id. at 827.

Again, as in Sorenson, Judge Stearns noted both the principle of "interconnectedness" and the need to segregate the unsuccessful claims in the case. See id. at 826. As in Sorenson,

15

and here, the 93A prevailing party had expended significant unnecessary effort in the case. See id. at 827. Finally, plaintiff in Industrial Gen. Corp. had unjustifiably sought, again, an amount of attorneys' fees significantly higher than the amount of damages awarded in the case. See id. (seeking $115,000 in fees and costs where damages had totaled $80,000). Consequently, Judge Stearns awarded plaintiff only $18,866.[5]

As the similarities to Sorenson indicate, an award of 10% of Rockland's extravagant request in this case would be reasonable. The same factors are at work here, including in particular Rockland's inclusion in the Fee Petition of essentially all of its fees and costs for all of its unsuccessful claims and theories of c. 93A recovery. Moreover, 10% of Rockland's request would be nearly equal to the only clear objective measure of what would constitute a "reasonable" fee award in this case. As noted above, a 30% contingency fee in this case would be $69,750. Ten percent of Rockland's total fees and costs request would be $66,853.15.

Finally, the establishment of some proportionality between an award of fees and costs and the damages awarded on the narrowly successful 93A claim, by awarding 10% of the fees and costs requested, would put this case in line with other cases in roughly the same damages-fees range. See Polycarbon Indus., 260 F. Supp. 2d at 309; Amcel, 1997 U.S. Dist. Lexis 23543, at *33, 42; Industrial Gen. Corp., 849 F. Supp. at 827. Although neither this consideration, nor any of the factors outlined above, is dispositive in determining objectively the relevant "services' worth," taken together they provide strong support for the conclusion that a fees and costs award

---

[5] Even in Twin Fires, which Rockland cites in support of its Fee Petition, the trial judge had cut the fee petition practically in half. See Fee Petition at 22-23; Twin Fires, 445 Mass. at 431 (affirming fees and costs award that "discount[ed] the plaintiffs' submission by almost forty-five percent"). In Twin Fires, plaintiffs had succeeded on a common law theory of liability (fraudulent misrepresentation), as well as a c. 93A claim. See 445 Mass. at 413.

16

of $66,853.15 is reasonable.  See Star Fin. Servs., Inc. v. AASTAR Mortgage Corp., 89 F.3d 5, 16 (1st Cir. 1996).

### Conclusion

As set forth above, the amounts of Rockland's requests for fees and costs are entirely unreasonable and would constitute an "underserved windfall" in this case.  See Equitable Life, 867 F.2d at 91.  Based on an analysis of the relevant factors for a reasonable c. 93A fees and costs award, the Court should award Rockland no more than $66,853.15.

### REQUEST FOR ORAL ARGUMENT

PSG respectfully submits that a hearing regarding Rockland's Fee Petition would be useful to the Court, given the issues raised by that Fee Petition and this Opposition.

                                Respectfully submitted,

                                PROFESSIONAL SERVICES GROUP, INC.,
                                By its attorneys,

                                /s/ Maria R. Durant_____
                                Maria R. Durant (BBO # 558906)
                                DWYER & COLLORA, LLP
                                Federal Reserve Plaza
                                600 Atlantic Avenue, 12th Floor
                                Boston, MA  02210
                                (617) 371-1000
                                mdurant@dwyercollora.com

Dated:  November 21, 2007

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on November 21, 2007.

                                /s/ Maria R. Durant_____
                                Maria R. Durant