UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
───────────────────────────────
                              )
PROFESSIONAL SERVICES GROUP,  )
INC.,                         )
           Plaintiff,         )
                              )
        v.                    )  CIVIL ACTION NO. 04-11131-PBS
                              )
TOWN OF ROCKLAND, et al.,     )
           Defendants.        )
───────────────────────────────
```

<u>**MEMORANDUM AND ORDER**</u>

April 30, 2008

Saris, U.S.D.J.

Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Town of Rockland petitions the court for attorneys' fees in the amount of $635,926 and expenses of $32,605.50.  After a review of the briefs, I award $423,950 and expenses of $32,605.50.

1.  <u>Background</u>

As background, Professional Services Group, Inc. ("PSG") brought suit seeking damages for Rockland's termination of its contract.  Rockland filed multiple counterclaims, which included fourteen counts against PSG: nine common law counts and four statutory counts, in addition to the count under Chapter 93A.  These counts asserted claims of violations of the Uniform Procurement Act and the Conflict of Interest statute, civil conspiracy, breach of contract, fraud, breach of the implied covenant of good faith, conversion, negligent misrepresentation, and negligence.  In a pox-on-both-your-houses verdict, the jury rejected the claims of both sides after an eleven day trial.  The

court then made fact-findings that PSG had engaged in unfair and deceptive practices in procuring the renewal of the contract for the wastewater treatment plant, in violation of Mass. Gen. Laws ch. 93A.  See Prof'l Servs. Group, Inc., v. Town of Rockland, 515 F. Supp. 2d 179, 183-84, 198 (D. Mass. 2007).  The Court awarded $116,250, doubled the award to $232,500, and then added attorneys' fees and interest at the state rate on $116,250.  Id. at 198.

2.  The Standard

Because this is a diversity case and the claim at issue was brought under Chapter 93A, Massachusetts law controls the award of attorneys' fees.  See Star Fin. Servs., Inc. v. AASTAR Mortgage Corp., 89 F.3d 5, 16 (1st Cir. 1996).  A judge must examine a number of factors to determine whether an award of attorneys' fees and costs is reasonable.  Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 837 N.E.2d 1121, 1138 (Mass. 2005).  Specifically, the Court should consider: (1) the nature of the case and the issues presented; (2) the time and labor required; (3) the amount of damages involved; (4) the result obtained; (5) the experience, reputation, and ability of the attorney; (6) the usual price charged for similar services by other attorneys in the same area; and (7) the amount of awards in similar cases.  Id. (quoting Linthicum v. Archambault, 398 N.E.2d 482, 488 (Mass. 1979), overruled in part on other grounds by Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 640 N.E.2d 1101, 1105 (Mass. 1994)).  "No one factor is determinative, and a

2

factor-by-factor analysis, although helpful, is not required."
Id. (quoting Berman v. Linnane, 748 N.E.2d 466, 469 (Mass.
2001)).

    3. <u>How Much</u>

    Seeking a reduction of 90% of the fees and costs expended,
PSG argues that Rockland only achieved limited success and that
the attorneys' fees are disproportionate to the result achieved.
Rockland initially sought $2 million in damages, and in PSG's
view, Rockland received only 5% of the damages sought (excluding
doubling).  PSG also points out that the fee petition requests
fees that are roughly three times as large as the total amount of
damages awarded, and contends that the fee is unreasonable in
light of the contingency fee that Rockland had agreed to pay –
30% of the $232,500 in doubled damages ($69,750).

    As a threshold matter, I approve the lodestar as reasonable.
PSG does not dispute the hourly rates for the attorneys and does
not challenge the amount of time spent on the issues as
excessive.

    The challenge in awarding attorneys' fees in this case is
that Rockland's counsel charged full-bore ahead on multiple
claims, and lost all but one of them.  The quality of
representation by Rockland's counsel was excellent, albeit
aggressive.  Indeed the quality of representation by PSG's
lawyers was also of the highest caliber.  This was a well-
litigated, hard-fought trial, and the legal and factual issues
were fully duked out to a draw before the jury.  In the end,

Rockland prevailed on one theory of its Chapter 93A claim as a result of judicial findings. So, the difficulty for the court is how to allocate attorneys' fees to ensure that Rockland is only compensated for the fees necessary to prevail on the Chapter 93A claim. <u>See</u> <u>Fed. Ins. Co. V. HPSC</u>, 480 F.3d 26, 37 (1st Cir. 2007) (limiting attorneys' fees award (in case involving multiple claims) to those fees incurred in defending the 93A claim).

Rockland argues that the facts supporting the winning Chapter 93A claim were inextricably intertwined with the facts underlying the lost claims. I agree that many of the factual issues underpinning the common law and statutory claims overlapped with the factual predicate for the winning Chapter 93A claim, but there were clear exceptions. <u>First</u>, Rockland's counsel vigorously pursued losing claims of negligence and breach of contract against PSG. Specifically, she alleged that PSG cashed checks with improper endorsements and had improperly managed and overseen rebate accounts by allowing improper expenses to be paid out of these accounts after the unlawful procurement was over. The jury rejected these negligence and contract claims, and I found that they did not rise to the level of a Chapter 93A violation. <u>See</u> <u>Prof'l Servs. Group, Inc.</u>, 515 F. Supp. 2d at 197. PSG claims that evidence concerning the mismanagement of these rebate accounts took well over half of the time at the jury trial. While this seems like an exaggeration, it is true that Rockland's counsel spent excessive time pressing farfetched claims like a breach of duty for permitting expenses

4

such as charitable outings or holiday events.  Much of the evidence on the rebate accounts was unnecessary.

Second, Rockland pressed a contention that PSG condoned Sause's misuse of town funds for prostitutes, drugs, and the like.  There was absolutely no evidence at all to support that claim and most of the evidence concerning post-procurement misconduct, while salacious, was irrelevant.

Third, Rockland sludged through a damage claim for the savings it would have had if it had given the procurement contract to Woodward & Curran.  The trial court spent excessive and turgid time on the distinctions between belt filter presses and "sludge thickeners."  Ultimately, Rockland failed to prove that PSG's insertion of the requirement of a belt filter press was anti-competitive or improperly motivated.

Rockland's counsel states that she deleted certain charges for time spent on research of the Uniform Procurement Act, conflict of interest law, and jury instructions regarding those areas.  She also deleted time and costs for the expert testimony on the Town's claim for disgorgement of profits under the Uniform Procurement Act.  While that was appropriate, it was difficult to tell how much time was actually deducted.  In any event, the deduction apparently does not account for the amount of time spent in discovery or trial on the losing claims.  Moreover, Rockland's counsel often engaged in overkill-briefing.  For example, its brief on the 93A claim was 90 single-spaced pages, far in excess of local page limits.

5

In deciding how to weigh these factors, the trial judge can make a reasonable judgment as to the proportion of time spent on these unsuccessful aspects of the case, particularly where the Court cannot realistically review voluminous attorney time records, line-item by line-item. <u>Twin Fires</u>, 837 N.E.2d at 1137, 1139 (upholding trial judge's assessment as to the proportion of time spent on successful aspects of the case because he "did not say that he was unable to make a reasonable judgment" and explaining that a judge need not review each itemized description of voluminous (and unclear) time records).

On balance, when I consider estimated time spent on the nonprevailing claims, the amount of damages actually awarded, and the fact that Rockland already reduced the request somewhat, I reduce the attorneys fees by thirty-three percent. <u>NASCO, Inc. v. Pub. Storage, Inc.</u>, 127 F.3d 148, 154 (1st Cir. 1997) (holding that the district court "acted well within its discretion when it decided to award [Plaintiff] only part of the attorney's fees and costs [Plaintiff] had incurred"). I award the requested costs as these are not challenged.

<u>**S/PATTI B. SARIS**</u>
United States District Judge

6